# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF ARIZONA, By and through its Attorney General, MARK BRNOVICH; et al., | |
| PLAINTIFFS, | |
| v. | |
| MERRICK GARLAND in his official capacity as Attorney General of the United States of America; et al., | CIVIL ACTION NO. 6:22-cv-01130-DCJ-CBW |
| DEFENDANTS. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

I. Binding Fifth Circuit Precedent Has Already Rejected Defendants' Argument ............................ 1

    A. This Court Has Already Implicitly Rejected Defendants' Argument ................................... 3

II. Defendants' Argument Fails On the Merits ............................................................................... 4

    A. Plain Language ............................................................................................................. 4

        1. Section 1252 Applies Only to Challenges By Aliens to Orders of Removal ............. 4

        2. Even if the Application of Section 1252 Extends Beyond Challenges To Orders of Removal, It Does Not Apply To This Case ................................................................. 5

    B. Other Courts' Interpretation ......................................................................................... 7

    C. Canon of Construction: Ejusdem Generis ..................................................................... 8

    D. Legislative History ........................................................................................................ 9

CONCLUSION ................................................................................................................................ 9

## TABLE OF AUTHORITIES

**CASES**

*Al Otro Lado v. Wolf*,
 497 F. Supp. 3d 914 (S.D. Cal. 2020) ............................................................................................8

*Al Otro Lado, Inc. v. McAleenan*,
 423 F. Supp. 3d 848 (S.D. Cal. 2019) ............................................................................................8

*Arizona v. CDC*,
 No. 22-cv-00885 (W.D. La. Apr. 3, 2022) ................................................................................1, 3

*Biden v. Texas*,
 No. 21-954, 2021 WL 6206109 (Dec. 29, 2021) ...........................................................................3

*Coyt v. Holder*,
 593 F.3d 902 (9th Cir. 2010) .........................................................................................................9

*East Bay Sanctuary Covenant v. Biden*,
 993 F.3d 640 (9th Cir. 2021) .....................................................................................................7, 8

*House v. Comm'r*,
 453 F.2d 982 (5th Cir. 1972) .........................................................................................................4

*Kaufman v. Mukasey*,
 524 F.3d 1334 (D.C. Cir. 2008) ....................................................................................................6

*Kucana v. Holder*,
 558 U.S. 233 (2010) ......................................................................................................................9

*McBeath v. Inter-Am. Citizens for Decency Comm.*,
 374 F.2d 359 (5th Cir. 1967) .........................................................................................................7

*Murphy v. Verizon Commc'ns, Inc.*,
 587 F. App'x 140 (5th Cir. 2014) ..................................................................................................8

*Porter v. Nussle*,
 534 U.S. 516 (2002) ......................................................................................................................4

*Spector v. L Q Motor Inns, Inc.*,
 517 F.2d 278 (5th Cir. 1975) .........................................................................................................7

*Texas v. Biden*,
 142 S. Ct. 1098 (2022) ..................................................................................................................1

*Texas v. Biden*,
 20 F.4th 928 (5th Cir. 2021) ..................................................................................................1, 2, 8

*Texas v. United States*,
 524 F. Supp. 3d 598 (S.D. Tex. 2021) ..........................................................................................2

*Texas v. United States*,
 809 F.3d 134 (5th Cir. 2015) .........................................................................................................2

*United States v. Lauderdale Cnty., Mississippi*,
 914 F.3d 960 (5th Cir. 2019) .........................................................................................................4

*Whitman v. American Trucking Ass'ns*,
  531 U.S. 457 (2001)..................................................................................................................5

**STATUTES**

8 U.S.C. § 1103..............................................................................................................................6

8 U.S.C. § 1252..............................................................................................................................4

H. Rep. No. 104–828 (1996) ...................................................................................................... 6, 9

Homeland Security Act, Pub. L. No. 107-296 (2002) ...................................................................6

