**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

|  |  |
|---|---|
| STATE OF ARIZONA, *et al.*, ) <br> ) <br> *Plaintiffs,* ) <br> ) <br> v. ) <br> ) <br> MERRICK GARLAND, ) <br> in his official capacity as Attorney ) <br> General of the United States, *et al.*, ) <br> ) <br> *Defendants.* ) <br> ) | Civil Action No. 6:22-cv-01130 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO STAY**

## INTRODUCTION

Challenges to regulations implementing the expedited removal statute may only be brought in the District of Columbia. Just two weeks ago, Plaintiffs, represented by the same counsel, acknowledged this, telling Judge Summerhays that "[t]he requirement of Section 1252(e)(3) that certain challenges be brought in the DDC" applies both to challenges to "specific 'determinations under section 1225(b)" *and* "DHS's implementation of Section [1225]." Reply in Support of Mot. for TRO at 5, n.2 (quoting 8 U.S.C. § 1252(e)(3)) (ECF 30-1), *Arizona v. CDC*, No 22-cv-885 (Apr. 25, 2022). Plaintiffs now argue the opposite, contending that sections 1252(a)(2)(A) and (e) do not apply, even though they are challenging a rule that indisputably implements section 1225(b)(1). But Plaintiffs fail to seriously grapple with the text of sections 1252(a)(2)(A) and (e), and they do not address the many cases in this circuit and beyond limiting review of challenges such as theirs to "procedures and policies adopted by the Attorney General [and Secretary] to implement the provisions of section 1225(b)(1)" to the District of Columbia. Because such challenges to implementation of section 1225(b)(1) through a regulation may only be brought in the District of Columbia, 8 U.S.C. § 1252(a)(2)(A)(iv), (e)(3), the Court must dismiss or transfer this case. 28 U.S.C. § 1631.

## ARGUMENT

This Court must either transfer or dismiss this case for want of subject-matter jurisdiction. Plaintiffs' claims challenge a regulation that implements expedited removal procedures and policies, but 8 U.S.C. § 1252(a)(2)(A)(iv) and (e)(3) strip all courts outside the District of Columbia of jurisdiction over such claims. Mot. 5-17. Plaintiffs' contrary arguments are meritless.

### A. No Court Has Held That Challenges To Rules Implementing Section 1225(b) May Be Heard Outside The District of Columbia.

Plaintiffs first contend that *Texas v. Biden,* 20 F. 4th 928 (5th Cir. 2021), held that section 1252 "is only applicable to individual removal challenges filed by aliens" and not States "bringing a programmatic challenge." Op. 1. That is wrong. *Texas* involved a challenge to the termination of the Migrant Protection Protocols (MPP), which implemented section 1225(b)(2)(C), *not* section 1225(b)(1). In that case, the Government argued the challenge was barred by section 1252(a)(2)(B)(ii). That provision provides, in a section titled "Denials of discretionary relief," that "[n]otwithstanding any other provision of law … no court shall have jurisdiction to review [any] *decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion." (emphasis added). The Government argued that section 1252(a)(2)(B)(ii) precluded jurisdiction over claims challenging the termination of MPP because the relevant statute, section 1225(b)(2)(C), specified that the government "*may* return" certain noncitizens to "contiguous territory" during their removal proceedings. (emphasis added). The Fifth Circuit disagreed, concluding that section 1225(b)(2)(C) was not, in fact, discretionary. The court held section 1252(a)(2)(B)(ii) did not apply, but even if it did, it would at most insulate from review "the Government's discretionary decision to return one specific person to Mexico," and not provide "unreviewable discretion to terminate MPP and release undocumented immigrants into the United States *en masse*." *Texas*, 20 F.4th at 977-78. As Plaintiffs acknowledge, Op. 2, nowhere does *Texas* discuss challenges to the expedited removal

2

statute or its implementation generally, or the judicial review provisions relevant to programmatic challenges to policies and procedures implementing section 1225(b)(1) specifically.[1]

Plaintiffs next argue that this Court "implicitly reject[ed] Defendants' Section 1252 argument" because it concluded it had jurisdiction and granted a temporary restraining order (TRO) in a separate case "challenging the federal government's termination of its Title 42 policy." Op. 3. In granting the TRO in that case, however, the Court did not address expedited removal provisions in section 1225(b)(1) or anything implementing that section. Rather, the Court found Plaintiffs were challenging the termination of the Title 42 policy, which is not governed by sections 1252(a)(2)(A) or (e). Hr'g Tr. at 4-5, *Arizona v. CDC*, No. 22-cv-885 (Apr. 25, 2022). Further, the Court's order did not address sections 1252(a)(2)(A) and (e), and cannot have decided, implicitly or otherwise, that Plaintiffs *in this case* can challenge an interim final rule (IFR) that plainly implements section 1225(b)(1). *See supra* n.1.

