Exhibit F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

THE STATE OF LOUISIANA,
By and through its Attorney General, JEFF
LANDRY,

THE STATE OF MONTANA,
By and through its Attorney General, AUSTIN
KNUDSEN,

THE STATE OF ARIZONA,                    No. 6:22-CV-885
By and through its Attorney General, Mark
Brnovich, et al.,

                              PLAINTIFFS,

v.

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services; et al.,

                              DEFENDANTS.

### DECLARATION OF WILBUR "BILL" STILES

I, Wilbur Stiles, declare as follows:

1.        I am over 18 years of age and am competent to make this declaration. I submit this declaration in support of Plaintiffs' Motion for Preliminary Injunction. This declaration is based on my personal knowledge.

2.        I am Chief Deputy Attorney General in the Louisiana Department of Justice.

3.        Attached hereto as Exhibit A is a true and accurate copy of an Agreement between the Department of Homeland Security and the Louisiana Department of Justice.

4.        Further declarant sayeth naught.

1

I declare under penalty of perjury under the laws of the United States and the State of Louisiana that the foregoing is true and correct.

Executed April _11_, 2022, in Lafayette, Louisiana.

# Exhibit A

Stiles Declaration

## AGREEMENT BETWEEN THE DEPARTMENT OF HOMELAND SECURITY AND THE LOUISIANA DEPARTMENT OF JUSTICE

The parties to this Sanctuary for Americans First Enactment (SAFE) Agreement (Agreement) are on the one hand:

      (1)      The Department of Homeland Security,
      (2)      U.S. Customs and Border Protection (CBP),
      (3)      U.S. Immigration and Customs Enforcement (ICE), and
      (4)      U.S. Citizenship and Immigration Services (USCIS);[1]

   and on the other hand:

      (5)      Louisiana Department of Justice (Agency).

## I.      AUTHORITY

The authorities governing this Agreement include, but are not limited to:

      (1)      Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, as amended.
      (2)      Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, as amended.
      (3)      Privacy Act, 5 U.S.C. Section 552a, as amended.
      (4)      The Inter-Governmental Cooperation Act, 31 U.S.C. Section 6501, *et. seq.* as amended.
      (5)      Homeland Security Act of 2002, 116 Stat. 2135, 6 U.S.C. Section 101, *et seq.* as amended.
      (6)      Immigration and Nationality Act, 8 U.S.C. Section 1101, *et seq.* as amended.

## II.      PURPOSE AND COMMITMENT

DHS recognizes that Agency, like other States and municipalities, is directly and concretely affected by changes to DHS rules and policies that have the effect of easing, relaxing, or limiting immigration enforcement. Such changes can negatively impact Agency's law enforcement, housing, medical, education, employment, commerce, and healthcare needs and budgets, as well as its other important health, safety, and pecuniary interests. The harm to Agency is particularly acute where Agency's budget has been set months or years in advance and it has no time to adjust its budget to respond to DHS policy changes. Specifically, DHS recognizes that the following actions result in direct and concrete injuries to Agency, including increasing the rate of crime, consumption of public benefits and services, strain upon the healthcare system, and harm to the

---

[1] The Department of Homeland Security, CBP, ICE, and USCIS are collectively referred to in this Agreement as "DHS." The Department of Homeland Security, CBP, ICE, and USCIS enter into this Agreement individually and collectively, such that termination or removal of one or more of those parties (whether by law or contract) (including the Department of Homeland Security) does not terminate this Agreement as to any other parties.

environment, as well as increased economic competition with Agency's current residents for, among other things, employment, housing, goods and services:

(1)     a decrease of any immigration enforcement priorities;
(2)     a voluntary reduction in the number of DHS agents performing immigration enforcement functions;
(3)     a decrease or pause on returns or removals of removable or inadmissible aliens;
(4)     a decrease or pause on apprehensions or administrative arrests;
(5)     relaxation of the standards for granting relief from return or removal, such as asylum;
(6)     an increase in releases from detention;
(7)     a relaxation of the standards for granting release from detention;
(8)     changes to immigration benefits or eligibility, including work authorization, discretionary actions, or discretionary decisions; and
(9)     rules, policies, procedures, and decisions that could result in significant increases to the number of people residing in a community.

At the same time, Agency recognizes that DHS relies on cooperation with Agency and information shared by Agency to carry out DHS's immigration enforcement functions. Any decrease in a State's or municipality's cooperation or information sharing with DHS can result in a decrease in immigration enforcement.

To that end, this Agreement establishes a binding and enforceable commitment between DHS and Agency, in which Agency will provide information and assistance to help DHS perform its border security, legal immigration, immigration enforcement, and national security missions in exchange for DHS's commitment to consult Agency and consider its views before taking any action, adopting or modifying a policy or procedure, or making any decision that could:

(1)     reduce, redirect, reprioritize, relax, or in any way modify immigration enforcement;
(2)     decrease the number of ICE agents performing immigration enforcement duties;
(3)     pause or decrease the number of returns or removals of removable or inadmissible aliens from the country;
(4)     increase or decline to decrease the number of lawful, removable, or inadmissible aliens;
(5)     increase or decline to decrease the number of releases from detention;
(6)     relax the standards for granting relief from return or removal, such as asylum;
(7)     relax the standards for granting release from detention;
(8)     relax the standards for, or otherwise decrease the number of, apprehensions or administrative arrests;
(9)     increase, expand, extend, or in any other way change the quantity and quality of immigration benefits or eligibility for other discretionary actions for aliens; or
(10)    otherwise negatively impact Agency.

