# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| STATE OF ARIZONA, *et al.*, <br><br> PLAINTIFFS, <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, <br><br> DEFENDANTS. | CIVIL ACTION NO. 6:22-cv-01130 |

# MEMORANDUM IN SUPPORT OF THE PLAINTIFF STATES' MOTION FOR LIMITED JURISDICTIONAL DISCOVERY

## INTRODUCTION

The Plaintiff States respectfully seek targeted, exceedingly modest jurisdictional discovery to address concerns raised by this Court regarding the States' standing. Specifically, the States seek an order requiring Defendants to produce high-level data from the Asylum Rule's actual implementation now that it has been in effect for more than four months (from May 31, 2022 to the present), including (1) grant/denial rates for asylum claims under the Asylum IFR, (2) comparative historical data on those rates, and (3) the States in which asylum grantees are settling, to the extent that Defendants possess such data.

Such data could readily resolve this Court's standing inquiry: if the grant rate has increased under the Asylum IFR and those additional migrants are settling in Plaintiff States, it follows that the Plaintiff States have Article III standing. As the Fifth Circuit has explained, "if the total number of in-State aliens increases, the States will spend more on healthcare." *Texas v. Biden ("Texas MPP")*, 20 F.4th 928, 969 (5th Cir. 2021) (emphasis omitted). Similarly, the Fifth Circuit has held that "at least some MPP-caused immigrants will certainly seek educational and healthcare services." *Texas v. Biden ("Texas MPP Stay")*, 10 F.4th 538, 548 (5th Cir. 2021).

There is no reason to believe that asylum recipients—including those who would have been denied asylum under the older, more-stringent system that actually comports with the underlying statutes—would not also "certainly seek educational and healthcare services," thereby increasing the States' costs and establishing Article III standing. *Id.* Finally, this Court has recently recognized that "an increase in border crossings … will increase the state's costs for healthcare reimbursements, the provision of educational services, and the administration of its driver's license program." *Louisiana v. CDC*, __ F.Supp.3d __, 2022 WL 1604901, at *7 (W.D. La. May 20, 2022)

The Fifth Circuit has also made plain that these sorts of challenges to broad national immigration policies are "precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures." *Texas MPP*, 20 F.4th at 971.

The upshot is that *if* the Asylum IFR is resulting in higher grant rates of asylum and those asylum recipients choose to reside in any of the 20 Plaintiff States, it essentially flows inexorably from controlling precedent that the Plaintiff States here will have Article III standing. Conversely, if grant rates are flat or declined, or asylum recipients are exclusively settling elsewhere, the Plaintiff States will have a much more difficult hill to climb (and, depending on the clarity of the data, would seriously consider voluntarily dismissing this suit). Indeed, this Court has at prior hearings recognized the importance of this data.

For these reasons, it makes eminent sense for Defendants to produce the actual implementation data, which will enormously streamline and simplify this Court's standing inquiry. Producing such data should impose only a *de minimis* burden on Defendants—they presumably already keep such data in the ordinary course of business, so the burden likely consists only of modest compilation of it and reducing it to useful form. Plaintiffs are certainly willing to be flexible as to format, so long as the relevant substantive data is produced.

The States requested that Defendants provide statistics about implementation of the Asylum IFR, but Defendants have refused. The States have therefore filed the instant motion.

## LEGAL STANDARD

"When 'there is a ... factual question regarding a district court's jurisdiction, the district court must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" *Box v. Dallas Mexican Consulate Gen.*, 487 F. App'x 880, 884 (5th Cir. 2012) (quoting *Hansen v. PT Bank Negara Indon. (Persero), TBK*, 601 F.3d 1059, 1063–64

(10th Cir.2010). For this reason, the Fifth Circuit requires that "[w]hen a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss." *McAllister v. F.D.I.C.*, 87 F.3d 762, 766 (5th Cir. 1996) (citing *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)); *see also, Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 475 (5th Cir. 1985) ("The district court correctly decided that the record does not permit it to decide whether it has jurisdiction ... and ordered further discovery to enable the essential facts to be determined.")

