## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

---------------------------------------------------------------- x

THE STATE OF ARIZONA, et al.,                      :

                 Plaintiffs,          :          Civil Action No.  6:22-cv-01130

    vs.                                            :

MERRICK GARLAND, in his official capacity          :
as Attorney General of the United States of
America, et al.,                                   :
                Defendants,          :

                                                                :

---------------------------------------------------------------- x

### DECLARATION OF WILLIAM P. QUIGLEY IN SUPPORT OF
### THE NONPROFIT ORGANIZATIONS' MOTION TO QUASH

I, William P. Quigley, under penalty of perjury, declare as follows:

1.      My name is William P. Quigley. I am over 18 years of age and have personal knowledge of the facts set forth in this Declaration.  I am Professor of Law Emeritus and Director of the Stuart H. Smith Law Clinic and Center for Social Justice and the Gillis Long Poverty Law Center at Loyola University New Orleans.  I am member in good standing of the Bar of this Court.  Along with the Center for Constitutional Rights and Patterson, Belknap, Webb, and Tyler LLP, I am counsel to Home is Here NOLA, Immigration Services and Legal Advocacy ("ISLA"), and Louisiana Advocates for Immigrants in Detention ("La. AID") (collectively, the "Nonprofit Organizations").  I make this Declaration in support of the Nonprofit Organizations' motion to quash subpoenas issued to them by the State of Louisiana (the "Subpoenas").

2.      Attached hereto as **Exhibit A** is a true and correct copy of the letter sent to Deputy Solicitor General Joseph Scott St. John, counsel of record for the State of Louisiana, on March 14, 2023 setting forth the Nonprofit Organizations' objections to the Subpoenas.

3.     Attached hereto as **Exhibit B** is a true and correct copy of a letter sent to the Nonprofit Organizations on March 14, 2023 by Deputy Solicitor General Joseph Scott St. John.

4.     Attached hereto as **Exhibit C** is a true and correct copy of the subpoena served on Home is Here NOLA.[1]

5.     Attached hereto as **Exhibit D** is a true and correct copy of the subpoena served on ISLA.

6.     Attached hereto as **Exhibit E** is a true and correct copy of the subpoena served on La. Aid.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed at <u>New Orleans, Louisiana</u> on March <u>20</u> , 2023.

*/s/ William P. Quigley*
_____
William P. Quigley

---

[1] Attached to the Subpoenas was a Rule 45 notice, apparently directed to the other parties in the litigation, captioned "Louisiana and Florida's Notice of Subpoena."  However, no subpoena issued by the State of Florida was served on the Nonprofit Organizations.

# Exhibit A



666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

March 14, 2023

Joseph Scott St. John
Deputy Solicitor General
Office of the Attorney General
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804

*Sent via email to:* stjohnj@ag.louisiana.gov

**Re:   Non-Party Subpoenas for Document Production in *Arizona v. Garland*, No. 6:22-cv-1130 (W.D. La.)**

Dear Mr. St. John,

My organization, along with co-counsel William P. Quigley[1] and Patterson Belknap Webb & Tyler LLP, represent three Louisiana-based nonprofit organizations—**Home is Here NOLA, Immigration Services and Legal Advocacy**, and **Louisiana Advocates for Immigrants in Detention** (collectively, the "Organizations")—with respect to non-party subpoenas duces tecum served on them by your office in connection with the Court's jurisdictional discovery order in *Arizona v. Garland*, No. 6:22-cv-1130 (W.D. La.).  As discussed in more detail below, because the subpoena requests are overbroad, duplicative, and otherwise unduly burdensome, and because they implicate privileged and confidential materials, the Organizations are not obligated to comply with them.  We look forward to discussing these objections with you during our upcoming meet-and-confer and hope you will be persuaded to withdraw these requests to avoid seeking the Court's intervention.

## I.   Request No. 1

Request No. 1 seeks "DOCUMENTS sufficient to IDENTIFY all ASYLUM APPLICANTS and 'asylum seekers' to whom YOU provided support."  The Organizations object to Request No. 1 as overly broad, unduly burdensome, and unreasonable in scope, and on the ground that it trenches upon the associational and religious freedoms guaranteed by the First Amendment.

The Fifth Circuit considers six factors in assessing whether a subpoena is unduly burdensome: "(1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022).  Where, as here, a subpoena seeks information and documents from a non-party, courts pay particular attention to the burdens imposed by compliance with the subpoena.  *See, e.g., Hume v. Consol. Grain & Barge, Inc.*, No. CV 15-935, 2016 WL 7385699, at *3 (E.D. La. Dec. 21, 2016) (noting that "non-parties have

---

[1] Mr. Quigley is licensed to practice law in the state of Louisiana.

greater protections from discovery" than parties (internal quotation marks omitted)).  Moreover, a court may quash a subpoena when that subpoena seeks confidential, proprietary, or otherwise sensitive information.  These principles provide several grounds to support the Organizations' objections to Request No. 1.

*First*, the information sought by Request No. 1, to the extent it exists, would be duplicative of information in the care, custody, or control of parties to the litigation.  As you are aware, the State's theory of standing is premised on the notion that, if immigration increases, the State will incur increased costs.  The information needed to prove up that theory—for example, the number of persons seeking various benefits from the State and the amount of benefits paid thereto—lies in the State's (or the United States Government's) custody, care, and control.  That is evidenced by the operative complaint in the *Arizona* action.  *See, e.g.*, *Arizona v. Garland*, No. 6:22-cv-1330, Dkt. No. 86 ¶ 70 (alleging information concerning the "extent of harm" to the States is "in the possession of Defendants"); ¶ 82 (alleging the number of persons unlawfully present in Louisiana and information concerning their insurance status, their incomes, and the amounts allegedly expended by Louisiana because of their presence); ¶ 129 (alleging "the exact magnitude of those harms will become clear in discovery, when the federal government produces statistics about changes in the asylum grant rate, processing times under the new procedures, and the number of aliens settling in each Plaintiff State")  As non-parties to the action, it is inappropriate to burden our clients—immigrant rights organizations who focus on services to detained and post-detention immigrants—with collecting, analyzing, and ultimately producing information that could be obtained from a party to the underlying action.  *See Wilemon Found., Inc. v. Wilemon*, No. 1:19-CV-136-GHD-DAS, 2021 WL 1649507, at *5 (N.D. Miss. Apr. 27, 2021) (concluding that, if documents are available from a party, "it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them" pursuant to Rule 45); *Warnock Eng'g, LLC v. Canton Mun. Utilities*, No. 3:17-CV-160-HSO-JCG, 2018 WL 11418435, at *2 (S.D. Miss. Apr. 20, 2018) ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]." (alterations in original)); *see also Suntrust Mortgage, Inc. v. Busby*, No. 2:09-cv-3, 2009 WL 5511215, at *2 (W.D.N.C. Dec 18, 2009) (holding that, "where the sought-after documents are within the possession, custody, or control of a party, it is not appropriate to employ Rule 45 to secure such documents from a non party . . . who may also be in possession of the documents or copies").

If the State's aim is to identify how many people made use of services it or the United States Government provided, it need not seek a list of people to whom the Organizations provided "support."  Rather, the State need only look to its own databases or those maintained by the Government.  Indeed, as Plaintiffs alleged in the operative complaint, "DHS keeps ***detailed statistics*** about grants of asylum, about the aliens it allows into the United States, about their intended destinations, about their residential addresses, and about their immigration status."  Dkt. No. 86 ¶ 143 (emphasis added).  When information is so readily obtainable from a party—including potentially the party issuing the subpoena—it is unnecessary to compel non-party nonprofits to bear the burdens of discovery.

*Second*, the Organizations object to Request No. 1 because the Request seeks sensitive, confidential information, the disclosure of which would inflict serious harm on the Organizations and the clients and communities they serve.  Not only is Request No. 1 wholly duplicative of

information already in the parties' control, *see supra*, but it seeks sensitive information wholly irrelevant to the State's theory of standing—the ***identities*** of the Organizations' clients, constituents, and other persons who have come into contact with the Organization.  It is unclear what role—if any—the names of asylum seekers could play in support the State's theory of standing.  Nor is there any possible relevance to identifying which of those asylum seekers have sought assistance from the Organizations.

