# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: SUBPOENA ISSUED TO INNOVATION LAW LAB, | No. 1:23-MI-15 |
| Movant, | |
| STATE OF ARIZONA, *et al.*, | Underlying Litigation: No. 6:22-CV-1130-DCJ-CBW United States District Court Western District of Louisiana |
| Plaintiffs, | |
| v. | **\*Motion to Expedite Pending\*** |
| MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, | **\*Ruling Requested by March 31\*** |
| Defendants. | |

## THE STATE OF LOUISIANA'S OPPOSED MOTION FOR RULE 45(f) TRANSFER OF INNOVATION LAW LAB'S MOTION TO QUASH

The State of Louisiana respectfully moves under Local Civil Rule 7.2(B) and Federal Rule of Civil Procedure 45(f) to transfer Innovation Law Lab's motion to quash (ECF No. 1) on an expedited basis to the issuing court in the Lafayette Division of the United States District Court for the Western District of Louisiana. Exceptional circumstances merit transfer of that motion to the issuing court—which is considering two substantively identical motions to quash, and which just yesterday set an April 4 hearing on those motions.

Because the issuing court may decide the substantively identical motions to quash that are pending before it as soon as April 4, the State respectfully requests a ruling on the motion to transfer by March 31, or, alternatively, sufficiently in advance of the issuing court's April 4 hearing to allow the issuing court time to receive transfer of Law Lab's motion to quash from this Court

Dated: March 23, 2023

Respectfully submitted,

/s/ Stephen J. Petrany

JORDAN BAILEY REDMON*
  *Assistant Solicitor General*
LOUISIANA DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
Fax: 504-556-9900
redmonj@ag.Louisiana.gov

*Counsel for the State of Louisiana*

***Pro Hac Vice Application Pending***

STEPHEN J. PETRANY
  *Solicitor General*
Georgia Bar No. 718981
OFFICE OF THE GEORGIA
ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
Tel: (404) 458-3408
Fax: (404) 651-6920
spetrany@law.ga.gov

*Local Counsel for Plaintiff*

## LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1(D), I certify that this document has been prepared in Century Schoolbook 13-point font—"one of the font and point selections approved by the Court" in Local Rule 5.1(C).

/s/ Stephen J. Petrany
STEPHEN J. PETRANY

## CERTIFICATE OF SERVICE

I certify that on March 23, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of the filing to all counsel of record.

/s/ Stephen J. Petrany
STEPHEN J. PETRANY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: SUBPOENA ISSUED TO INNOVATION LAW LAB, <br><br> Movant, <br><br> STATE OF ARIZONA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, <br><br> Defendants. | No. 1:23-MI-15 <br><br> Underlying Litigation: <br> No. 6:22-CV-1130-DCJ-CBW <br> United States District Court <br> Western District of Louisiana <br><br> **\*Motion to Expedite Pending\*** <br><br> **\*Ruling Requested by March 31\*** |

**MEMORANDUM IN SUPPORT OF THE OPPOSED MOTION
OF THE STATE OF LOUISIANA FOR RULE 45(f) TRANSFER
OF INNOVATION LAW LAB'S MOTION TO QUASH**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iv

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 3

  I. THE UNDERLYING LITIGATION. .................................................... 3

    A. Nineteen States Challenge the Asylum IFR in the Western District of Louisiana on Constitutional and Statutory Grounds. ........................... 3

    B. The Issuing Court Orders Jurisdictional Discovery. ........................... 4

  II. THE STATE SEEKS JURISDICTIONAL DISCOVERY. ........................... 5

    A.   The State Serves Substantively Identical Subpoenas. ........................ 5

    B.   The Recipients File Substantively Identical Motions to Quash. ....... 5

    C.   The Western District of Louisiana Sets an April 4 Hearing on Substantively Identical Motions to Quash. ........................................ 6

  III. LAW LAB REFUSES TO CONSENT TO TRANSFER. ........................... 6

ARGUMENT ............................................................................................ 7

  I. RULE 45(f) TRANSFER IS MERITED IN "EXCEPTIONAL CIRCUMSTANCES." ..... 7

  II. "EXCEPTIONAL CIRCUMSTANCES" MERIT TRANSFER OF THE MOTION. ....... 9

    A.   The Underlying Litigation is Complex. .............................................. 9

    B.   The Underlying Litigation Has Been Pending for Nearly a Year, and Jurisdictional Discovery Will Soon Close. .................................. 10

