# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **IN RE: SUBPOENA ISSUED TO INNOVATION LAW LAB,** <br><br> **In connection with** *State of Arizona et al. v. Merrick Garland, in his official capacity as Attorney General of the United States et al.,* **Civil Action No. 6:22-CV-01130-DCJ-CBW (W.D. La. April 28, 2022)** | **CIVIL ACTION FILE** <br> **No. 1:23-CV-1324-TWT-JEM** |

## ORDER

Pending before this Court is a Motion to Quash Third-Party Rule 45 Subpoena ("Motion to Quash") filed by Innovation Law Lab ("Law Lab") and The State of Louisiana's Opposed Motion for Rule 45(f) Transfer of Innovation Law Lab's Motion to Quash ("Motion to Transfer"), filed in connection with *State of Arizona et al. v. Merrick Garland et al.*, Civil Action No. 6:22-cv-01130-DCJ-CBW (W.D. La. April 28, 2022) (the "underlying action").[1] (Doc. 3.) For the following reasons, the Court **GRANTS** Louisiana's Motion to Transfer, and **TRANSFERS** Law Lab's Motion to Quash to the U.S. District Court for the Western District of Louisiana, Lafayette Division.[2]

---

[1] All citations to the docket in the underlying action will be written as "Issuing Ct. Dkt." or, for example, "Issuing Ct. Doc. 1."

[2] Federal courts have determined that a decision transferring a subpoena-related case from the court where compliance is required to the court that issued

## I. BACKGROUND

In April 2022, a coalition of 14 States brought constitutional and statutory challenges to the Asylum IFR in the Lafayette Division of the U.S. District Court for the Western District of Louisiana (the "Issuing Court"). (Doc. 3-1 at 8.) Five more States later joined as Plaintiffs, bringing the total to 19 Plaintiff States. (*Id.*) The case was assigned to District Judge David C. Joseph and Magistrate Judge Carol B. Whitehurst. (*Id.*); *see* Issuing Ct. Dkt. In their eight-count operative complaint, the Plaintiff States allege that the Asylum IFR violates the Administrative Procedure Act and the Take Care Clause of the Constitution of the United States, (*id.*), and they seek various forms of relief, (*id.* at 8-9).

Judge Joseph is currently overseeing discovery in this matter. (*See* Issuing Ct. Dkt.) On May 18, 2022, he ordered limited jurisdictional discovery as to the Plaintiff States' Article III standing. (*Id.* at 10; Issuing Ct. Doc. 24.) Thus, in February and March 2023, Louisiana sought jurisdictional discovery from five organizations that have publicly indicated that they help aliens seek asylum in Louisiana or in Florida or across the country, including Law Lab, Immigration

---

the subpoena is not dispositive under 28 U.S.C. § 636(b). *See, e.g., Hoog v. PetroQuest, LLC*, 338 F.R.D. 515, 517 (S.D. Fla. 2021) (collecting cases); *United States v. Roy*, Case No. 18-20898-MC-MOORE/SIMONTON, 2018 WL 1894731, at *1, n.1 (S.D. Fla. Mar. 21, 2018) (collecting cases); *Cadence Pharma., Inc. v. Multisorb Techs., Inc.*, No. 16MC22G, 2016 WL 4267567 (W.D.N.Y. Aug. 15, 2016); *In re : Subpoena to Steven Early*, Civil Action No. 2:21-CV-00029-SCJ-JCF, 2021 U.S. Dist. LEXIS 126887, at *2 n.1 (N.D. Ga. Apr. 20, 2021) (citing *Agincourt Gaming, LLC. v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 U.S. Dist. LEXIS 114348, 2014 WL 4079555, *2 (D. Nev. Aug. 15, 2014)). As a result, the undersigned may issue an order, as opposed to a report and recommendation, transferring this case.

Services and Legal Advocacy ("ISLA"), Louisiana Advocates for Immigrants in Detention ("LAFID"), Rozas and Associates Law Firm, L.L.C. ("Rozas"), and Home Here Nola. (Doc. 3-1 at 10.) To do so, Louisiana served subpoenas on each organization. (*Id.*; Doc. 3-4 at 1-85.) Each subpoena seeks: (1) documents identifying asylum seekers in Louisiana or Florida; (2) documents the recipient used, presented, or distributed in asylum workshops or trainings; (3) documents the recipient provided to asylum seekers about the availability of public benefits; and (4) documents relating to the Asylum IFR. (Doc. 3-1 at 10; Doc. 3-4 at 16-17, 34, 51, 68, 85.)

