# EXHIBIT C



**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE
70804-9005

Jeff Landry
Attorney General

March 14, 2023

<u>**Via Electronic Mail**</u>

Jessica Vosburgh
jvosburgh@ccrjustice.org

    Re:    *Arizona v. Garland*, No. 6:22-cv-1130 (W.D. La.)

Ms. Vosburgh:

    I write to memorialize our March 14, 2023, telephonic meet-and-confer regarding Louisiana's subpoenas to Home Is Here NOLA, Immigration Services and Legal Advocacy ("ISLA"), and Louisiana Advocates for Immigrants in Detention ("LA-AID"). I spoke on behalf of Louisiana; I was joined by my colleague Jordan Redmon. You spoke on behalf of the subpoena recipients; you were joined by Bill Quigley, Julia Long, and David Moosmann.

    As detailed below, we spoke regarding certain objections raised in the letter you sent a few hours before our 4 p.m. call, as well as potentially narrowing Louisiana's subpoena requests. Consistent with the structure of our call, I treat each subpoena request in turn.

**REQUEST NO. 1:**

    DOCUMENTS sufficient to IDENTIFY all ASYLUM APPLICANTS and "asylum seekers" to whom YOU provided support. For the avoidance of doubt, this request asks YOU to IDENTIFY anyone who is an ASYLUM APPLICANT or asylum seeker to whom YOU provided legal representation.

**DISCUSSION OF REQUEST NO. 1:**

    With respect to relevance, we discussed Louisiana's effort to prove standing at both the large-scale statistical level and the granular level via specific examples. You first indicated that the parties already possess this information; I responded that LADOJ did not. You then noted that the federal defendants should have information responsive to Request No. 1. I explained the federal defendants have informally stated they will not produce that information based on yet-to-be-identified regulatory restrictions. On that point, I directed you to *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540 (5th Cir. 2016), which held that one such statutory restriction and an implementing regulation preclude discovery of certain immigration-related information from a government agency, but "clearly do not preclude discovery" from private parties.

You then expressed concern with revealing client documents, particularly by a legal services organization, *i.e.*, ISLA. I explained that legal organizations generally keep a client list for conflict purposes that would not reveal privileged communications. On that point, I explained that the existence of an attorney-client relationship and the identity of a client are *per se* not privileged.[1] Indeed, the existence of an attorney-client relationship must be proven in order to assert the attorney-client privilege vis-a-vis protected communications.

We disputed the purported associational burden you raised in your letter, as well as the idea that aliens seeking a discretionary benefit from the United States have any confidentiality interest whatsoever. I further noted that *In re Primus*, 436 U.S. 412 (1978), focused on organizations with "lobbying" and "political" activities, and such a claim of confidential association for political advocacy would be in significant tension with your clients' claims to be 501(c)(3) tax-exempt organizations.

We then discussed the possibility of narrowing Request No. 1 so as to minimize any burden on your clients. I renewed the offer I made to Mr. Lopez of ISLA, in an email of February 28:

(a) We are willing to narrow the scope of Request No. 1 to cover only ASYLUM APPLICANTS or asylum seekers (a) not detained but located in Florida or Louisiana, (b) who provided a residence address in in Florida or Louisiana, or (c) who provided a mailing address in Florida or Louisiana.

(b) Alternatively, we would consider your identifying 5-10 pending asylum applicants/seekers and 5-10 asylum grantees who have non-citizen children enrolled in public school, who are on SNAP or TANF, or who are on Medicaid as fully satisfying Request No. 1. The identified individuals must be located in Louisiana or Florida, and they cannot be all Cuban or Haitian.

**REQUEST NO. 2:**

ALL DOCUMENTS YOU provide(d) to aliens, including ASYLUM APPLICANTS or asylum seekers, regarding public education, Temporary Assistance for Needy Families ("TANF"), Supplemental Nutrition Assistance Program ("SNAP"), Medicaid, or other public benefits.

