# EXHIBIT 4

# St. John, Joseph

| | |
|---|---|
| **From:** | St. John, Joseph |
| **Sent:** | Monday, April 3, 2023 1:53 PM |
| **To:** | Ward, Brian C. (CIV); Ryan, Erin T. (CIV); Darrow, Joseph A. (CIV) |
| **Cc:** | Redmon, Jordan; james.percival@myfloridalegal.com; 'Anita Patel' |
| **Subject:** | RE: Arizona v. Garland - No. 6:22-cv-1130 (W.D. La.) - Summary of Meet and Confer |

Brian:

If my recounting was actually inaccurate, you should have identified how. I've checked with my colleague who listened in on the call, and his recollection aligns with the summary below.

We disagree that seeking the Court's assistance would be premature. Defendants may still be searching for documents, but you stated unequivocally in early March that Defendants would not produce information identifying asylum applicants or asylees, and Defendants' discovery responses are in accord. Plaintiff States need not wait for Defendants to produce documents when you have plainly refused to produce (or even search for) an entire category of relevant information.

With respect to the stipulation we provided, "Defendants produced approximately 245 pages relating to the immigration proceedings of the eighteen [named plaintiff] parents" in that case, *Ms. L. v. U.S.I.C.E.*, 403 F. Supp. 3d 853, 861 n.9 (S.D. Cal. 2019), and appear to have produced information about hundreds or thousands of asylum-seeking class members, *see id.* at 856 & nn.1-3. Nor was Defendants' production of information in *Ms. L.* an isolated event. *See Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1312531 (S.D. Cal. Apr. 8, 2021).

With respect to relevance, assuming arguendo that the Asylum Rule has not yet "meaningfully affected" Louisiana, it will predictably do so, and we need not wait for the harm to hit. We believe the Asylum Rule has, in fact, affected Louisiana; one dollar of impact is enough for standing; and Defendants' can't simply decree their unlawful rule hasn't "meaningfully impacted" Louisiana then unilaterally deny discovery. Regardless, there can be no doubt the Asylum Rule has impacted Florida – one of the roll-out cities was Miami. If your point is that standing can be proven via high-level statistics alone, we agree. But, as you know, courts prefer granularity. *See Florida v. United States*, -- F.Supp.3d --, 2023 WL 2399883 (N.D. Fla. Mar. 8, 2023).

We again encourage Defendants to withdraw their objections.

Best regards,
Scott

---

**From:** Ward, Brian C. (CIV) <Brian.C.Ward@usdoj.gov>
**Sent:** Thursday, March 30, 2023 1:16 PM
**To:** St. John, Joseph <StJohnJ@ag.louisiana.gov>; Ryan, Erin T. (CIV) <Erin.T.Ryan@usdoj.gov>; Darrow, Joseph A. (CIV) <Joseph.A.Darrow@usdoj.gov>
**Cc:** Redmon, Jordan <RedmonJ@ag.louisiana.gov>; james.percival@myfloridalegal.com; 'Anita Patel' <Anita.Patel@myfloridalegal.com>
**Subject:** RE: Arizona v. Garland - No. 6:22-cv-1130 (W.D. La.) - Summary of Meet and Confer

**CAUTION:** This email originated outside of Louisiana Department of Justice.  Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hey Scott,

This is not an accurate summary of our call. This misstates things that were said on the call and includes things that were not discussed. Ultimately though, as I said on the call, I think all of this is premature while we're still searching for documents. As we previously discussed, agreed, and told the Court, we need approximately another 30 days to search for responsive documents, and we plan to serve updated responses and objections once we have completed that search and production. I don't know that any of this is ripe for discussion until we determine what we're producing and whether we ultimately withhold documents based on our objections or revise those objections.

Thanks for forwarding the stipulation. We will review and discuss on our end, though on an initial skim it does not appear that this contemplates turning over information on whether individuals have applied for asylum or says anything about asylum at all. Can you provide an explanation for why identifying information about asylum seekers is necessary in your view? If the rule at issue in this case has not meaningfully affected the number of asylum seekers in Louisiana then the identity of the asylum seekers seems irrelevant even under Plaintiffs' theory of standing.

