# EXHIBIT 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| STATE OF FLORIDA, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) Civil Action No. 3:21-cv-01066 ) |
| The UNITED STATES OF AMERICA, *et al.*, | ) ) ) ) |
| *Defendants.* | ) ) |

# DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND POST-TRIAL BRIEF

standing, the States demonstrated a direct financial injury (*Dep't of Commerce*, 139 S. Ct. at 2565), or a loss of State-owned real property (*Massachusetts*, 549 U.S. at 517-20). Here, Plaintiff is alleging indirect, downstream financial harms identical to those alleged in *Arizona*, 40 F.4th at 386. The Court did not find the alleged harms were sufficient for special solicitude there, and neither should the Court here.[22]

Plaintiff lacks standing to bring this case as a matter of law. Because Plaintiff failed to show at trial any direct, redressable harm that is traceable to the challenged policies, Plaintiff also lacks standing as a matter of fact.

### B. The majority of Plaintiff's standing evidence is "useless."

As this Court noted at the end of the trial, the majority of Plaintiff's standing evidence was "useless" and not "particularly helpful." Tr. Day 4, 119:16-120:7. Plaintiff claimed that five of its agencies incurred costs from the challenged policies, thereby establishing standing. Those agencies are the Department of Education ("DOE"), Department of Corrections ("DOC"), Department of Children and Families ("DCF"), Department of Economic Opportunity ("DEO"), and Agency for

---

*Id.* at 146. This case, however, is more comparable to *Arizona*, as both cases deal with a challenge to an amalgamation of policies and decisions. *See Arizona*, 40 F.4th at 380. Thus, the Court should follow the of the Sixth Circuit's interpretation of *Massachusetts* here.

[22] Even were Plaintiff entitled to special solicitude, such designation still "does not remove Article III's imperative of a cognizable case or controversy or the requirements of injury, causation, and redressability." *Arizona*, 40 F.4th at 385-86.

75

Health Care Administration ("AHCA").[23] *See* Pretrial Stipulation, ECF 122, ¶¶ 27-63. However, the only witness Plaintiff presented to testify regarding standing at trial—indeed the only witness Plaintiff presented at all—was a representative from the Department of Education. Plaintiff otherwise relied only upon the Parties' December 9, 2022 pretrial stipulation to establish standing. This Court determined the evidence from the DOC, AHCA, DEO, and DCF was insufficient to show standing. Tr. Day 4, 119:16-120:7. Indeed, Plaintiff has admitted it does not track expenditures or data in a manner that allows it to identify expenditures made on specific noncitizens released under the challenged policies.[24] Therefore, Plaintiff cannot determine whether stopping or changing the challenged policies would impact its alleged costs. Even assuming Plaintiff's theory of indirect injury is cognizable, therefore, the evidence it presented fails to carry its burden of demonstrating Article III standing.

Notably, many of the stipulations include expenditures that *predate* the policies challenged in this case. Tr. Day 4, 36:8-18; 120:8-17; Pretrial Stipulation, ECF 122, ¶¶ 32, 34, 37, 44, 54, 55, 57, 58, 59. For example, paragraph 59 of the

---

[23] Plaintiff also previously alleged injuries from the Department of Highway Safety and Motor Vehicles, however, those alleged injuries and attendant pretrial stipulations (¶¶ 64-70) were withdrawn prior to the start of trial. *See* Transcript from Jan. 5, 2023 conference, at 20:2-21:9.
[24] Pretrial Stipulation, ECF 122, ¶ 27; Bottcher Dep., 25:1-16, 36:5-38:1, 41:4-10; Heckman Dep., 32:11-33:13, 135:4-17, 139:15-140:5; Tr. Day 1, 31:8-18, 47:17-48:7, 51:23-52:1, 53:2-7; Tr. Day 3, 77:12-21, 78:23-79:13, 81:10-82:1; Tr. Day 4, 21:13-25, 32:17-33:5, 34:16-20, 35:1-10, 36:8-11, 37:21-38:12, 42:12-18, 43:10-12, 45:17-22, 46:16-47:1.

76

Pretrial Stipulation provides that from January 2020 through January 2022, DCF spent $12,236 providing Relative Caregiver Financial Assistance from State funds to qualifying noncitizens. Pretrial Stipulation, ECF 122, ¶ 59. But a good portion, if not all, of this $12,236 may be attributable to noncitizens who entered the country before January 20, 2021, the date the challenged practices allegedly began. Tr. Day 4, 36:12-16, 36:17-18. Many of the other stipulations on which Plaintiff relies to establish standing suffer the same infirmity. *Id.* at ¶¶ 44, 54, 55, 57, 58, 59. The Court, therefore, cannot determine what, if any, portion of the stipulated costs incurred by the various agencies could be attributable to the practices challenged here after January 2021. Tr. Day 4, 120:8-17, 36:3-18.

