EXHIBIT 10

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
ALEXANDER J. HALASKA (IL 6327002)
DHRUMAN Y. SAMPAT (NJ 270892018)
Trial Attorneys
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, INC., *et al.*,<br><br>           *Plaintiffs*,<br><br>         v.<br><br>CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>           *Defendants*. | Case No. 3:17-cv-02366-BAS-KSC<br><br>Hon. Cynthia A. Bashant<br><br>**OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE** |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................1

    The Preliminary Injunction Order ....................................................................1

    The October 30 Order on Plaintiffs' Motion to Clarify .................................3

    The Government's Steps to Implement the October 30 Order..........................5

    The Ninth Circuit's Partial Stay of the October 30 Order................................8

ARGUMENT ........................................................................................................8

  I.   Legal Standard. ...........................................................................................8

  II.  Plaintiffs' Proposal to Require an Implementation Plan and Regular
       Court Monitoring is Unfounded. ...............................................................9

  III. The Court Should Reject Plaintiffs' Specific Implementation
       Demands Because They Are Not Required By, and Contradict, the
       Court's Orders. .......................................................................................12

      A.  The Government Is Making Reasonable Efforts to Identify Class
          Members. ..........................................................................................12

      B.  Defendants' Proposed Notice Comports with Paragraph 3 of the
          October 30 Order.............................................................................18

      C.  The Government's Approach to Reopening and Reconsidering
          Final Asylum Denials Fully Complies with Paragraph 2. ....................23

CONCLUSION ...................................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Wolf,*
    945 F.3d 1223 (9th Cir. 2019) ..............................................................3

*Al Otro Lado v. Wolf,*
    952 F.3d 999 (9th Cir. 2020) ...................................................... passim

*Armstrong v. Schwarzenegger,*
    622 F.3d 1058 (9th Cir. 2010) ............................................................10

*Barahona-Gomez v. Reno,*
    167 F.3d 1228 (9th Cir. 1999) .............................................. 19, 20, 21

*CAIR v. Trump,*
    471 F.Supp.3d 25 (D.D.C. June 30, 2020).........................................24

*Clark v. City of Seattle,*
    899 F.3d 802 (9th Cir. 2018) ..............................................................21

*Fraihat v. U.S. Immigration and Customs Enforcement,*
    2020 WL 2758553 (C.D. Cal. May 15, 2020).....................................21

*Gonzalez v. Barr,*
    2020 WL 3402227 (N.D. Cal. June 19, 2020)......................................21

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,*
    10 F.3d 693 (9th Cir. 1993) ..................................................................9

*Matter of A-B-,*
    27 I&N Dec. 316 (A.G. 2018) .............................................................25

*Matter of O-S-G,*
    24 I. & N. Dec. 56 (BIA 2006) ...........................................................25

*Matter of Pula,*
    19 I&N Dec. 467 (BIA 1987) ..............................................................25

*Scholl v. Mnuchin,*
    2020 WL 5877674 (N.D. Cal. Oct. 2, 2020) .......................................21

1  *Shillitani v. United States,*

2      384 U.S. 364 (1966) ..................................................................................9

3  *Spallone v. United States,*

4      493 U.S. 265 (1990) ..................................................................................9

5  *United States v. Apple, Inc.,*

6      992 F. Supp. 2d 263 (S.D.N.Y. 2014) ......................................................9

7  *United States v. LaForest,*

8      2019 WL 4940257 (C.D. Cal. June 18, 2019) .......................................11

9  *United States v. Seugasala,*

10     670 F. App'x 641 (9th Cir. 2016) ...........................................................11

11 *United States v. Yonkers Bd. Of Educ.,*

12     29 F.3d 40 (2d Cir. 1994)..........................................................................9

13 *Wal-Mart v. Dukes,*

14     564 U.S. 338 (2011)................................................................................23

15 *Walters v. Reno,*

16     145 F.3d 1032 (9th Cir. 1998) .......................................................... 20, 21

17 **Statutes**

18 8 U.S.C. § 1158(a)(3).....................................................................................25

19 8 U.S.C. § 1252(a)(2)(b)(ii). .........................................................................25

20 **Regulations**

21 8 C.F.R. § 1003.2 ...........................................................................................23

22 8 C.F.R. § 1003.2(c)(1)..................................................................................25

23

24

25

26

27

28

## **INTRODUCTION**

In their Motion, Plaintiffs seek to "enforce" compliance with the directives of the Court's October 30, 2020 Order—an order that the government has done, and continues to do, substantial amounts of work to implement, often in collaboration with Plaintiffs. The government's diligent work to implement the complex requirements of the order includes instituting entirely new procedures and recordkeeping requirements for class membership interviews and determinations, generating comprehensive class lists using data from several components, and identifying thousands of asylum denials for burdensome manual file review. Plaintiffs' request for compliance plans and Court involvement are not warranted by the minimal complaints Plaintiffs raise, which largely constitute disagreements over the order and timing of implementation steps. Indeed, Plaintiffs' Motion demonstrates that Defendants have incorporated many of Plaintiffs' requests. Compliance plans and monitoring are also counter-productive at this juncture because the Ninth Circuit has temporarily stayed the Order's requirement that the government affirmatively identify cases for reopening or reconsideration, which was the focus of the bulk of the government's implementation efforts thus far. The remainder of Plaintiffs' Motion to "enforce" constitutes specific demands regarding implementation of the preliminary injunction that would add new or different requirements not contemplated by the Court's prior preliminary-injunction orders and should thus be rejected.

## **BACKGROUND**

### **The Preliminary Injunction Order**

In July 2017, Plaintiffs filed this lawsuit that primarily challenges the "metering" procedures that U.S. Customs and Border Protection (CBP) has implemented at various times at land ports of entry (POEs) along the U.S.-Mexico border to regulate the intake of undocumented aliens into the POE based on the POE's capacity.

Ex.[1] A ¶ 4. In September 2019, Plaintiffs asked the Court to enjoin the application of an interim final rule (the "Transit Rule") that had been issued on July 16, 2019, to a provisional subclass of individuals who were metered before that date. The Transit Rule provided that, with some exceptions, "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence in route to the United States, shall be found ineligible for asylum," unless the alien shows that he or she applied for and was denied protection in a third country through which the alien traveled en route to the United States. 84 Fed. Reg. 33,829, 33,843 (July 16, 2019).

