# EXHIBIT 12

1  JEFFREY BOSSERT CLARK
   Acting Assistant Attorney General
2  Civil Division
3  WILLIAM C. PEACHEY
   Director, Office of Immigration Litigation –
4  District Court Section
   SAMUEL P. GO
5  Assistant Director
6  KATHERINE J. SHINNERS (DC 978141)
   Senior Litigation Counsel
7  United States Department of Justice
8  Civil Division
   Office of Immigration Litigation – District Court Section
9
10 P.O. Box 868, Ben Franklin Station
   Washington, D.C. 20044
11 Tel: (202) 598-2859 | Fax: (202) 305-7000
12 katherine.j.shinners@usdoj.gov
13 *Counsel for Defendants*

14          **UNITED STATES DISTRICT COURT**
15    **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
                 **(San Diego)**
16

| | |
|---|---|
| 17  AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| 18                    *Plaintiffs*, | Hon. Cynthia A. Bashant |
| 19                 v. | **DECLARATION OF KATHERINE** |
| 20  CHAD F. WOLF, Acting Secretary, U.S. | **J. SHINNERS IN SUPPORT OF** |
| 21  Department of Homeland Security, in his | **OPPOSITION TO MOTION TO** |
|     official capacity, *et al.*, | **ENFORCE** |
| 22 | |
| 23                  *Defendants* | |

24
25
26
27
28

Case 3:17-cv-02366-BAS-KSC Document 657-1 Filed 05/04/23 PageID.56082 Page 2 of 14

## DECLARATION OF KATHERINE J. SHINNERS

I, Katherine J. Shinners, declare as follows:

1. I am Senior Litigation Counsel with the District Court Section of the U.S. Department of Justice, Office of Immigration Litigation. I represent the federal defendants in their official capacities in the case entitled *Al Otro Lado, Inc. v. Wolf*, No. 3:17-cv-02366-BAS-KSC, which is currently pending in the U.S. District Court for the Southern District of California. I also represent non-party the Executive Office for Immigration Review (EOIR), an agency of the U.S. Department of Justice, with respect to this litigation.

2. I make this declaration to provide information with respect to the Government's Opposition to Plaintiffs' "Motion to Enforce Preliminary Injunction," which seeks to enforce particular directives of the Court's October 30, 2020 Order on Plaintiffs' Motion to Clarify (ECF No. 605) ("October 30 Order"). These statements are based on my personal knowledge. In my role as counsel for the government, I am aware of communications between counsel concerning the implementation of the October 30 Order, as well as information reported to me by the agencies impacted by the October 30 Order, including U.S. Citizenship and Immigration Services (USCIS), U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement (ICE)—all component agencies of the Department of Homeland Security (DHS)—and EOIR.

**Implementation of the October 30 Order and Conferences with Counsel**

3. The first steps taken by the Government to implement the directives in the October 30 Order were toward identifying cases eligible for reopening or reconsideration under Paragraph 2 of the Court's October 30 Order, using two different but somewhat overlapping methods: (1) using data to identify asylum denials issued in regular removal proceedings before EOIR, in order to manually review the resulting records of proceedings; and (2) setting up screening criteria and interviewing potential class members who are in ICE custody.

1      4.      Plaintiffs' and Defendants' counsel have conferred over the telephone

2  and via email and letter concerning implementation of the Court's October 30 Order,

3  which contains requirements for identification of, notice to, and particular relief to

4  be afforded to, members of the subclass certified in the Court's prior Preliminary

5  Injunction Order (ECF No. 330) ("PI Order").

6      5.      On November 11, 2020, in response to a request from Plaintiffs' coun-

7  sel for information about the substance of certain individuals' immigration cases,

8  Defendants proposed via email to Plaintiffs' counsel that the parties "file a joint mo-

9  tion to amend the Protective Order (ECF No. 276) or for entry of a discrete protective

10  order to expressly allow Defendants to share with Plaintiffs' counsel information

11  [about preliminary-injunction subclass members] that is protected under 8 C.F.R. §§

12  208.6 or 1208.6."

13      6.      Also on November 11, 2020, I sent an email to Plaintiffs' counsel at-

14  taching a draft notice that was intended to be used for a limited purpose of informing

15  individuals in ICE (DHS) custody that their removals had been paused pending a

16  class membership determination, stating: "we seek Class counsel's input on a draft

17  notice to be provided to those in DHS custody whose originally-scheduled removals

18  have been or will be paused pending further screening in light of the October 30,

19  2020 Order." Plaintiffs returned edits to the draft notice on November 12, 2020.