**OTHER AUTHORITIES**

32 Weekly Comp. Pres. Doc. 1935, 1996 U.S.C.C.A.N. 3388 (Sep. 30, 1996) ...........................9

**INTRODUCTION**

Defendants' Motion to Transfer (Doc. 5) is both barred by controlling precedent and would further fail even on a blank precedential slate. As an initial matter, the Fifth Circuit precedent has squarely held that "the *entirety* of the text and structure of § 1252 indicates that it *operates only on denials of relief for individual aliens*." *Texas v. Biden*, 20 F.4th 928, 977 (5th Cir. 2021) (emphasis added) *cert. granted* 142 S. Ct. 1098 (2022). Because this is a programmatic challenge by States, and not one a claim for "relief by individual aliens," Defendants' transfer motion is foreclosed by Fifth Circuit precedent—which Defendants brazenly ignore. They could not, however, have been unaware of it since that case was repeatedly cited to them in the Title 42 case in the last few weeks, including *specifically* on the § 1252 issue. *See* TRO Reply, *Arizona v. CDC*, No. 6:22-cv-00885-RRS-CBW at 4-5 (Doc. 30-1). This Court implicitly rejected that argument in granting the TRO, and should now do so again expressly.

But even if Defendants' arguments were not directly contrary to binding precedent here and instead questions of first impression, those arguments contravene the plain text of the statute, precedent from other circuits, a pertinent canon of construction, and legislative history. And because Defendants seek transfer solely based upon 8 U.S.C. § 1252 (and not more-general transfer authority such as 28 U.S.C. § 1404), Defendants' motion should be denied as both barred by precedent and lacking in merit.

**I.    Binding Fifth Circuit Precedent Has Already Rejected Defendants' Argument**

Defendants' Motion fails first because controlling Fifth Circuit precedent holds unequivocally that *all of* 8 U.S.C. § 1252 is only applicable to individual removal challenges filed by aliens. Since the State Plaintiffs are sovereign entities bringing a programmatic challenge, and not aliens challenging individual removal decisions, Section 1252 has no applicability here.

Last December, the Fifth Circuit issued its decision in *Texas v. Biden*, holding that when it purported to terminate the Migrant Protection Protocols ("MPP"), "DHS ha[d] violated not only the

1

APA but also Congress's statutory commands in [8 U.S.C.] § 1225" of the Immigration and Nationality Act." 20 F.4th at 998. Not only was the DHS's conduct unlawful, but the Fifth Circuit also held that the federal government had "repeatedly exhibited gamesmanship" throughout the process in an attempt to "moot" the States' challenge. *Id.* at 962-963. Defendants' Motion to Transfer is simply more of that gamesmanship.

In *Texas*, the Fifth Circuit rejected the same "halfhearted[]" argument the federal government makes here, that Section 1252 strips jurisdiction in cases like this one. The Fifth Circuit's holding in *Texas* was clear, categorical, and controlling: "the **entirety** of the text and structure of § 1252 indicates that it **operates only on denials of relief for individual aliens**. The Government's reading of it would bury an awfully large elephant in a really small mousehole." *Id.* at 977 (emphasis added); *see also Texas v. United States*, 809 F.3d 134, 164–65 (5th Cir. 2015) (rejecting federal government's argument that Section 1252 strips jurisdiction, in State challenge to DHS DAPA program); *see also Texas v. United States*, 524 F. Supp. 3d 598, 641–42 (S.D. Tex. 2021) (holding that the jurisdiction limiting provisions of the INA do not apply to State's challenge to programmatic policies of DHS, because those "provisions concern limits to potential suits brought by aliens themselves" and not to actions such as "challenging DHS's decision to blanket pause the removal of thousands of aliens under the APA"). And although *Texas v. Biden* considered different subsections of § 1252, its holding was *categorical* and thus necessarily applies to *all* subsections of that provision. 20 F.4th at 976-77 (rejecting arguments based upon § 1252(a) and (b) on the basis of reasoning applicable to "the entirety of the text and structure of § 1252").

In its Motion to Transfer, the federal government remarkably did not cite *Texas v. Biden* at all, even though that decision is controlling precedent and is entirely dispositive—and recently cited to it in this very Court by many of the same States. *Supra* at 1. Moreover, in its petition for certiorari in *Texas v. Biden*, DHS did not even attempt to challenge the Fifth Circuit's interpretation of Section

2

1252. *See* Pet. Writ Cert., *Biden v. Texas*, No. 21-954, 2021 WL 6206109 at *I (Dec. 29, 2021) (listing questions presented as "Whether 8 U.S.C. 1225 requires DHS to continue implementing MPP" and "Whether the court of appeals erred by concluding that the Secretary's new decision terminating MPP had no legal effect").