### B. The Plain Text Of Section 1252 Forecloses Jurisdiction In This District.

Plaintiffs next argue that the plain language of section 1252 applies only to challenges to orders of removal by noncitizens, and is a limitation "on *aliens' individual* attempts to challenge removal from the United States." Op. 4 (selectively quoting from 8 U.S.C. § 1252(a)(1) and

---

[1] In a footnote, the Court suggested in *dicta* that section 1252(a)(2)(B)(ii) was also limited to individual decisions, because that provision followed two references to "individuals" in section 1225(a)(2)(A)(i) and (iii). *Texas*, 20 F.4th at 978 n.11. But the court did not purport to construe section 1252(a)(2)(A) as applying only to review of individual orders. Nor did it discuss sections 1252(a)(2)(A)(ii) and (iv), which, as explained, are "two categories of claims that, by their terms, are not confined to individual expedited-removal proceedings," including "challenges to 'procedures and policies adopted by the [Secretary] to implement [the statute]' divorced from any individual determination" that must be raised in the District of Columbia. *Make the Road v. Wolf*, 962 F.3d 612, 627 (D.C. Cir. 2020); *see infra* at 4. To the extent Plaintiffs suggest otherwise, the Supreme Court and Fifth Circuit have repeatedly admonished lower courts for engaging in "'drive-by jurisdictional rulings' that should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in suit." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006); *see also Abraugh v. Altimus*, 26 F.4th 298, 305 (5th Cir. 2022).

(b)(1)). Plaintiffs notably omit reference to sections 1252(a)(2)(A)(ii) and (iv), which "except as provided in subsection (e)," provide that "no court shall have jurisdiction to review" "procedures and policies adopted … to implement the provisions of section 1225(b)(1)." The D.C. Circuit rejected the precise argument Plaintiffs advance here in a case brought by organizations rather than individuals, holding sections 1252(a)(2)(A)(ii) and (iv) mean that the "review under Subsection 1252(e)(3)" is "not textually confined to claims arising from individual removal actions." *Make the Road*, 962 F.3d at 621, 627. As that Court held, "Congress included within Subsection 1252(e)(3) two categories of claims that, by their terms, are not confined to individual expedited-removal proceedings," including challenges to procedures and policies adopted to implement the statute "divorced from any individual determination." *Id*. Section 1252(e)(3)'s exception to the otherwise universal bar to review in section 1252(a)(2)(A) channels to D.C. "[j]udicial review of determinations under section 1225(b) of this title *and its implementation*." *Id.* (emphasis added). The Court held that "[t]he natural meaning of the singular 'its' points directly to litigation over Section 1225(b)'s implementation," and "'[S]ection 1225(b) of this title' is also the last antecedent to which the word 'its' refers." *Make the Road*, 962 F.3d at 625.

Next, Plaintiffs incorrectly attempt to support their argument by reference to section titles, Op. 4, but these titles cannot override the clear, unambiguous text of sections 1252(a)(2)(A) and (e)(3). Specifically, Plaintiffs contend that section 1252(e)(3) only applies in cases challenging an individual removal order because section 1252 is titled "[j]udicial review of orders of removal," and section 1252(e) is titled "[j]udicial review of orders under section 1225(b)(1)." Op. 4. That is wrong. It is well-settled that "[w]here the text [of a statute] is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner." *Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528-29 (1947) "For interpretative purposes, they are of use