In case of doubt, DHS will err on the side of consulting with Agency.

### III.   RESPONSIBILITIES

**A.   DHS agrees to:**

(1)   Utilize its immigration authorities, to the maximum extent possible, to prioritize the protection of the United States and its existing communities. This includes:

    a.   enforcing the immigration laws of the United States to prohibit the entry into, and promote the return or removal from, the United States of inadmissible and removable aliens;

    b.   enforcing the immigration laws of the United States to prioritize detention over release of inadmissible and removable aliens;

    c.   enforcing the immigration laws of the United States to apprehend and administratively arrest inadmissible and removable aliens;

    d.   eliminating incentives and so-called "pull factors" for illegal immigration;

    e.   limiting eligibility for asylum and other relief from detention, return, or removal to the statutory criteria; and

    f.   refusing asylum and other relief from detention, return, or removal for those aliens who pose a danger to the United States, whether due to prior criminal history, the security of the United States, health, or some other bar.

(2)   Consult with Agency before taking any action or making any decision that could reduce immigration enforcement, increase the number of illegal aliens in the United States, or increase immigration benefits or eligibility for benefits for removable or inadmissible aliens. This includes policies, practices, or procedures which have as their purpose or effect:

    a.   reducing, redirecting, reprioritizing, relaxing, lessening, eliminating, or in any way modifying immigration enforcement;

    b.   decreasing the number of ICE agents within Agency's territorial jurisdiction performing immigration enforcement duties;

    c.   pausing or decreasing the number of returns or removals of removable or inadmissible aliens from the country;

    d.   decreasing the number of or criteria for detention of removable or inadmissible aliens from the country;

    e.   decreasing or pausing apprehensions or administrative arrests;

    f.   increasing or declining to decrease the number of lawful, removable, or inadmissible aliens residing in the United States;

    g.   increasing, expanding, extending, or in any way changing the quantity or quality of immigration benefits or eligibility for these benefits or other discretionary actions for aliens; or

    h.   otherwise negatively impacting Agency.

(3)     Provide Agency with 180 days' written notice (in the manner provided for in Sections IV of this Agreement) of the proposed action and an opportunity to consult and comment on the proposed action, before taking any such action listed above.

(4)     Consider Agency's input and provide a detailed written explanation of the reasoning behind any decision to reject Agency's input before taking any action listed in Section III.A.2.

(5)     Err on the side of consulting with Agency in case of doubt as to whether DHS's action is implicated by this provision.

**B.      Agency agrees to:**

(1)     Provide the support, cooperation, assistance, and information that is reasonably necessary for DHS to perform its missions.

(2)     Honor, to the extent consistent with law, (1) ICE or CBP "detainer requests" or "requests to hold" issued to Agency and (2) DHS requests for records or information from Agency's Department of Motor Vehicles.

## IV.   NOTICES

All notices required hereunder shall be given by certified United States mail, postage prepaid return receipt requested, and addressed to the respective parties at their addresses set forth below, or at such other address as any party shall hereafter inform the other party by written notice. All written notices so given shall be deemed effective upon receipt.

Department of Homeland Security
Secretary of Homeland Security
Washington, DC 20528

U.S. Customs and Border Protection
Office of the Commissioner
1300 Pennsylvania Ave. NW
Washington, D.C. 20229

U.S. Immigration and Customs Enforcement
Office of the Director
500 12th Street SW
Washington, D.C. 20536

U.S. Citizenship and Immigration Services
Office of the Director
5900 Capital Gateway Drive
Suitland, MD 20746

Louisiana Department of Justice
Deputy Director of the Louisiana Bureau of Investigation
1885 N. 3rd. Street
Baton Rouge, Louisiana 70802

## V.   PENALTIES

Agency acknowledges the information it receives from DHS is governed by the Privacy Act, 5 U.S.C. section 552a(i)(1), and that any person who obtains this information under false pretenses or uses it for any purpose other than as provided for in this Agreement may be subject to civil or criminal penalties.

## VI.   INJUNCTIVE RELIEF

It is hereby agreed and acknowledged that it will be impossible to measure in money the damage that would be suffered if the parties fail to comply with any of the obligations herein imposed on them and that in the event of any such failure, an aggrieved party will be irreparably damaged and will not have an adequate remedy at law. Any such party shall, therefore, be entitled to injunctive relief (in addition to any other remedy to which it may be entitled in law or in equity), including specific performance, to enforce such obligations. If any action should be brought in equity to enforce any of the provisions of this Agreement, none of the parties hereto shall raise the defense that there is an adequate remedy at law.