Other circuits have similarly held that jurisdictional discovery is appropriate in contexts such as this one. As the Ninth Circuit has explained, jurisdictional discovery should be granted where "discovery on th[e] issue *might well* demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (emphasis added). "Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (citation omitted). Indeed, such discovery is required even if it would be merely "useful" for purposes of establishing federal subject matter jurisdiction. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (denial of discovery not an abuse of discretion only when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction").

## ARGUMENT

The Asylum IFR went into effect on May 31, 2022. Asylum IFR, 87 Fed. Reg. 18,078, 18,078 (Mar. 29, 2022). Defendants have announced that they are implementing the IFR in phases

3

and contended that it would not change asylum grant rates. Asylum IFR, May 18, 2022 Hearing Transcript at 79:6-80:15; 87 Fed. Reg. at 18,186 ("[T]he Departments expect that USCIS's asylum grant rate will be approximately the same as EOIR's"); Asylum IFR, 87 Fed. Reg 18,078, 18,185 (discussing plans for phased implementation and explaining that "[t]he Departments ... anticipate limiting referrals under the initial implementation of this rule to noncitizens apprehended in certain Southwest border sectors or stations, as well as based on the noncitizen's final intended destination (e.g., if the noncitizen is within a predetermined distance from the potential interview location")). The States, on the other hand, have alleged, based on historical data, that USCIS's asylum grant rate will exceed EOIR's. Defendants now have four months of hard data that will provide powerful evidence of whose premise was correct. This data should be readily available to Defendants. For example, in *Florida. v. United States*, No. 21-CV-1066, ECF No. 78-3 at 148:11-14 (N.D. Fla. 2021), the federal government produced information about aliens released into the United States on parole who listed Florida addresses as their intended place of residence, including statistics about how many aliens had failed to check in with DHS for further processing. Defendants should have to produce in this case equivalent information about aliens granted asylum, and they should have to do now—*i.e.*, before the States have potentially further many more months of harm from the IFR if they are correct.

      The States reasonably expect that the higher rate of aliens granted asylum under the IFR is significant. Furthermore, under federal law, aliens who claim Asylum and are paroled into the United States become eligible for a variety of State benefits.[1] These State benefits, which impose

---

[1] *See* 8 U.S.C.A. § 1641(b)(4) (defining a "qualified alien" as "an alien who is paroled into the United States under [8 U.S.C. § 1182(d)(5)] for a period of at least 1 year"); 8 U.S.C. § 1612 (2)(L) (making eligible for food stamps aliens who have been "'qualified aliens' for a period of 5 years or more"); 8 U.S.C. § 1613(a) (making qualified aliens eligible for "any Federal means-tested public benefit ... 5 years" after "the date of the alien's entry into the United States").

significant costs on the States, include Medicaid[2]; SNAP (also known as "food stamps")[3]; and TANF (also known as welfare payments).[4]

An increased number of asylum-claiming aliens in the States will cause quantifiable financial harm to the States, and the exact magnitude of those harms will be made clearer if the federal government produces statistics about the number of aliens settling in each of the states.

To ensure that this case proceeds as efficiently and expeditiously as possible, the States accordingly move for the Court to issue an order requiring Defendants to produce the following statistics broken out week-by-week:

- The number of asylum grants and denials since May 31, 2022 made (1) under the new Asylum IFR in the areas where it has been implemented and (2) under the prior regime in the areas where it has not. Numbers should be broken out by the administrative and geographic divisions/sectors used by DOJ and DHS.

- Numbers for asylum grants and denials for the three years prior to May 31, 2022, broken out by the same administrative divisions used for the preceding inquiry.