Moreover, even if this information were somehow relevant, courts consistently find that inquiries concerning an individual's immigration status have a chilling effect.  *See, e.g.*, *Rojas v. China Max of Countryside Mall, Inc.*, No. 8:10-cv-2511-T-23AEP, 2010 WL 11629555, at *2 (M.D. Fla. Dec. 28, 2010).  That chilling effect is especially probable where, as here, the subpoena recipients' work depends on relationships of trust with immigrant communities.  Requiring the Organizations to produce information concerning each and every individual to whom they provided assistance—including identifying information—would undermine that trust, thereby frustrating the Organizations' ability to serve the immigrant community.  Faced with the prospect that their personal information and that of their family will be produced to the Government, few will be willing to associate with the Organizations.  That is an undue burden.  *See McGehee v. Texas Dep't of Crim. Just.*, No. MC H-18-1546, 2018 WL 3996956, at *9-10 (S.D. Tex. Aug. 21, 2018) (finding that the disclosure of the identity of providers of lethal injection pharmaceuticals imposed an undue burden on several States because the providers would, if identified, cease conducting business with the States).

*Third*, the Organizations further object to Request No. 1 because compliance with the Request would be unduly burdensome.  As you know, the Organizations—like many nonprofit and community groups—lack the resources enjoyed by the State and other large, well-funded parties.  They depend substantially on the efforts of volunteers committed to their respective missions.  Despite the State's knowledge of these limitations, Request No. 1 nevertheless seeks half a decade of documents, including documents concerning each and every person to whom the Organizations provided "support," a term nowhere defined in the subpoenas.  The Organizations lack the personnel and resources necessary to conduct such a far-ranging search.  Put concretely, compliance with the subpoenas would bring the Organizations' mission and critical work to a grinding halt.  That too is an undue burden.

*Fourth*, the Organizations further object to the extent Request No. 1 seeks documents that are protected from disclosure pursuant to the attorney-client privilege, the work product doctrine, the common-interest doctrine, and/or the duty of confidentiality.  *See Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law" [and] "protects both the giving of professional advice to those who can act on it and the giving of information to the lawyer to enable him to give sound and informed advice." (internal quotation marks omitted); La. Rules of Prof'l Conduct R. 1.6 (enumerating narrow circumstances in which a lawyer may "reveal information relating to the representation of a client").  Specifically, as a legal services organization led and staffed by lawyers, Immigration Services and Legal Advocacy objects to Request No. 1 to the extent that disclosure of the requested client files would reveal clients' "motive[s] for retaining an attorney" or the timing, manner, and content of communications between client and counsel about the scope of legal representation.  *See Lott v. AXA Equitable Life Ins. Co.*, No. 1:18CV63-GHD-DAS, 2019 WL 2550324, at *2 (N.D. Miss. June 20, 2019),

3

*objections overruled*, 2019 WL 5190882 (N.D. Miss. Oct. 15, 2019); *Nationwide Mut. Ins. Co. v. Gum Tree Prop. Mgmt., LLC*, No. 1:12CV181-SA-DAS, 2013 WL 12178125, at *4 (N.D. Miss. Nov. 27, 2013).

*Fifth*, the Organizations further object to Request No. 1 because the Request is not reasonably calculated to lead to the discovery of admissible evidence. *See Leonard*, 38 F.4th at 489-90. The Request is vague and ambiguous and not reasonably particularized, and its broad scope makes it impossible to determine which documents are included in the Request and which are not. For example, as discussed *supra*, nowhere in the subpoena is the term "support" defined. The Organizations further object to Request No. 1 because the burden and expense of producing the requested documents by a non-party outweigh the likely benefit, taking into account the amount in controversy, the importance of the issues in the litigation, and the importance of the requested discovery in resolving those issues, particularly as Request No. 1 seeks half a decade of documents.

*Sixth*, the Organizations further object to Request No. 1 to the extent the Request seeks documents protected by the First Amendment's right to free association. It is well established that the First Amendment's associational rights grant a qualified privilege from disclosure of certain information in discovery. *See NAACP v. Alabama*, 357 U.S. 449, 462, 466 (1958) ("Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs."); *In re Primus*, 436 U.S. 412, 427 (1978) (finding associational claim where "ACLU and its local chapters, much like the NAACP and its local affiliates in *Button*, '[engage] in extensive educational and lobbying activities' and 'also [devote] much of [their] funds and energies to an extensive program of assisting certain kinds of litigation on behalf of [their] declared purposes'"). Here, the Organizations advocate for fairer and more just immigration policies, engage in political education, and take part in social activism and organizing, giving rise to First Amendment associational rights. These activities lie at the core of the First Amendment's protections. Disclosing the Organizations' client lists—as requested under Request No. 1— would chill these efforts. Accordingly, the subpoenas are constitutionally deficient unless they further a compelling state interest. *See United States v. Garde*, 673 F. Supp. 604, 606 (D.D.C. 1987) (concluding associational defense applied to subpoena where nonprofit advocacy organization alleged client list would chill First Amendment rights); *In re Primus*, 436 U.S. at 427-28 (stating that "the defense of unpopular causes and unpopular [persons]. . . is a form of political expression [and] political association" entitled to First Amendment protection). Acquiring duplicative, irrelevant information is hardly a compelling interest justifying intrusion on core constitutional protections. Accordingly, the Organizations object to Request No. 1 on First Amendment free association grounds.

*Seventh*, other First Amendment interests are also implicated by the subpoenas. The Free Exercise Clause protects the communications of Louisiana Advocates for Immigrants in Detention because the organization depends on a volunteer network of churches and other religious organizations and operates a shelter that is part of a church ministry whose religious principles compel advocacy for immigrant communities. The Fifth Circuit recently recognized in *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), *as revised* (July 17, 2018), that third-party subpoenas that seek to reveal religious groups' internal communications "interfere[] with [religious groups'] decision-making processes on a matter of intense doctrinal concern but

also exposes those processes to an opponent and will induce similar ongoing intrusions against religious bodies' self-government." *Id.* at 373.

Accordingly, in addition to the associational principles applicable to each of the Organizations, Louisiana Advocates for Immigrants in Detention objects to Request No. 1 on Free Exercise grounds and religious liberty protected by the Religious Freedom Restoration Act ("RFRA"). *See id.* at 371 (stating that RFRA, which requires the application of strict scrutiny whenever government action substantially burdens religious belief, applies to subpoenas); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022) ("[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." (internal quotation marks omitted)).

## II.    Request No. 2

Request No. 2, which seeks "ALL DOCUMENTS YOU provide(d) to aliens, including ASYLUM APPLICANTS or asylum seekers, regarding public education Temporary Assistance for Needy Families ('TANF'), Supplemental Nutrition Assistance Program ('SNAP'), Medicaid, or other public benefits," is improper.  The Organizations object to this request as overly broad, unduly burdensome, and unreasonable in scope.

As explained *supra*, the information sought by Request No. 2, to the extent it exists, would be duplicative of information in the care, custody, or control of parties to the litigation.  To the extent that the State's theory of standing is premised on the notion that, if immigration increases, the State will incur increased costs, the number of persons seeking various benefits from the State and the amount of benefits paid thereto—lies in the State's (or the United States Government's) custody, care, and control.  As non-parties to the action, it is inappropriate to burden our clients with providing information that may also be obtained from a party.  *See Warnock Eng'g, LLC*, 2018 WL 11418435, at *2.

The Organizations further object to Request No. 2 because the Request is not reasonably calculated to lead to the discovery of admissible evidence.  *See Leonard*, 38 F.4th at 489-90. The Request is vague and ambiguous, not reasonably particularized, and its broad scope makes it impossible to determine which documents are included in the Request and which are not.  For example, nowhere does the subpoena define the terms "public benefits," creating ambiguity as to the what may fall within Request No. 2.  The Organizations further object to Request No. 2 because the burden and expense of producing the requested documents by a non-party outweigh the likely benefit, taking into account the amount in controversy, the importance of the issues in the litigation, and the importance of the requested discovery in resolving those issues, particularly as Request No. 2 seeks half a decade of documents.