    C.   The Issues Raised in Law Lab's Motion are Pending Before the Issuing Court—Which May Resolve Them as Soon as April 4. ....... 11

D.  Transfer to the Issuing Court—Which Will Soon Decide the Same Legal Issues—Will Conserves this Court's Resources. ..................... 12

E.  Transfer to the Issuing Court Avoids the Potential Risk of Inconsistent Results on the Same Issues in the Same Case. ........... 12

F.  Transfer to the Issuing Court Avoids Disrupting the Issuing Court's Careful Management of Its Own Litigation. ........................ 13

G.  Law Lab's Relevance Challenge Confirms Its Motion Belongs Before the Issuing Court. .................................................. 14

III. TRANSFERRING THE MOTION WILL NOT UNDULY BURDEN LAW LAB. ...... 15

CONCLUSION .............................................................. 18

LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE ............................ 20

CERTIFICATE OF SERVICE ................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Duck v. SEC*,
   317 F.R.D. 321 (D.D.C. 2016) ................................................................. 10, 14

*Flynn v. FCA US LLC*,
   216 F. Supp. 3d 44 (D.D.C. 2016) ........................................................... 10, 15

*Hoog v. PetroQuest, LLC*,
   338 F.R.D. 515 (S.D. Fla. 2021) ..................................................... 8, 9, 12, 13

*In re Braden*,
   344 F. Supp. 3d 83 (D.D.C. 2018) ................................................................ 17

*In re Early*,
   No. 2-21-CV-29, 2021 WL 2636020 (N.D. Ga. Apr. 20, 2021) ...................... 13

*In re Nonparty Subpoena Duces Tecum*,
   327 F.R.D. 23 (D.D.C. 2018) ..................................................................... 9, 18

*In re UBS Fin. Servs., Inc. Sec. Litig.*,
   113 F. Supp. 3d 286 (D.D.C. 2015) ................................................................ 8

*Judicial Watch, Inc. v. Valle Del Sol, Inc.*,
   307 F.R.D. 30 (D.D.C. 2014) ............................................................... 8, 12, 17

*Lipman v. Antoon*,
   284 F. Supp. 3d 8 (D.D.C. 2018) ............................................................ passim

*Melder v. State Farm Mut. Auto Ins. Co.*,
   No. 1:08-CV-1274, 2008 WL 1899569 (N.D. Ga. Apr. 25, 2008) .................... 9

*Nunag-Tanedo v. East Baton Rouge Par. Sch. Bd.*,
   No. 1:12-CV-1262, 2012 WL 12888856 (N.D. Ga. May 15, 2012) ................. 12

*Patriot Nat'l Ins. Grp. v. Oriska Ins.* Co.,
   973 F. Supp. 2d 173 (N.D.N.Y. 2013) ........................................................... 15

*Wultz v. Bank of China, Ltd.*,
   304 F.R.D. 38 (D.D.C. 2014) ............................................................. 8, 13, 14

*XY, LLC v. Trans Ova Genetics*, L.C.,
  307 F.R.D. 10 (D.D.C. 2014) .................................................................. 9, 15, 16

**Rules**

Federal Rule of Civil Procedure 45(f) ........................................................passim

# INTRODUCTION

Innovation Law Lab's motion to quash (ECF No. 1) should promptly be transferred under Federal Rule of Civil Procedure 45(f) to the court that issued the subpoena Law Lab wants to quash—the United States District Court for the Western District of Louisiana. Exceptional circumstances merit transfer.

*First*, the issuing court is considering two substantively identical motions to quash four substantively identical subpoenas. It has recently set an April 4, 2023 hearing on both motions. It will soon resolve precisely the same issues of privilege, relevance, and burden that are raised here. And it is closely controlling discovery: it ordered the jurisdictional discovery that spawned the subpoena Law Lab challenges here, and it is scrutinizing the progress of that discovery. Refusing transfer risks not just conflicting results on jurisdictional-discovery issues important to the issuing court—it also risks disrupting that court's careful management of its own case. Not to mention the needless duplication of judicial resources. Transfer is merited on these grounds alone.