All of these organizations have filed motions to quash their respective subpoenas. Specifically, on March 16, 2023, Law Lab filed its Motion to Quash in this Court, (Doc. 1); on March 17, 2023, Rozas filed a motion to quash in the Issuing Court, (Issuing Ct. Doc. 114); and on March 20, 2023, ISLA, LAFID, and Home Here Nola jointly filed a motion to quash in the Issuing Court, (Issuing Ct. Doc. 122). In all three motions, the organizations argue that their respective subpoenas should be quashed because they seek privileged information, the information sought can and should be obtained from other sources, responding would be unduly burdensome, and responding would compromise the organizations' ability to represent asylum seekers. (*Compare* Doc. 1 *with* Issuing Ct. Docs. 114, 122.) The Issuing Court has set an in-person hearing on the motions to quash pending before it for April 4, 2023. (Issuing Court Doc. 130.)

On March 23, 2023, Louisiana filed its Motion to Transfer Law Lab's Motion to Quash to the Issuing Court so that Judge Joseph may handle the

3

dispute. (Doc. 3-1 at 6.) Law Lab responded in opposition to this request on March 28, 2023, (Doc. 10). Also on March 28, 2023, the Court held a hearing on the Motion to Transfer during which the Court heard oral argument from Louisiana and Law Lab. The Court now enters this Order.

## II. DISCUSSION

### A. Legal Standard

Subpoena-related motions must be "filed in the district where compliance with the subpoena is required." *Hoog*, 338 F.R.D. at 517 (citing Fed. R. Civ. P. 45(c), (d)(2)(B)(i), and (d)(3)(A); *Morrissey v. Subaru of Am., Inc.*, No. 1:15-cv-21106, 2015 U.S. Dist. LEXIS 173401, 2015 WL 9583278, at *3 (S.D. Fla. Dec. 31, 2015)). "Where compliance is disputed, however, Rule 45(f) permits the court to transfer a subpoena-related motion to the issuing court for adjudication where 'the person subject to the subpoena consents or if the court finds exceptional circumstances.'" *Hoog*, 338 F.R.D. at 517 (quoting Fed. R. Civ. P. 45(f)). If the person subject to the subpoena does not consent to the transfer, then "the proponent of transfer bears the burden of showing that such [exceptional] circumstances are present." *Estes v. 3m Co.*, No. 2:20-MC-3930-WKW-KFP, 2020 U.S. Dist. LEXIS 245406, at *3 (M.D. Ala. Dec. 29, 2020) (quoting Fed. R. Civ. P. 45 Advisory Comm. Notes (2013)). To decide if exceptional circumstances support transfer, "courts should look to a variety of factors," *Hoog*, 338 F.R.D. at 517 (quoting *UBS Fin Servs. Sec. Litig.*, 113 F. Supp. 3d at 288), including "'the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying

litigation,'" *id.* (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)). Courts also consider "judicial economy and the avoidance of inconsistent results." *Lipman v. Antoon*, 284 F. Supp. 3d 8, 10 (D.D.C. 2018) (citing *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014)). The Issuing Court may be "better position[ed] to rule" on a motion to quash the subpoena it issued "due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Hoog*, 338 F.R.D. at 517 (quoting *In re UBS Fin. Servs., Inc. Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015)). Indeed, transfer is warranted when doing so would "avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 Advisory Comm. Notes (2013); *see Early*, 2021 U.S. Dist. LEXIS 126887, at *4-5; *Miller Constr. Equip. Sales, Inc. v. Clark Equip. Co.*, No. MC415-013, 2016 U.S. Dist. LEXIS 13578, at *14. The Court must balance these factors against its "prime concern" of avoiding burdens on the local non-party that is subject to the subpoena. Fed. R. Civ. P. 45 Advisory Comm. Notes (2013); *see Early*, 2021 U.S. Dist. LEXIS 126887, at *4-5; *Miller*, 2016 U.S. Dist. LEXIS 13578, at *14-15; *Venus Med. Inc. v. Skin Cancer & Cosmetic Derm. Ctr. PC*, No. 15-00062MC, 2016 U.S. Dist. LEXIS 4754, at *6-7 (D. Ariz. Jan. 14, 2016).