**DISCUSSION OF REQUEST NO. 2:**

You stated that your clients have no documents responsive to Request No. 2.

---

[1] The attorney-client privilege "does not embrace everything that arises out of the existence of an attorney-client relationship." *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976). The privilege does not apply, for example, to "the fact that such [an attorney-client] relationship existed," *Goddard v. United States*, 131 F.2d 220 (5th Cir. 1942), or "to information that the client intends his attorney to impart to others," *Pipkins*, 528 F.2d at 563; *see also, e.g.*, *United States v. Leventhal*, 961 F.2d 936, 941 (11th Cir. 1992) (remanding for enforcement of IRS summons: "disclosure of the clients' identities … would not have revealed any privileged information"). On the facts here, the work product doctrine is even more inapplicable.

**REQUEST NO. 3:**

ALL DOCUMENTS regarding the ASYLUM NPRM or FINAL RULE.

**DISCUSSION OF REQUEST NO. 3:**

You acknowledged your clients may have mass communications from the federal government or other advocacy organizations responsive to this request. Indeed, I noted that the rule at issue appears to be prominent in the asylum community, such that it would be difficult to believe your clients had not had any discussion of it or received any communications regarding it from the federal government or national legal organizations. I suggested that an email search for such communications should not be particularly burdensome.

With respect to relevance, I explained that any discussion of the asylum rule is likely to include discussion of its impact. By way of example, I explained that I do not receive emails informing me that Congress passed a random statute. Rather, I receive emails informing me of issues that affect me or the State of Louisiana. There is no reason to expect otherwise vis-à-vis your clients and the documents sought by Request No. 3.

**REQUEST NO. 4:**

ALL DOCUMENTS used or presented by YOU in any workshop or presentation regarding asylum from August 20, 2021 through the present.

**DISCUSSION OF REQUEST NO. 4:**

You confirmed that your clients make presentations responsive to Request No. 4, but you expressed concern with the breadth of the request. Indeed, I noted that I recalled seeing a video of a presentation by one of your clients. I offered to narrow Request No. 4.[2]

---

[2] Louisiana proposes narrowing Request No. 4 to:

ALL DOCUMENTS used or presented by YOU in any workshop or presentation regarding
a. the ASYLUM NPRM or FINAL RULE, including impacts therefrom;
b. public benefits for asylees seekers, ASYLUM APPLICANTS, or asylees, including without limitation public education, TANF, SNAP, and Medicaid; OR
c. information regarding asylum, asylum seekers, ASYLUM APPLICANTS , or asylum grantees in Louisiana or Florida;

from August 20, 2021 through the present.

3

**REQUEST NO. 5:**

Any contract between YOU and any agency of the United States government. For the avoidance of doubt, this request includes subcontracts for which any agency of the United States government is the ultimate contracting party.

**DISCUSSION OF REQUEST NO. 5:**

At the outset, I noted that contracts with the federal government are *per se* not privileged or confidential. I explained that such contracts evidence the presence of asylum applicants or asylees, as well as financial impact from their presence in Louisiana.

You suggested that Louisiana look to the federal defendants for such contracts. I explained that possession is generally analyzed on an agency-by-agency basis, and contracts responsive to Request No. 5 likely include agencies other than the federal defendants. You acknowledged that point. I also noted that the federal defendants may not have visibility into subcontracts responsive to Request No. 5.

You stated that Home Is Here has no grants or contracts. You stated that one of your clients does receive funds from USDOJ in connection with immigration.

With respect to burden, I suggested that providing copies of what are presumably a handful of contracts with federal agencies imposes only minimal burden. You agreed to discuss this point with your clients.

* * * * *

At the close of our call, you indicated that you could consult with your clients and respond within a day or so of receiving this confirmatory letter. I look forward to your response.

Please promptly let me know if I inadvertently omitted anything, or if this letter does not accurately memorialize our conversation.

Best regards,

Joseph Scott St. John
Deputy Solicitor General