Thanks,
Brian

---

**From:** St. John, Joseph <StJohnJ@ag.louisiana.gov>
**Sent:** Tuesday, March 28, 2023 5:45 PM
**To:** Ward, Brian C. (CIV) <Brian.C.Ward@usdoj.gov>; Ryan, Erin T. (CIV) <Erin.T.Ryan@usdoj.gov>; Darrow, Joseph A. (CIV) <Joseph.A.Darrow@usdoj.gov>
**Cc:** Redmon, Jordan <RedmonJ@ag.louisiana.gov>; james.percival@myfloridalegal.com; 'Anita Patel' <Anita.Patel@myfloridalegal.com>
**Subject:** [EXTERNAL] Arizona v. Garland - No. 6:22-cv-1130 (W.D. La.) - Summary of Meet and Confer

Brian:

I write to memorialize our telephonic meet-and-confer of earlier today.

**General**

I expressed frustration that – after having had our discovery requests in hand for six weeks – the federal Defendants' entire document production consisted of a link to a publicly available document from last December. Although we had discussed responses and a rolling document production, federal Defendants have entirely failed to produce documents, and the purpose of exchanging responses was to tee-up any legal issues so as to move discovery forward. You responded by noting that Defendants are still searching for documents.

**Objections to Definitions**

(1) We discussed the definition of "asylum applicant." Defendants contend there are multiple pathways to asylum, and that only applicants subject to the new rule are relevant. I explained Plaintiff States' position as (a) the presence of asylum applicants and asylees in Louisiana and Florida (and the associated costs) is relevant to whether additional asylum applicants and asylees (and the associated costs) will predictably follow; (b) in a recent proposed rule, the federal government relied on the magnet theory as justification for the rule, thereby conceding that changes in immigration policy predictably result in changes in migration, and (c) concern that Defendants are "stuffing" asylum applicants into categories such that selective statistics don't present the true picture, including via the artifice of a limited rollout of the new rule.

(2) We discussed Rule 34 as applied to databases. Defendants contend they are not required to compile the contents of databases. I explained that, on its face, Rule 34 requires a responding party to translate databases into a reasonably usable form. You noted that Defendants are not certain this objection applies; they are still searching for documents and

the objection "might apply." I expressed concern that Defendants were improperly asserting an objection without a good faith basis for doing so established by a reasonable inquiry.

(3) With respect to the definition of "identify," Defendants stated that they treat the requested information very seriously and never produce that information. I pointed to *Ms. L v. USCIS* in the Southern District of California, and I noted that Defendants simply stipulated to a protective order and appeared to have produced identifying information regarding asylum applicants. As requested, I am attaching a copy of that stipulation. I inquired whether Defendants' counsel have asked to Attorney General or Secretary of Homeland Security to exercise their discretion and produce information, as the cited regulations facially provide. You stated that no such request had been made, and you saw no reason to do so. We then discussed the relevance of identifying information. I pointed to the same explanation I provided during status conferences: if the federal Defendants identify asylum applicants and asylees, state agencies should be able to confirm expenditures associated with those asylum applicants and asylees.

At that point, we transitioned into a brief discussion of standing. You first contended that Plaintiff States needed to show a present effect on expenditures. I explained that was not correct; impending future harm is enough.

**Specific Discovery Requests**

I noted that our discussion had largely addressed Defendants' objections with the exception of requests related to training materials on the new rule. You claimed those materials on related to the merits and, in any event, the rule had to be "judged … by itself." I disagreed, and I explained that Defendants' views of how the standards had changed and how the rule would impact asylum grants was relevant to standing. You noted that Defendants had produced training materials last year. I noted that – particularly given Defendants claim of a limited rollout – it would be surprising if those materials had not been updated to reflect real-world experience. You stated that Defendants view training materials as not relevant; Defendants had not searched for updated materials; and Defendants would not do so. You noted in passing that these were simply "standard objections."

**Encouragement to Withdraw Objections**

At the end of our call, I expressed concern that Defendants had not made a reasonably inquiry prior to asserting their objections, and I asked you to promptly reconsider and withdraw those objections.

Please let me know if this is not an accurate summary of our call.

Best regards,
Scott



**Joseph Scott St. John**
Deputy Solicitor General
Office of Attorney General Jeff Landry
Tel: (225) 485-2458
stjohnj@ag.louisiana.gov
www.AGJeffLandry.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. To reply to our e-mail administrator directly, please send an e-mail to postmaster@ag.state.la.us.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.