Defendants adduced witness testimony to show the insufficiency of Plaintiff's standing claims. For example, Defendants showed that many of the services DCF oversees and administers (including SNAP, TANF, and Medicaid) have a five-year waiting period before many noncitizen applicants for admission would be eligible to receive their benefits, such that Florida could not incur resulting expenses until 2026 at the earliest. Tr. Day 4, 14:9-15:3, 25:15-20, 33:25-34:15, 35:24-36:2. The only exceptions to that waiting period are Cubans, Haitians, Ukrainians, and Afghans. Tr. Day 4, 14:9:22, 16:23-17:2, 25:15-25. The DCF witness, Patricia Grogan, was unable to testify whether any of the Cubans, Haitians, Ukrainians, or Afghans receiving DCF services were released at the Southwest border under the challenged

77

policies, however. Tr. Day 4, 18:13-19, 32:8-10, 48:21-49:6, 18:21-25, 19:1-4, 48:21-49:6. She admitted that many Cubans and Haitians arrive to the United States via boat. Tr. Day 4, 32:11-16. Thus, Plaintiff cannot reasonably argue that Cubans or Haitians using DCF services have any nexus to the challenged policies. Tr. Day 4, 120:25-121:7. While DCF tracks data of Cuban and Haitian noncitizens who entered the country between October 2021 and September 31, 2022, and who have consumed services provided by the refugee assistance program in Florida, Tr. Day 4, 53:13-20, those refugee services were fully funded by the federal government, Tr. Day 4, 37:11-13. And DCF still cannot show where these Cuban and Haitian noncitizens entered the country, or whether any of them received services funded by the State of Florida. Tr. Day 4, 53:13-20, 54:10-55:11. Therefore, Plaintiff is unable to establish that it suffered any injury providing DCF services to these populations, let alone other applicants for admission released at the Southwest border after January 2021.

In sum, the injuries alleged by AHCA, DOC, DEO, and DCF are too attenuated to establish standing. Tr. Day 4, 194:14-24.

### C. Plaintiff has not shown the injuries alleged by the Florida Department of Education are traceable to the challenged policies.

Similarly, Plaintiff's allegation of indirect injury to the Florida Department of Education ("DOE") is not sufficiently traceable to the challenged policies and cannot establish standing.

78

As an initial matter, it is undisputed that DOE "does not track alien expenditures in a manner that allows it to identify expenditures on specific aliens released under the challenged policies." Pretrial Stipulation, ECF 122, at ¶ 27. Plaintiff has conceded it cannot show traceability based on DOE's evidence. If Plaintiff cannot quantify its harm, it cannot establish standing, which requires the evidence of harm to be "concrete and particularized" and have a "causal connection…to the conduct complained of…" *Lujan*, 504 U.S. at 560-61. Thus, to find standing for Plaintiff, this Court would have to engage in chain of speculation involving several impermissible inferences and assumptions. Tr. Day 4, 122:17-19.

Plaintiff put forward evidence that there were 17,000 more "immigrant" students in Florida's public schools in the 2021-2022 school year compared to the 2020-2021 school year. Tr. Day 1, 41:16-19. Notably, the definition of an "immigrant" student—the only metric Plaintiff has to track this increase—is broader than just noncitizens and is certainly broader than applicants for admission paroled at the Southwest border since January 2021. Tr. Day 1, 46:21-47:8. It can include lawful permanent residents or even U.S. citizens. *Id.* Just showing an increase in "immigrant" students is not enough to show traceability to the challenged policies. These "immigrant" children may not be noncitizens at all, and if they are, there is no basis for determining whether they were released subject to the challenged policies, or if they are present in Florida under other immigration statutes. DOE does not track

79

actually proved. Should the Court enter any judgment in Plaintiff's favor, Defendants respectfully request that the Court stay its order from taking effect for sufficient time to allow for potential new rulemaking, *see Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 50 F.4th 164, 172 (D.C. Cir. 2022), or to permit Defendants to decide whether to appeal and seek a stay pending appeal, given the national significance of the issues presented in this case. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

## CONCLUSION

For the foregoing, judgment should be entered in favor of Defendants, dismissing all of Plaintiff's claims with prejudice.

Date: February 16, 2023         Respectfully submitted,

JASON R. COODY                  BRIAN M. BOYNTON
*United States Attorney*        *Principal Deputy Assistant Attorney General*

MARIE A. MOYLE                  WILLIAM C. PEACHEY
*Assistant United States Attorney*  *Director*
Northern District of Florida    Office of Immigration Litigation
                                District Court Section

                                EREZ REUVENI
                                *Assistant Director*

                                /s/ *Joseph A. Darrow*
                                JOSEPH A. DARROW
                                ERIN T. RYAN
                                ELISSA P. FUDIM
                                *Trial Attorneys*
                                U.S. Department of Justice
                                Civil Division

199

Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Joseph.a.darrow@usdoj.gov

200

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2023 I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of Florida by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division

201