On November 19, 2019, the Court enjoined the Transit Rule from being applied to aliens who were metered before the rule took effect. ECF No. 330 (PI Order). The Court certified a provisional class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." *Id.* at 36. The PI Order states: "Defendants are hereby **ENJOINED** from applying the [rule] to members of the aforementioned provisionally certified class and **ORDERED** to return to the pre-[rule] practices for processing the asylum applications of members of the certified class." *Id.* The court reasoned that the Transit Rule, "by its express terms," "does not apply to those non-Mexican foreign nationals in the subclass who attempted to enter or arrived at the southern border *before* July 16, 2019 to seek asylum but were prevented from making a direct claim at a POE pursuant to the metering policy." *Id.* at 31.

The government took prompt steps to identify class members with pending immigration proceedings so that the Transit Rule would not be applied to them. U.S.

---

[1] "Ex." refers to exhibits to the accompanying Attorney Declaration of Katherine Shinners (Shinners Decl.). "Lev Exh." Refers to the exhibits attached to the Declaration of Ori Lev (ECF No. 644-2) accompanying Plaintiffs' Motion to Enforce.

GOV'T OPPOSITION
TO MOT. TO ENFORCE
Case No. 3:17-cv-02366-BAS-KSC

Citizenship and Immigration Services (USCIS) instructed asylum officers to begin asking a series of questions during credible-fear interviews to ascertain whether the interviewee was subject to metering before July 16, 2019, and ordered officers not to apply the Transit Rule to any interviewee who established that he was more likely than not a class member. ECF No. 508-2 (USCIS Guidance) at 7-9. The Executive Office for Immigration Review (EOIR)—which is not a party to this litigation but nevertheless agreed to act consistently with the PI Order—issued privileged legal guidance regarding the injunction. ECF No. 508-4 (Aug. 3, 2020 Anderson Decl.) ¶ 4. Additionally, CBP instructed its Office of Field Operations (OFO) and the U.S. Border Patrol to annotate the inspection records of aliens who affirmatively claimed during initial immigration inspection to previously have been subject to metering. ECF No. 508-8 (Aug. 3, 2020 Visconti Decl.) ¶¶ 5-6. And out of an abundance of caution, U.S. Immigration and Customs Enforcement (ICE) instructed field leadership to suspend the removals of certain aliens then in ICE's custody, pending class-membership screening. ECF No. 508-6 (ICE Guidance) at 1.

On December 4, 2019, the government appealed from the PI Order and sought a stay pending appeal. On December 20, 2019, a Ninth Circuit motions panel granted a temporary stay to "preserve the status quo." *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019). USCIS asylum officers resumed applying the rule during credible-fear interviews (but were to note in USCIS's records if an interviewee affirmatively claimed to be a class member). ECF No. 508-2, at 4-5. On March 5, 2020, the Ninth Circuit motions panel denied the government's request for a stay pending appeal, which terminated the temporary stay. *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020). The impacted agencies promptly returned to the policies under which they were complying with the injunction. *See* ECF No. 508-2, at 2-3; ECF No. 508-4 ¶ 6; ECF No. 508-7. The government's appeal of the PI Order remains pending.

**The October 30 Order on Plaintiffs' Motion to Clarify**

Months later, in July 2020, Plaintiffs filed a motion asking the Court to order

1  the government to immediately reopen or reconsider class members' asylum appli-

2  cations that were denied before the PI Order issued or while it was stayed, and to

3  comprehensively identify class members and notify them of the preliminary injunc-

4  tion. *See* ECF No. 494-1 at 3. Plaintiffs also asked the Court to order that EOIR is

5  bound by the preliminary injunction. *Id.*

6      On October 30, 2020, the Court granted the motion. ECF No. 605 (October

7  30 Order). The Court reasoned that the relevant status quo was before the Transit

8  Rule issued on July 16, 2019, and that to preserve that status quo the preliminary

9  injunction applies to those who received final asylum denials before the PI Order

10  issued or while it was stayed, and that "affirmative action" by Defendants was re-

11  quired. October 30 Order at 11-14. The Court also found it "appropriate for Defend-

12  ants to make reasonable efforts to aid in identifying potential class members at all

13  stages of removal proceedings." *Id.* at 22. The Court clarified that identification and

14  notice efforts would not substitute for proving class membership: "As Plaintiffs

15  readily concede, individuals would still bear the burden of demonstrating their class

16  membership, and therefore their eligibility for relief, to immigration officials." *Id.*

17  Ultimately, the Court ordered that EOIR would be bound by the terms of the prelim-

18  inary injunction, and directed the following actions:

19      (2) DHS and EOIR must take immediate affirmative steps to reopen or re-
20          consider past determinations that potential class members were ineligi-
21          ble for asylum based on the [Transit Rule], for all potential class mem-
            bers in expedited or regular removal proceedings. . . .;
22      (3) Defendants must inform identified class members in administrative
23          proceedings before USCIS or EOIR, or in DHS custody, of their poten-
            tial class membership and the existence and import of the preliminary
24          injunction; and
25      (4) Defendants must make all reasonable efforts to identify class members,
            including but not limited to reviewing their records for notations re-
26          garding class membership . . . and sharing information regarding class
27          members' identities with Plaintiffs.

28  October 30 Order at 25.

### The Government's Steps to Implement the October 30 Order

The government took prompt steps to implement the October 30 Order's additional directives. Previously, the government had complied with the PI Order by identifying class members during the course of pending proceedings so that the Transit Rule would not be applied to them. Under the October 30 Order, the government is charged with additional backward-looking efforts to identify potential class members—including those whose immigration proceedings occurred before the PI Order issued.

***Affirmative Steps to Reopening or Reconsidering Asylum Denials Under Paragraph 2.*** The government focused much of its initial efforts on taking "immediate affirmative steps" to identify final asylum denials that may need to be reopened or reconsidered under Paragraph 2 of the Order. *See* Shinners Decl. ¶¶ 3, 7. To that end, EOIR promptly notified its adjudicators of the October 30 Order. Ex. B, ¶ 5. EOIR also promptly investigated its data—as well as relevant data from DHS components—to identify cases in which asylum denials were recorded in potential class members' regular removal proceedings to prepare to conduct the burdensome manual review of the Records of Proceedings (ROPs) for each identified case to determine whether the case qualifies for relief under Paragraph 2. *Id.* ¶ 6. At least one asylum denial issued before the PI Order was entered has already been affirmatively reopened by an immigration judge (IJ). Ex. C.