20      7.      On November 13, 2020, I sent an email to Plaintiffs' counsel that ex-

21  plained Defendants' efforts thus far, and, among other things: explained further the

22  import of the draft notice intended for those in ICE custody; sought Plaintiffs' views

23  on the requirement to identify class members; and stated that Defendants' "first pri-

24  ority has been working to identify those with asylum denials in 240 [regular re-

25  moval] proceedings (which would include those who were denied asylum but

26  granted withholding of removal) between July 16, 2019, and June 30, 2020, inclu-

27  sive."

28      8.      On Friday, November 13, 2020, counsel for the parties conferred via

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1   telephone regarding the implementation of the preliminary injunction. I explained

2   on that call that, due to the language of the October 30 Order, which called in Para-

3   graph 2 for "immediate affirmative steps" to reopen and reconsider cases in which

4   asylum was previously denied based on the Transit Rule, the government's "imme-

5   diate concern" with respect to compliance with the Order was to take affirmative

6   steps to identify cases for reopening and reconsideration under that paragraph. At

7   that conference, Defendants also stated their position that, when seeking to identify

8   the asylum denials that fell into this category—through manual file review or other

9   burdensome screening and interview methods—it did not make sense to review

10  those files/cases if the final asylum denial was issued after June 30, 2020, the date

11  the Transit Rule interim final rule was vacated in a separate case, *Capital Area Im-*

12  *migrants' Rights Coalition v. Trump*, 471 F.Supp.3d 25 (D.D.C. June 30, 2020)

13  (*CAIR*). After that date, the vacated rule should not have been applied to anyone.

14      9.      Also on Friday, November 13, 2020, Plaintiffs' counsel provided De-

15  fendants' counsel with a draft joint motion to amend the Protective Order.

16      10.     On Wednesday, November 18, 2020, Defendants' counsel provided a

17  draft of a new, separate protective order for Plaintiffs' consideration. This draft was

18  created from scratch—rather than as an amendment to the prior confidentiality pro-

19  tective order—to tailor the confidentiality provisions to facilitate the sharing of asy-

20  lum information for purposes of the Court's October 30 Order.

21      11.     Counsel for the parties again conferred via telephone on November 19,

22  2020, and discussed various topics. The discussions revealed that the parties were in

23  agreement on various aspects of the Court's orders—including the population to

24  which they applied.

25      12.     At the November 19 conference, counsel discussed, among other top-

26  ics, different options for identification of class members. As a result of this confer-

27  ence, Defendants began an effort to identify a comprehensive list of *potential* class

28

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1   members using data points available in different agencies' electronic system of rec-

2   ords.  First, U.S. Customs and Border Protection would provide information about

3   inadmissible aliens it had encountered between July 16, 2019, and June 30, 2020.

4   Then, USCIS and EOIR would provide data from their respective systems reflecting

5   whether or not the alien sought asylum and disposition of that case. Once the list was

6   narrowed down, data from ICE could provide current contact information and infor-

7   mation about execution of removal orders to facilitate locating and providing notice

8   to those class members to whom Defendants are required to provide notice, as well

9   as to share with Plaintiffs to facilitate their ability to provide notice to class members.

10        13.     Meanwhile, counsel for the parties continued to exchange drafts of the

11   proposed protective order.

12        14.     On November 23, 2020, I sent an email to Plaintiffs' counsel attaching

13   the questions previously employed by USCIS when screening individuals for class

14   membership. Plaintiffs' counsel promptly returned comments on those questions on

15   November 24, 2020, which USCIS considered in further refining USCIS class inter-

16   view procedures.

17        15.     Counsel for the parties again conferred via telephone on November 24,

18   2020. At that conference, counsel discussed a number of matters, including the terms

19   of the proposed protective order. At the end of that conference, I relayed that De-

20   fendants had begun developing a comprehensive class list as described in Paragraph

21   9, *supra*. I also provided information that Plaintiffs had requested about guidance

22   issued to EOIR adjudicators regarding the *CAIR* decision. I stated that guidance was

23   sent to the Board of Immigration Appeals and Office of the Chief Immigration Judge

24   the morning of July 1, 2020, informing the adjudicators of the decision; it is possible

25   that I stated that I would provide such information in writing in a follow-up email

26   but inadvertently failed to do so.