If the federal government believes that the Fifth Circuit's interpretation of Section 1252 in *Texas v. Biden* was wrongly decided, it is free to seek Supreme Court or en banc review. It has not, and it remains binding precedent in this Circuit. Defendants' Motion should therefore be denied on that basis alone.

### A. This Court Has Already Implicitly Rejected Defendants' Argument

On April 3, nearly all of the same State Plaintiffs in this case filed a separate action in this Court challenging the federal government's termination of its Title 42 policy prohibiting the entry into the United States of certain categories of aliens because of the ongoing COVID-19 pandemic. *See Arizona v. CDC*, No. 22-cv-00885. On April 21, Plaintiff States there filed a motion for temporary restraining order because the federal government had begun to unlawfully implement the Title 42 termination more than a month before the announced implementation date. *Id.* ECF No. 24. The federal government opposed the States' TRO motion, arguing in part that this Court lacked jurisdiction because of Section 1252—including specifically § 1252(e)(3). *Arizona v. CDC*, ECF No. 27 at 6-8 (W.D. La. Apr. 3, 2022). This Court granted the TRO, thus implicitly rejecting Defendants' Section 1252 argument and concluding that it had jurisdiction. *Id.* ECF No. 37 at 2 (W.D. La. Apr. 27, 2022) (holding that "the Plaintiff States have satisfied each of the[] requirements" for a TRO, including that there is "a substantial likelihood of success on the merits" (citations and quotation marks omitted)). Indeed, Defendants subsequently abandoned their §1252 argument completely in their preliminary injunction opposition. *Arizona v. CDC*, ECF No. 40 at 43 n.13 (W.D. La. Apr. 29, 2022) (mentioning in passing other subparagraphs of Section 1252, but declining to invoke Section 1252(e)(3)).

**II.     Defendants' Argument Fails On the Merits**

Even if on a blank precedential slate, Defendants' Motion still fails, as all available interpretive tools, including the plain language, persuasive authority from other courts, canons of construction, and legislative history all show that Section 1252(e)(3) does not apply here.

**A.     Plain Language**

**1.     Section 1252 Applies Only to Challenges By Aliens to Orders of Removal**

Section 1252 is a limitation on *aliens' individual* attempts to challenge removal from the United States. The section specifically refers to removal, removal orders, or removal proceedings twenty-five times, and the entire structure of §1252 makes clear that it only applies to proceedings in which aliens are attempting to challenge their removal. *E.g.* 8 U.S.C. § 1252(a)(1) (limiting "[j]udicial review of a final order of removal"); *id.* (b) (establishing requirements for "review of an order of removal").

This interpretation is confirmed by Section 1252's section heading and subheadings. The section heading is "[j]udicial review of *orders of removal.*" 8 U.S.C. § 1252 (emphasis added). And tellingly, the subheading to 1252(e) explains that this subsection is about "[j]udicial review of orders under section 1225(b)(1)." To interpret Section 1252 as applying beyond challenges by aliens to individual removal decisions would require this Court to ignore the Fifth Circuit's rule that "meaning should be given to the section headings of a statute." *House v. Comm'r*, 453 F.2d 982, 988 (5th Cir. 1972); *see also Porter v. Nussle*, 534 U.S. 516, 527-28 (2002) ("[T]he title of a statute and the heading of a section are tools available for the resolution of doubt about the meaning of a statute."); *United States v. Lauderdale Cnty., Mississippi*, 914 F.3d 960, 965 (5th Cir. 2019) (rejecting federal government's construction of a statute and explaining that "section headings … can be used as evidence when interpreting the operative text of the statute").

### 2. Even if the Application of Section 1252 Extends Beyond Challenges To Orders of Removal, It Does Not Apply To This Case

Even if Section 1252 could be read as applying beyond challenges to orders of removal, it does not apply to this case, because this action is not a challenge to implementation of Section 1225(b) (creating an expedited removal process for arriving aliens). The plain language of Section 1252(e)(3) states that its jurisdictional limitation only applies in two strictly circumscribed cases: 1) "[j]udicial review of determinations under section 1225(b) of this title" and 2) [Section 1225(b)'s] implementation." Plaintiffs are not contesting any specific removal determination. The first condition thus does not apply. And the second condition does not apply because the gravamen of Plaintiffs' complaint is that the Asylum IFR does *not* implement Section 1225(b), but rather contravenes it. Similarly, Section 1252(a)(2)(A)(iv) refers to challenges to "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)."