4

only when they shed light on some *ambiguous* word or phrase" and "are but tools available for the resolution of a doubt" but "they cannot undo or limit that which the text makes plain." *Id.* (emphasis added). For that reason, "the title of a statute ... cannot limit the plain meaning of the text." *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998). Instead, the more specific text controls. *See, e.g.*, *United States v. Hoang*, 636 F.3d 677, 681 (5th Cir. 2011) ("We find reference to the subtitle unnecessary and inappropriate because … we find no ambiguity in subsection (d)."); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general"). Indeed, courts have consistently held section 1252(a)(2)(A) is clear and unambiguous that "[n]otwithstanding any other provision of law … no court shall have jurisdiction to review," "except as provided in subsection (e)," "procedures and policies adopted … to implement … section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(iv); *see, e.g.*, *Make the Road*, 962 F.3d at 626 (discussing "Subsection 1252(e)(3)'s plain textual coverage of the types of legal" claims advanced here); *M.M.V. v. Garland*, 1 F.4th 1100, 1107 (D.C. Cir. 2021) (finding sections 1252(a)(2)(A) and (e)(3) "unambiguous"); *Castro v. DHS*, 835 F.3d 422, 430, 432 (3d Cir. 2016) (similar); *Rodriguez v. CBP*, No. 6:14-cv-2716, 2014 WL 4675182, at *2 (W.D. La. Sept. 18, 2014) (similar).[2]

Plaintiffs' reading also violates the rule against superfluity. *Colautti v. Franklin*, 439 U.S.

---

[2] The unambiguous text of section 1252(e)(3), which applies broadly to implementation of section 1225(b)(1) and not just to challenges to individual removal orders, also forecloses Plaintiffs' later argument under the canon of *ejusdem generis* for a narrower reading. Op. 8. Section 1252(e)(3), titled "Challenges on validity of the system," does not mention removal at all, and to the extent it includes a specific list of items, those specifics include challenges to "a regulation, a written policy directive, written policy guideline, or written procedure" that "implement" section 1225(b), and expressly cover Plaintiffs' challenge to the IFR. 8 U.S.C. § 1252(e)(3)(A)(ii); *see O.A. v. Trump*, 404 F. Supp. 3d 109, 141 (D.D.C. 2019) ("§ 1252(e)(3) sweeps, if anything, more broadly than § 1252(a)(5) and § 1252(b)(9)—it does not apply merely to removal proceedings and actions taken to remove an alien, but to the implementation of the expedited removal provisions of IIRIRA").

5

379, 392 (1979) ("a statute should be interpreted so as not to render one part inoperative"). Section 1252 is a comprehensive statutory scheme containing many provisions that specifically apply outside of removal proceedings to bar judicial review of claims that do not involve individual removal orders. *See, e.g.*, 8 U.S.C. § 1252(b)(9) ("no court shall have jurisdiction … to review … questions of law or fact" "arising from any *action taken* or proceeding brought to remove an alien") (emphasis added).[3] Indeed, every Court of Appeals to squarely address the claim that section 1252 is limited to when an individual seeks "judicial review of an order of removal" has rejected it. *See Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 143 (1st Cir. 2007) ("the jurisdiction-stripping provisions of section 1252 apply outside the removal context"); *El–Khader v. Monica*, 366 F.3d 562, at 567 (7th Cir. 2004); *Van Dinh v. Reno*, 197 F.3d 427, 432 (10th Cir. 1999); *iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 64 (D.C. Cir. 2021); *Abdelwahab v. Frazier*, 578 F.3d 817, 820 (8th Cir. 2009); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 199 n.5, 205 n.11 (3d Cir. 2006); *CDI Info. Servs. v. Reno*, 278 F.3d 616, 620 (6th Cir 2002).[4] Were it otherwise, the many provisions of section 1252 that apply outside removal proceedings would be nullities. These provisions are broadly "aimed at protecting the Executive's discretion from the courts." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999). Reading them out of the statute would violate the rule against interpretations that make statutory provisions meaningless and would undermine

---

[3] *See also* 8 U.S.C. § 1252(f) ("no court … shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-32], other than with respect to the application of such provisions to an individual alien"); *id.* § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the *decision or action* by the Attorney General *to commence proceedings*") (emphasis added).