## VII.   THIRD PARTY LIABILITY

Each party to this Agreement shall be solely responsible for its own defense against any claim or action by third parties arising out of or related to the execution or performance of this Agreement, whether civil or criminal, and retains responsibility for the payment of any corresponding liability.

Nothing in this Agreement is intended, or should be construed, to create any right or benefit, substantive or procedural, enforceable at law by any non-party to this Agreement against any party, its agencies, officers, or employees.

## VIII.   DISPUTE RESOLUTION

DHS and Agency will endeavor to the best of their ability to resolve their disputes informally and through consultation and communication. Disagreements on the interpretation of the provisions of this Agreement that cannot be resolved between the parties should be provided in writing to the heads of all parties for resolution. If settlement cannot be reached at this level, the disagreement may be adjudicated by invoking the judicial or alternative dispute resolution process.

## IX.   CONFLICTS

This Agreement constitutes the full agreement on this subject between DHS and Agency. Any inconsistency or conflict between or among the provisions of this Agreement, will be resolved in the following order of precedence: (1) this Agreement and (2) other documents incorporated by reference in this Agreement.

## X.   SEVERABILITY

The Parties agree that if a binding determination is made that any term of this Agreement is unenforceable, such unenforceability shall not affect any other provision of this Agreement, and the remaining terms of this Agreement shall, unless prohibited by law, remain effective as if such unenforceable provision was never contained in this Agreement.

The parties additionally agree that if this Agreement is found to be unenforceable as to one or more of the parties comprising DHS, including the Department of Homeland Security, such unenforceability shall not affect the validity of this Agreement as to the remaining parties and this Agreement shall remain effective as if such party was never a party to this Agreement.

## XI.   ASSIGNMENT

Agency may not assign this Agreement, nor may it assign any of its rights or obligations under this Agreement. To the greatest extent possible, this Agreement shall inure to the benefit of, and be binding upon, any successors to DHS and Agency without restriction.

## XII.   WAIVER

No waiver by any party of any breach of any provision of this Agreement shall constitute a waiver of any other breach. Failure of any party to enforce at any time, or from time to time, any provision of this Agreement shall not be construed to be a waiver thereof.

## XIII.   EFFECTIVE DATE

This Agreement shall be effective immediately when both the DHS authorized officials and the Agency authorized official have signed this Agreement. This Agreement shall continue in effect unless modified or terminated in accordance with the provisions of this Agreement.

## XIV.   MODIFICATION

This Agreement is subject to periodic review by DHS, its authorized agents or designees, and, if necessary, periodic modification or renewal, consistent with this Agreement's terms, to assure compliance with current law, policy, and standard operating procedures. This Agreement constitutes the complete Agreement between the parties for its stated purpose, and no modification

or addition will be valid unless entered into by mutual consent of all parties evidenced in writing and signed by all parties.

Any party may accomplish a unilateral administrative modification to change POC information. A written bilateral modification (*i.e.*, agreed to and signed by authorized officials of all parties) is required to change any other term of this Agreement.

## XV. TERMINATION

Any party may terminate its involvement in this Agreement by submitting a request in writing to the other parties and providing 180 days' notice of intent to terminate its involvement in this Agreement. The termination will be effective 180 days after the written termination request was submitted or upon a date agreed upon by all parties, whichever is earlier. Termination by one party of its involvement in this Agreement shall not terminate the Agreement as to the remaining parties.

## XVI. STATUS

The foregoing constitutes the full agreement on this subject between DHS and Agency.

Nothing in this Agreement may be construed to (1) negate any right of action for a State, local government, other person, or other entity affected by this Agreement; or (2) alter the laws of the United States.

## XVII. KNOWING AND VOLUNTARY ACKNOWLEDGMENT

The parties enter into this Agreement voluntarily, without coercion or duress, and fully understand its terms. The parties acknowledge they had an opportunity to review and reflect on this Agreement and have discussed its provisions with their respective counsel, if any. The parties attest they understand the effect of each of the provisions in this Agreement and that it is binding on all parties.

## XVIII. COUNTERPARTS

This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one agreement.

## XIX. FORMALIZATION

The undersigned represent that they are authorized to execute this Agreement on behalf of CBP, ICE, USCIS, and Agency, respectively.

Furthermore, the undersigned execute this Agreement on behalf of CBP, ICE, USCIS, Agency, respectively.

[Signatures on the following pages]

**Signature for the Department of Homeland Security**

DEPARTMENT OF HOMELAND SECURITY

_____   1/8/2021
Kenneth T. Cuccinelli II                     Date
Senior Official Performing the Duties of the Deputy Secretary
Signed individually and collectively[2]

---

[2] "Signed individually and collectively" as used here indicates that the agency is entering into this Agreement both (1) for itself, independently, and (2) along with the other entities that comprise DHS, collectively. Should one agency, for whatever reason, cease to be a party to this Agreement, this Agreement shall still survive for all other parties and be read and interpreted as if the removed party had never been a party to this Agreement.

Page 8 of 9

**Signature for the Louisiana Department of Justice**

LOUISIANA DEPARTMENT OF JUSTICE

_____     12-15-20
Jeff Landry                                        Date
Attorney General