---

[2] *E.g.* Arizona Health Care Cost Containment System ("AHCCCS"), Medical Assistance Eligibility Policy Manual §§ 524A and 524B (defining "qualified noncitizen" to include "[p]arolee[s] for at least one year" and making such parolees eligible for benefits after the alien "[h]as been a qualified noncitizen for at least five years") https://azahcccs.gov/Resources/guidesmanualspolicies/eligibilitypolicy/eligibilitypolicymanual/#t=Policy%2FChapter_500_Non-Financial_Conditions_of_Eligibility%2F524_NonCitizen_Status%2FA_Overview.htm and https://azahcccs.gov/Resources/guidesmanualspolicies/eligibilitypolicy/eligibilitypolicymanual/#t=Policy%2FChapter_500_Non-Financial_Conditions_of_Eligibility%2F524_NonCitizen_Status%2F524B.htm.

[3] *E.g.* Ariz. Dep't of Econ. Sec., Cash and Nutrition Assistance Policy Manual, § FAA3.D(04)(B), https://dbmefaapolicy.azdes.gov/#page/FAA3/Qualified_Noncitizens.html ("To be potentially eligible for [Nutrition Assistance]" aliens are required "to have been in parole status "for at least one year" and have been granted parole under 8 U.S.C. § 1182(d)5(A)).

[4] *E.g.* Ariz. Admin. Code § R6-12-305 (making eligible for Cash Assistance (TANF) "a noncitizen legal alien who satisfies the requirements of [8 U.S.C. § 1641]").

5

- The numbers of asylum recipients settling in each State, broken out by State, for the last three years.

This narrow scope of discovery will shed light on the States' injuries from the Asylum IFR without imposing a substantial burden on Defendants and ensure the States' Second Amended Complaint properly addresses standing.

This case presents the important question of whether Defendants' decision to implement an unlawful asylum system harms the States. Because Defendants have squarely placed Article III standing at issue, they should not be permitted to sit upon exceptionally relevant data that directly bears on the States' standing. This Court should instead require production of that data.[5]

## CONCLUSION

For the foregoing reasons, this Court should grant the States' request for targeted jurisdictional discovery.

---

[5] This Court is not limited to the administrative record (which has not been produced) in ascertaining the State's standing. *See*, *e.g.*, *Nw. Envir. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997). Indeed, courts routinely rely on extra-record evidence to support standing in APA cases. *See, e.g., Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–54 (2010) (relying on declarations to find that plaintiffs had Article III standing in an APA case); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 507 (D.C. Cir. 2010) (same).

| | |
|---|---|
| Dated:  October 14, 2022 | Respectfully submitted,<br><br>By: */s/ Elizabeth B. Murrill* |
| MARK BRNOVICH<br>    Attorney General<br>Brunn ("Beau") W. Roysden III **<br>    Solicitor General<br>Drew C. Ensign **<br>    Deputy Solicitor General<br>James K. Rogers **<br>    Senior Litigation Counsel<br>OFFICE OF THE ARIZONA ATTORNEY GENERAL<br>2005 North Central Avenue<br>Phoenix, AZ 85004<br>beau.roysden@azag.gov<br>drew.ensign@azag.gov<br>james.rogers@azag.gov<br><br>*Counsel for Plaintiff State of Arizona*<br><br>Steve Marshall<br>   Alabama Attorney General<br>Edmund G. LaCour Jr.**<br>    Solicitor General<br>Office of the Attorney General<br>State of Alabama<br>501 Washington Avenue<br>P.O. Box 300152<br>Montgomery, Alabama 36130-0152<br>Telephone: (334) 242-7300<br>Edmund.LaCour@AlabamaAG.gov<br><br>*Counsel for Plaintiff State of Alabama* | ELIZABETH B. MURRILL (La #20685)<br>    Solicitor General<br>J. SCOTT ST. JOHN (La #36682)<br>    Deputy Solicitor General<br>LOUISIANA DEPARTMENT OF JUSTICE<br>1885 N. Third Street<br>Baton Rouge, Louisiana 70804<br>Tel: (225) 326-6766<br>murrille@ag.louisiana.gov<br>stjohnj@ag.louisiana.gov<br><br>*Counsel for Plaintiff State of Louisiana*<br><br>ERIC S. SCHMITT<br>    Attorney General<br>D. JOHN SAUER *<br>    Solicitor General<br>OFFICE OF THE MISSOURI ATTORNEY GENERAL<br>Supreme Court Building<br>P.O. Box 899<br>Jefferson City, MO 65102<br>Phone: (573) 751-3321<br>John.Sauer@ago.mo.gov<br><br>*Counsel for Plaintiff State of Missouri*<br><br>Treg R. Taylor<br>    Attorney General of Alaska<br>CORI M. MILLS**<br>    Deputy Attorney General of Alaska<br>Christopher A. Robison**<br>    Assistant Attorney General<br>Alaska Department of Law<br>1031 West 4th Avenue, Suite 200<br>Anchorage, AK 99501-1994<br>chris.robison@alaska.gov<br><br>*Counsel for Plaintiff State of Alaska* |