The Organizations further object to Request No. 2 to the extent the Request seeks documents that are protected from disclosure pursuant to the attorney-client privilege, the work product doctrine, the common-interest doctrine, and/or the duty of confidentiality.  Specifically, Immigration Services and Legal Advocacy objects to Request No. 2 to the extent that the Request calls for disclosure of information given to clients regarding ongoing representation—i.e., precisely the type of legal advice protected by the attorney-client privilege.  *See Adams*, 973 F.3d at 349.

Subject to and without waiving any objections, the Organizations state that they do not have documents responsive to Request No. 2.

## III.   Request No. 3

Request No. 3 seeks "ALL DOCUMENTS regarding the ASYLUM NPRM ["notice of proposed rulemaking"] or FINAL RULE." The Organizations object to this request as overly broad, unduly burdensome, and unreasonably disproportionate in scope.

The Organizations further object to Request No. 3 because the Request is not reasonably calculated to lead to the discovery of admissible evidence. *See Leonard*, 38 F.4th at 489-90. It is unclear how any documents responsive to this request could be probative of the questions at issue in the *Arizona* action.

The Organizations further object to Request No. 3 because the Request is vague and ambiguous, not reasonably particularized, and its broad scope makes it impossible to determine which documents are included in the Request and which are not. For example, a reasonable interpretation of Request No. 3 would suggest that, even if the Organizations merely had a copy of the NPRM or comments publicly submitted by other groups concerning the NPRM, those documents would fall within the Request. That the production of such documents would provide no new information is evidence of the Request's overbreadth.

The Organizations further object to Request No. 3 because the burden and expense of producing the requested documents by a non-party outweigh the likely benefit, taking into account the amount in controversy, the importance of the issues in the litigation, and the importance of the requested discovery in resolving those issues, particularly as Request No. 3 seeks half a decade of documents.

The Organizations further object to Request No. 3 to the extent the Request seeks documents that are protected from disclosure pursuant to the attorney-client privilege, the work product doctrine, and/or the common-interest doctrine. Specifically, Immigration Services and Legal Advocacy objects to Request No. 3 to the extent that the Request seeks research prepared for clients concerning how the NPRM or Final Rule may impact their immigration claim(s).

Subject to and without waiving any defenses, Home is Here NOLA and Louisiana Advocates for Immigrants in Detention state that, outside of publicly available documents, they do not have documents responsive to Request No. 3.

## IV.   Request No. 4

Request No. 4 is overbroad and seeks irrelevant information. Request No. 4 seeks "ALL DOCUMENTS used or presented by YOU in any workshop or presentation regarding asylum from August 20, 2021 through the present." The Organizations object to this request as overly broad, unduly burdensome, and unreasonable in scope. *See Leonard*, 38 F.4th at 489-90.

The Organizations further object to Request No. 4 because the Request is not reasonably calculated to lead to the discovery of admissible evidence. *Id.* As explained *supra*, to the extent that the State's theory of standing is premised on the notion that, if immigration increases, the

State will incur increased costs, Request No. 4 seeks information that is, at best, "tenuously relevant" to this theory. *Id.*; *see also* Fed. R. Civ. P. 26(b)(1).  Of all the evidence that might exist concerning the State's claims, the workshop and presentation materials of three small nonprofits are among the least relevant.

The Organizations further object to Request No. 4 because the Request is vague and ambiguous, not reasonably particularized, and its broad scope makes it impossible to determine which documents are included in the Request and which are not.  The Organizations further object to Request No. 4 because the burden and expense of producing the requested documents by a non-party outweigh the likely benefit, taking into account the amount in controversy, the importance of the issues in the litigation, and the importance of the requested discovery in resolving those issues.

The Organizations further object to Request No. 4 to the extent the Request seeks documents that are protected from disclosure pursuant to the attorney-client privilege, the work product doctrine, the common-interest doctrine, and/or the duty of confidentiality.  Specifically, Immigration Services and Legal Advocacy objects to Request No. 4 to the extent that the Request seeks information provided during the course of any direct representation.

Subject to and without waiving any defenses, Louisiana Advocates for Immigrants in Detention states that it does not have documents responsive to Request No. 4.

## V.   Request No. 5

Request No. 5 poses an undue burden, seeking "Any contract between YOU and any agency of the United States government.  For the avoidance of doubt, this request includes subcontracts for which any agency of the United States government is the ultimate contracting party."  The Organizations object to this request as overly broad, unduly burdensome, and unreasonable in scope.

As explained *supra*, the information sought by Request No. 5, to the extent it exists, would be duplicative of information in the care, custody, or control of parties to the litigation.  To the extent that the Organizations contract or subcontract with the Government, those contracts are in the custody, care, and control of the Government—which is already a party to the lawsuit.  As non-parties to the action, it is inappropriate to burden our clients with providing information that may also be obtained from a party.  *See Warnock Eng'g, LLC*, 2018 WL 11418435, at *2.

The Organizations further object to Request No. 5 because the Request is not reasonably calculated to lead to the discovery of admissible evidence.  *See Leonard*, 38 F.4th at 489-90.  Again, to the extent that the State's theory of standing is premised on the notion that, if immigration increases, the State will incur increased costs, Request No. 5 seeks information at best "tenuously relevant" to this theory.  *Id.* at 490; *see also* Fed. R. Civ. P. 26(b)(1).

The Organizations further object to Request No. 5 because the Request is vague and ambiguous, not reasonably particularized, and the broad scope makes it impossible to determine which documents are included in the Request and which are not.  The burden and expense of producing the requested documents by a non-party outweigh the likely benefit, taking into account the amount in controversy, the importance of the issues in the litigation, and the importance of the

requested discovery in resolving those issues, particularly as Request No. 5 seeks half a decade of documents.

Subject to and without waiving any objections, Home is Here NOLA states that it does not have documents responsive to Request No. 5.

*       *       *

Our description of these grounds is subject to and without waiving any objections, and our clients reserve the right to assert such additional objections. We hope, however, that further litigation will be unnecessary. While the Organizations appreciate that the State and its co-Plaintiffs may disagree with the Organizations' missions, the principles upon which their objections rest are applicable to all similarly situated entities including churches, political advocacy groups, and civic organizations. They too should be free to pursue their missions without fear of the burdens imposed by litigation to which they are not parties.

The Organizations respectfully request that the State withdraw its subpoenas. If State fails to do so, the Organizations intend to file a motion to quash for the above-stated reasons and on such additional grounds as the Organizations see fit.


Sincerely,


Jessica Myers Vosburgh*
Staff Attorney
CENTER FOR CONSTITUTIONAL RIGHTS
jvosburgh@ccrjustice.org
203.415.8368 (cell)

*Licensed to practice law in Alabama and California*

cc:     Baher Azmy, Center for Constitutional Rights
        Emily Early, Center for Constitutional Rights
        Angelo Guisado, Center for Constitutional Rights
        Bill Quigley, Loyola University School of Law
        Muhammad Faridi, Patterson Belknap Webb & Tyler LLP
        Stephanie Teplin, Patterson Belknap Webb & Tyler LLP
        Julia Haigney Long, Patterson Belknap Webb & Tyler LLP
        David Moosmann, Patterson Belknap Webb & Tyler LLP

        *Counsel for Home is Here NOLA, Immigration Services and Legal Advocacy, and Louisiana Advocates for Immigrants in Detention*

# Exhibit B



**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE
70804-9005

Jeff Landry
Attorney General

March 14, 2023

**_Via Electronic Mail_**

Jessica Vosburgh
jvosburgh@ccrjustice.org

Re:     *Arizona v. Garland*, No. 6:22-cv-1130 (W.D. La.)

Ms. Vosburgh:

I write to memorialize our March 14, 2023, telephonic meet-and-confer regarding Louisiana's subpoenas to Home Is Here NOLA, Immigration Services and Legal Advocacy ("ISLA"), and Louisiana Advocates for Immigrants in Detention ("LA-AID"). I spoke on behalf of Louisiana; I was joined by my colleague Jordan Redmon. You spoke on behalf of the subpoena recipients; you were joined by Bill Quigley, Julia Long, and David Moosmann.

As detailed below, we spoke regarding certain objections raised in the letter you sent a few hours before our 4 p.m. call, as well as potentially narrowing Louisiana's subpoena requests. Consistent with the structure of our call, I treat each subpoena request in turn.