*Second*, the complexity and the significance of the underlying litigation confirm the need both for transfer and for uniform discovery rulings. In the underlying litigation, 19 States challenge the lawfulness of an Interim Final Rule (Asylum IFR) that, according to those 19 States, makes it easier for unauthorized immigrants to obtain asylum under false pretenses. The 19

Plaintiff States' 71-page operative complaint asserts eight independent violations of the Administrative Procedure Act or the Constitution of the United States. Its significance—and complexity—cannot be understated.

*Third*, transfer will not unduly burden Law Lab—which is no stranger to litigation in the issuing court. Indeed, Law Lab *wanted* to litigate in that court less than a year ago; it moved to intervene of its own accord in the Title 42 litigation pending in the Lafayette Division of the Western District of Louisiana. And its desire to litigate in Lafayette was apparently so strong that it would not take no for an answer: it appealed the Western District of Louisiana's denial of its intervention motion all the way up to the Fifth Circuit.

Nor is Law Lab the sort "local nonparty" that Rule 45(f) is most concerned about. It is a savvy and well-connected organization that is headquartered in Portland, Oregon and that boasts of nationwide outreach efforts. It is not a poorly resourced individual resident of this jurisdiction. And it has no non-trivial interest in having its motion decided by this Court rather than the issuing court in Lafayette—which is considering two substantively identical motions for which it has already set a hearing. And in any event, Law Lab is well suited to litigate wherever it finds itself: its motion features not

one, not two, not three, but *six* lawyers—all from firms in or around the AmLaw 100. Litigating its motion in Louisiana poses it no real burden.[1]

## BACKGROUND

### I. THE UNDERLYING LITIGATION.

#### A. Nineteen States Challenge the Asylum IFR in the Western District of Louisiana on Constitutional and Statutory Grounds.

In April 2022, a coalition of 14 States brought constitutional and statutory challenges to the Asylum IFR in the Lafayette Division of the United States District Court for the Western District of Louisiana. *See generally* Ex. A to St. John Decl. That coalition expanded to include 19 States. *See* Ex. B to St. John Decl. at ¶¶ 23–42. The case was assigned to Judge David C. Joseph and Magistrate Judge Carol B. Whitehurst. *See* Ex. C to St. John Decl at 1.

In their eight-count operative complaint, the 19 Plaintiff States allege that the Asylum IFR violates the Administrative Procedure Act and the Take Care Clause of the Constitution of the United States. *See* Ex. B to St. John Decl. at ¶¶ 144–220. The 19 Plaintiff States seek, among other relief, a declaration that the Asylum IFR is arbitrary and capricious, contrary to law,

---

[1] Law Lab would not even need to enlist local counsel. According to the website of Kilpatrick Townsend & Stockton LLP, one of the two large law firms Law Lab has retained here, at least one lawyer who signed the motion to quash for Law Lab in this Court is also admitted to practice before the Western District of Louisiana. *See* Ex I to St. John Decl.

and in excess of statutory authority; a declaration that the Asylum IFR was issued in violation of the Take Care Clause; and an order vacating the Asylum IFR and holding it unlawful. *See id.* at Prayer for Relief.

### B. The Issuing Court Orders Jurisdictional Discovery.

After some preliminaries, the issuing court in the Western District of Louisiana ordered limited jurisdictional discovery as to the 19 Plaintiff States' Article III standing. *See* Ex. D to St. John Decl. at 1. The issuing court then directed discovery on two issues in particular. *Id.* First, the court directed discovery on "the likely effect the [Asylum IFR] will have on the number of immigrants granted asylum and/or otherwise residing in Plaintiff [S]tates." *Id.* And second, the court directed discovery on "the cost or other measurable effect these additional persons (which the Plaintiff States contend will have been illegally granted asylum) will have on Plaintiff [S]tates." *Id.*

The issuing court in the Western District of Louisiana has scrutinized the progress of the jurisdictional discovery that it ordered. It has held four conferences—all by Zoom—devoted exclusively to jurisdictional discovery. Exs. E, F, G, H to St. John Decl. And during the latest status conference, the district court made itself "available upon request for any additional status conferences needed to complete [jurisdictional] discovery." Ex H to St. John Decl. Its supervision of jurisdictional discovery has been close and careful.