### B. <u>Analysis</u>

The Court finds that any burden placed on Law Lab by transfer is outweighed by the complexity of the underlying action, the impending close of

the jurisdictional discovery period in the underlying action, and the close similarity of the issues in Law Lab's Motion to Quash and the other two motions to quash pending before the Issuing Court, as well as the importance of avoiding the risk of inconsistent rulings on the issues presented in the three motions to quash, avoiding disruption of Judge Joseph's management of the underlying action, and promoting judicial economy. The Court therefore concludes that exceptional circumstances justify the transfer of this subpoena dispute to the Issuing Court so that Judge Joseph may oversee it. The Court will discuss each reason in turn.

### 1. The underlying litigation is complex.

The underlying litigation here involves eight constitutional or statutory challenges to the Asylum IFR that the 19 Plaintiff States have asserted against the Attorney General of the United States and 15 other federal officials or agencies. (*See* Doc. 3-1 at 14.) That litigation, Louisiana argues, is undoubtedly complex. (*Id.*) (citing *Melder v. State Farm Mut. Auto. Ins. Co.*, No. 1:08-CV-1274-RWS-JFK, 2008 U.S. Dist. LEXIS 34118, at *15 (N.D. Ga. Apr. 25, 2008) ("The complex nature of the underlying litigation and the disputes involving discovery weighs heavily in favor of transferring the motion to quash to the forum court in the Eastern District of Louisiana.")).

Law Lab responds that Louisiana has "overstate[d] the complexity of the underlying litigation." (Doc. 10 at 10.) Specifically, Law Lab argues that the jurisdictional discovery is occurring at the early stages of the case, and that the case "does not rise to the level of complexity that would make this Court

6

incapable of deciding the routine and discrete issues of privilege and undue burden raised in Law Lab's motion to quash." (*Id.*) (citing *Woods v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014) ("[S]ome of the issues that will arise in resolving the motions to quash will also arise in the underlying litigation, […] The court finds, however, that such overlap is an insufficient reason, standing alone, to warrant transfer of the motions."); Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 45 (2015 ed.) ("most disputes involving discovery from nonparties present garden-variety issues of relevance, privilege, and burden that do not require deep familiarity with the case because they call only for the application of everyday discovery principles and ordinary judgment")).

    Though it is true that Law Lab's Motion to Quash includes "garden-variety" issues of privilege and burden, it is also true that the discovery sought through the subpoena is a direct result of Judge Joseph's order that Louisiana conduct discovery on a threshold issue—Louisiana's Article III standing in the underlying action. Moreover, under the factor analysis, this Court is not concerned with the complexity of the issues related to the subpoena but rather of the underlying litigation itself. *See Hoog*, 338 F.R.D. at 517. As Louisiana stated, the underlying action involves 19 Plaintiff States, 15 Defendants, and both constitutional and statutory challenges. (*See* Issuing Ct. Dkt.) Additionally, this case has been pending since April 2022 with more than 140 docket entries related to preliminary proceedings. (*See id.*) The Court finds that such litigation is certainly complex.

7

### 2. Jurisdictional discovery in the underlying action will soon close.

Though the underlying action is in the jurisdictional discovery stage, "[t]ransfer can be appropriate when it would 'avoid interference with a time-sensitive discovery schedule issued in the underlying action.'" *Lipman*, 284 F. Supp. 3d at 12 (quoting *Duck v. SEC*, 317 F.R.D. 321, 324–25 (D.D.C. 2016)). In *Lipman*, the court found that discovery closing in two months posed a "'real risk' that not transferring the motion could interfere with [the issuing court's] 'streamlined procedure for resolving discovery disputes.'" *Id.* (quoting *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 48 (D.D.C. 2016)). The court determined that "transferring the motion" was "necessary to avoid 'disrupting the issuing court's management of the underlying litigation.'" *Id.* (quoting Fed. R. Civ. P. 45(f) Advisory Committee Notes, 2013 Amendments). Here, like in *Lipman*, the jurisdictional discovery period in the underlying action closes in two months. (Issuing Ct. Doc. 129.) As a result, declining to transfer this dispute runs the very real risk of interfering with Judge Joseph's management of the jurisdictional discovery in this case.