At the same time, USCIS promptly worked to develop procedures to determine class membership for individuals who have final removal orders (from expedited or regular removal proceedings) and are in the custody of U.S. Immigration and Customs Enforcement (ICE), again for the purpose of complying with Paragraph 2. As set forth in the attached declaration of Elizabeth E. Mura, these carefully-drafted procedures are extremely detailed, and required the creation of new templates, guidance documents, and recordkeeping procedures. Ex. D, ¶¶ 4-9. Under these procedures, ICE refers potential class members in its custody and subject to

imminent removal to the local USCIS asylum office and provides notice to the interviewee. *Id.* ¶¶ 4, 6. (The current version of this notice, which was developed in part through consultation with Plaintiffs, is attached as Ex. E.) An asylum officer conducts a class membership interview, and is instructed to ask a list of questions to determine whether the individual sought to enter the United States at a POE to seek asylum before July 16, 2019, to consult waitlists maintained by Mexican entities that are in the possession of the U.S. government (which were obtained from Plaintiffs or from CBP), and to consult DHS records. Ex. D, ¶ 4; ECF No. 644-1 (Cassler Decl.); Ex. A, ¶ 14. The asylum officer is also instructed to ask potential class members whether they have additional documentary evidence to submit (although such documentation is not required to demonstrate class membership). The officer must also document these activities and the resulting class membership determination. Ex. D, ¶ 5. In addition to drafting these procedures and templates, USCIS also developed a separate case management mechanism to track data about these class membership interviews and determinations. *Id.*

Under these USCIS procedures, if the asylum officer determines that an individual is more likely than not a class member, the individual will be referred for further action depending on the nature of their proceedings. For example, an individual with an order of expedited removal who previously had the Transit Rule applied at the USCIS credible fear determination stage will receive a new credible fear interview without application of the Transit Rule. Ex. D, ¶ 7. For an individual who received a final removal order in regular removal proceedings, USCIS will inform ICE of the class membership determination, *see id.* ¶ 8; the government is working on procedures as to how to handle motions to reopen and/or reconsider for such individuals who are determined by USCIS to be class members and are entitled to relief under Paragraph 2. Shinners Decl. ¶ 32.

***Reasonable Efforts to Identify Class Members to Provide Notice Under Paragraphs 3 and 4.*** Although the government focused initial efforts on the "immediate

affirmative steps" required by Paragraph 2, it of course also moved forward with implementation of Paragraphs 3 and 4 of the October 30 Order. After consultation with Plaintiffs, Defendants initiated a plan—very similar to that proposed by Plaintiffs—to identify a broad swath of asylum applicants who entered along the Southern land border and who *may* be class members. *See* Lev. Decl. ¶ 24(a); Shinners Decl. ¶¶ 12, 23. This overly-broad list would be shared with Plaintiffs and could be used to facilitate notice to potential class members of how to submit evidence of class membership, depending on the nature and stage of their proceedings and the requirements of the October 30 Order. *See id.*

To create this list, CBP pulled data from its electronic system of records for "all non-Mexican aliens encountered along the southwest border by both USBP and OFO, with an encounter date of 7/16/19 through 6/30/20, who were processed for expedited removal, expedited removal/credible fear, or a notice to appear (NTA)." Ex. F, ¶ 5. Although the initial list of individuals was generated on November 25, 2020, CBP had to do an additional data pull and make manual corrections due to errors in the initial pull; these tasks were completed on December 17, 2020. *Id.* ¶¶ 6-8. The government is cross-referencing the alien registration numbers (A Numbers) of the individuals on this master list with data from USCIS and EOIR to narrow the list to individuals who sought asylum or similar forms of protection from removal (as well as to exclude those that have already been finally granted asylum and are thus no longer "continu[ing] to seek access to the U.S. asylum process"). Thus, for example, the government has cross-referenced CBP's master list of individuals against USCIS's asylum pre-screening case management data. Ex. D, ¶ 9. This list could then be further narrowed to eliminate those who have been granted asylum. *See* Shinners Decl. ¶ 28. Once these efforts to refine the list are complete, the government intends to obtain still other data points—such as information concerning execution of removal orders and alien and attorney contact information—to assist in determining whether and how the government or Plaintiffs, as applicable depending

on the stage of their proceedings, will provide notice to such individuals as contemplated by Paragraph 3 and page 22 of the October 30 Order. *See* Shinners Decl. ¶¶ 12, 23.

Finally, to enable sharing of this and other lists in the government's possession while also protecting potential class members' private information, the government worked with Plaintiffs to negotiate a protective order that would set conditions on the use and disclosure of the asylum-related information. *See generally* ECF 647-1 at 4-6. Because Plaintiffs would not agree to certain conditions on disclosure of such information to third parties, *see id.*, on December 15, 2020, Defendants sought a protective order from the Court, *see* ECF No. 647. That motion is pending.

## The Ninth Circuit's Partial Stay of the October 30 Order

On December 2, 2020, the government noticed its appeal from the October 30 Order. ECF No. 634. The government also moved for a stay of the Order from this Court (ECF No. 637), to which Plaintiffs' opposition is due on January 25, 2021. *See* ECF No. 641 at 3. On December 12, 2020, the government moved for a stay of the October 30 Order from the Ninth Circuit. *Al Otro Lado v. Wolf*, No. 20-56287, Dkt. Entry 7-1 (Dec. 12, 2020). On December 18, 2020, the panel assigned to that appeal entered a partial administrative stay, temporarily staying the October 30 Order's requirement that the government take "affirmative steps to find and reopen or reconsider cases in which the Asylum Transit Rule was applied to provisional class members but that became final" before the PI Order was entered or while it was previously stayed. *Al Otro Lado v. Wolf*, No. 20-56287, Dkt. Entry 15 (Dec. 18, 2020). The Ninth Circuit reasoned that "the status quo would be preserved" by this stay pending a ruling on the stay motion. *Id.* at 2. The stay motion is fully briefed and pending decision.

## ARGUMENT

### I.   Legal Standard.

Courts have the power to impose compliance with their lawful orders. *See*

*Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). And while the parties agree on this, Plaintiffs' motion is silent on the high burdens they must meet to prevail on an enforcement motion. When ordering compliance, a court "is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citations and quotation marks omitted). Further, motions to enforce civil orders are assessed under the clear and convincing standard. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (a "party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence'"). Although Plaintiffs' motion does not call for sanctions, it should nonetheless be assessed under this demanding standard.