27        16.     Also on November 24, 2020, I sent an email to Plaintiffs' counsel with

28   a revised draft of the notice to be provided to individuals in ICE custody and asked

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1    for contact information for Class Counsel to be included in the notice. Plaintiffs'

2    counsel responded by email on November 25, 2020, stating areas where Plaintiffs

3    disagreed regarding the draft notice, and providing an email address to use for Class

4    Counsel. Counsel for the parties subsequently exchanged emails and conferred re-

5    garding whether Class Counsel could provide a telephone number for use in the no-

6    tice and how detainees could access confidential telephone calls to Class Counsel.

7         17.    On November 25, 2020, Plaintiffs' counsel sent Defendants' counsel a

8    letter setting forth their view of steps that should be taken to implement the October

9    30 Order. Plaintiffs stated in the letter that "Defendants appear to have chosen to

10   focus their implementation efforts on a subset of the most narrow category of those

11   eligible for reopening or reconsideration relief, but Plaintiffs believe that efforts

12   made to identify all class members will facilitate the identification of those who also

13   must receive notice and reconsideration or reopening relief under the Clarification

14   Order."

15        18.    In their November 25, 2020 letter, Plaintiffs stated that: "'All reasona-

16   ble efforts to identify class members' should include identifying all individuals who

17   (i) were processed as asylum seekers since July 16, 2019 at Class A POEs on the

18   U.S.-Mexico border or (ii) who otherwise entered the United States and sought asy-

19   lum since July 16, 2019."  (footnote omitted). Plaintiffs went on to state that "it is

20   incumbent upon the government to cast a broad net to identify potential class mem-

21   bers."

22        19.    The November 25, 2020 letter went on, in a section entitled "establish-

23   ing class membership," to state: "'All reasonable efforts to identify class members'

24   also includes seeking copies of the metering waitlists . . . and using them, along with

25   the waitlists provided by Plaintiffs, in determining PI class membership, as discussed

26   below." The letter stated: "Once Defendants have established the entire universe of

27   potential PI class members [described in Paragraph 14, *supra*], Defendants should

28   affirmatively seek evidence of PI class membership from these individuals, *unless*

5

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1   Defendants have already established PI class membership based on review of an

2   individual's case file and the relevant metering waitlist."  The letter when on to state

3   Plaintiffs' position as to what evidence should or should not be examined and how

4   it should be treated, as generally described in the Declaration of Ori Lev (Lev Dec-

5   laration), ECF No. 644-2, ¶ 24(c)-(i). With respect to Paragraph 24(e) of the Lev

6   Declaration, however, Plaintiffs actually stated: "[A]n individual who was processed

7   for asylum who entered the U.S. at the San Ysidro POE between July 16, 2019 and

8   November 19, 2019 should be treated as a presumptive class member absent specific

9   evidence that the individual was not impacted by metering prior to July 16, 2019,"

10  and then noted information about the waitlist numbers in a footnote.

11      20.     In their November 25, 2020 letter, Plaintiffs also set out their view on

12  the requirements of Paragraphs 2 and 3 of the October 30 Order as generally de-

13  scribed in Paragraphs 25 and 26 of the Lev Declaration.

14      21.     In their November 25, 2020 letter, Plaintiffs also stated that they disa-

15  gree with certain features of the protective order.  Plaintiffs expressed disagreements

16  with certain limitations on disclosure of class members' asylum information to third

17  parties: "Plaintiffs do not agree to limit those with whom they may share 'Asylum

18  Material' to Counsel of Record, court personnel, the individual noncitizen to whom

19  such information pertains and his or her attorney or accredited representative as

20  demonstrated by a filed G-28, a filed EOIR-27, or a DHS Privacy Waiver." The

21  letter stated that Plaintiffs were "not willing to prematurely limit the individuals with

22  whom they may share 'Asylum Material,' given the anticipated logistical challenges

23  in communicating with and getting signed documents from PI class members. The

24  requirement that Plaintiffs may only use 'Asylum Material' for the limited purpose

25  of facilitating compliance with the Court's orders, coupled with the independent pro-

26  fessional ethical obligations that apply to Plaintiffs' counsel serving the role of class

27  counsel, already require Plaintiffs to proceed with appropriate care in the storage and