The Asylum IFR cannot fairly be characterized as an "implementation" of Section 1225(b) because asylum adjudications are governed by other sections of the INA, specifically 8 U.S.C. § 1158, which is titled "Asylum," and 8 U.S.C. § 1229a, which establishes the removal proceedings required for aliens claiming asylum.

Defendants know that the statutes governing asylum do not grant them the discretion to adopt the Asylum IFR. The only textual basis they offer for the authority to adopt the nearly 150-page, 170,000-word Asylum IFR is the five-word phrase "further consideration of the application" in Section 1225(b). That phrase, in their view, is a grant of administrative super-powers that allows Defendants to adopt rules making radical changes to the asylum process established by Congressional statute. Defendants' argument is not premised on an elephant hidden in a mousehole, it's premised on a whole herd of them hidden inside. *See Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (Congress does not upend or even "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes").

5

Defendants claim all of this even though Congress already plainly explained that the phrase "further consideration of the application for asylum" in Section 1225(b) means "further consideration of the application for asylum *under normal non-expedited removal proceedings*." H. Rep. No. 104–828 at 209 (1996) (emphasis added). But non-expedited removal proceedings are governed by 8 U.S.C. §1229a, not Section 1225(b).

Further supporting this statutory interpretation is that the Homeland Security Act (HSA), Pub. L. No. 107-296 (2002), requires that asylum claims be adjudicated by the DOJ's Executive Office of Immigration Review ("EOIR"), which does not have the authority to conduct proceedings under Section 1225(b). *See* HSA ¶451(b) (enumerating specific functions that were transferred from INS to USCIS, empowering USCIS only to perform those "adjudications performed by the INS immediately before those authorities were transferred from DOJ to DHS"); 8 U.S.C. § 1103(g)(1) (requiring that DOJ continue to "have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to the [EOIR], on the day before the effective date"); *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008) (The "Homeland Security Act expressly provides that the Attorney General has authority over certain immigration functions specifically relating to immigration courts"); *see also* Complaint ¶¶8, 114-118.

Because the INA requires that "further consideration" of asylum requests must take place under Section 1229a, and because asylum more generally is governed by Section 1158, any rule implementing new procedures for asylum requests is implementing Sections 1158 and 1229a and *not* Section 1225(b). The federal government's mention of Section 1225(b) in the Asylum IFR is not a magic incantation allowing it to foreclose judicial review of its actions in 88 of the 89 federal district courts of this country.

6

A transfer to the D.D.C. pursuant to 28 U.S.C. § 1631 is only appropriate if this Court finds "there is want of jurisdiction." Defendants argue that jurisdiction is lacking because the Asylum IFR is implementing Section 1225. Plaintiffs' Complaint, however, plausibly alleges that the Asylum IFR is *not* an implementation of Section 1225(b). Thus, the only way for this Court to determine that jurisdiction is lacking is by making a decision on the merits: simply put, if Plaintiffs are right on the merits, then the Asylum IFR is *not* implementing Section 1225(b). This Court therefore *would* have jurisdiction and transfer would be inappropriate.

Because the question of jurisdiction is inextricably intertwined with the merits issues of this case, transfer of the case is inappropriate. "[W]here the issue of jurisdiction is dependent upon a decision on the merits the trial court should determine jurisdiction by proceeding to a decision on the merits." *McBeath v. Inter-Am. Citizens for Decency Comm.*, 374 F.2d 359, 363 (5th Cir. 1967) (cleaned up) (citations and quotation marks omitted); *see also Spector v. L Q Motor Inns, Inc.*, 517 F.2d 278, 284 (5th Cir. 1975) (where "decision on the jurisdictional issues is dependent on decision of the merits," the district court should reserve decision on the jurisdictional issues "until a hearing on the merits").