[4] Although the Fifth Circuit has not explicitly addressed the issue, it has, in a precedential decision, applied section 1252 to a challenge to a visa revocation arising *outside* removal proceedings, thus reading section 1252 as not limited to individual removal decisions. *Ghanem v. Upchurch*, 481 F.3d 222, 224 (5th Cir. 2007); *see Bonakchi v. Lynch*, No. CV 15-2974, 2016 WL 927179, at *2 (E.D. La. Mar. 10, 2016) ("such a finding is implicit in the Fifth Circuit's decision in *Ghanem*").

the intended scope of section 1252. *See DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1966, (2020) (explaining sections 1252(a)(2)(A)(i)-(iv), among other provisions, "protect the Executive's discretion from undue interference by the courts").

Plaintiffs next contend that even if section 1252(e) extends beyond challenges to removal orders, it nonetheless does not apply here, despite specifically acknowledging that "Section 1252(e)(3) … applies" in "cases" involving "[Section 1225(b)'s] implementation." Op. 5 (bracketed text in original). Despite conceding that "the gravamen of Plaintiffs' complaint" *does* relate to "Section 1225(b)," Plaintiffs argue that section 1225(e) does not apply because they are challenging the IFR as "contraven[ing]" rather than "implement[ing]" section 1225(b). *Id*. But this is precisely the sort of challenge that is encompassed in section 1252(e)(3). Section 1252(e)(3) channels to the District of Columbia any challenge to "a regulation … issued by or under the authority of the Attorney General [and Secretary] to implement" the provisions of section 1225(b)(1), including those arguing the regulation "is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3). No claim will challenge a rule as *properly* implementing, rather than contravening, section 1225(b)(1). A reading of section 1252(e)(3) limiting it to those nonexistent circumstances would make the provision entirely superfluous. The D.C. Circuit has rejected an argument identical to Plaintiffs' that "challenged policies fall outside section 1252(a)(2)(A)(iv) because they were not *lawfully* adopted." *M.M.V.*, 1 F.4th at 1107. The court held that 1252(a)(2)(A)(iv)'s "bar on judicial review of certain 'policies adopted' would be ineffective if 'adopted' were construed to mean 'lawfully adopted' as determined by a reviewing court." *Id*.

Reversing course, Plaintiffs argue the IFR instead implements 8 U.S.C. § 1158, which provides the *substantive* standards that apply to asylum applications generally, and 8 U.S.C.

7

§ 1229a, which governs removal proceedings before an immigration judge. Op. 5. Plaintiffs do not cite anything in the IFR that amends or alters the asylum provisions in section 1158, and there is no basis to argue the IFR implements that section. Plaintiffs argue the IFR implements section 1229a because that section "establishes the removal proceedings required for aliens claiming asylum." Op. 5. That is not correct. While section 1229a provides procedures for an immigration judge to determine whether a noncitizen "may be admitted to the United States," those procedures are not exclusive and apply "[u]nless otherwise specified in this chapter." 8 U.S.C. § 1229a(a)(3). The relevant chapter *includes* section 1225(b)(1), which specifies its own procedures for "[c]laims for asylum," 8 U.S.C. § 1225(b)(1)(A)(ii), and authorizes procedures for "further consideration of the application for asylum," separate from section 1229a removal proceedings, *id*. § 1225(b)(1)(B)(ii). *See also* 8 U.S.C. § 1158(a)(1) (providing that noncitizens "may apply for asylum in accordance with this section, or where applicable, section 1225(b)"). Plaintiffs quibble that section 1225(b)(1)(B)(ii)'s language addressing "further consideration of the application for asylum" cannot support the IFR's "changes to the asylum process." Op. 5. Their argument, however, merely goes to the merits of whether the IFR "is consistent with applicable provisions of this subchapter or is otherwise in violation of law," which may only be evaluated in the District of Columbia, 8 U.S.C. § 1252(e)(3)(a)(ii).

Plaintiffs also argue "further consideration of the application for asylum" should be under non-expedited removal proceedings, citing a statement in the legislative history. Op. 6. But section 1225(b) is silent on this point. And, in any case, Plaintiffs' argument again goes to the merits of whether the IFR is consistent with the statute, which can only be addressed in D.C. Plaintiffs also argue the Homeland Security Act should be read to prevent the IFR from implementing section 1225(b)(1)(B)(ii) in this manner. Op. 6. But whether the IFR permissibly implements section

8

1225(b)(1)(B)(ii) or "whether such a regulation … is otherwise in violation of law," are questions only a court in D.C. may answer. 8 U.S.C. § 1252(e)(3)(A)(ii). These merits questions are distinct from whether the agencies issued the IFR under their authority to implement section 1225(b), thus implicating section 1252(e)(3). The jurisdictional question is thus not inextricably intertwined with resolution of Plaintiffs' challenges to the merits of the IFR, as they assert, Op. 7. Moreover, even if the issues overlapped, section 1252(e)(3)(A)(ii) provides for review of such questions exclusively in D.C. As noted above, a contrary reading would render the provision superfluous.