LESLIE RUTLEDGE
  Arkansas Attorney General
NICHOLAS J. BRONNI*
  Solicitor General
DYLAN L. JACOBS*
  Deputy Solicitor General
OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
Nicholas.Bronni@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

CHRISTOPHER M. CARR
  Attorney General of Georgia
STEPHEN J. PETRANY**
  Solicitor General
OFFICE OF THE GEORGIA
ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

THEODORE E. ROKITA
  Indiana Attorney General
Betsy M. DeNardi**
  Director of Complex Litigation
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
Betsy.DeNardi@atg.in.gov

*Counsel for Plaintiff State of Indiana*

ASHLEY MOODY
  Attorney General
JAMES H. PERCIVAL**
  Deputy Attorney General of Legal Policy
OFFICE OF THE FLORIDA
ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Phone: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

Lawrence G. Wasden
  Attorney General
Brian Kane**
  Chief Deputy Attorney General
Office of the Idaho Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 334-2400
Email: Brian.Kane@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

Derek Schmidt
  Attorney General
Dwight R. Carswell**
  Deputy Solicitor General
Office of the Kansas Attorney General
120 SW 10th Ave., 3rd Floor
Topeka, KS 66612-1597
dwight.carswell@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

DANIEL CAMERON
   Attorney General of Kentucky
Marc Manley**
   Associate Attorney General
Kentucky Office of the
Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Counsel for Plaintiff Commonwealth of Kentucky*

LYNN FITCH
   Attorney General of Mississippi
JUSTIN L. MATHENY**
   Deputy Solicitor General
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

DOUGLAS J. PETERSON
   Attorney General
JAMES A. CAMPBELL**
   Solicitor General
OFFICE OF THE NEBRASKA ATTORNEY GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
jim.campbell@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

AUSTIN KNUDSEN
   Attorney General
DAVID M.S. DEWHIRST*
   Solicitor General
MONTANA DEPARTMENT OF JUSTICE
215 N Sanders St
Helena, MT 59601
P. (406) 444-2026
David.Dewhirst@mt.gov

*Counsel for Plaintiff State of Montana*

JOHN M. O'CONNOR
   Attorney General of Oklahoma
BRYAN CLEVELAND**
   Deputy Solicitor General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921

*Counsel for Plaintiff State of Oklahoma*

Sean D. Reyes
   *Utah Attorney General*
Melissa Holyoak**
   *Utah Solicitor General*
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

*Counsel for Plaintiff State of Utah*

Case 6:22-cv-01130-DCJ-CBW Document 82-1 Filed 10/14/22 Page 11 of 11 PageID #: 2200

ALAN WILSON
   South Carolina Attorney General
Thomas T. Hydrick**
   Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

BRIDGET HILL
   Attorney General of Wyoming
RYAN SCHELHAAS**
   Chief Deputy Attorney General
OFFICE OF THE WYOMING ATTORNEY GENERAL
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State of Wyoming*

Patrick Morrisey
   Attorney General
Lindsay See**
   Solicitor General
Office of the West Virginia Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov

*Counsel for Plaintiff State of West Virginia*

\* Pro hac vice application forthcoming
\*\* Pro hac vice application granted

10