**REQUEST NO. 1:**

DOCUMENTS sufficient to IDENTIFY all ASYLUM APPLICANTS and "asylum seekers" to whom YOU provided support. For the avoidance of doubt, this request asks YOU to IDENTIFY anyone who is an ASYLUM APPLICANT or asylum seeker to whom YOU provided legal representation.

**DISCUSSION OF REQUEST NO. 1:**

With respect to relevance, we discussed Louisiana's effort to prove standing at both the large-scale statistical level and the granular level via specific examples. You first indicated that the parties already possess this information; I responded that LADOJ did not. You then noted that the federal defendants should have information responsive to Request No. 1. I explained the federal defendants have informally stated they will not produce that information based on yet-to-be-identified regulatory restrictions. On that point, I directed you to *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540 (5th Cir. 2016), which held that one such statutory restriction and an implementing regulation preclude discovery of certain immigration-related information from a government agency, but "clearly do not preclude discovery" from private parties.

You then expressed concern with revealing client documents, particularly by a legal services organization, *i.e.*, ISLA. I explained that legal organizations generally keep a client list for conflict purposes that would not reveal privileged communications. On that point, I explained that the existence of an attorney-client relationship and the identity of a client are *per se* not privileged.[1] Indeed, the existence of an attorney-client relationship must be proven in order to assert the attorney-client privilege vis-a-vis protected communications.

We disputed the purported associational burden you raised in your letter, as well as the idea that aliens seeking a discretionary benefit from the United States have any confidentiality interest whatsoever. I further noted that *In re Primus*, 436 U.S. 412 (1978), focused on organizations with "lobbying" and "political" activities, and such a claim of confidential association for political advocacy would be in significant tension with your clients' claims to be 501(c)(3) tax-exempt organizations.

We then discussed the possibility of narrowing Request No. 1 so as to minimize any burden on your clients. I renewed the offer I made to Mr. Lopez of ISLA, in an email of February 28:

(a) We are willing to narrow the scope of Request No. 1 to cover only ASYLUM APPLICANTS or asylum seekers (a) not detained but located in Florida or Louisiana, (b) who provided a residence address in in Florida or Louisiana, or (c) who provided a mailing address in Florida or Louisiana.

(b) Alternatively, we would consider your identifying 5-10 pending asylum applicants/seekers and 5-10 asylum grantees who have non-citizen children enrolled in public school, who are on SNAP or TANF, or who are on Medicaid as fully satisfying Request No. 1. The identified individuals must be located in Louisiana or Florida, and they cannot be all Cuban or Haitian.

## REQUEST NO. 2:

ALL DOCUMENTS YOU provide(d) to aliens, including ASYLUM APPLICANTS or asylum seekers, regarding public education, Temporary Assistance for Needy Families ("TANF"), Supplemental Nutrition Assistance Program ("SNAP"), Medicaid, or other public benefits.

## DISCUSSION OF REQUEST NO. 2:

You stated that your clients have no documents responsive to Request No. 2.

---

[1] The attorney-client privilege "does not embrace everything that arises out of the existence of an attorney-client relationship." *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976). The privilege does not apply, for example, to "the fact that such [an attorney-client] relationship existed," *Goddard v. United States*, 131 F.2d 220 (5th Cir. 1942), or "to information that the client intends his attorney to impart to others," *Pipkins*, 528 F.2d at 563; *see also, e.g.*, *United States v. Leventhal*, 961 F.2d 936, 941 (11th Cir. 1992) (remanding for enforcement of IRS summons: "disclosure of the clients' identities … would not have revealed any privileged information"). On the facts here, the work product doctrine is even more inapplicable.

**REQUEST NO. 3:**

ALL DOCUMENTS regarding the ASYLUM NPRM or FINAL RULE.

**DISCUSSION OF REQUEST NO. 3:**

You acknowledged your clients may have mass communications from the federal government or other advocacy organizations responsive to this request. Indeed, I noted that the rule at issue appears to be prominent in the asylum community, such that it would be difficult to believe your clients had not had any discussion of it or received any communications regarding it from the federal government or national legal organizations. I suggested that an email search for such communications should not be particularly burdensome.

With respect to relevance, I explained that any discussion of the asylum rule is likely to include discussion of its impact. By way of example, I explained that I do not receive emails informing me that Congress passed a random statute. Rather, I receive emails informing me of issues that affect me or the State of Louisiana. There is no reason to expect otherwise vis-à-vis your clients and the documents sought by Request No. 3.

**REQUEST NO. 4:**

ALL DOCUMENTS used or presented by YOU in any workshop or presentation regarding asylum from August 20, 2021 through the present.

**DISCUSSION OF REQUEST NO. 4:**

You confirmed that your clients make presentations responsive to Request No. 4, but you expressed concern with the breadth of the request. Indeed, I noted that I recalled seeing a video of a presentation by one of your clients. I offered to narrow Request No. 4.[2]

---

[2] Louisiana proposes narrowing Request No. 4 to:

ALL DOCUMENTS used or presented by YOU in any workshop or presentation regarding
a.  the ASYLUM NPRM or FINAL RULE, including impacts therefrom;
b.  public benefits for asylees seekers, ASYLUM APPLICANTS, or asylees, including without limitation public education, TANF, SNAP, and Medicaid; OR
c.  information regarding asylum, asylum seekers, ASYLUM APPLICANTS , or asylum grantees in Louisiana or Florida;

from August 20, 2021 through the present.

3

**REQUEST NO. 5:**

Any contract between YOU and any agency of the United States government. For the avoidance of doubt, this request includes subcontracts for which any agency of the United States government is the ultimate contracting party.

**DISCUSSION OF REQUEST NO. 5:**

At the outset, I noted that contracts with the federal government are *per se* not privileged or confidential. I explained that such contracts evidence the presence of asylum applicants or asylees, as well as financial impact from their presence in Louisiana.

You suggested that Louisiana look to the federal defendants for such contracts. I explained that possession is generally analyzed on an agency-by-agency basis, and contracts responsive to Request No. 5 likely include agencies other than the federal defendants. You acknowledged that point. I also noted that the federal defendants may not have visibility into subcontracts responsive to Request No. 5.

You stated that Home Is Here has no grants or contracts. You stated that one of your clients does receive funds from USDOJ in connection with immigration.

With respect to burden, I suggested that providing copies of what are presumably a handful of contracts with federal agencies imposes only minimal burden. You agreed to discuss this point with your clients.

\* \* \* \* \*

At the close of our call, you indicated that you could consult with your clients and respond within a day or so of receiving this confirmatory letter. I look forward to your response.

Please promptly let me know if I inadvertently omitted anything, or if this letter does not accurately memorialize our conversation.

Best regards,

Joseph Scott St. John
Deputy Solicitor General

4

# Exhibit C

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF ARIZONA,<br>By and through its Attorney General, Mark<br>Brnovich, et al.,<br><br>                PLAINTIFFS,<br><br>v.<br><br>MERRICK GARLAND, in his official<br>capacity as Attorney General of the United<br>States, *et al.*,<br><br>                DEFENDANTS. | No. 6:22-cv-1130 |

## LOUISIANA AND FLORIDA'S NOTICE OF SUBPOENA TO HOME IS HERE NOLA

TO:    Defendants Merrick Garland *et al*, by and through their attorney of record, Brian Ward, U.S. Department of Justice (868), P.O. Box 868 Ben Franklin Station, Washington, DC, 20044-0868, tel. 202-616-9121, email brian.c.ward@usdoj.gov.

       Pursuant to Federal Rule of Civil Procedure 45(a)(4), Plaintiffs hereby provide notice that they will serve a subpoena to produce documents on to produce for inspection and copying all documents referred to in Attachment A of the subpoena. The requested documents may be used as evidence in this case. A copy of the subpoena is attached hereto.

Respectfully submitted,

JEFF LANDRY
  LOUISIANA ATTORNEY GENERAL

  /s/ *Joseph S. St. John*
Joseph S. St. John
  Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70802
(225) 485-2458
stjohnj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I served the foregoing document via email upon counsel for Defendants.

This the 28th day of February 2023.