## II. THE STATE SEEKS JURISDICTIONAL DISCOVERY.

### A. The State Serves Substantively Identical Subpoenas.

In February and March 2023, Louisiana sought jurisdictional discovery from five organizations that have publicly indicated that they help aliens seek asylum in Louisiana or in Florida or across the Nation—Law Lab, Immigration Services and Legal Advocacy, Louisiana Advocates for Immigrants in Detention, Rozas and Associates Law Firm, L.L.C., and Home Here Nola.

The State served substantively identical subpoenas on each of the five organizations. *See* Exs. J, K, L, M, N to St. John Decl. Each one seeks (1) documents identifying asylum seekers in Louisiana or Florida; (2) documents the recipient used, presented, or distributed in asylum workshops or trainings; (3) documents the recipient provided to asylum seekers about the availability of public benefits; and (4) documents relating to the Asylum IFR. *See* Exs. J, K, L, M, N to St. John Decl.

### B. The Recipients File Substantively Identical Motions to Quash.

Within the last week, each of the subpoena recipients filed (or joined in) a motion to quash. *See* ECF No. 1; Exs. O & P to St. John Decl. The motions are identical in substance—each one invokes privilege and undue burden as grounds for quashing the respective subpoenas. *Compare* ECF No. 1 *with* Exs. O & P to St. John Decl. Each one asserts that the asylum-related information the subpoenas seek can and should be obtained from the federal government.

*See* ECF No. 1; Exs. O & P to St. John Decl. Each one asserts that responding to the subpoena's document requests would compromise the recipient's ability to represent asylum seekers in some way. *See* ECF No. 1; Exs. O & P to St. John Decl. And each one asserts that properly responding to those document requests would prove too costly. *See* ECF No. 1; Exs. O & P to St. John Decl.

Two of those motions—filed on behalf of four of the five subpoena recipients—are pending before the issuing court: Judge David C. Joseph in the Lafayette Division of the Western District of Louisiana. Exs. O & P to St. John Decl. The motion to quash pending before this Court is the only motion to quash that is not before the issuing court in the Western District of Louisiana.

### C. The Western District of Louisiana Sets an April 4 Hearing on Substantively Identical Motions to Quash.

On March 22, the Western District of Louisiana set a hearing on the substantively identical motions to quash filed by four of the five subpoena recipients. *See* Ex. C to St. John Decl. Accordingly, the issuing court may decide as early as April 4 the very same issues that Law Lab raises here. *See id.*

### III. LAW LAB REFUSES TO CONSENT TO TRANSFER.

The State sought Law Lab's consent to transfer its motion to the issuing court in the Western District of Louisiana. *See* Ex. Q to St. John Decl.; *see also* Fed. R. Civ. P. 45(f) (allowing for transfer of a subpoena-related motion by consent). The State explained that the issuing court was considering

6

substantively identical motions to quash substantively identical subpoenas, so transfer would save judicial and party resources. *See* Ex Q to St. John Decl.

But Law Lab refused to consent. And it said it "will oppose a motion to transfer if filed." *Id.* Because Law Lab refused to consent to transfer its motion to quash to the issuing court that (1) is considering substantively identical motions to quash, and (2) may decide those motions as soon as April 4, when it holds a hearing on them, the State was forced both to file this opposed motion and to seek expedited consideration of it.

## ARGUMENT

The Court should promptly transfer Law Lab's motion to quash to the issuing court in the Western District of Louisiana under Federal Rule of Civil Procedure 45(f). Exceptional circumstances merit transfer. The issuing court is considering two substantively identical motions to quash four substantively identical subpoenas, and the issuing court has set an April 4 hearing on those motions. The issuing court can and should decide Law Lab's motion when it decides the two substantively identical motions that are already before it.