### 3. Transfer will avoid the potential risk of inconsistent results on the same issues in the underlying action.

As previously stated, two other motions to quash subpoenas almost identical to the one issued to Law Lab are pending before the Issuing Court. (See Issuing Ct. Docs. 114, 122.) All three motions raise issues as to privilege, undue burden, sourcing this information from elsewhere, and compromising the organizations' mission of helping asylum seekers. (Doc. 1; Issuing Ct. Docs. 114,

8

122.) The Issuing Court has set a hearing on the two motions pending before it for April 4, 2023. As a result, the Issuing Court will be ruling on these issues. If this Court were to retain jurisdiction over Law Lab's Motion to Quash, then this Court and the Issuing Court would be considering the same issues in connection with the same underlying litigation.

It appears that different districts have different views on whether it is material that the issuing court has ruled on the shared issues at the time the court is deciding whether to transfer the dispute to the issuing court. *See Lipman*, 284 F. Supp. 3d at 12–13 ("It is clear that courts in this Circuit are concerned about the *potential* for inconsistent results.")(emphasis in original); *Woods*, 303 F.R.D. at 408 ("[T]he Advisory Committee's note only identifies resolution of the motion as disruptive of the underlying litigation if the issuing court has *already* ruled on the issues, not if it might or will rule on them in the future.")(emphasis in original); *E4 Strategic Sols., Inc. v. Pebble*, No. SA MC 15-00022-DOC (DFMx), 2015 U.S. Dist. LEXIS 191686, at *8 (C.D. Cal. Oct. 23, 2015) (distinguishing *Woods* because "a ruling by the District of Alaska on a motion to quash raising substantially similar objections to virtually identical subpoenas is certain to occur because ACF and Synder's motion to quash has been fully briefed and is awaiting decision by the presiding judge in the Underlying Action") (citing *Agincourt*, 2014 U.S. Dist. LEXIS 114348, 2014 WL 4079555 at *7; *FTC v. A+ Fin. Ctr., LLC*, No. 13-MC-50, 2013 U.S. Dist. LEXIS 172472, 2013 WL 6388539, at *3 (S.D. Ohio Dec. 6, 2013)). Based on the facts, the Court finds this case more akin to *Pebble* than to *Woods*. This Court's separate ruling on Law Lab's motion could

9

certainly run the risk of producing results that are inconsistent with those of the Issuing Court on the exact same issues. *See Wultz*, 304 F.R.D. at 46 (explaining that the "potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of these disputes"); *Early*, No. 2-21-CV-29, 2021 WL 2636020, at *3 (N.D. Ga. Apr. 20, 2021) (finding exceptional circumstances because, inter alia, transfer "minimize[d]" the risk of inconsistent rulings on discovery issues); *Judicial Watch*, 307 F.R.D. at 35–36. ("[t]he fact that the issuing court is addressing privilege issues raised by non-parties in discovery only underscores that court's familiarity with the privilege issues being raised and confirms the need for transfer to ensure consistent rulings."). Transfer would avoid this risk.

### 4. Transfer avoids disrupting the Issuing Court's management of the underlying action.

Louisiana also has shown that transfer will avoid disrupting Judge Joseph's management of the underlying action. Judge Joseph has been overseeing this matter for nearly a year, and in that time he has actively managed discovery. (*See* Issuing Ct. Dkt.) Specifically, he ordered the jurisdictional discovery that resulted in the subpoena at issue, and he has held four status conferences devoted exclusively to jurisdictional discovery issues. (Doc. 3-1 at 9; *see* Issuing Court Docs. 24, 85, 88, 98.) These facts indicate that Judge Joseph, unlike this Court, is intimately familiar with the parties, facts, issues, and discovery in the underlying action.

10

### 5. Transfer will conserve this Court's resources.

Again, if this Court were to retain Law Lab's Motion to Quash, both it and the Issuing Court would be deciding the same issues raised in substantively similar motions to quash substantively similar subpoenas. Such duplicative efforts would waste this Court's resources. Indeed, the "clear benefit to judicial economy and efficiency" warrants transfer. *Hoog*, 338 F.R.D. at 518.