## II.    Plaintiffs' Proposal to Require an Implementation Plan and Regular Court Monitoring is Unfounded.

The Court should reject Plaintiffs' proposal to require Defendants to submit a detailed implementation plan and to have the Court hold bi-weekly status hearings concerning implementation. *See* Mot. 11-12; Pls.' Proposed Order ("Proposed Order") §§ II-III. There is no reason to order these measures. The government has complied with the PI Order and is complying with and implementing the complex requirements of the October 30 Order. Moreover, despite areas of disagreement between the parties, Defendants have worked collaboratively with Plaintiffs, including voluntarily sharing details of the government's implementation plans as they are finalized and incorporating many of Plaintiffs' own proposals into those plans.

Plaintiffs do not provide any legal basis to require the compliance monitoring they request. Pls.' Mot. 11-12. Compliance monitoring is most appropriate when "a party has proved resistant or intransigent to complying with the remedial purpose of the injunction in question." *United States v. Apple, Inc.*, 992 F. Supp. 2d 263, 280 (S.D.N.Y. 2014) (citing *United States v. Yonkers Bd. Of Educ.*, 29 F.3d 40, 44 (2d

Cir. 1994)). Plaintiffs do not make any real assertions of "resistance" or "intransigence" on the government's part. By Plaintiffs' own admission, Defendants have been cooperative and have been maintaining an open line of communication regarding their ongoing, developing implementation of the October 30 Order, *see generally* Lev. Decl., which presents complex and extensive operational issues. *See, e.g.*, *supra* at 7-8 (describing the multi-step data collection process for identifying class members); Ex. B, ¶ 6 (describing EOIR efforts to identify cases eligible for reopening/reconsideration); Ex. D ¶ 4-9 (describing complex procedures for ascertaining class membership of those in ICE custody). The government has made substantial progress toward implementation of all aspects of the Court's October 30 Order, all while addressing these complex, cross-Department and cross-component operational issues and simultaneously seeking input from Plaintiffs' counsel. *See supra* at 5-8.[2] Compliance monitoring undermines and is antithetical to this progress and to the collaborative process. Plaintiffs' proposal would instead require the Court to "'enmesh[] [itself] in the minutiae of [immigration enforcement operations].'" *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010).

Even if the Court has discretion to order parties to submit compliance plans, *see* Mot. at 11, such steps are not necessary here to ensure compliance with the October 30 Order. Further, unlike in the cases Plaintiffs cite, the Court did not request compliance plans as part of its PI Order or its October 30 Order. To the extent that the Court believes an implementation plan or bi-weekly court conferences are appropriate, it would nonetheless be premature to require either right now, let alone on the time frame Plaintiffs request. First, if the current motion practice leads to any

---

[2] At most, Plaintiffs take issue with the *order* of the steps the government has taken to comply with the October 30 Order (Mot. at 9-10), and the government's lawful application of the Transit Rule before the preliminary injunction was issued and while it was stayed (Mot. at 11).

GOV'T OPPOSITION
TO MOT. TO ENFORCE
Case No. 3:17-cv-02366-BAS-KSC

guidance from the Court that impacts the government's implementation of the October 30 Order—to the extent such clarification does not exceed the jurisdictional constraints set by the pending appeals, *United States v. LaForest*, 2019 WL 4940257, at *1 (C.D. Cal. June 18, 2019) (quoting *United States v. Seugasala*, 670 F. App'x 641, 641-42 (9th Cir. 2016))[3]—Defendants will likely need more than 14 days to refine their implementation plans given the number of agencies impacted. Second, the implementation of the October 30 Order is currently impacted by the government's appeal from that Order and the resulting temporary stay, in which the Ninth Circuit stayed, "to preserve the status quo," the part of Paragraph 2 that required "affirmative steps to find and reopen or reconsider [certain] cases in which the Asylum Transit Rule was applied to provisional class members." *See Al Otro Lado v. Wolf*, No. 20-56287, Dkt. Entry 15 (Dec. 18, 2020). This indicates at least a tentative judgment that this requirement was not part of the original PI order. If the Court orders bi-weekly status hearings, the government, along with Plaintiffs and the Court, may expend countless hours addressing implementation of an order that is partially stayed and may ultimately be further stayed or modified on appeal. The more prudent course would be to await the resolution of the pending appeal or, at the very least, the pending stay motion.

Finally, Plaintiffs claim they cannot adequately protect class members' rights due to the lack of an implementation plan because Defendants could not provide them with deliberative, non-final procedures or immediate answers to highly specific questions. *See* Pls.' Mot. at 10.[4] Yet Defendants continued to supply information to

---

[3] As discussed in more detail in Section III, *infra*, the implementation plan that Plaintiffs propose asks Defendants to address a number of issues that are not contemplated by the Court's prior injunctive-relief orders. *See, e.g.*, Proposed Order § II ¶ 1(a)(i)(1)-(4), (c)(iii), (d).

[4] For example, Plaintiffs complained that counsel could not advise them immediately of the precise mechanism by which USCIS asylum officers would access waitlists when conducting class membership determinations. Mot. at 10; Lev Decl. ¶ 46(e).

1   Plaintiffs as implementation plans were finalized, and they intended to continue to
2   do so without any intervention from the Court. *See* Shinners Decl. ¶¶ 6-31. Further,
3   nothing has prevented Class Counsel and Plaintiff Al Otro Lado from at any time
4   using their own websites and communication networks to advise the immigration
5   bar and potential class members of the *pre-existing* ability to submit evidence of
6   class membership during ongoing proceedings or to file motions to reopen or recon-
7   sider based on such evidence.

8   **III.   The Court Should Reject Plaintiffs' Specific Implementation De-**
9   **mands Because They Are Not Required By, and Contradict, the**
    **Court's Orders.**
10
11          Plaintiffs next ask the Court to "enforce" its prior orders by requiring the gov-
12   ernment to take various actions simply because they disagree with Defendants' rea-
13   sonable and compliant approach to implementation. *See* Mot. 12-25. Defendants'
14   approach gives full effect to the PI and October 30 Orders and there is thus no reason
15   to enter the relief Plaintiffs request—some of which is even contrary to those orders.

16   **A.   The Government Is Making Reasonable Efforts to Identify Class**
     **Members.**
17
18          As described above, Defendants are making reasonable efforts to use govern-
19   ment records to identify potential class members to comply with Paragraph 4. *See*
20   October 30 Order at 22 ("[T]he Court finds it appropriate to make reasonable efforts
21   to aid in identifying potential class members . . . ."). These efforts involve generating
22   a list of aliens encountered by CBP along the southwest land border from July 16,
23   2019 through June 30, 2020, then further narrowing that list to those who have
24   sought asylum or similar protection from removal, but eliminating those who have
25   already been granted asylum. *See supra* at 7. This overly-broad list will allow De-
26   fendants or Plaintiffs' counsel, as applicable,[5] to provide notice of the preliminary

27   ────────────────────────────
    [5] Defendants intend share this list (and other previously-generated lists referenced in
28

1  injunction to *potential* class members, including notice of how to submit evidence
2  of class membership.[6]

3      Plaintiffs' arguments that Defendants' plans for identification of class mem-
4  bers are inadequate are incorrect, and in many cases conflate the task of identifying
5  potential class members with the task of evaluating evidence of class membership.
6  As the Court previously stated, efforts to identify class members cannot substitute
7  for, and do not erase, an individual's burden to prove class membership: "individuals
8  would still bear the burden of demonstrating their class membership, and therefore
9  their eligibility for relief, to immigration officials." Order at 22 n.5.

10      ***Defendants Should Not Be Required to Obtain Waitlists Maintained by Var-***
11  ***ious Public and Private Mexican Entities.*** First, Plaintiffs insist that Defendants
12  obtain "waitlists" maintained by a variety of entities in Mexico as part of "reasonable
13  efforts" to identify class members.  Mot. 13. This is not an effort this Court has
14  required. Further, while Defendants agree that available waitlists may be presented
15  as evidence or consulted by adjudicators in determining class membership, waitlists
16  are not a useful or reliable means of identifying all potential class members or of
17  narrowing down the broader list that Defendants are developing. The parties agree
18  that there are both potential and actual issues with relying exclusively on waitlists to
19  identify class members—the lists are likely not comprehensive, there are reported
20  issues with corruption and reliability, and there is no uniform administration of such

21
22
23  _____

24  the October 30 Order) with Plaintiffs, after entry of a protective order that sets ap-
    propriate conditions on Plaintiffs' use and further disclosure of such information.
25  *See* ECF No. 647.
26  [6] Separately, the government developed other procedures for identifying class mem-
    bers with final removal orders to comply with Paragraph 2's requirement to take
27  "immediate and affirmative steps" to reopen or reconsider certain asylum denials.
    *Supra* at 5-6. These affirmative efforts have halted since the Ninth Circuit stayed
28  that obligation.

lists across the various border towns. This, combined with the administrative difficulty of matching waitlists to Defendants' records, means the Court should reject Plaintiffs' request to add this directive to the injunctive relief already granted.

*First*, the Court is well aware of the waitlists and has not already required Defendants to obtain them. Instead, the October 30 Order contemplates that Defendants review information in their own possession to identify potential class members, and to share such information with Plaintiffs. *See* October 30 Order at 22-23 (stating that Defendants "must review their own records to aid in the identification of class members and must share the information in their custody regarding the identities of class members with Plaintiffs"); *id.* at 25 ¶ 4. There is no dispute that the waitlists are not Defendants' own records.

Instead, the "waitlists" are maintained by a variety of different Mexican entities, depending on the border town. Ex. A, ¶ 5. Plaintiffs imply that all such lists are maintained by Defendants' undefined "Mexican counterparts" (Mot. 13; Proposed Order § I ¶ 1(a)), yet this is not the case. None of them were prepared or maintained under the auspices of the United States government. Plaintiffs' own expert reports that some lists were maintained during the relevant time period by the Mexican immigration agency, INAMI (also known as INM), but others were maintained by municipal governments, shelters, private individuals, or asylum-seekers themselves. *See, e.g.*, Ex. G (May 2019 Metering Update) at 4 (listing Nuevo Progreso/Progreso waitlist as administered by asylum-seekers; listing Reynosa/Hidalgo waitlist as administered by the Senda de Vida Migrant Shelter), 5 (listing the Piedras Negras/Eagle Pass waitlist as administered by the municipal government), 7 (listing the Nogales waitlist as administered by a private individual who runs migrant shelters). Plaintiffs assert that the Tijuana/San Ysidro waitlist is administered by INAMI but uses asylum-seekers as "list managers" to place individuals' names on the lists. ECF No. 574-3 (Ramos Decl.) ¶ 6. Some towns have more than one waitlist. As of May 2019, it was reported that the town of Ciudad Acuña, across the border from the Del

Rio POE, has two different lists: one for families maintained by Grupo Beta (a branch of INAMI), and another for individual adults maintained by "Municipal Civil Protection." Ex. G at 6. The identity of the administrator of the waitlists in other towns is sometimes unclear or has changed over time: in May 2019, it was reported that INAMI maintained the waitlist in Neuvo Laredo, Mexico (across from the Laredo POE), but in November 2019 this waitlist was reported to actually be six separate lists administered by a network of six different shelters. *Compare* Ex. G at 5 *with* Ex. H (November 2019 Metering Update) at 6.

The U.S. government did not initiate the creation of waitlists and it plays no role in creating and compiling these lists (including those maintained by INAMI) or in assigning waitlist numbers to individuals. Ex. A, ¶ 5. It does not ask to review the lists and it does not determine which individuals on the lists will be brought to CBP for intake each day. *Id.* ¶¶ 5, 6. These tasks are performed by entities in Mexico over which CBP exercises no control or oversight. *See* Ex. A, ¶¶ 5, 8, 10. Accordingly, CBP does not itself rely on the lists. CBP officials at some POEs contact INAMI or other individuals in Mexico (who may or may not be waitlist administrators) to let them know how many individuals without documents can be taken in for processing each day to facilitate entry to the POE. *Id.* ¶¶ 5, 6. The POE then processes the individuals who are brought to the POE. *Id.* ¶ 6. Yet that does not render these lists U.S. government records or entitle them to any presumption of regularity.

*Second*, contrary to Plaintiffs' assertions, obtaining such "waitlists" is not the solution to the difficult problem of identifying class members. Defendants agree that the presence of an individual's name on a waitlists may be referenced by adjudicators or presented by potential class members as evidence of an individual's presence in a Mexican border town before July 16, 2019, with the intent of entering the United States. Indeed, USCIS asylum officers are instructed to consult waitlists currently in the government's possession (provided by CBP or Plaintiffs) in making class membership determinations. Ex. D, ¶ 4. But these lists will not assist in narrowing down

the list of potential class members. It is highly unlikely that CBP is able to obtain all of the relevant lists. *See* Ex. A, ¶ 9. And Plaintiffs do not dispute that the lists are underinclusive. Mot. 14; *see also* ECF No. 390-48 (Ramos Decl.) ¶ 8. Accordingly, even if CBP were able to obtain additional lists from its "Mexican counterparts," the government will still have to engage in the class member identification efforts established above to cast a broad enough net to provide appropriate notice, and it is unclear what further identification purpose the lists could serve. Further, such lists do not include A numbers—the number the government assigns as a universal identifier for immigration purposes—rendering it nearly impossible to use the lists beyond manual matching against government records (and even that presents difficulties). *See* Ex. D, ¶ 4. Plaintiffs also do not dispute that lists are not entirely reliable, as discussed further below. In sum, reasonable efforts to identify class members do not require Defendants to request waitlists from "Mexican counterparts."

*In Adjudicating Class Membership Claims, the Government is Permitted to Evaluate and Weigh the Relevant Evidence.* Plaintiffs next request that the Court establish certain evidentiary rules and presumptions for class membership adjudications that do not appear in the PI and October 30 Orders. Indeed, the Court has already resolved this issue in the government's favor by directing in the October 30 Order that "individuals would still bear the burden of demonstrating their class membership, and therefore their eligibility for relief, to immigration officials." Order at 22 n.5. The Court should thus reject Plaintiffs' proposed rules, because they do not relate to "reasonable efforts" to identify class members, but rather ask for a new standard to resolve class membership claims.

*First*, Plaintiffs ask the Court to order the government to presume class membership for (1) any individual whose name is listed as being on a waitlist before July 16, 2019, and (2) any individual who entered a particular POE during a certain time period based on information about when a particular waitlist number was "called." Mot. 13, 15; Proposed Order § I ¶ 1(d). These presumptions are not required by the

1    Court's Orders and are not warranted.

2        Contrary to Plaintiffs' repeated assertions, Defendants are not ignoring or dis-

3    regarding waitlist information that is already available to them. But, as noted, while

4    certain waitlist information may be indicative of class membership, there are good

5    reasons not to *presume* class membership based on waitlist information in the ab-

6    sence of some sort of corroborating statements from the individual himself—such as

7    statements about the approximate dates of his travels to Mexico, or the date he ar-

8    rived in a Mexican border town or city. Initially, it is entirely possible that the pres-

9    ence of a name on a waitlist before July 16, 2019, does *not* actually indicate physical

10   presence in the relevant border town. Plaintiffs do not deny that individuals have

11   been able to add their names to waitlists remotely. Mot. 15. Plaintiffs claim that there

12   is no direct evidence that this practice occurred during the relevant time period, but

13   their own evidence indicates that this practice was more commonplace than they

14   admit. In November 2018, a Tijuana list manager reported that "several asylum seek-

15   ers paid to have their names added to the list while still in South America." ECF No.

16   390-48 (Ramos Decl.) ¶ 10. Indeed, it makes sense to assume that this practice *did*

17   occur during the relevant time period. Plaintiffs further acknowledge that the wait-

18   lists are "not entirely reliable," *Al Otro Lado v. Wolf*, 952 F.3d 999, 1009 (9th Cir.

19   2020), as they have been subject to corruption, *see, e.g.*, ECF No. 390-48 (Ramos

20   Decl.) ¶ 10, which could involve altering dates or waitlist numbers.

21       It would also be improper to *presume* that every individual who entered before

22   what Plaintiffs call the "last entry date" (the date on which the last "waitlist number"

23   issued on July 15, 2019), was called off the waitlist by the list administrator in order.

24   As Al Otro Lado has noted, individuals pay bribes to jump the line. ECF No. 574-3,

25   (Ramos Decl.) ¶ 12. Further, some individuals from vulnerable populations are taken

26   in at POEs without having to wait in a queue. ECF No. 535-19, at 293:2-11. It is thus

27   not appropriate to presume that every individual who entered before the "last entry

28   date" was in fact present in a Mexican border town before July 16, 2019, and the

GOV'T OPPOSITION
TO MOT. TO ENFORCE
Case No. 3:17-cv-02366-BAS-KSC

Court should decline to require such evidentiary presumptions.

*Next*, Plaintiffs urge the Court to preclude the government from using in any way an individual's own statements in prior class membership interviews when adjudicating class membership. This requirement is certainly not already contemplated by the Court's Orders, as the Court has already spoken on the relative burdens. Prohibiting the government from reviewing prior relevant statements (*e.g.*, interview responses that clearly state that the individual was not present in Mexico before July 16, 2019) likely excludes the most probative evidence in favor of self-serving statements made later. No rule of evidence would countenance *completely disregarding* the most relevant and probative evidence submitted by the plaintiff himself or herself. The Court should thus decline to enter this relief.

**A Confidentiality Protective Order is Warranted.** As set forth in full in their separate Motion for Confidentiality Protective Order (ECF No. 647), Defendants respectfully request that the Court enter a protective order requiring Plaintiffs to adhere to reasonable limits on use and further disclosure of potential class members' asylum information.

### B. Defendants' Proposed Notice Comports with Paragraph 3 of the October 30 Order.

Plaintiffs raise unfounded concerns with Defendants' initial proposed notice to a subset of potential class members, and they prematurely seek to impose notice requirements that go far beyond what this Court's orders require. Mot. 20-22; Proposed Order § I ¶ 2. The Court should thus deny Plaintiffs' requested relief.

Although "[n]otice is not *required* in Rule 23(b)(2) class actions," *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1236 (9th Cir. 1999) (emphasis in original), the Court has ordered Defendants to provide notice of the preliminary injunction to certain subsets of class members. ECF No. 605 at 25, ¶ 3. At this time, Defendants have developed, in partial collaboration with Plaintiffs, a proposed notice to be provided to a subset of potential class members who are in ICE custody and subject to final

orders of removal, and who have been or will be referred to USCIS for interviews to determine class membership (Exhibit E). While this proposed notice is being used as a starting point for the contents of other forms of notice to other potential class members, its contents are not entirely transferrable to those who are in pending removal proceedings and are not in ICE custody. It is this particular proposed notice that Plaintiffs attack in their Motion, but their challenges are without basis and ignore the particular context in which this notice was designed to be used.

As a threshold matter, any analysis of the propriety of the proposed notice is premature, because much of the notice's language and use is based on the government's now-stayed obligation to take "affirmative" steps to identify class members under Paragraph 2. Regardless, and contrary to Plaintiffs' arguments, the proposed notice certainly comports with the October 30 Order and "inform[s]" identified individuals "of their potential class membership and the existence and import of the preliminary injunction." October 30 Order at 25 ¶ 3. It is tailored and targeted to individuals in ICE custody who *will* receive interviews with USCIS, and who do not need to take any affirmative steps to receive that interview. Ex. D, ¶ 4, 6. It first informs recipients of the basic nature of metering and the import of the preliminary injunction in bold, easy-to read language: **If you traveled to the U.S.-Mexico border through Mexico to enter the United States at a U.S. port of entry and to seek asylum, but had to put your name on a list or were told that you had to wait to cross the border *before* July 16, 2019, and you entered the United States *on or after* July 16, 2019, you may still be able to seek asylum.** Ex. E. After further describing metering in more detail, the notice goes on to again advise recipients of the import of the PI Order in bold, easy to read language: the preliminary injunction **"prohibit[s] the government from applying the third-country transit rule to non-Mexican asylum seekers who were unable to enter the United States before July 16, 2019, at a port of entry because they were subject to metering."** *Id.* at

1.[7] The proposed notice then provides a meaningful description of what will happen next: an interview at which the recipient will be required to establish class membership and can submit documentary evidence. *Id.* at 2. It also advises the recipient of potential categories of evidence of class membership. The notice is as specific as possible while still accounting for differentiation in local practice concerning submission of documents to the asylum office or interview scheduling. Ex. D, ¶ 6. The proposed notice also explains in plain language the facts that render an individual a class member. Ex. E at 2. It then describes what happens if the individual is found to be a class member. *Id.* Although not necessarily required, the proposed notice thus adequately describes "how those who have established class membership will be afforded relief" (Mot. at 21), because it was drafted under the assumption that the government would be taking "affirmative" steps under Paragraph 2 to afford that relief. Finally, the notice instructs recipients that they may contact their immigration counsel as well as class counsel. Ex. E at 2. Thus, contrary to Plaintiffs' arguments, the targeted audience of this particular notice is properly informed of "how to take advantage of" the relief granted by the PI and October 30 Orders. *See* Mot. 20.

The primary case on which Plaintiffs rely in support of their arguments, *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998), does not concern class action notice, but a due process challenge to government forms. Even assuming *arguendo* that *Walters* was instructive, here, the government's proposed notice is adequate and appropriate because it "informs class members that equitable relief may be available" and how notice recipients may "take advantage of" that relief. *Barahona-Gomez*, 167 F.3d at 1237; *Walters*, 145 F.3d at 1043. The class notice in *Fraihat* (cited at Mot. 20-21) is not analogous to the class notice here, as the *Fraihat* court's directive that the government include in its notice information on how immigration detainees may notify

---

[7] Defendants thus modified the language of this sentence in response to Plaintiffs' cited concerns cited at pages 21-22 of their Motion.

medical staff of COVID-19 risk factors that may not be captured in regular medical records was specifically tailored to the injunctive relief ordered in that case. *See Fraihat v. U.S. Immigration and Customs Enforcement*, 2020 WL 2758553, at \*6 (C.D. Cal. May 15, 2020). There is no similar concern in this case that is not already addressed by the proposed notice.[8]

Additionally, any ruling on the sufficiency of other notices that have yet to be finalized would be premature. As noted, the proposed notice discussed in Plaintiffs' Motion is for a specific population of potential class members, and Defendants are still developing the proper notice(s) that will be provided to other subsets of the class (to the extent required). Shinners Decl. ¶ 32. Defendants intend to collaborate with Plaintiffs on the contents of the more broadly-distributed notice(s) and to adapt those notices to the particular context(s). But Plaintiffs seek to prematurely impose specific, far-reaching requirements about any Paragraph 3 notice used in this case in the absence of a concrete disagreement over the notice contents. This essentially asks the Court to deliver an advisory opinion arising from "abstract disagreements." *Clark v. City of Seattle*, 899 F.3d 802, 808-09 (9th Cir. 2018). Any ruling on the adequacy of the proposed notice thus must be limited to only the attached proposed notice and the context in which it is to be used.

Relatedly, it would be inappropriate to impose the abstract requirements that Plaintiffs request on any future class notice. Plaintiffs ask the Court to require any notice under Paragraph 3 to outline not only how an individual may raise claims to class membership or seek reopening or reconsideration of their case, but also the process adjudicators will use to determine class membership (Proposed Order § I ¶ 2(b)), include particular dates and times by which recipients must submit evidence

---

[8] The remaining cases cited by Plaintiffs (Mot. 20-21) do not discuss or rule on the proper content of 23(b)(2) notices. *Gonzalez v. Barr*, 2020 WL 3402227, at \*1-2 (N.D. Cal. June 19, 2020); *Scholl v. Mnuchin*, 2020 WL 5877674, at \*5-6 (N.D. Cal. Oct. 2, 2020).

1   of class membership (*id.* ¶ 2(c)), include a description of evidence accepted (Mot. at

2   20), include "the criteria of eligibility for reopening/reconsideration relief" (Pro-

3   posed Order ¶ 2(f)), include "a summary of the process for reopening/reconsidering

4   past determinations of asylum eligibility"; and include "a phone number and email

5   address where an individual can obtain additional information regarding the individ-

6   ual's case from the Government" (*id.* ¶ 2(f)). First, the parties may be able to come

7   to agreement about language that addresses Plaintiffs' concerns in the context of

8   future notices. Second, not all of these points are applicable to all potential class

9   members—for example, there can be no specific date or time included in a general-

10  ized notice, particularly for those in pending proceedings who would submit evi-

11  dence of class membership in the context of those proceedings, and where each in-

12  dividual has different hearing dates. And a specific description of the process of how

13  adjudicators determine class membership or reopen or reconsider cases is not only

14  potentially intrusive into a deliberative adjudicatory process that the Court has

15  acknowledged remains within the government's purview, but it is also unnecessary

16  so long as individuals are informed—as in the Proposed Notice—of the facts that

17  would render them class members, the available procedures for asserting that claim

18  to class membership, and the relief to which they may be entitled. Further, some of

19  Plaintiffs' proposals—specifically the requirement that the government instruct

20  class members as to what evidence be submitted and assign a central point of contact

21  to provide "information regarding the individual's case"—would improperly put the

22  government in the position of serving as potential class members' contact for ob-

23  taining legal advice. That is the role of Class Counsel and, and, indeed, should re-

24  mind the Court that the more the process looks like administration of individual

25  cases, the less appropriate this matter is for class-wide resolution. *See Wal-Mart v.*

26  *Dukes*, 564 U.S. 338, 360-62 (2011). The Court should deny Plaintiffs' request to

27  impose notice requirements beyond those set forth in the October 30 Order.

28

1
2

### C. The Government's Approach to Reopening and Reconsidering Final Asylum Denials Fully Complies with Paragraph 2.

3

4

5

6

7

8

9

10

11

Paragraph 2 of the Order requires Defendants to "reopen or reconsider" certain final determinations that class members were ineligible for asylum *based on* the Transit Rule. *See also* Order at 14 (discussing cases of those with "orders of removal *based on* the [Transit Rule]") (emphasis added). As an initial matter, the government's affirmative obligation to identify cases for reopening or reconsideration—which was the backdrop to the parties' discussions—has been stayed. Regardless, the Court should reject Plaintiffs' requests to expand this provision to require reopening of asylum denials on grounds *other than* the Transit Rule and unnecessary further factfinding on class members' asylum claims.

12

13

14

15

16

17

18

19

20

21

*First*, Defendants agree that, under the October 30 Order, certain class members require an avenue to submit evidence of class membership to relevant adjudicators to obtain reopening/reconsideration relief. A likely avenue already exists for those in regular removal proceedings—in the form of a motion to reopen or reconsider before either the Immigration Judge (IJ) or the Board of Immigration Appeals (BIA). 8 C.F.R. §§ 1003.2, 1003.23. Defendants intend to develop procedures to receive and assess evidence for those with expedited removal orders who are not in ICE custody (including those who have been removed), but had initially focused on affirmatively identifying those cases who *are* in ICE custody. Shinners Decl. ¶¶ 23, 32.

22

23

24

25

26

27

*Second*, Plaintiffs' arguments about what constitutes proper reopening or reconsideration relief under Paragraph 2 would expand on the Court's orders. *See* Mot. 23-25. How reconsideration relief is applied in any given case must depend on the circumstances. Defendants' current implementation procedures for those with final orders of expedited removal provide that, if the Transit Rule was applied by USCIS to a class member at the credible fear determination stage, the case would be reo-

28

pened for a new credible fear determination under the significant possibility stand-ard. *See* USCIS Decl. ¶ 7. However, for those individuals placed in regular removal proceedings—either directly upon encounter or upon referral after receiving a posi-tive fear determination—the record of each case may vary in ways that influence whether Paragraph 2 applies or whether reconsideration or reopening is warranted. And whether further factfinding is required must be assessed on a case-by-case basis.

Where the adjudicator denies asylum on independent, alternative grounds other than the Transit Rule, Paragraph 2 by its own terms does not require reopening or reconsideration. If, upon review or reconsideration of a case where an EOIR ad-judicator denied asylum eligibility on the basis of the Transit Rule at some stage of the proceedings, it is clear from the record of proceedings that the individual (1) was alternatively denied asylum on the merits after an evidentiary hearing; or (2) was solely or alternatively denied asylum by either an IJ or the BIA on any separate and independent ground that is supported by the record, there will be no need to reopen the case. *See, e.g.*, 8 C.F.R. § 1003.1(d)(3)(ii) (BIA reviews *de novo* "questions of law, discretion, and judgment").[9] Further, the Court's order does not require a full

---

[9] For this reason, the government posited that it need not conduct a burdensome manual review of cases in which the final asylum denial was made after June 30, 2020, the date that the Transit Rule was vacated by *CAIR v. Trump*, 471 F.Supp.3d 25 (D.D.C. 2020). Shinners Decl. ¶¶ 8, 27. If, however, the Transit Rule were erro-neously applied to deny asylum to a class member after June 30, 2020, Defendants agree that the case may be eligible for relief under Paragraph 2, yet submit that those rare cases would likely be discovered through the notice process. Indeed, the one decision Plaintiffs cite (Mot. 25 & Lev. Exh. 3) was issued *on, not after*, June 30, 2020, and has since been reversed by the BIA. *See* Ex. I (BIA decision reopening proceedings). Defendants do not agree, however, that an IJ's exercise of pre-existing discretion to deny asylum based on longstanding precedent that existed before July 16, 2019 (*see* Mot. 25 (citing Lev. Exh. 4)), constitutes a violation of the PI Order. *See Matter of A-B-*, 27 I&N Dec. 316, 345 n.12 (A.G. 2018); *Matter of Pula*, 19 I&N Dec. 467, 473–74 (BIA 1987). Moreover, the IJ's exercise of discretion can be re-viewed by the BIA as well as the Court of Appeals. 8 U.S.C. § 1252(a)(2)(b)(ii).

reopening of immigration proceedings for further factfinding in all cases. *Matter of O-S-G*, 24 I. & N. Dec. 56, 57–58 (BIA 2006) ("A motion to reconsider contests the correctness of the original decision based on the previous factual record, as opposed to a motion to reopen, which seeks a new hearing based on new or previously unavailable evidence."). There may be no need to reopen the case if the factual findings demonstrate that the application of the standard for granting asylum would not affect the outcome of the case (for example, if the IJ already made a proper adverse credibility determination with respect to the applicant's persecution claim after a full evidentiary hearing on that claim). *See* 8 C.F.R. § 1003.2(c)(1) (reopening shall not be granted unless evidence sought to be offered is "material"); 1003.23(b)(3). Conversely, reconsideration might also result in a grant of asylum based on the existing record, without a need for further factfinding. *See, e.g.*, Ex. C. To hold otherwise would unnecessarily bog down immigration court proceedings with no actual benefit to class members. And none of this is inconsistent with the PI Order's directive to "return to the pre-[Transit Rule] practices for processing the asylum application of members of the class." In these examples, the class member's asylum application is evaluated just as it would have been before the Transit Rule. Further, and importantly, if EOIR adjudicators have relied on independent grounds to deny asylum that do not implicate the Transit Rule, those determinations may be subject to jurisdictional restrictions and, if reviewable, can only be reviewed by a Court of Appeals on a petition for review. *See* 8 U.S.C. §§ 1158(a)(3) (precluding judicial review of application of asylum eligibility exceptions for untimeliness and previous asylum denials), 1252(a)(1), 1252(a)(2)(D), 1252(b)(9). The Court should thus deny Plaintiffs' request to impose additional requirements on the relief granted in Paragraph 2.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Enforce.

Dated: January 5, 2021

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

SAMUEL P. GO
Assistant Director

*s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259| Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
DHRUMAN Y. SAMPAT
Trial Attorneys

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: January 6, 2021        Respectfully submitted,

*s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section

*Counsel for Defendants*