28  use of class member information."  Plaintiffs' November 25 letter made no mention

6

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1    of the other provisions of the protective order that allowed for disclosure to other

2    individuals as the need arises, upon agreement of the parties or order of the Court,

3    so long as those individuals sign on to the terms of the protective order. In the letter,

4    Plaintiffs' counsel also stated that "Plaintiffs do not agree to maintain records of

5    disclosures to PI class members or their representatives to be produced at Defend-

6    ants' request." At the November 24, 2020, telephone conference, as well as at sub-

7    sequent telephone conferences, Plaintiffs' counsel argued that this requirement was

8    burdensome and unnecessary.

9        22.     Plaintiffs requested a response to their November 25, 2020 letter by

10   December 2, 2020. Defendants served a response letter on December 2, 2020.

11       23.     In Defendants' December 2, 2020 response letter, Defendants re-

12   sponded to various points in Plaintiffs' implementation plans. Initially, the letter

13   noted: "At the outset, we disagree with Plaintiffs' characterization of the govern-

14   ment's efforts to comply with the Order. It is true that the government has devoted

15   significant initial efforts to addressing Paragraph 2 of the Order . . . . This is so for

16   various reasons. <u>First</u>, the Order itself contemplate that the government first work

17   on taking affirmative steps to identify cases for reopening or reconsideration. . . .

18   <u>Second</u>, as previously discussed, . . . [the] efforts the government is making to iden-

19   tify class members are thus necessarily overbroad and will not be able to quickly

20   identify actual class members or which cases are candidates for reopening or recon-

21   sideration. <u>Third</u>, and relatedly, the government must prioritize review of the poten-

22   tial class membership of individuals currently in the custody of [ICE] who are oth-

23   erwise facing imminent removal. . . . Further, it makes practical sense to focus com-

24   pliance efforts on individuals with final removal orders because this category of in-

25   dividuals is more likely to be eligible for relief under Paragraph 2 than a broader list

26   of class members." The letter also noted that additionally, EOIR "also took immedi-

27   ate, affirmative steps" in compliance with Paragraph 2. Finally, the letter noted, "[i]n

28

              SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1    the midst of these efforts . . . Defendants are also developing a broader list of indi-

2    viduals who were encountered by CBP at Southern land border ports of entry or

3    between ports of entry along the Southern land border between July 16, 2019 and

4    June 30, 2020, were processed for expedited removal or Section 240 removal pro-

5    ceedings, and were referred for a credible fear interview or who filed a Form I-589

6    in Section 240 removal proceedings. Although this list will be overbroad, it could

7    be used for purposes of providing notice under Paragraph 3 of the Court's order.

8    Creating this list involves several different steps and employs data from several dif-

9    ferent departments and components. Thus, although Defendants have accomplished

10   some of this task, this data compilation is not yet complete."

11       24.    In the December 2 letter, Defendants also responded to Plaintiffs' view

12   of implementation of the October 30 Order. Among other things, Defendants re-

13   sponded to Plaintiffs' plan to solicit evidence from all class members. In Defendants'

14   view, it was only necessary to take affirmative steps to solicit evidence in conjunc-

15   tion with the affirmative obligation set forth in Paragraph 2. Thus, Defendants had

16   previously stated that they would need procedures for soliciting evidence from those

17   whose cases would be potentially eligible for reopening or reconsideration due to

18   class membership in accordance with Paragraph 2, and who had not already estab-

19   lished class membership through a USCIS interview or in their regular removal pro-

20   ceedings. Defendants thus stated in their December 2 letter that affirmatively seek-

21   ing such evidence would be of little utility, for example, with respect to potential

22   class members who already granted asylum, potential class members in pending pro-

23   ceedings—who could receive notice and submit evidence in pending proceedings—

24   and potential class members who were denied asylum on grounds other than the

25   transit rule.

26       25.    In their December 2 letter, Defendants also stated that "solely to avoid

27   a dispute with Plaintiffs, the government is not relying on the results of prior class

28

8

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1  membership screenings to exclude individuals from consideration for class member-

2  ship. Yet an individuals' prior statements in prior screening interviews are nonethe-

3  less relevant evidence to be considered when determining whether the individual is

4  more likely than not a class member."

5      26.    In their December 2 letter, Defendants also responded to Plaintiffs'

6  statements regarding the notice required by Paragraph 3 of the October 30 Order,

7  stating that "Defendants remain willing to continue [to] work with Plaintiffs on the

8  contents of a Notice to be provided to potential class members . . . , but do not agree

9  that reasonable notice of the existence and import of the preliminary injunction nec-

10  essarily requires all of the details Plaintiffs request. Defendants also maintain that

11  the current version of the Notice to be provided to those in DHS [ICE] custody who

12  are facing removal meets the requirements of Paragraph 3 of the Order."

13      27.    In their December 2 letter, Defendants also responded to Plaintiffs'

14  statements regarding Paragraph 2 of the October 30 Order, including by stating that:

15  "Defendants agree that a class member's case may be eligible for reopening or re-

16  consideration relief if the transit rule were applied to that class member to determine

17  that she was ineligible for asylum, even if the rule were applied after June 30, 2020,

18  Defendants take issue with requiring the government to conduct a broad review of

19  cases that involve post-June 30 decisions for a rule-based asylum denial. The transit

20  rule was vacated on June 30, 2020, and should not have been applied to anyone—

21  class member or not—after that time. Accordingly, Defendants' position is that, for

22  purposes of [the affirmative obligations of] Paragraph 2, [they] can presume that

23  post-June 30 decisions recognized that vacatur and did not apply the transit rule."

24      28.    On Friday, December 4, 2020, the parties again conferred via telephone

25  concerning numerous topics, including implementation of the October 30 Order as

26  well as the proposed protective order.  At that conference, Plaintiffs' counsel stated

27  that individuals who have been granted asylum are no longer class members because

28  they are no longer seeking access to the U.S. asylum process.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1     29.    The evening of Friday, December 4, 2020, Plaintiffs proposed revised
2 language for the protective order concerning the conditions for disclosure to third
3 parties.  On Monday, December 7, 2020, I sent Plaintiffs an email providing Defend-
4 ants' response to those revisions and offering that, if the parties could not come to
5 an agreement, "the parties could agree to ask the Court to enter the more stringent
6 version of the protective order pending resolution of those disputes, to facilitate De-
7 fendants' disclosure of information in the meantime."

8     30.    Plaintiffs' counsel responded via email on December 8, 2020, that "it
9 is clear that the parties are at an impasse." Also on December 8, 2020, I sent Plain-
10 tiffs' counsel an email attaching a proposed protective order that incorporated recent
11 revisions, stating that Defendants intended to seek the entry of a protective order in
12 substantially the form of the attached order, and seeking to confirm Plaintiffs' posi-
13 tion that "Plaintiffs do not generally oppose the entry of a protective order governing
14 the use and disclosure of 208.6 information concerning class members and potential
15 class members," but that Plaintiffs' counsel take issue with certain conditions of dis-
16 closure to third parties contained in the version attached. Based on the conferences
17 of counsel and the exchanged drafts, emails and letters, I understand Plaintiffs' dis-
18 agreement with Defendants' requested conditions on disclosure of asylum infor-
19 mation of preliminary-injunction subclass members to third parties to be as follows:

    a. Plaintiffs maintain they should be permitted to disclose asylum infor-
mation to any attorney of the asylum applicant to which the information
pertains, regardless of whether that attorney has entered their appear-
ance in the applicant's immigration case.

    b. Plaintiffs maintain they should be permitted to share asylum infor-
mation with the asylum applicant's "family members" without obtain-
ing the applicant's prior consent.

    c. Plaintiffs maintain that asylum applicants' family members and attor-

10

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

neys should be permitted to consent to further sharing of asylum infor-

mation to still other individuals.

d. Plaintiffs maintain that they should be permitted to share asylum infor-

mation with third parties based only on the applicant's oral (vs. written)

consent.

e. Plaintiffs maintain that they should not be required to retain records of

disclosures of asylum information to third parties.

31.    Also on December 8, 2020, I sent an email to Plaintiffs' counsel with a revised draft notice to those in ICE custody, which incorporated many of the suggestions Plaintiffs made regarding the notice contents. On December 9, 2020, Plaintiffs' counsel sent an email stating: "Recognizing that Defendants have incorporated some of our feedback, our position remains that this notice is not reasonable or adequate for purposes of complying with the Judge's order." In the email, Plaintiffs also expressly declined to include a phone number for Class Counsel, stating: "The notice also fails to provide relevant information about how to obtain relief, once an individual has established class membership. Because we do not have that information either, it would be inappropriate to include our phone number, as we likely will be unable to answer questions that callers have about the process. That said, we remain open to considering including a phone number on future notice that is reasonable and complies with the Court's order, on the assumption that such a number will be added to the national pro bono call list to enable free, unmonitored calls for any person in ICE custody."

32.    At this time, Defendants continue to work on various aspects of implementation of the October 30 Order, including: (1) finalizing the master list of potential class members; (2) developing appropriate procedures for the reopening or reconsideration of cases by those determined by USCIS to be class members and who have a final order of removal in regular removal proceedings before EOIR; (3) developing procedures for DHS to receive evidence from those who have a final order

11

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1  of expedited removal and are not in ICE custody; and (4) developing form notice(s)

2  for those subsets of potential class members to whom Notice is required under Par-

3  agraph 3 of the October 30 Order.

4      33.    At no point have Defendants refused to comply with the information-

5  sharing provisions of the Court's October 30, 2020 Order. Defendants have merely

6  requested that the parties agree to reasonable limitations on further disclosure of that

7  information prior to its production. The parties were actively engaged in negotiations

8  regarding such limitations. Defendants have also offered to facilitate the sharing of

9  such information by seeking the entry of a temporary protective order pending res-

10  olution of the current dispute.

11  **Defendants' Exhibits**

12      34.    Attached hereto as Exhibit A is a true and correct copy of the Declara-

13  tion of Joseph Draganac, dated January 5, 2021.

14      35.    Attached hereto as Exhibit B is a true and correct copy of the Declara-

15  tion of Jill W. Anderson, dated January 5, 2021.

16      36.    Attached hereto as Exhibit C is a certified copy of a decision from the

17  Executive Office of Immigration Review. This decision and certification have been

18  redacted to remove the identifying information of the respondent, as well as infor-

19  mation about the asylum claim, as protected from disclosure under 8 C.F.R. 1208.6

20  and not necessary to the determination of Plaintiffs' motion.

21      37.    Attached hereto as Exhibit D is a true and correct copy of the Declara-

22  tion of Elizabeth E. Mura, dated January 4, 2021.

23      38.    Attached hereto as Exhibit E is a true and correct copy of the current

24  version of a draft notice to be provided to individuals in ICE custody who have been

25  referred for a class membership interview.

26      39.    Attached hereto as Exhibit F is a true and correct copy of the Declara-

27  tion of Jay Visconti, dated January 4, 2021.

28      40.    Attached hereto as Exhibit G is a copy of a document entitled "Metering

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1  Update May 2019," purportedly authored by Stephanie Leutert, Savitri Arvey, and

2  Ellie Ezzell, and published by the University of Texas at Austin Strauss Center and

3  the Center for U.S.-Mexican Studies, UC San Diego School of Global Policy and

4  Strategy, which I accessed at, and downloaded from, the following:

5  https://www.strausscenter.org/publications/metering-update-may-2019/.

6       41.    Attached hereto as Exhibit H is a copy of a document entitled "Metering

7  Update November 2019," published by the University of Texas at Austin Strauss

8  Center and the Center for U.S.-Mexican Studies, UC San Diego School of Global

9  Policy and Strategy, which I accessed at, and downloaded from, the following:

10  https://www.strausscenter.org/publications/metering-update-

11  2/#:~:text=Since%20August%202019%2C%20asylum%20seek-

12  ers,in%2011%20Mexican%20border%20cities.

13       42.    Attached hereto as Exhibit I is a certified copy of a decision from the

14  Executive Office of Immigration Review. This decision and certification have been

15  redacted to remove the identifying information of the respondent, as protected from

16  disclosure under 8 C.F.R. 1208.6; the identifying information on the certification

17  and decision matches the identifying information for the individual to whom the de-

18  cision attached to the Lev Declaration at Exhibit 3 pertains.

19      I declare under penalty of perjury that the foregoing is true and correct to the

20  best of my knowledge. This declaration was executed on January 6, 2021, in Wash-

21  ington, D.C.

22                                       *s/ Katherine J. Shinners*

23                                       KATHERINE J. SHINNERS
Senior Litigation Counsel

24

25                                       *Counsel for Defendants*

26

27

28

             13               SHINNERS DECLARATION
                                  Case No. 3:17-cv-02366-BAS-KSC