**B.     Other Courts' Interpretation**

Courts outside this Circuit have already rejected the same argument the government makes here and have held that Section 1252 does not require transfer or bar jurisdiction. In *East Bay Sanctuary Covenant v. Biden*, legal services organizations that helped asylum-seeking aliens sued the Trump Administration in the Northern District of California, challenging a rule that would strip asylum eligibility from aliens crossing the border other than at ports of entry. 993 F.3d 640 (9th Cir. 2021). Just as here, the federal government claimed that Section 1252(e)(3) deprived the district court and the Ninth Circuit of jurisdiction. The Ninth Circuit squarely rejected that argument, holding that "the jurisdiction-stripping provisions cited by the government were not intended to apply at all to challenges to asylum eligibility rules." *Id.* at 667. This was because Section 1252(e)(3) only "govern[s] judicial review of

7

removal orders or challenges inextricably linked with actions taken to remove migrants from the country." *Id.* at 666. And because "the *law governing asylum is collateral to the process of removal*," Section 1252(e)(3) did not apply. *Id.* at 667 (emphasis added). Even though rules about asylum "may eventually be relevant to removal proceedings, ... *they are not regulations to implement removal orders*" that would trigger applicability of Section 1252(e)(3). *Id.* at 666-667 (cleaned up) (citations omitted) (emphasis added). That same logic is equally true here.

The Ninth Circuit further explained that this construction was "consistent with the purposes of these jurisdictional limitations: allowing collateral APA challenges to an asylum-eligibility rule does not undermine Congress's desire to limit all aliens to one bite of the apple with regard to challenging their removal orders. *Id.* at 667 (cleaned up) (citation omitted). Section 1252(e)(3) does *not* prohibit "claims that are independent of or collateral to the removal process" because they "are not actions taken to remove an alien from the United States." *Id.* (cleaned up) (citation omitted).

Similarly, the Southern District of California explained that §1252(e)(3) applies "only to actions calling into question the legality of the expedited removal process itself." *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 867 (S.D. Cal. 2019), *order clarified* 497 F. Supp. 3d 914 (2020).

### C. Canon of Construction: Ejusdem Generis

"[U]nder the statutory canon *ejusdem generis*, 'when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows.' *Murphy v. Verizon Commc'ns, Inc.*, 587 F. App'x 140, 144 (5th Cir. 2014) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)). Nearly all of the specific items listed in Section 1252 refer to removal, removal orders, or removal proceedings. *See supra* at 3-4, 6. The best reading of Section 1252(a)(2)(A) and (e)(3) is therefore that they are referring to challenges by alien to their removal. Indeed, the Fifth Circuit specifically applied *ejusdem generis* in its holding that Section 1252 "operates only on denials of relief for individual aliens." *Texas v. Biden*, 20 F.4th at 977 n.11.

8

### D.     Legislative History

Congress adopted the current version of Section 1252 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *Coyt v. Holder*, 593 F.3d 902, 906 (9th Cir. 2010). "Congress amended the INA aggressively to expedite removal of aliens lacking a legal basis to remain in the United States." *Kucana v. Holder*, 558 U.S. 233, 249 (2010). Congress's purpose in adopting IIRIRA was "to expedite the physical removal of those aliens not entitled to admission to the United States" and "[t]o that end, IIRIRA 'inverted' certain provisions of the INA, encouraging prompt voluntary departure." *Coyt*, 593 F.3d at 906. The House Conference Report on IIRIRA similarly made plain that the bill's purpose was "to improve deterrence of illegal immigration to the United States by ... reforming exclusion and deportation law and procedures." H.R. Rep. No. 104-828, at 1 and 199 (1996) (Conf. Rep.). President Clinton's signing statement likewise described IIRIRA as "landmark immigration reform legislation that ... strengthens the rule of law by cracking down on illegal immigration at the border, in the workplace, and in the criminal justice system." 32 Weekly Comp. Pres. Doc. 1935, 1996 U.S.C.C.A.N. 3388, 3391 (Sep. 30, 1996).

Section 1252 was adopted to make it harder for unauthorized aliens to challenge their removal and to encourage their swift departure. There is no indication that the intent of Section 1252 was to insulate from judicial review executive action to sabotage immigration enforcement, facilitate illegal immigration, and make it easier for aliens to remain in the United States. It would be a complete inversion of congressional intent to read Section 1252 as making it more difficult for the States to challenge such executive action programmatically.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer should be denied.

Dated:   May 6, 2022

Respectfully submitted,

By: /s/ *Elizabeth B. Murrill*

MARK BRNOVICH
   Attorney General
Brunn ("Beau") W. Roysden III *
   Solicitor General
Drew C. Ensign **
   Deputy Solicitor General
James K. Rogers *
   Senior Litigation Counsel
OFFICE OF THE ARIZONA ATTORNEY GENERAL
2005 North Central Avenue
Phoenix, AZ 85004
beau.roysden@azag.gov
drew.ensign@azag.gov
james.rogers@azag.gov

*Counsel for Plaintiff State of Arizona*

Steve Marshall
   Alabama Attorney General
Edmund G. LaCour Jr.*
   Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for Plaintiff State of Alabama*

ELIZABETH B. MURRILL (La #20685)
   Solicitor General
J. SCOTT ST. JOHN (La #36682)
   Deputy Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

ERIC S. SCHMITT
   Attorney General
D. JOHN SAUER *
   Solicitor General
OFFICE OF THE MISSOURI ATTORNEY GENERAL
Supreme Court Building
P.O. Box 899
Jefferson City, MO 65102
Phone: (573) 751-3321
John.Sauer@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

Treg R. Taylor
   Attorney General of Alaska
CORI M. MILLS*
   Deputy Attorney General of Alaska
Christopher A. Robison*
   Assistant Attorney General
Alaska Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501-1994
chris.robison@alaska.gov

*Counsel for Plaintiff State of Alaska*

LESLIE RUTLEDGE
  Arkansas Attorney General
NICHOLAS J. BRONNI*
  Solicitor General
DYLAN L. JACOBS*
  Deputy Solicitor General
OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
Nicholas.Bronni@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

CHRISTOPHER M. CARR
  Attorney General of Georgia
STEPHEN J. PETRANY*
  Solicitor General
OFFICE OF THE GEORGIA
ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

THEODORE E. ROKITA
  Indiana Attorney General
Betsy M. DeNardi*
  Director of Complex Litigation
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
Betsy.DeNardi@atg.in.gov

*Counsel for Plaintiff State of Indiana*

ASHLEY MOODY
  Attorney General
JAMES H. PERCIVAL*
  Deputy Attorney General of Legal Policy
OFFICE OF THE FLORIDA
ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Phone: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

Lawrence G. Wasden
  Attorney General,
Brian Kane*
  Chief Deputy Attorney General
Office of the Idaho Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 334-2400
Email: Brian.Kane@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

Derek Schmidt
  Attorney General
Dwight R. Carswell*
  Deputy Solicitor General
Office of the Kansas Attorney General
120 SW 10th Ave., 3rd Floor
Topeka, KS 66612-1597
dwight.carswell@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

DANIEL CAMERON
   Attorney General of Kentucky
Marc Manley*
   Associate Attorney General
Kentucky Office of the
Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Counsel for Plaintiff Commonwealth of Kentucky*

LYNN FITCH
   Attorney General of Mississippi
JUSTIN L. MATHENY*
   Deputy Solicitor General
OFFICE OF THE MISSISSIPPI
ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

DOUGLAS J. PETERSON
   Attorney General
JAMES A. CAMPBELL*
   Solicitor General
OFFICE OF THE NEBRASKA ATTORNEY
GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
jim.campbell@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

ALAN WILSON
   South Carolina Attorney General
Thomas T. Hydrick*
   Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

AUSTIN KNUDSEN
   Attorney General
DAVID M.S. DEWHIRST*
   Solicitor General
MONTANA DEPARTMENT OF JUSTICE
215 N Sanders St
Helena, MT 59601
P. (406) 444-2026
David.Dewhirst@mt.gov

*Counsel for Plaintiff State of Montana*

JOHN M. O'CONNOR
   Attorney General of Oklahoma
BRYAN CLEVELAND*
   Deputy Solicitor General
OKLAHOMA ATTORNEY GENERAL'S
OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921

*Counsel for Plaintiff State of Oklahoma*

Sean D. Reyes
   *Utah Attorney General*
Melissa Holyoak
   *Utah Solicitor General*
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

*Counsel for Plaintiff State of Utah*

Patrick Morrisey
   Attorney General
Lindsay See*
   Solicitor General
Office of the West Virginia Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov

*Counsel for Plaintiff State of West Virginia*

BRIDGET HILL
   Attorney General of Wyoming
RYAN SCHELHAAS*
   Chief Deputy Attorney General
OFFICE OF THE WYOMING ATTORNEY
GENERAL
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State of Wyoming*



\* Pro hac vice application forthcoming
\*\* Pro hac vice application granted