Plaintiffs next argue *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) supports their position. Op. 7-8. *East Bay* held, however, that section 1252(e)(3) did not cover a rule that addressed the *substantive* standards for asylum under section 1158 by "announc[ing] a new bar to asylum eligibility" that applied outside of expedited removal, including in section 1229a hearings and to affirmative asylum applications. 993 F.3d at 658, 667; *id*. at 669 ("The only section of the INA implicated by the Rule is section 1158"). The IFR in contrast implements section 1225(b) by setting out procedures for the further consideration of asylum applications raised exclusively by individuals in expedited removal, and says nothing about section 1158's asylum standards. *Supra* at 7-8. Rather, the IFR implements *procedures* for applying those standards to individuals in *expedited removal*. And even if the IFR implemented section 1158—which it does not—review could still occur only in D.C. to the extent those standards are applied in expedited removal proceedings only by virtue of this IFR. *See E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1119 (N.D. Cal. 2018) (section 1252(e)(3) bars review outside D.C. of challenges to rules implementing "procedures" for applying section 1158 in expedited removal proceedings).[5]

---

[5] Plaintiffs also cite *Al Otro Lado v. McAleenan*, Op. 8, but this case similarly held section 1252(e)(3) applies to "actions calling into question the legality of the expedited removal process," 423 F. Supp. 3d 848, 867 (S.D. Cal. 2019). Plaintiffs' attempt to fit their challenge into out-of-

9

### C. The Legislative History Does Not Support Plaintiffs' Position.

Finally, Plaintiffs argue the legislative history indicates "[i]t would be a complete inversion of congressional intent to read Section 1252 as making it more difficult for the States to challenge such executive action programmatically." Op. 9. But Plaintiffs offer no explanation for why transferring this case to D.C. would cause any such difficulty for the States, many of which are closer to the District of Columbia. Congress's decision in section 1252(e)(3) to channel claims related to section 1225(b)(1) to D.C. does not deny anyone review, and the legislative history indicates that consolidating and streamlining review of systemic challenges related to the expedited removal process in D.C. was *precisely* what Congress intended in IIRIRA. Mot. 8-9. In fact, early versions of the expedited removal legislation completely "denie[d] all courts jurisdiction to review the procedures established to implement" expedited removal, *see* Hearing on S. 667, at 50, 111 (May 28, 1993), further supporting the conclusion that the review authorized in section 1252(e)(3) was intended to be the exclusive mechanism for any challenge to any procedures related to section 1225(b).[6]

## CONCLUSION

For these reasons, the Court must either dismiss this case or transfer it to the District of Columbia, *see* 28 U.S.C. § 1631, and should stay this case pending resolution of this motion.

---

context quotations from these cases highlights the complete absence of support for their position, as does their failure to address the many cases in this circuit and beyond holding challenges to implementation of section 1225(b)(1), no matter how framed, *must* be raised only in D.C. *See* Mot. 8-15; *Brumme v. I.N.S.*, 275 F.3d 443, 447 (5th Cir. 2001).

[6] Should the Court nevertheless determine any of the claims are directed at something other than a "policy or procedure" implementing section 1225(b)(1), the Court must still dismiss or transfer any claims that do challenge such procedures. *M.M.M. v. Sessions*, 319 F. Supp. 3d 290, 293, 296 (D.D.C. 2018) (severing and transferring claims not directed at expedited removal, but retaining jurisdiction in D.C. over claims seeking "judicial review of defendants' expedited removal policy").

Dated: May 9, 2022                Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

/s/ *Brian C. Ward*
BRIAN C. WARD
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 616-9121
brian.c.ward@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on May 9, 2022, I electronically filed this reply with the Clerk of the Court for the United States District Court for the Western District of Louisiana by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

                                            /s/ *Brian C. Ward*
                                            BRIAN C. WARD
                                            U.S. Department of Justice