 /s/  *Joseph S. St. John*

Joseph S. St. John
 Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70802
(225) 225-485-2458
stjohnj@ag.louisiana.gov

*Counsel for Louisiana*

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

Western District of Louisiana ▼

| | |
|---|---|
| The State of Arizona, et al | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.  6:22-cv-1130 |
| Merrick Garland, et al | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   HOME IS HERE NOLA, through its registered agents ROCIO AGUILAR or JULIE WARD, 1610 Oretha Castle Haley Blvd., New Orleans, LA 70113

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place:<br>Bourgeois Law Firm, LLC, Attn: William Bourgeois<br>704 Front Street, Morgan City, LA 70380 | Date and Time:<br><br>03/17/2023 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   02/28/2023

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
the State of Louisiana _____ , who issues or requests this subpoena, are:

Joseph Scott St. John, 909 Poydras St., Ste. 1850, New Orleans, LA 70112; stjohnj@ag.louisiana.gov; 225-485-2458

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev   12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 6:22-cv-1130

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF ARIZONA, By and through its Attorney General, Mark Brnovich, et al., <br><br> PLAINTIFFS, <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, <br><br> DEFENDANTS. | No. 6:22-cv-1130 |

## ATTACHMENT A

Pursuant to the attached Subpoena and in accordance with the following Definitions and Instructions, you are required to produce the documents described below.

1

## **DEFINITIONS**

1.      **ALL," "ANY," "EACH,"** and **"EVERY"** shall be construed inclusively to
include the collective as well as the singular meaning so as to include the broadest possible amount
of information.

2.      **"ASYLUM APPLICANT"** means any person who has indicated either an
intention to apply for asylum under 8 U.S.C. 1158 or a fear of persecution, including, without
limitation, any person who has submitted (or on whose behalf was submitted) an Form I-589 or
has received written record of the credible fear determination. ASYLUM APPLICANT includes
without limitation any person who has submitted (or on whose behalf was submitted) or a
refugee/asylee relative petition (Form I-730).

3.      **"ASYLUM CLAIM" or "ASYLUM APPLICATION"** means any asylum
application made by an alien pursuant to 8 U.S.C. § 1158 or through the procedures described in
8 U.S.C. § 1225(b), and includes an application for withholding of removal pursuant to 8 U.S.C.
§ 1231(b)(3), or relief under the Convention Against Torture pursuant to 8 C.F.R. §§ 1208.17 and
1208.18.

4.      **"ASYLUM NPRM"** refers to the August 20, 2021, Notice of Proposed
Rulemaking, Procedures for Credible Fear Screening and Consideration of Asylum, Withholding
of Removal, and CAT Protection Claims by Asylum Officers, 86 Fed. Reg. 46,906 (Aug. 20,
2021), including its precursors, drafts, or pre-publication versions.

5.      **"ASYLUM IFR" or "FINAL RULE"** refers to the March 29, 2022 Interim Final
Rule, Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of
Removal, and CAT Protection Claims by Asylum Officers, 87 Fed. Reg. 18078-01 (Mar. 29,
2022), including its precursors, drafts, or pre-publication versions.

2

6.      **"COMMUNICATION"** means any message, document, email, fax, letter, voicemail, or other expressed idea (collectively "message") that has been recorded in writing, electronically, or by audio or video means and transmitted to one or more individuals, including the creator of the message, either simultaneously with the creation of the message or after its creation.

7.      **"DOCUMENT"** is consistent with the full scope of Federal Rule of Civil Procedure 34, and includes any document or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. "Document" includes communications, as defined above, and all drafts and copies of a document or electronically stored information.

8.      **"IDENTIFY,"** with respect to a person, means the person's full name, alien registration number (A-number), country of citizenship or nationality, residence in the United States, mailing address in the United States, telephone number, and date of birth.

9.      **"USCIS"** means Defendant U.S. Citizenship & Immigration Services.

10.     **"CBP"** means Defendant U.S. Customs & Border Protection.

11.     **"DHS"** means Defendant U.S. Department of Homeland Security.

12.     **"DOJ"** means Defendant U.S. Department of Justice.

13.     **"EOIR"** means Defendant Executive Office for Immigration Review.

14.     **"ICE"** means Defendant U.S. Immigrations & Customs Enforcement.

15.     **"YOU"** and **"YOUR"** refers to Home is Here NOLA, and any persons or agencies acting on your behalf.

3

16.     The singular shall be construed to include the plural, and the plural shall be construed to include the singular, as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request.

17.     The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request.

## **INSTRUCTIONS**

1.     In responding to these requests, you are required to furnish all responsive documents in your possession, custody, or control, or in the possession, custody, or control of your attorneys, agents, employees, independent contractors, and all other persons acting on your behalf.

2.     Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, you shall state the objection to that portion only and respond to the remainder of the request.

3.     If, in responding to these document requests, you claim any ambiguity in a document request, or in a definition or instruction applicable thereto, you shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the document request.

4.     An original or one copy of each responsive document shall be produced.  Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within your possession, custody, or control.  If the same document exists in both electronic and non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5

5.      Documents shall be produced as they are kept in the ordinary course of business. Each document requested is to be produced in its original file folder, file jacket, or cover (or you may, in the alternative, designate in writing the titles of such folder, jacket, or cover with respect to each document).  The individual or department from whose files the document is being produced is to be indicated.

6.      If there are no documents responsive to any particular request, you shall so state in writing.

7.      A request for documents shall be deemed to include a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself, without abbreviation or expurgations.  Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ or vary from one office, division, or location to another, the Requests require production of documents for each office, division, or location.

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these Requests.

10.      If you refuse to produce any requested document, or part of any requested document, under a claim of attorney-client privilege, work product, or any other privilege, you shall submit, for each document or part of a document withheld, a written statement that:

a)  specifies the privilege or other asserted basis for withholding the document;

b)  describes the nature and general topic of the document;

c)  identifies the persons who prepared the document and any persons to whom the document was sent or disclosed;

6

    d)  identifies any persons who have seen or had possession of the document; and

    e)  specifies the dates on which the document was prepared, transmitted, and received.

11.    These document requests are continuing in nature.  Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.    If any document which you would have produced in response to any request was, but is no longer, in your present possession or subject to your control or is no longer in existence, please identify with respect to each document:

    a)  the date of the document;

    b)  the title of the document;

    c)  the type of document;

    d)  description of the subject matter of the document;

    e)  the name of each person who prepared, received, viewed, or had possession, custody, or control of the document;

    f)  the date on which the document was destroyed, discarded, or lost;

    g)  the name of each person who directed that the document be destroyed, who directed that the document be discarded, or who lost the document; and

    h)  a statement of the reasons for and circumstances under which the document was destroyed, discarded, or lost.

13.    Documents not maintained electronically shall be scanned and electronically produced as Adobe .pdf files.  Each page of each document shall be individually Bates-numbered.

14.    Should you opt to produce a loadfile, You shall produce electronically stored documents and files as follows:

a) Optical Character Recognition ("OCR") text files and a load file indicating the beginning and ending Bates numbers of each document shall be provided

b) Documents shall be produced as searchable Bates-numbered .pdf files in a print setting of 300 d.p.i., accompanied by:

c) corresponding database load files, containing at a minimum DOCID and path to the image;

d) corresponding searchable text files in .TXT format;

e) where applicable, corresponding metadata files, to include at a minimum the following fields: (1) beginning/ending document number; (2) beginning/ending attachment range; (3) document type; (4) sent date/time; (5) received date/time; (6) created date/time; (7) author(s) and/or FROM; (8) recipient(s) and/or TO; (9) CC; (10) BCC; (11) subject/title/header; (12) custodian; (13) attachment count; (14) file name; and (15) last modified date/time.

f) Spreadsheet documents (Microsoft Excel and similar) shall be produced in their native formats and named after their corresponding beginning Bates number.

g) To the extent that responsive electronically stored information is contained in database files, the parties should promptly identify and discuss the appropriate form of production.

h) If it is infeasible to convert any file (*e.g.*, audio/visual files) to the format described in subsection a, above, you shall produce (i) a "placeholder" image containing the file name of the attachment; (ii) the document in native format; and (iii) information sufficient to link the native-format document with its "placeholder" image.

i) Documents that present imaging or formatting problems (*e.g.*, Microsoft Access or other user databases that cannot feasibly be produced as individual files) shall be promptly identified, and the parties shall meet and confer to attempt to resolve the problems.

j) You shall produce electronically stored documents on DVD, CD, or portable hard drives.

15.    Load files shall be in one of the following formats suitable for Summation software:

DII or eDII; TXT; CSV; or DAT. DAT files shall have a corresponding LFP (IPRO viewer) or

OPT (Opticon viewer) image import file.

16.    Plaintiffs reserve the right, as to any document produced, to request:

8

a)  that an image be produced in color;

b)  that a document be produced in native format;

c)  that reasonable technical assistance be provided to enable Defendants and their attorneys, staff, consultants, and experts to use the electronically stored information; and

d)  that additional metadata be provided.

17.     These requests seek only documents and other items within your possession, custody, or control.

18.     The relevant time period for these Requests is January 1, 2018, through present, unless otherwise stated, and should include documents in force, created, or modified since that date.

## <u>REQUESTS</u>

Pursuant to the attached subpoena, you are required to produce the following:

**1.**      DOCUMENTS sufficient to IDENTIFY all ASYLUM APPLICANTS and "asylum seekers" to whom YOU provide(d) support in any form. For the avoidance of doubt, this request asks YOU to IDENTIFY anyone who is an ASYLUM APPLICANT or asylum seeker to whom YOU provided legal representation.

**2.**      ALL DOCUMENTS YOU provide(d) to aliens, including ASYLUM APPLICANTS or asylum seekers, regarding public education, Temporary Assistance for Needy Families ("TANF"), Supplemental Nutrition Assistance Program ("SNAP"), Medicaid, or other public benefits.

**3.**      ALL DOCUMENTS regarding the ASYLUM NPRM or FINAL RULE.

**4.**      ALL DOCUMENTS used or presented by YOU in any workshop or presentation regarding asylum from August 20, 2021 through the present.

**5.**      Any contract between YOU and any agency of the United States government. For the avoidance of doubt, this request includes subcontracts for which any agency of the United States government is the ultimate contracting party.

# Exhibit D

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| THE STATE OF ARIZONA, By and through its Attorney General, Mark Brnovich, et al., | | |
| PLAINTIFFS, | | No. 6:22-cv-1130 |
| v. | | |
| MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, | | |
| DEFENDANTS. | | |

## LOUISIANA AND FLORIDA'S NOTICE OF SUBPOENA TO IMMIGRATION SERVICES AND LEGAL ADVOCACY (ISLA)

TO:    Defendants Merrick Garland *et al*, by and through their attorney of record, Brian Ward, U.S. Department of Justice (868), P.O. Box 868 Ben Franklin Station, Washington, DC, 20044-0868, tel. 202-616-9121, email brian.c.ward@usdoj.gov.

Pursuant to Federal Rule of Civil Procedure 45(a)(4), Plainitiffs hereby provide notice that they will serve a subpoena to produce documents on to produce for inspection and copying all documents referred to in Attachment A of the subpoena. The requested documents may be used as evidence in this case. A copy of the subpoena is attached hereto.

Respectfully submitted,

JEFF LANDRY
  LOUISIANA ATTORNEY GENERAL

  /s/ Joseph S. St. John
Joseph S. St. John
  Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 485-2458
stjohnj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I served the foregoing document via email upon counsel for Defendants:

This the 17th day of February 2023.

> /s/ Joseph S. St. John
>
> Joseph S. St. John
>  Deputy Solicitor General
> OFFICE OF THE ATTORNEY GENERAL
> LOUISIANA DEPARTMENT OF JUSTICE
> 1885 N. Third St.
> Baton Rouge, LA 70804
> (225) 225-485-2458
> stjohnj@ag.louisiana.gov
>
> *Counsel for Louisiana*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Louisiana ▼

| | |
|---|---|
| THE STATE OF ARIZONA et al | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 6:22-cv-1130 |
| MERRICK GARLAND et al | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: IMMIGRATION SERVICES AND LEGAL ADVOCACY (ISLA), through its registered aged, HOMERO LOPEZ
3801 Canal St., Ste. 210, New Orleans, LA 70119

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Bourgeois Law, LLC, Attn: William Bourgeois 704 Front Street, Morgan City, LA 70380 | Date and Time: March 10, 2023 at 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 2/17/23

CLERK OF COURT

_____                    OR                    _____
*Signature of Clerk or Deputy Clerk*                                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
State of Louisiana                                                   , who issues or requests this subpoena, are:
Joseph S. St. John, 909 Poydras Street, Ste. 1850, New Orleans, LA, 70112, stjohnj@ag.louisiana.gov, 225-485-2458

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 6:22-cv-1130

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____    **on** *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

THE STATE OF ARIZONA,
By and through its Attorney General, Mark
Brnovich, et al.,

PLAINTIFFS,

v.

MERRICK GARLAND, in his official
capacity as Attorney General of the United
States, *et al.*,

DEFENDANTS.

No. 6:22-cv-1130

## ATTACHMENT A

Pursuant to the attached Subpoena and in accordance with the following Definitions and Instructions, you are required to produce the documents described below.

## DEFINITIONS

1.     **ALL," "ANY," "EACH,"** and **"EVERY"** shall be construed inclusively to include the collective as well as the singular meaning so as to include the broadest possible amount of information.

2.     **"ASYLUM APPLICANT"** means any person who has indicated either an intention to apply for asylum under 8 U.S.C. 1158 or a fear of persecution, including, without limitation, any person who has submitted (or on whose behalf was submitted) an Form I-589 or has received written record of the credible fear determination. ASYLUM APPLICANT includes without limitation any person who has submitted (or on whose behalf was submitted) or a refugee/asylee relative petition (Form I-730).

3.     **"ASYLUM CLAIM" or "ASYLUM APPLICATION"** means any asylum application made by an alien pursuant to 8 U.S.C. § 1158 or through the procedures described in 8 U.S.C. § 1225(b), and includes an application for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), or relief under the Convention Against Torture pursuant to 8 C.F.R. §§ 1208.17 and 1208.18.

4.     **"ASYLUM NPRM"** refers to the August 20, 2021, Notice of Proposed Rulemaking, Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers, 86 Fed. Reg. 46,906 (Aug. 20, 2021), including its precursors, drafts, or pre-publication versions.

5.     **"ASYLUM IFR" or "FINAL RULE"** refers to the March 29, 2022 Interim Final Rule, Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers, 87 Fed. Reg. 18078-01 (Mar. 29, 2022), including its precursors, drafts, or pre-publication versions.

2

6.      **"COMMUNICATION"** means any message, document, email, fax, letter, voicemail, or other expressed idea (collectively "message") that has been recorded in writing, electronically, or by audio or video means and transmitted to one or more individuals, including the creator of the message, either simultaneously with the creation of the message or after its creation.

7.      **"DOCUMENT"** is consistent with the full scope of Federal Rule of Civil Procedure 34, and includes any document or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. "Document" includes communications, as defined above, and all drafts and copies of a document or electronically stored information.

8.      **"IDENTIFY**," with respect to a person, means the person's full name, alien registration number (A-number), country of citizenship or nationality, residence in the United States, mailing address in the United States, telephone number, and date of birth.

9.      **"USCIS"** means Defendant U.S. Citizenship & Immigration Services.

10.     **"CBP"** means Defendant U.S. Customs & Border Protection.

11.     **"DHS"** means Defendant U.S. Department of Homeland Security.

12.     **"DOJ"** means Defendant U.S. Department of Justice.

13.     **"EOIR"** means Defendant Executive Office for Immigration Review.

14.     **"ICE"** means Defendant U.S. Immigrations & Customs Enforcement.

15.     **"YOU"** and **"YOUR"** refers to Immigration Services and Legal Advocacy (ISLA), and any persons or agencies acting on your behalf.

16.     The singular shall be construed to include the plural, and the plural shall be construed to include the singular, as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request.

17.     The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request.

4

## INSTRUCTIONS

1.      In responding to these requests, you are required to furnish all responsive documents in your possession, custody, or control, or in the possession, custody, or control of your attorneys, agents, employees, independent contractors, and all other persons acting on your behalf.

2.      Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, you shall state the objection to that portion only and respond to the remainder of the request.

3.      If, in responding to these document requests, you claim any ambiguity in a document request, or in a definition or instruction applicable thereto, you shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the document request.

4.      An original or one copy of each responsive document shall be produced.  Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within your possession, custody, or control.  If the same document exists in both electronic and non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5

5.      Documents shall be produced as they are kept in the ordinary course of business. Each document requested is to be produced in its original file folder, file jacket, or cover (or you may, in the alternative, designate in writing the titles of such folder, jacket, or cover with respect to each document).  The individual or department from whose files the document is being produced is to be indicated.

6.      If there are no documents responsive to any particular request, you shall so state in writing.

7.      A request for documents shall be deemed to include a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself, without abbreviation or expurgations.  Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ or vary from one office, division, or location to another, the Requests require production of documents for each office, division, or location.

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these Requests.

10.     If you refuse to produce any requested document, or part of any requested document, under a claim of attorney-client privilege, work product, or any other privilege, you shall submit, for each document or part of a document withheld, a written statement that:

   a) specifies the privilege or other asserted basis for withholding the document;

   b) describes the nature and general topic of the document;

   c) identifies the persons who prepared the document and any persons to whom the document was sent or disclosed;

6

d)  identifies any persons who have seen or had possession of the document; and

e)  specifies the dates on which the document was prepared, transmitted, and received.

11.     These document requests are continuing in nature.   Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.     If any document which you would have produced in response to any request was, but is no longer, in your present possession or subject to your control or is no longer in existence, please identify with respect to each document:

a)  the date of the document;

b)  the title of the document;

c)  the type of document;

d)  description of the subject matter of the document;

e)  the name of each person who prepared, received, viewed, or had possession, custody, or control of the document;

f)  the date on which the document was destroyed, discarded, or lost;

g)  the name of each person who directed that the document be destroyed, who directed that the document be discarded, or who lost the document; and

h)  a statement of the reasons for and circumstances under which the document was destroyed, discarded, or lost.

13.     Documents not maintained electronically shall be scanned and electronically produced as Adobe .pdf files.  Each page of each document shall be individually Bates-numbered.

14.     Should you opt to produce a loadfile, You shall produce electronically stored documents and files as follows:

a) Optical Character Recognition ("OCR") text files and a load file indicating the beginning and ending Bates numbers of each document shall be provided

b) Documents shall be produced as searchable Bates-numbered .pdf files in a print setting of 300 d.p.i., accompanied by:

c) corresponding database load files, containing at a minimum DOCID and path to the image;

d) corresponding searchable text files in .TXT format;

e) where applicable, corresponding metadata files, to include at a minimum the following fields: (1) beginning/ending document number; (2) beginning/ending attachment range; (3) document type; (4) sent date/time; (5) received date/time; (6) created date/time; (7) author(s) and/or FROM; (8) recipient(s) and/or TO; (9) CC; (10) BCC; (11) subject/title/header; (12) custodian; (13) attachment count; (14) file name; and (15) last modified date/time.

f) Spreadsheet documents (Microsoft Excel and similar) shall be produced in their native formats and named after their corresponding beginning Bates number.

g) To the extent that responsive electronically stored information is contained in database files, the parties should promptly identify and discuss the appropriate form of production.

h) If it is infeasible to convert any file (*e.g.*, audio/visual files) to the format described in subsection a, above, you shall produce (i) a "placeholder" image containing the file name of the attachment; (ii) the document in native format; and (iii) information sufficient to link the native-format document with its "placeholder" image.

i) Documents that present imaging or formatting problems (*e.g.*, Microsoft Access or other user databases that cannot feasibly be produced as individual files) shall be promptly identified, and the parties shall meet and confer to attempt to resolve the problems.

j) You shall produce electronically stored documents on DVD, CD, or portable hard drives.

15.     Load files shall be in one of the following formats suitable for Summation software:

DII or eDII; TXT; CSV; or DAT. DAT files shall have a corresponding LFP (IPRO viewer) or

OPT (Opticon viewer) image import file.

16.     Plaintiffs reserve the right, as to any document produced, to request:

    a)  that an image be produced in color;

    b)  that a document be produced in native format;

    c)  that reasonable technical assistance be provided to enable Defendants and their attorneys, staff, consultants, and experts to use the electronically stored information; and

    d)  that additional metadata be provided.

17.    These requests seek only documents and other items within your possession, custody, or control.

18.    The relevant time period for these Requests is January 1, 2018, through present, unless otherwise stated, and should include documents in force, created, or modified since that date.

## REQUESTS

Pursuant to the attached subpoena, you are required to produce the following:

**1.**     DOCUMENTS sufficient to IDENTIFY all ASYLUM APPLICANTS and "asylum seekers" to whom YOU provided support. For the avoidance of doubt, this request asks YOU to IDENTIFY anyone who is an ASYLUM APPLICANT or asylum seeker to whom YOU provided legal representation.

**2.**     ALL DOCUMENTS YOU provide(d) to aliens, including ASYLUM APPLICANTS or asylum seekers, regarding public education, Temporary Assistance for Needy Families ("TANF"), Supplemental Nutrition Assistance Program ("SNAP"), Medicaid, or other public benefits.

**3.**     ALL DOCUMENTS regarding the ASYLUM NPRM or FINAL RULE.

**4.**     ALL DOCUMENTS used or presented by YOU in any workshop or presentation regarding asylum from August 20, 2021 through the present.

**5.**     Any contract between YOU and any agency of the United States government. For the avoidance of doubt, this request includes subcontracts for which any agency of the United States government is the ultimate contracting party.

# Exhibit E

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

THE STATE OF ARIZONA,
By and through its Attorney General, Mark
Brnovich, et al.,

PLAINTIFFS,

v.

No. 6:22-cv-1130

MERRICK GARLAND, in his official
capacity as Attorney General of the United
States, *et al.*,

DEFENDANTS.

## LOUISIANA AND FLORIDA'S NOTICE OF SUBPOENA TO LOUISISNA ADVOCATES FOR IMMIGRANTS IN DETENTION

TO:    Defendants Merrick Garland *et al*, by and through their attorney of record, Brian Ward, U.S. Department of Justice (868), P.O. Box 868 Ben Franklin Station, Washington, DC, 20044-0868, tel. 202-616-9121, email brian.c.ward@usdoj.gov.

Pursuant to Federal Rule of Civil Procedure 45(a)(4), Plaintiffs hereby provide notice that they will serve a subpoena to produce documents on to produce for inspection and copying all documents referred to in Attachment A of the subpoena. The requested documents may be used as evidence in this case. A copy of the subpoena is attached hereto.

Respectfully submitted,

JEFF LANDRY
 LOUISIANA ATTORNEY GENERAL

 /s/ Joseph S. St. John
Joseph S. St. John
 Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 485-2458
stjohnj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I served the foregoing document via email upon counsel

for Defendants:

This the 17th day of February 2023.

/s/  Joseph S. St. John

Joseph S. St. John
 Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 225-485-2458
stjohnj@ag.louisiana.gov

*Counsel for Louisiana*

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

Western District of Louisiana ▾

| | |
|---|---|
| THE STATE OF ARIZONA et al | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.  6:22-cv-1130 |
| MERRICK GARLAND et al | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   LOUISIANA ADVOCATES FOR IMMIGRANTS IN DETENTION, through its registered agent, MADISON POCHE, 262 Wilkinson Street, Shreveport, LA 71104

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Office of the Attorney General | Date and Time: |
|---|---|
| 330 Marshall Street, Ste. 777, Shreveport, LA 71101 Attn: Donna Hutchins (for Joseph Scott St. John) | March 10, 2023 at 10:00 A.M. |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   2/17/23

*CLERK OF COURT*

_____          OR          _____
    *Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
State of Louisiana _____, who issues or requests this subpoena, are:
Joseph S. St. John, 909 Poydras Street, Ste. 1850, New Orleans, LA, 70112, stjohnj@ag.louisiana.gov, 225-485-2458

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 6:22-cv-1130

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| THE STATE OF ARIZONA, By and through its Attorney General, Mark Brnovich, et al., <br><br> PLAINTIFFS, <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, <br><br> DEFENDANTS. | No. 6:22-cv-1130 |

## ATTACHMENT A

Pursuant to the attached Subpoena and in accordance with the following Definitions and Instructions, you are required to produce the documents described below.

1

## DEFINITIONS

1.      **ALL," "ANY," "EACH,"** and **"EVERY"** shall be construed inclusively to include the collective as well as the singular meaning so as to include the broadest possible amount of information.

2.      **"ASYLUM APPLICANT"** means any person who has indicated either an intention to apply for asylum under 8 U.S.C. 1158 or a fear of persecution, including, without limitation, any person who has submitted (or on whose behalf was submitted) an Form I-589 or has received written record of the credible fear determination. ASYLUM APPLICANT includes without limitation any person who has submitted (or on whose behalf was submitted) or a refugee/asylee relative petition (Form I-730).

3.      **"ASYLUM CLAIM"** or **"ASYLUM APPLICATION"** means any asylum application made by an alien pursuant to 8 U.S.C. § 1158 or through the procedures described in 8 U.S.C. § 1225(b), and includes an application for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), or relief under the Convention Against Torture pursuant to 8 C.F.R. §§ 1208.17 and 1208.18.

4.      **"ASYLUM NPRM"** refers to the August 20, 2021, Notice of Proposed Rulemaking, Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers, 86 Fed. Reg. 46,906 (Aug. 20, 2021), including its precursors, drafts, or pre-publication versions.

5.      **"ASYLUM IFR"** or **"FINAL RULE"** refers to the March 29, 2022 Interim Final Rule, Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers, 87 Fed. Reg. 18078-01 (Mar. 29, 2022), including its precursors, drafts, or pre-publication versions.

6.   **"COMMUNICATION"** means any message, document, email, fax, letter, voicemail, or other expressed idea (collectively "message") that has been recorded in writing, electronically, or by audio or video means and transmitted to one or more individuals, including the creator of the message, either simultaneously with the creation of the message or after its creation.

7.   **"DOCUMENT"** is consistent with the full scope of Federal Rule of Civil Procedure 34, and includes any document or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. "Document" includes communications, as defined above, and all drafts and copies of a document or electronically stored information.

8.   **"IDENTIFY,"** with respect to a person, means the person's full name, alien registration number (A-number), country of citizenship or nationality, residence in the United States, mailing address in the United States, telephone number, and date of birth.

9.   **"USCIS"** means Defendant U.S. Citizenship & Immigration Services.

10.   **"CBP"** means Defendant U.S. Customs & Border Protection.

11.   **"DHS"** means Defendant U.S. Department of Homeland Security.

12.   **"DOJ"** means Defendant U.S. Department of Justice.

13.   **"EOIR"** means Defendant Executive Office for Immigration Review.

14.   **"ICE"** means Defendant U.S. Immigrations & Customs Enforcement.

15.   **"YOU"** and **"YOUR"** refers to Louisiana Advocates for Immigrants in Detention, and any persons or agencies acting on your behalf.

16.     The singular shall be construed to include the plural, and the plural shall be construed to include the singular, as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request.

17.     The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request.

## INSTRUCTIONS

1.      In responding to these requests, you are required to furnish all responsive documents in your possession, custody, or control, or in the possession, custody, or control of your attorneys, agents, employees, independent contractors, and all other persons acting on your behalf.

2.      Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, you shall state the objection to that portion only and respond to the remainder of the request.

3.      If, in responding to these document requests, you claim any ambiguity in a document request, or in a definition or instruction applicable thereto, you shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the document request.

4.      An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within your possession, custody, or control. If the same document exists in both electronic and non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5

5.      Documents shall be produced as they are kept in the ordinary course of business. Each document requested is to be produced in its original file folder, file jacket, or cover (or you may, in the alternative, designate in writing the titles of such folder, jacket, or cover with respect to each document). The individual or department from whose files the document is being produced is to be indicated.

6.      If there are no documents responsive to any particular request, you shall so state in writing.

7.      A request for documents shall be deemed to include a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself, without abbreviation or expurgations. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ or vary from one office, division, or location to another, the Requests require production of documents for each office, division, or location.

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these Requests.

10.     If you refuse to produce any requested document, or part of any requested document, under a claim of attorney-client privilege, work product, or any other privilege, you shall submit, for each document or part of a document withheld, a written statement that:

    a) specifies the privilege or other asserted basis for withholding the document;

    b) describes the nature and general topic of the document;

    c) identifies the persons who prepared the document and any persons to whom the document was sent or disclosed;

6

      d) identifies any persons who have seen or had possession of the document; and

      e) specifies the dates on which the document was prepared, transmitted, and received.

11.     These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.     If any document which you would have produced in response to any request was, but is no longer, in your present possession or subject to your control or is no longer in existence, please identify with respect to each document:

      a) the date of the document;

      b) the title of the document;

      c) the type of document;

      d) description of the subject matter of the document;

      e) the name of each person who prepared, received, viewed, or had possession, custody, or control of the document;

      f) the date on which the document was destroyed, discarded, or lost;

      g) the name of each person who directed that the document be destroyed, who directed that the document be discarded, or who lost the document; and

      h) a statement of the reasons for and circumstances under which the document was destroyed, discarded, or lost.

13.     Documents not maintained electronically shall be scanned and electronically produced as Adobe .pdf files. Each page of each document shall be individually Bates-numbered.

14.     Should you opt to produce a loadfile, You shall produce electronically stored documents and files as follows:

a) Optical Character Recognition ("OCR") text files and a load file indicating the beginning and ending Bates numbers of each document shall be provided

b) Documents shall be produced as searchable Bates-numbered .pdf files in a print setting of 300 d.p.i., accompanied by:

c) corresponding database load files, containing at a minimum DOCID and path to the image;

d) corresponding searchable text files in .TXT format;

e) where applicable, corresponding metadata files, to include at a minimum the following fields: (1) beginning/ending document number; (2) beginning/ending attachment range; (3) document type; (4) sent date/time; (5) received date/time; (6) created date/time; (7) author(s) and/or FROM; (8) recipient(s) and/or TO; (9) CC; (10) BCC; (11) subject/title/header; (12) custodian; (13) attachment count; (14) file name; and (15) last modified date/time.

f) Spreadsheet documents (Microsoft Excel and similar) shall be produced in their native formats and named after their corresponding beginning Bates number.

g) To the extent that responsive electronically stored information is contained in database files, the parties should promptly identify and discuss the appropriate form of production.

h) If it is infeasible to convert any file (*e.g.*, audio/visual files) to the format described in subsection a, above, you shall produce (i) a "placeholder" image containing the file name of the attachment; (ii) the document in native format; and (iii) information sufficient to link the native-format document with its "placeholder" image.

i) Documents that present imaging or formatting problems (*e.g.*, Microsoft Access or other user databases that cannot feasibly be produced as individual files) shall be promptly identified, and the parties shall meet and confer to attempt to resolve the problems.

j) You shall produce electronically stored documents on DVD, CD, or portable hard drives.

15. Load files shall be in one of the following formats suitable for Summation software:

DII or eDII; TXT; CSV; or DAT. DAT files shall have a corresponding LFP (IPRO viewer) or

OPT (Opticon viewer) image import file.

16. Plaintiffs reserve the right, as to any document produced, to request:

a) that an image be produced in color;

b) that a document be produced in native format;

c) that reasonable technical assistance be provided to enable Defendants and their attorneys, staff, consultants, and experts to use the electronically stored information; and

d) that additional metadata be provided.

17.    These requests seek only documents and other items within your possession, custody, or control.

18.    The relevant time period for these Requests is January 1, 2018, through present, unless otherwise stated, and should include documents in force, created, or modified since that date.

## **REQUESTS**

Pursuant to the attached subpoena, you are required to produce the following:

9

1.    DOCUMENTS sufficient to IDENTIFY all ASYLUM APPLICANTS and "asylum seekers" to whom YOU provided support.

2.    ALL DOCUMENTS YOU provide(d) to aliens, including ASYLUM APPLICANTS or asylum seekers, regarding public education, Temporary Assistance for Needy Families ("TANF"), Supplemental Nutrition Assistance Program ("SNAP"), Medicaid, or other public benefits.

3.    ALL DOCUMENTS regarding the ASYLUM NPRM or FINAL RULE.

4.    ALL DOCUMENTS used or presented by YOU in any workshop or presentation regarding asylum from August 20, 2021 through the present.

5.    Any contract between YOU and any agency of the United States government. For the avoidance of doubt, this request includes subcontracts for which any agency of the United States government is the ultimate contracting party.