## I. RULE 45(f) TRANSFER IS MERITED IN "EXCEPTIONAL CIRCUMSTANCES."

A court may transfer a subpoena-related motion to the issuing court "if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Rule 45(f) does not define "exceptional circumstances." *Id.* But the accompanying Advisory Committee Notes indicate that "exceptional circumstances" exist if transfer

7

would "avoid disrupting the issuing court's management of the underlying litigation." *Id.* Advisory Committee Notes, 2013 Amendments.

Rule 45(f) and its "exceptional circumstances" standard accord with common sense. They recognize that the issuing court may be "better position[ed] to rule" on a motion to quash the subpoena it issued "due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Hoog v. PetroQuest, LLC*, 338 F.R.D. 515, 517 (S.D. Fla. 2021) (quoting *In re UBS Fin. Servs., Inc. Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015)).

To decide if the issuing court is "better position[ed] to rule on the motion"—such that "exceptional circumstances" support transfer—"courts should look to a variety of factors." *Id.* (quoting *UBS Fin Servs. Sec. Litig.*, 113 F. Supp. 3d at 288). Those factors include "'the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *Id.* (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)). Courts also consider "judicial economy and the avoidance of inconsistent results." *Lipman v. Antoon*, 284 F. Supp. 3d 8, 10 (D.D.C. 2018) (citing *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014)).

## II. "EXCEPTIONAL CIRCUMSTANCES" MERIT TRANSFER OF THE MOTION.

"Exceptional circumstances" exist within the meaning of Rule 45(f) because each of the relevant factors favors promptly transferring Law Lab's motion to quash to the issuing court in the Western District of Louisiana.

### A. The Underlying Litigation is Complex.

The first factor, complexity of the underlying litigation, overwhelmingly favors transfer. "Courts routinely transfer subpoena-related motions—even over objection—due to the complexity of the underlying case." *In re Nonparty Subpoena Duces Tecum*, 327 F.R.D. 23, 26 (D.D.C. 2018). The underlying litigation here involves eight constitutional or statutory challenges to the Asylum IFR that 19 sovereign States have asserted against the Attorney General of the United States and 15 other federal officials or agencies. *See* Ex. B to St. John Decl. That litigation is undoubtedly complex.[2] *Cf. Melder v. State Farm Mut. Auto Ins. Co.*, No. 1:08-CV-1274, 2008 WL 1899569, at *4 (N.D. Ga. Apr. 25, 2008) (concluding the "complex nature of the underlying litigation" "weigh[ed] heavily in favor of transferring the motion to quash").

---

[2] The underlying litigation is far more complex than litigation in other cases where courts have concluded that the complexity factor favors Rule 45(f) transfer. *See, e.g.*, *Hoog*, 338 F.R.D. at 518 (oil-and-gas royalty dispute); *XY, LLC v. Trans Ova Genetics*, L.C., 307 F.R.D. 10, 12–13 (D.D.C. 2014) (patent-infringement case); *Duck*, 317 F.R.D. at 325 (securities litigation).

9

## B. The Underlying Litigation Has Been Pending for Nearly a Year, and Jurisdictional Discovery Will Soon Close.

The second factor, procedural posture and duration of the underlying litigation, also favors transfer. The underlying litigation kicked off almost a year ago—on April 28, 2022. *See* Ex A to St. John Decl. It has already generated 130 docket entries, *see* Ex. C to St. John Decl., and four status conferences devoted to jurisdictional discovery, *see* Exs. E, F, G, H to St. John Decl.

That the underlying litigation is arguably in the "relatively early" jurisdictional-discovery stage is "not dispositive" of this factor. *Lipman*, 284 F. Supp. 3d at 12. That is because "[t]ransfer can be appropriate when it would 'avoid interference with a time-sensitive discovery schedule issued in the underlying action.'" *Id.* (quoting *Duck v. SEC*, 317 F.R.D. 321, 324–25 (D.D.C. 2016)). In *Lipman*, for instance, the fact that discovery would close within two months created a "'real risk' that not transferring the motion could interfere with [the issuing court's] 'streamlined procedure for resolving discovery disputes.'" *Id.* (quoting *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 48 (D.D.C. 2016)). "[T]ransferring the motion" was therefore "necessary to avoid 'disrupting the issuing court's management of the underlying litigation.'" *Id.* (quoting Fed. R. Civ. P. 45(f) Advisory Committee Notes, 2013 Amendments).

So too here. In the underlying litigation—as in *Lipman*—the relevant period of discovery closes in two months. *See* Ex. C to St. John Decl. at ECF

10

129 (setting a May 23, 2023 jurisdictional-discovery deadline); *Lipman*, 284 F. Supp. 3d at 12. So refusing transfer here runs the same "real risk" of interference with "streamlined procedure for resolving discovery disputes" that justified transfer there. *Id.* (quotation omitted). But the risk here is even more acute. That's because here (unlike in *Lipman*) the issuing court in the Western District of Louisiana is already set to decide precisely the same issues raised in the motion sought to be transferred, and it has gone so far as to set a hearing on the motions raising those same issues. *See* Ex. C to St. John Decl. at ECF No. 130 (setting April 4 hearing on substantively identical motions to quash).

### C. The Issues Raised in Law Lab's Motion are Pending Before the Issuing Court—Which May Resolve Them as Soon as April 4.

The third factor, the nature of the issues pending before the issuing court, strongly favors transfer. Two motions substantively identical to the motion to quash that Law Lab filed here are pending before the issuing court. *Compare* ECF No. 1 *with* Exs. O & P to St. John Decl. The issuing court has set an April 4 hearing on those motions—and it may well decide them then. *See* Ex C. to St. John Decl. at ECF No. 130. When the issuing court decides the issues of privilege, relevance, and undue burden raised in the motions to quash that are already pending before it, it will necessarily decide the same issues raised in the motion to quash Law Lab filed here. And "[t]he fact that the issuing court [in the Western District of Louisiana] is addressing privilege

issues raised by non-parties in discovery only underscores that court's familiarity with the privilege issues being raised and confirms the need for transfer to ensure consistent rulings." *Judicial Watch*, 307 F.R.D. at 35–36.

### D. Transfer to the Issuing Court—Which Will Soon Decide the Same Legal Issues—Will Conserves this Court's Resources.

The fourth factor, judicial economy, favors transfer. The issuing court will soon decide—perhaps as soon as April 4—two substantively identical motions to quash four substantively identical subpoenas, which raise the same issues of privilege, burden, and relevance Law Lab raises here. Having two busy district courts decide the same legal issues tied to the same underlying case makes no sense—economic or otherwise. The "clear benefit to judicial economy and efficiency" warrants transfer. *Hoog*, 338 F.R.D. at 518; *accord, e.g.*, *Nunag-Tanedo v. East Baton Rouge Par. Sch. Bd.*, No. 1:12-CV-1262, 2012 WL 12888856, at *4 (N.D. Ga. May 15, 2012) (finding exceptional circumstances where transfer would be "the most just and efficient way" of ruling on the motion to quash).

### E. Transfer to the Issuing Court Avoids the Potential Risk of Inconsistent Results on the Same Issues in the Same Case.

The fifth factor, avoiding the potential risk of inconsistent rulings, favors transfer too. This Court and the issuing court are considering the same issues of relevance, burden, and privilege in connection with the same underlying litigation. It is immaterial that the issuing court has not yet ruled on the

substantively identical motions it will hear (and perhaps decide) on April 4. For "[t]his Court's ruling could still disrupt [the issuing court's] management of the case." *Lipman*, 284 F. Supp. 3d at 12. After all, Rule 45(f)'s concern is "the *potential* for inconsistent results." *Id.* at 12–13 (emphasis original).

An order that promptly transfers Law Lab's motion to the issuing court is the only way to avoid the significant risk of inconsistent rulings. *See, e.g.*, *Hoog*, 338 F.R.D. at 518 (underscoring the "significant risk of inconsistent discovery rulings" as a ground for Rule 45(f) transfer); *Wultz*, 304 F.R.D. at 46 (explaining that the "potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of these disputes"); *In re Early*, No. 2-21-CV-29, 2021 WL 2636020, at *3 (N.D. Ga. Apr. 20, 2021) (finding exceptional circumstances because, inter alia, transfer "minimize[d]" the risk of inconsistent rulings on discovery issues).

### F. Transfer to the Issuing Court Avoids Disrupting the Issuing Court's Careful Management of Its Own Litigation.

The sixth factor—avoiding disruption of the issuing court's management of the litigation—tilts in favor of transfer too. *Cf.* Fed. R. Civ. P. 45(f) Advisory Committee Notes, 2013 Amendments (underscoring this factor's importance).

The issuing court has been intimately involved in every aspect of the jurisdictional discovery that spurred the subpoena that Law Lab challenges here. The issuing court has held four status conferences devoted specifically to

13

jurisdictional discovery. Exs. E, F, G, H to St. John Decl. It has made itself "available upon request for any additional status conferences needed to complete [jurisdictional] discovery." Ex H to St. John Decl. And it has set a hearing on two motions to quash that raise the same legal issues that Law Lab raises here. Ex C. to St. John Decl. at ECF No. 130. The issuing court's "interest [in] and active role in" managing jurisdictional-discovery in the underlying litigation independently warrants transfer. *Wultz*, 304 F.R.D. at 47; *accord, e.g.*, *Duck*, 317 F.R.D. at 325 (citing the issuing court's "significant involvement" "in the action to date" as a reason for Rule 45(f) transfer).

Refusing to transfer the motion risks disrupting all of that—and more. It would throw into question both the issuing court's April 14 hearing on the motions raising the same issues that Law Lab raises here and the upcoming jurisdictional-discovery deadline. The issuing court's supervision of jurisdictional discovery has been close and careful. It is due respect.

### G. Law Lab's Relevance Challenge Confirms Its Motion Belongs Before the Issuing Court.

Finally, Law Lab's relevance challenge leaves no doubt that "extraordinary circumstances" merit its motion being decided by the issuing court—along with the two substantively identical motions to quash that the issuing court will soon hear and decide. *See, e.g.*, ECF No. 1-1 at 18 (challenging the relevance of each of the subpoena's requests).

14

Blackletter Rule 45(f) law holds that relevance assessments are for the issuing court—not the compliance court. *Flynn*, 216 F. Supp. 3d at 47; *Patriot Nat'l Ins. Grp. v. Oriska Ins.* Co., 973 F. Supp. 2d 173, 176 (N.D.N.Y. 2013). And the reason for that is obvious: "[t]he centrality of the relevance assessment weighs in favor of transfer because determining whether information is relevant requires nuanced legal analysis based on a full understanding of the [u]nderlying [a]ction." *Lipman*, 284 F. Supp. 3d at 13. So here, as in cases too numerous to fully cite, "the relevance argument advanced [by the subpoenaed nonparty] emphasizes the need for the court where the underlying matter lies to decide the matter." *XY, LLC*, 307 F.R.D. at 12. Law Lab's relevance objection is thus an independent ground for transferring its motion to the issuing court.

## III. TRANSFERRING THE MOTION WILL NOT UNDULY BURDEN LAW LAB.

Law Lab will not be unduly burdened if its motion to quash is transferred to the issuing court in the Western District of Louisiana.

First, Law Lab's interest in having its motion resolved by this Court is at best negligible. Law Lab is headquartered almost 2,600 miles away in Portland, Oregon. *See* Ex. R to St. John Decl. Its website boasts of "team members" it "has" in states as geographically distant as California, on the one hand, and Florida, on the other. *Id.* According to a declaration submitted under penalty of perjury by Law Lab's executive director, Stephen W. Manning, in one of many litigations in which Law Lab has apparently been involved, Law

15

Lab has "offices throughout the United States." Ex S to St. John Decl. at ¶ 4. Law Lab "serve[s] clients and maintain[s] its programs across the country," and its "programming has a national reach" "because of [its] diverse geographic locations" and its "operat[ion] [of] programs . . . across program sites." *Id.* at ¶¶ 6–7. "In short, Law Lab's work is national." *Id.* at ¶ 20.

Accordingly, Law Lab is quite unlike the truly local nonparty that Rule 45 is most concerned about—i.e., an individual resident of the local jurisdiction with scant resources, no connection to the issuing court, and little to no knowledge of the federal judicial system. *See, e.g.*, *XY, LLC*, 307 F.R.D. at 12 (distinguishing "an individual resident of the local jurisdiction" from other nonparty subpoena recipients (quotation omitted)).

Second, Law Lab appears exceptionally well-suited to litigate anywhere in the country. That is clear from the face of its motion to quash, which features more lawyers (six) and more AmLaw 100 firms (two) than many multi-million-dollar commercial cases. Law Lab's ability to secure six large-firm lawyers— including at least one already admitted to practice before the issuing court, *see* Ex. I to St. John Decl.—to represent it connection with a single motion to quash a single subpoena belies any claimed burden. And any of Law Lab's other lawyers who are admitted to practice before this Court are automatically entitled to "file papers and appear on the motion as an officer of the issuing court." Fed. R. Civ. P. 45(f). At bottom, Law Lab's ready access to these

16

considerable resources confirms that transferring its motion will not unduly burden it. *See Lipman*, 284 F. Supp. 3d at 11 (burden on individual resident of the local jurisdiction was mitigated by the fact that he was represented by a "global" firm); *In re Braden*, 344 F. Supp. 3d 83, 95 (D.D.C. 2018) (counsel's admission in the underlying matter disfavored a finding of undue burden).

Third, Law Lab is well-acquainted with the issuing court. Less than a year ago, Law Lab—again represented by a team of six lawyers—sought to intervene in litigation pending in the Lafayette Division of the Western District of Louisiana. *See* Ex. T to St. John Decl. Its intervention request was denied, and it appealed the denial to the Fifth Circuit, where it is represented, most recently, by no fewer than ten lawyers. *See* Ex. U to St. John Decl. Accordingly, given Law Lab's and its counsels' "national reach and familiarity with litigation in courts outside this jurisdiction"—including its familiarity with the issuing court in particular—"the general interest in protecting local nonparties by requiring local resolution of subpoena related disputes is *significantly reduced.*" *Judicial Watch*, 307 F.R.D. at 35 (emphasis added).

Fourth, any alleged burden on Law Lab is lessened by the possibility of telephonic participation in a hearing on the motion to quash. That possibility is not remote or hypothetical; it is real: "judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties." Fed. R. Civ. P. 45(f) Advisory Committee Notes, 2013

Amendments. And the issuing court appears amenable to allowing virtual participation in court proceedings—it has held each of the last four jurisdictional-discovery conferences by Zoom. Exs. E, F, G, H to St. John Decl.

Finally, to the extent the Court finds any burden at all on Law Lab, it is substantially outweighed by the multiple independent "exceptional circumstances" favoring transfer. Mere "theoretical[] inconvenience" or a "light" burden on the part of Law Lab will not do; much more is needed is to overcome a properly supported Rule 45(f) motion. *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. at 26. That is especially true since the issuing court is set to decide as soon as April 4 the very same issues Law Lab raises here.

## CONCLUSION

The Court should promptly transfer Law Lab's motion to the issuing court in the Lafayette Division of the Western District of Louisiana. Because the issuing court may decide the substantively identical motions to quash as soon as April 4, when it is set to hold a hearing on those motions, the State respectfully requests a ruling on this motion by March 31, or, alternatively, sufficiently in advance of the issuing court's April 4 hearing to allow that court time to receive transfer of Law Lab's motion to quash from this Court.

Dated: March 23, 2023

JORDAN BAILEY REDMON*
  *Assistant Solicitor General*
LOUISIANA DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
Fax:  504-556-9900
redmonj@ag.Louisiana.gov

*Counsel for the State of Louisiana*

*\*Pro Hac Vice Application Pending*

Respectfully submitted,

*/s/ Stephen J. Petrany*
STEPHEN J. PETRANY
  *Solicitor General*
Georgia Bar No. 718981
OFFICE OF THE GEORGIA
ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, Georgia 30334
Tel: (404) 458-3408
Fax: (404) 651-6920
spetrany@law.ga.gov

*Local Counsel for Plaintiff*

## LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1(D), I certify that this document has been prepared in Century Schoolbook 13-point font—"one of the font and point selections approved by the Court" in Local Rule 5.1(C).

/s/ Stephen J. Petrany
STEPHEN J. PETRANY

## CERTIFICATE OF SERVICE

I certify that on March 23, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of the filing to all counsel of record.

/s/ Stephen J. Petrany
STEPHEN J. PETRANY