### 6. Transfer will not unduly burden Law Lab.

Louisiana has shown that transfer would place a minimal burden on Law Lab. Louisiana argues that Law Lab "appears exceptionally well-suited to litigate anywhere in the country" due to the fact that it is represented in this dispute by six lawyers from two AmLaw 100 firms. (Doc. 3-1 at 21; *see* Dkt.) In support, Louisiana cites *Lipman*, 284 F. Supp. 3d at 11, in which the court decided that any burden on the local individual subject to the subpoena was mitigated by the fact that he was represented by a global law firm. (*Id.* at 22.)

In its response brief and during the hearing, Law Lab argued that it would be burdened by the transfer because it is a small non-profit organization with limited financial resources. Specifically, Law Lab has only 30 employees and "severe budgetary constraints." (Doc. 10 at 14.) Law Lab argued that to litigate this subpoena dispute in Louisiana, it would have to divert some of those resources away from its core mission and toward seeking local counsel in Louisiana in a very short amount of time and having this local counsel re-brief its Motion to Quash to comply with the rules and law observed in the Issuing Court.

Additionally, Law Lab responds that its situation is distinguishable from that in *Lipman* because Mr. Lipman's firm, of which he was chairman, also represented a party in the underlying action, whereas Law Lab "is not in any way related to the underlying litigation." (Doc. 10 at 14.) Law Lab further argues that its legal representation is on a *pro bono* basis, and simply because it was able to retain such representation does not mean it has the resources to litigate anywhere in the country. (Doc. 10 at 14.)

Regardless of how Law Lab obtained its representation in this dispute, the fact remains that Law Lab is in fact represented by six attorneys from a national and an international law firm. (*See* Dkt.) Moreover, as Louisiana points out, Law Lab's representation includes at least one attorney who has previously been admitted to practice before the Issuing Court. (Doc. 3-1 at 21.) Like in *Lipman*, Law Lab is represented by large firms, at least one of which is familiar with the Issuing Court.

Additionally, Law Lab need not retain local counsel in Louisiana because Rule 45 would allow for its current counsel to appear on the motion as an officer of the Issuing Court. *See* Fed. R. Civ. P. 45(f) ("[I]f the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court."); Fed. R. Civ. P. 45(f) Advisory Comm. Note (2013) ("The rule provides that if these attorneys are authorized to practice in the court where the motion is made, they may file papers and appear in the court in which the action is pending in relation to the motion as officers of that court."); *Collins v. Benton*,

12

No. 2:19-cv-01970-JAD-DJA, 2019 U.S. Dist. LEXIS 196792, at *5 (D. Nev. Nov. 12, 2019) ("Rule 45(f) expressly provides that a subpoenaed party does not need to obtain out-of-state counsel in the event of a transfer.") (citing *Valle del Sol, Inc. v. Kobach*, No. 14-mc-219-JAR, 2014 U.S. Dist. LEXIS 106336, at *13 (D. Kan. Aug. 4, 2014) ("Rule 45(f) expressly states that post-transfer, local counsel is not necessary.")). Moreover, as previously stated, at least one of Law Lab's counsel has been admitted to practice in both the Western and Eastern Districts of Louisiana. (*See* Doc. 3-3 at 171.) And, this counsel at least participated in the drafting of Law Lab's Motion to Quash. (*See* Doc. 1-1 at 22.) This Court is therefore quite confident that Law Lab will have able representation in the Issuing Court.

Finally, Louisiana points out that Law Lab's counsel would be arguing only one motion to quash one subpoena before the Issuing Court, which belies any alleged burden that transfer poses on Law Lab. (Doc. 3-1 at 21.) The Court agrees that these facts mitigate any burden on Law Lab. The Court therefore finds that the balance between the exceptional circumstances and the burden on Law Lab weighs strongly in favor of transfer.

**III.    CONCLUSION**

For the foregoing reasons, The State of Louisiana's Motion to Transfer is **GRANTED**, and Innovation Law Lab's Motion to Quash Third-Party Rule 45 Subpoena is **TRANSFERRED** to the U.S. District Court for the Western District of Louisiana, Lafayette Division.

13

**IT IS SO ORDERED** this 30th day of March, 2023.

_____
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE