EXHIBIT 16

MAYER BROWN LLP
 Matthew H. Marmolejo (CA Bar No. 242964)
 *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
 Ori Lev (DC Bar No. 452565)
 (*pro hac vice*)
 *olev@mayerbrown.com*
 Stephen M. Medlock (VA Bar No. 78819)
 (*pro hac vice*)
 *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
 Melissa Crow (DC Bar No. 453487)
 (*pro hac vice*)
 *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING ASYLUM INFORMATION OF POTENTIAL PRELIMINARY-INJUNCTION CLASS MEMBERS** |
| v. | |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | Hearing Date: January 19, 2021 |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

1

CENTER FOR CONSTITUTIONAL RIGHTS

2
    Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
    *bazmy@ccrjustice.org*

3
    Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
    *aguisado@ccrjustice.org*

4
666 Broadway, 7th Floor
New York, NY 10012

5
Telephone: +1.212.614.6464

6
Facsimile: +1.212.614.6499

7
SOUTHERN POVERTY LAW CENTER
    Sarah Rich (GA Bar No. 281985) (*pro hac vice*)

8
    *sarah.rich@splcenter.org*
    Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)

9
    *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340

10
Decatur, GA 30030
Telephone: +1.404.521.6700

11
Facsimile: +1.404.221.5857

12
AMERICAN IMMIGRATION COUNCIL

13
    Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
    *kwalters@immcouncil.org*

14
1331 G St. NW, Suite 200

15
Washington, D.C. 20005
Telephone: +1.202.507.7523

16
Facsimile: +1.202.742.5619

17

18

19

20

21

22

23

24

25

26

27

28

PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...............................................................1

II.    BACKGROUND ................................................................2

    A.    The PI and Clarification Order ....................................2

    B.    The Parties' Consultations and Areas of Disagreements....................4

        1.    Insistence on a Second Order ....................................4

        2.    Limitations on Disclosure .......................................5

        3.    Preconditions on Sharing Information..........................6

III.    ARGUMENT ...................................................................6

    A.    The Court Has Ordered Defendants To Share Information................6

    B.    This Is Not a Discovery Dispute Governed by Rule 26 .....................7

    C.    Defendants' Proposed Terms Are Unreasonable................................8

        1.    Oral Consent Is Sufficient .......................................9

        2.    Attorneys Who Have Not Entered an Appearance May Represent Asylum Seekers ......................................10

        3.    Family Members Often Aid Asylum Seekers ........................12

        4.    Attorneys and Family Members Should Be Able To Authorize Further Disclosure ....................................13

        5.    The Requirement That Plaintiffs Provide Information to the Government Upon Demand Is Unreasonable and Likely Unethical ................................................14

    D.    Defendants Misinterpret the Confidentiality Regulations .................15

        1.    The Regulations Apply Only to the Government..................15

        2.    The Reference to Third-party Obligations in the Internal Guidance Document Does Not Apply to Non-governmental Parties .............................................16

IV.    CONCLUSION ..............................................................17

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*A.B.T. v. U.S.C.I.S.*,
   2012 WL 2995064 (W.D. Wash. 2012) ................................................................ 2

*Al Otro Lado, Inc. v. Wolf*,
   2020 U.S. App. LEXIS 39856 (9th Cir. 2020) ...................................................... 4

*Impact Engine, Inc. v. Google LLC*,
   No. 319CV01301CABBGS, 2020 WL 1939023 (S.D. Cal. Apr. 21,
   2020) ...................................................................................................................... 8, 9

*Ms. L v. U.S. Immigration & Customs Enforcement*,
   No. 18-cv-00428-DMS-MDD (S.D. Cal. July 8, 2018) .................................... 10

*Owino v. Holder*,
   771 F.3d 527 (9th Cir. 2014) .................................................................................. 2

*Phillips v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ............................................................................... 8

*Quality Inv. Props. Santa Clara, LLC v. Serrano Elec., Inc.*,
   2010 WL 2889178 (N.D. Cal. 2010) ..................................................................... 1

*Rivera v. NIBCO, Inc.*,
   384 F.3d 822 (9th Cir. 2004) ................................................................................. 8

*Satmodo, LLC v. Whenever Commc'ns, LLC*,
   2018 WL 1071707 (S.D. Cal. 2018) ...................................................................... 1

**Other Authorities**

8 C.F.R. §§ 208.6, 1208.6 ................................................................................... 9, 10

8 C.F.R. § 208.30(d)(4) ........................................................................................ 12

84 Fed. Reg. 33,829 (July 16, 2019) ................................................................. 2, 3

Fed. R. Civ. P. 26 .......................................................................................... 1, 6, 7, 8

Joseph E. Langlois, Director, Asylum Division, USCIS, "Fact Sheet
   on Confidentiality" (June 15, 2005) .................................................................... 7

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Model Rule of Professional Conduct 1.3 ................................................................ 13

Williston on Contracts § 62:3 ............................................................................... 11

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

Case 3:17-cv-02366-BAS-JKSC Document 654-1 Filed 05/14/23 PageID.59916 Page 6 of 24
Case 3:17-cv-02366-BAS-KSC Document 654-1 Filed 01/05/21 Page 6 of 24 PageID #:
3514

# I.    INTRODUCTION

The government's motion for a protective order is the latest step in a long-standing effort by the Trump administration to ignore and work around this Court's November 19, 2019 preliminary injunction order ("PI"). The present motion concerns the information-sharing requirements of this Court's October 30, 2020 order clarifying the scope of its prior preliminary injunction order. *See* Dkt. 605 ("Clarification Order"). In that order, this Court specifically directed the government to take reasonable and affirmative steps to identify members of the class that this Court provisionally certified in connection with the PI (the "PI class members"). *See id.* at 23, 25. Since October 30, 2020, the government has not identified a single PI class member to Plaintiffs or affirmatively shared any information with Plaintiffs regarding any PI class members. The government's apparent rationale for failing to comply with this Court's order is that this Court needs to issue a *second* order requiring the government to disclose this information. Plaintiffs' position is simple: this Court already told the government what to do over 60 days ago; it does not need to say the same thing again.

The government attempts to shoe-horn its motion into Federal Rule of Civil Procedure 26(c)(1). *See* Dkt. 647-1 at 6. But Rule 26(c)(1) is limited to *discovery*. And this Court's conclusion that the government must take reasonable and affirmative steps to assist with the identification of class members, including sharing relevant information with Plaintiffs, was based on the class certification standard. *See*, *e.g.*, Dkt. 605 at 21-23 (citing the analysis of Rule 23 in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355-56 (1978)). And none of the cases cited by the government has anything to do with ascertaining membership in an injunctive relief class.[2] Because the government's motion is based on the false presumption that this

---

[2] *See*, *e.g.*, *Quality Inv. Props. Santa Clara, LLC v. Serrano Elec., Inc.*, 2010 WL 2889178 at *1 (N.D. Cal. 2010) (dispute concerning protective order for discovery); *Satmodo, LLC v. Whenever Commc'ns, LLC*, 2018 WL 1071707, at *2-3 (S.D. Cal.

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

1  is a discovery dispute, and the government has not carried its burden to show that
2  good cause exists for a protective order, no protective order should be issued.

3      In an effort to avoid motions practice, Plaintiffs attempted to negotiate a
4  simple protective order with the government. But Plaintiffs' efforts to avoid clogging
5  this Court's docket should not be taken as an admission that a further protective
6  order is necessary. It is not. But, if this Court is inclined to grant a protective order,
7  it should grant the protective order proposed by Plaintiffs in their pending Motion to
8  Enforce the PI. *See* Proposed Order granting Plaintiffs' Motion to Enforce
9  Preliminary Injunction (Dkt. 644).

10 **II.    BACKGROUND**

11     **A.    The PI and Clarification Order**

12     On July 16, 2019, the government issued a rule providing that, with narrow
13 exceptions, noncitizens would be categorically ineligible for asylum if they transited
14 through a third country en route to the U.S. but did not receive a final judgment
15 denying protection in that country. Asylum Eligibility and Procedural Modifications,
16 84 Fed. Reg. 33,829 (July 16, 2019) ("Asylum Ban"). In other words, any non-
17 Mexican asylum seeker who arrived at a port of entry on the U.S.-Mexico border
18 ("POE") would need to fully adjudicate an asylum claim in Mexico prior to seeking
19 asylum in the U.S. Because Mexico generally requires asylum seekers to make an
20 asylum application within 30 days of arriving in the country, the Asylum Ban
21 effectively denied access to the U.S. asylum process for asylum seekers who had
22 been waiting in Mexico for weeks because of the government's turnback policy.
23 *See*, *e.g.*, Dkt. 330 at 6-7.

24     Plaintiffs filed a motion for preliminary injunction to prevent the government
25 from applying the Asylum Ban to a provisional class of asylum seekers who

26

27 2018) (same); *A.B.T. v. U.S.C.I.S.*, 2012 WL 2995064, at *1 (W.D. Wash. 2012)
   (dispute concerning use of acronyms in place of asylum seekers' names); *Owino v.*
28 *Holder*, 771 F.3d 527, 533 (9th Cir. 2014) (discussing State Department's violation
   of asylum seeker's right to confidentiality).

PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER

attempted to enter the U.S. prior to the Asylum Ban's July 16, 2019 effective date but were denied entry because of the government's metering policy. On November 19, 2019, this Court issued the PI and certified the provisional class consisting of "all non-Mexican asylum seekers who were unable to make a direct asylum claim at a U.S. port of entry before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." Dkt 330 at 36 ("PI class"). This Court enjoined the government from applying the Asylum Ban to members of the PI class and ordered the government to return to the pre-Asylum Ban practices for processing class members' requests for asylum. *Id*.

Since November 2019, the government has not fully complied with the PI. The government has failed to take reasonable steps to determine if asylum seekers were PI class members, resulting in the government applying the Asylum Ban to an unknown number of PI class members. Although the government has lists of thousands of asylum seekers who were metered at POEs, it is still unclear if the government is cross-referencing these lists against information in its possession. Nor has the government shared any information about PI class members that it has identified using its internal records.

As a result, Plaintiffs moved to clarify the scope of the PI. On October 30, 2020, this Court granted Plaintiffs' motion, clarifying that (a) the PI applied to all PI class members; (b) the Executive Office for Immigration Review ("EOIR") was bound by the terms of the PI; (c) the government had to reopen or reconsider past determinations that potential PI class members were ineligible for asylum based on the Asylum Ban; and (d) the government had to make all reasonable efforts to identify PI class members and notify those in its custody or in immigration proceedings of their class membership and the PI. Dkt. 605 at 24-25.

Importantly, the Clarification Order required the government to share certain information with Plaintiffs' counsel to facilitate the identification of potential PI class members. *Id*. at 21-23. Noting the administrative and logistical difficulties

PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER

involved and the information exclusively in Defendants' custody, this Court ordered that Defendants "must review their own records to aid in the identification of class members and must share the information in their custody regarding the identities of class members with Plaintiffs." *Id*. at 23; *see also id.* at 25 (ordering Defendants to "shar[e] class members' identities with Plaintiffs").

That has not happened. Over more than 60 days, the government **has not identified a single PI class member to Plaintiffs**, much less shared the information in its custody with Plaintiffs. That is inexcusable. The Ninth Circuit did not stay the government's general requirement to identify PI class members and share that information with Plaintiffs. *See Al Otro Lado, Inc. v. Wolf*, 2020 U.S. App. LEXIS 39856, at *2-3 (9th Cir. 2020). In its motion papers, the government does not even attempt to explain why it has failed to comply with this Court's Clarification Order, apart from the fact that it apparently disagrees with it. Instead, its arguments are based on the presumption that the government needs to be ordered to share information again. *See* Cassler Decl., ¶ 3.

### B.    The Parties' Consultations and Areas of Disagreements

The parties have consulted extensively regarding the need for, and the appropriate scope of, a protective order governing the disclosure of asylum-related information pertaining to potential PI class members. The sticking point in the negotiations were that (a) the government believed that this Court needed to issue a *second* order requiring it to share information with Plaintiffs, (b) the government insisted on limitations on Plaintiffs' ability to share information it received that have no basis in law and find no support in the Clarification Order and (c) the government sought to impose record-keeping and record-sharing obligations on Plaintiffs.

### 1.    Insistence on a Second Order

The government takes the position that it cannot share information with Plaintiffs about potential PI class members absent a new order mandating such disclosure. Dkt. 644-2 ¶¶ 6, 29, 45, 51(f). But this Court already ordered the

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

government to share such information with Plaintiffs, and the government never explains why it needs to be twice ordered to do the same thing. Dkt. 605 at 22-23, 25; *see also* Dkt. 644-2, ¶¶ 6, 29.

### 2. Limitations on Disclosure

Next, the government has sought to impose unreasonable limitations on the further disclosure of information it has already been required to share under the Clarification Order.

**Oral v. written authorization.** Plaintiffs have proposed that they be allowed to share asylum-related information based upon the written *or oral* authorization of the individual to whom the information pertains, or such individual's family member or attorney. Dkt. 644-2, ¶ 49. Defendants insist that information can be shared only upon a *signed*, *written* authorization from the individual to whom the information pertains. *Id.*, ¶ 50; Dkt. 644-4 at 4 (¶ 5); Dkt. 647-3 at 7 (¶ VI.B.5).

**Attorneys who have not entered an appearance.** Plaintiffs have proposed that they be allowed to share information with any attorney representing an individual to whom the information pertains. Dkt. 644-2, ¶ 49. Defendants insist that information can be shared only with attorneys for the individual who have completed specified government forms necessary to enter an appearance at specific stages in the individual's immigration case. *Id.*, ¶ 50; Dkt. 644-4 at 3 (¶ 4); Dkt. 647-3 at 6-7 (¶ VI.B.4).

**Family members.** Plaintiffs have proposed that they be allowed to share information with family members of the individuals to whom the information pertains, in light of the difficulty of communicating with PI class members in government custody or already deported. Dkt. 644-2, ¶ 49. Defendants have rejected any information sharing absent a signed, written authorization from the individual to whom the information pertains. *Id.*, ¶ 50; Dkt. 644-4 at 3 (¶ 4).

**Those authorized by attorneys or family members.** Plaintiffs have proposed that they be allowed to share information with individuals authorized

PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER

1  (orally or in writing) by an asylum seeker's attorney or family member. Dkt. 644-2,

2  ¶ 49. Defendants have rejected any information sharing based solely on the

3  authorization of counsel or family members. *Id.*, ¶ 50; Dkt. 644-4 at 4 (¶ 5).

4                **3.     Preconditions on Sharing Information**

5         The government has insisted that Plaintiffs maintain records of any disclosure

6  of asylum-related information obtained from the government. Dkt. 644-2, ¶ 50; Dkt

7  644-4 at 4. Plaintiffs have rejected this proposal. Dkt. 644-2, ¶ 49. Likewise, the

8  government would require Plaintiffs to produce records of any disclosures of

9  asylum-related information to Defendants or EOIR upon their demand. Dkt. 644-2,

10  ¶ 50; Dkt 644-4 at 4. Plaintiffs have rejected both proposals because there is no basis

11  to impose such obligations on Plaintiffs, and the proposed "produce on demand"

12  provision would intrude on Plaintiffs' counsel's attorney work product and

13  improperly insert the government into Plaintiffs' efforts on behalf of the class. Dkt.

14  644-2, ¶ 49.

15  **III.   ARGUMENT**

16         The government has not met its burden of establishing the necessity for a

17  protective order or for the specific limitations on disclosure that it proposes. First,

18  this Court has *already* ordered the government to disclose this information. Second,

19  the government cannot seek a protective order limiting the scope of a prior court

20  order concerning class certification issues under Fed. R. Civ. P. 26. Third, even if

21  Rule 26 did apply, the government has not met its burden of established good cause

22  for entry of a protective order because its proposed terms are unreasonable for a

23  litany of reasons. Fourth, the government misreads its own regulation and

24  misinterprets the scope of the internal agency guidance purporting to support it.

25       **A.     The Court Has Ordered Defendants To Share Information.**

26         The government's refusal to share asylum-related information not only

27  frustrates Plaintiffs' counsel's ability to adequately represent the PI class, but also

28  contravenes a prior court order. This Court's October 30, 2020 Clarification Order

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

mandates that the government "*must* share the information in [its] custody regarding the identities of class members with Plaintiffs." Dkt. 605 at 23 (emphasis added); *see also id.* at 25. And for good reason. Taking note of the "administrative complexity" of the case and the deficiencies of the available asylum-related material, this Court concluded that it was "not necessarily easier for [the government] to notify individuals [not in pending administrative proceedings or in the government's custody] . . . of their potential class membership" than it would be for Plaintiffs' counsel. *Id.* at 22-23. The Court, taking note of obvious logistical challenges in identifying and providing notice to PI class members, entered an order requiring the government to facilitate Plaintiffs' provision of notice to those PI class members by sharing information about their identities. *Id.* Defendants' ongoing refusal to abide by this Court's order issued over two months ago, now apparently based on June 15, 2005 internal agency guidance[3] that the government did not disclose to Plaintiffs prior to the filing of the Motion, *see* Cassler Decl. ¶¶ 3-4, is nothing more than tactical delay. Such gamesmanship gravely jeopardizes PI class members' safety and security by depriving them of the opportunity to access the asylum process in the United States.[4]

## B. This Is Not a Discovery Dispute Governed by Rule 26.

This Court should reject the government's attempt to frame its reticence to comply with a prior court order as a discovery dispute—it is not. The government cannot use Fed. R. Civ. P. 26(c) as a shield against compliance with a prior order. *See* Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order . . ."). This Court's conclusion that the government

---

[3] Memorandum from Joseph E. Langlois, Director, Asylum Division, USCIS, "Fact Sheet on Confidentiality" (June 15, 2005) ("Fact Sheet"), https://www.uscis.gov/sites/default/files/document/memos/fctsheetconf061505.pdf

[4] The fact that parties have stipulated to protective orders in other cases, *see* Dkt. 647-4, Dkt. 647-5, does not support Defendants' position that they may refuse to comply with a Court order absent a new Court order, and on Defendants' terms at that.

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

must take reasonable and affirmative steps to assist with the identification of class members, including sharing relevant information with Plaintiffs, was based on the class certification standard. *See*, *e.g.*, Dkt. 605 at 21-23. Protective orders, on the other hand, are intended to govern the conduct of future discovery in a case, not to justify the withholding of court-ordered information *ex post facto*. If the government wants to change the scope of the Court's previous order, it needs to seek to clarify or amend it. But it has not done so.[5]

## C. Defendants' Proposed Terms Are Unreasonable.

Even if Rule 26 did apply, Defendants have failed to meet their burden of demonstrating that their requested protective order is necessary.

> In general, the party seeking a protective order for discovery materials must demonstrate that "good cause" exists for the protection of that evidence. "Good cause" is established where it is specifically demonstrated that disclosure will cause a "specific prejudice or harm." *Phillips [v. Gen. Motors Corp.*, 307 F.3d [1206,] 1211-12 [(9th Cir. 2002)]. Courts have held that the showing of "good cause" under Rule 26 is a heavy burden. *See Blankenship v. Hearst Corp*., 519 F.2d 418 (9th Cir.1975).

*Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004). In deciding whether a protective order should issue, courts "must weigh the interests of both parties in considering the necessity and scope of the order." *Impact Engine, Inc. v. Google LLC*, No. 319CV01301CABBGS, 2020 WL 1939023, at *1 (S.D. Cal. Apr. 21, 2020).

Here, Defendants have failed to carry their burden of demonstrating "specific prejudice or harm." *Phillips*, 307 F.3d at 1210-12. Against this absence of harm to the government, the Court must weigh the real harm to Plaintiffs—and the PI class members that the PI is intended to protect. Defendants' proposed protective order

---

[5] Having argued that its appeal of the PI deprived this Court of jurisdiction to issue the Clarification Order, the government is understandably hesitant to seek modification of the Clarification Order, which it has also appealed. But that presumed hesitation to appear inconsistent does not change the fact that if the government wants to change the Clarification Order it should move to do so.

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

would require an asylum seeker to whom the information pertains to provide signed, written authorization before Plaintiffs could share such information with anyone other than counsel who previously entered an appearance on the individual's behalf before DHS or EOIR. Dkt. 647-3 at 7 (¶¶ VI.B.4-5).[6] Then Plaintiffs would need to meticulously document what information they shared and with whom they shared it. Dkt. 647-3 at 7 (¶¶ VI.B final paragraph). Finally, whenever the government wills it, Plaintiffs must make a full accounting of how they shared the information. *Id.* These provisions would substantially impair Plaintiffs' ability to identify, locate and assist PI class members—the very purposes for which this Court ordered the information sharing in the first place. \

### 1.   Oral Consent Is Sufficient.

Defendants argue that their proposed requirement of written, as opposed to oral, consent "mirror[s] the conditions and limitations set forth" in 8 C.F.R. §§ 208.6, 1208.6. But, as discussed below, those regulations apply only to the government. Defendants have failed to articulate a compelling reason to similarly limit Plaintiffs' disclosures of asylum-related information for purposes of enforcing the PI in this case. Defendants' argument that absent a signed, written authorization an asylum seeker "may not understand the import of the authorization" or what information she is authorizing Plaintiffs to disclose, Dkt. 647-1 at 9, is nothing more than conjecture. There is no reason to think that signing a form will result in more informed consent than a reasoned conversation with counsel. There is also no basis for the government to have to "establish the authenticity" of any oral consent. *See*

---

[6] Defendants seek to require that Plaintiffs may only share potential PI class member information with potential PI class members' attorneys if they have "<u>submitted</u>" a Form EOIR-27 (Notice of Entry of Appearance as Attorney or Accredited Representative Before the Board of Immigration Appeals), Form EOIR-28 (Notice of Entry of Appearance as Attorney or Representative Before the Immigration Court) or Form G-28 (Notice of Entry of Appearance as Attorney or Accredited Representative, submitted to DHS). Unlike the EOIR forms, the G-28 requires a client signature. *See* Form G-28 at 3, https://www.uscis.gov/sites/default/files/document/forms/g-28.pdf.

**PLS. OPP TO DEFS' MOT. FOR**
**PROTECTIVE ORDER**

1   *id.* The government simply has no role in preemptively limiting—in a manner more
2   restrictive than the rules of professional conduct—Plaintiffs' ability to use this
3   information to further PI class members' rights. Indeed, Defendants have previously
4   stipulated to a protective order that would allow class counsel in a different lawsuit
5   to share asylum seekers' information much more broadly than would be permitted
6   by the protective order Plaintiffs have agreed to here, including permitting
7   information sharing without written consent of the asylum seekers. *See* Cassler Decl.
8   Ex. A at 4-6 (protective order entered in *Ms. L v. U.S. Immigration & Customs*
9   *Enforcement*, No. 18-cv-00428-DMS-MDD (S.D. Cal. July 8, 2018)).

10      In addition, Defendants' proposed requirement of written authorization would
11   impose substantial burdens on Plaintiffs and undermine the very goal of information
12   sharing—to ensure class members are aware of their rights under the PI. Class
13   members are likely located throughout the world, with varying access to technology,
14   and many may be living in hiding. Obtaining signed written consent would be
15   burdensome, if not impossible, in many cases, Pinheiro Decl. ¶¶ 9-16, and is
16   unnecessary. Even those class members in the United States may not have ready
17   access to technology to efficiently provide signed, written consent. Indeed, even for
18   those class members in Defendants' custody, the requirement of signed, written
19   consent imposes additional hurdles and delays. Cassler Decl. ¶¶ 5-8; Pinheiro Decl.
20   ¶¶ 4-8.

21      While Plaintiffs have agreed to obtain consent from a potential PI class
22   member or (where necessary) her legal representative or family member before
23   sharing information with someone other than the individual's legal representative or
24   family member, Defendants have failed to justify the additional requirement that
25   such consent be in writing. Because Defendants have not established good cause for
26   this requirement and because it would hinder Plaintiffs' ability to help PI class
27   members vindicate their rights, this proposed limitation should be rejected.

28

**2.      Attorneys Who Have Not Entered an Appearance May**

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

**Represent Asylum Seekers.**

Defendants' proposed protective order would also prevent Plaintiffs from sharing information with counsel for PI class members who have not completed, and submitted to the government, one of three specified forms necessary to enter an appearance at specific stages in an individual's immigration case. Dkt. 647-3 at 6-7 (¶ VI.B.4). Again, Defendants have failed to justify this restriction. They devote a single sentence to it in their motion, arguing that only the submission of the referenced government forms can demonstrate that an asylum seeker has authorized the disclosure of asylum-related information to an attorney. Dkt. 647-1 at 8. But they fail to explain why such a limitation is necessary, where attorneys are duty-bound by the rules of professional responsibility to act in their clients' interests and to maintain client confidences. They also refuse to acknowledge that government forms do not apply to non-government actors such as Plaintiffs and have provided no basis for imposing their own internal administrative rules on Plaintiffs after the Court ordered that they share class member information. And, as is the case with Defendants' baseless demand that any consent be written as opposed to oral, Defendants have a track record of stipulating to a protective order permitting information sharing with a class member's attorney *or potential attorney* without requiring that attorney to have previously entered an appearance before DHS or EOIR. *See* Cassler Decl., Ex. A at 5.

Defendants' refusal to allow Plaintiffs to share information with certain PI class members' attorneys would unnecessarily limit Plaintiffs' ability to protect PI class members' rights. The specified forms, which are generally used to enter appearances in agency proceedings, are not necessary to establish an attorney-client relationship. *See*, *e.g.*, Williston on Contracts § 62:3. Written, oral, or implied agreements (4th ed.) (detailing how courts determine whether an attorney-client relationship has been established). Indeed, class members have the right to counsel even if their attorney did not previously represent them in the agency proceedings

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

for which one of the three forms is required.[7]

Plaintiffs also have no way of verifying that such a form has been filed. Furthermore, it may be impossible for a class member to sign any form authorizing disclosure of information, given the logistical challenges noted above. *See* Pinheiro Decl., ¶¶ 4-16. For potential PI class members who are not in EOIR proceedings (and thus have no way for an attorney to file an EOIR-27 or EOIR-28) and who have no way to sign (or efficiently sign) a Form G-28, requiring a filed EOIR-27, EOIR-28 or G-28 would effectively strip them of the right to individual representation in relation to Plaintiffs' efforts to enforce the Court's Orders. Moreover, for potential PI class members with whom extensive communication is impossible for logistical or technological reasons, *see* Pinheiro Decl., ¶¶ 4-16, exchanging information with their attorneys may be the only way for Plaintiffs to protect their right to relief under the Court's orders. It is unclear what this burdensome requirement would accomplish other than unnecessarily hindering Plaintiffs' efforts to vigorously protect class members' rights.

### 3.    Family Members Often Aid Asylum Seekers.

Defendants have also rejected Plaintiffs' proposal that Plaintiffs be authorized to share information with family members of PI class members for the purpose of facilitating compliance with the PI. Dkt. 644-2, ¶ 49. Again, Defendants have failed to support their position, arguing only that such information sharing might "potentially subject the [asylum seeker or her relatives] to retaliation based on the asylum claim." Dkt. 647-1 at 8.

---

[7] It may be, for example, that a PI class member is represented by an attorney who represented her only in a prior federal court action, such as a Petition for Review of an order of the Board of Immigration Appeals or a petition for writ of habeas corpus—proceedings for which no agency form is required. Some PI class members may retain new counsel for the purpose of exploring eligibility for PI relief; such counsel would also have had no occasion to enter an appearance before DHS or EOIR. Similarly, counsel may attend a credible fear interview without entering an appearance in the interviewee's case. *See* 8 C.F.R. § 208.30(d)(4) ("Any person or persons with whom the alien chooses to consult may be present at the [credible fear] interview . . . .").

**PLS. OPP TO DEFS' MOT. FOR**
**PROTECTIVE ORDER**

Based on the experience of Plaintiffs' counsel and Plaintiff AOL in representing asylum seekers, however, Plaintiffs may need to communicate with PI class members through their family members in order to provide notice of court orders, gather information to evaluate potential relief, or assist in facilitating reopening or reconsideration of prior asylum ineligibility determinations. Cassler Decl., ¶ 9; Pinheiro Decl., ¶ 4, 8. Indeed, Plaintiffs' efforts on behalf of the Applicant—whose deportation this Court enjoined in light of the government's failure to provide her the benefits of the preliminary injunction—were facilitated by communication with a family member of the Applicant. Cassler Decl., ¶ 9. Plaintiffs' counsel have independent ethical obligations to class members and will exercise their professional judgment to determine when information sharing with family members would be in individual class members' best interests. *See*, *e.g.*, ABA, Model Rule of Professional Conduct 1.3 Diligence-Comment. A blanket prohibition on such communications—absent a cumbersome process involving Court involvement—will hinder the ability of Plaintiffs to zealously represent the class.

### 4. Attorneys and Family Members Should Be Able To Authorize Further Disclosure.

Defendants have also rejected Plaintiffs' proposal that Plaintiffs be authorized to share information with third parties based on authorization from a PI class member's counsel or family member. Dkt. 644-2, ¶¶ 49-50. To be clear, Plaintiffs do not believe that any limitation on their disclosure of this information, beyond the requirement that it be used to facilitate compliance with the PI, is warranted. However, Plaintiffs proposed authorization of this category of individuals to provide Defendants with comfort that disclosure would not be solely a question of Plaintiffs' counsel's judgment, but also require the approval of another individual who can be reasonably expected to have the asylum seeker's best interests at heart. Given the challenges inherent in finding and communicating with PI class members, *see* Cassler Decl., ¶¶ 5-10; Pinheiro Decl., ¶¶ 4-16, it is essential that Plaintiffs be

authorized to share relevant information with trustworthy individuals to facilitate compliance with the PI and vindicate class members' rights. Plaintiffs' proposal provides an eminently reasonable approach under the circumstances and is more restrictive than an existing stipulated protective order to which Defendants are a party in another case. *See* Cassler Decl., Ex. A at 5-6 (in the context of information sharing to facilitate compliance with a court order requiring reunification of parents whom Defendants separated from their children, authorizing disclosure to class members' counsel or prospective counsel, and also authorizing class counsel to disclose class member information to "*[a]ny individuals or persons who Class Counsel designates* for the purpose of facilitating the reunification of Class Members and their children, including (but not limited to) nonprofit organizations, lawyers, faith-based groups, shelters, *or any other organization or individuals who may be able to assist in the reunification process*" (emphasis added)).

### 5. The Requirement That Plaintiffs Provide Information to the Government Upon Demand Is Unreasonable and Likely Unethical.

Defendants do not even attempt to defend the provision of their proposed protective order that would require Plaintiffs to produce records of any disclosures of information to Defendants or EOIR upon demand. Dkt. 674-3 at 7 (¶ VI.B.6). Defendants' brief makes no mention of this provision,[8] referring only to the "Proposed Protective Order's requirement that [Plaintiffs] keep records of disclosures to third parties." Dkt. 647-1 at 9. Presumably, this is because the provision is indefensible. Plaintiffs' decisions to share information with certain individuals are likely protected by the attorney-work product doctrine and may be privileged as well. Because Defendants and EOIR have no right to demand that Plaintiffs produce such records to them upon demand, this provision should be

---

[8] The provision is also notably absent from both protective orders the government attaches to its motion, Dkt. 647-4 & 5, and is likewise absent from the protective order in the *Ms. L.* litigation. *See* Cassler Decl., Exh. A.

-14-

stricken.

### D. Defendants Misinterpret the Confidentiality Regulations.

#### 1. The Regulations Apply Only to the Government.

All of the government's arguments are based on a misinterpretation of 8 C.F.R. §§ 208.6 and 1208.6. These regulations, which limit disclosure of information contained within or pertaining to an asylum application or related fear determination, bind only the government. This conclusion follows from the plain language of the regulations themselves. Sections 208.6(a) and 1208.6(a), which specify the information subject to the regulations, refer to asylum- and fear-related records and information in the custody of DHS and EOIR, respectively; if the regulations applied to information in the custody of private parties, then it would make no sense for those sections to permit disclosure "at the discretion of the Attorney General." §§ 208.6(a), 1208.6(a).

*Owino v. Holder*, which Defendants erroneously cite in support of their argument, is instructive. There, the Ninth Circuit reviewed whether the U.S. State Department had violated 8 C.F.R. § 208.6 by delivering a Kenyan asylum seeker's arrest documents directly to Kenyan police officers. 771 F.3d 527, 535 (9th Cir. 2014). Finding that it had, the court ruled that "*federal officials* must . . . maintain in confidence information relating to applicants' asylum applications." *Id*. at 533 (emphasis added).

After applying "standard tools of interpretation," the regulations are not "genuinely ambiguous" on the question of whether they apply to entities other than DHS and EOIR. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-15 (2019). To the contrary, the regulations clearly apply only to the government, and therefore there is "no plausible reason for deference" to the agency's argument that the regulations mean something other than what they plainly say. *Id*. at 2415.[9]

---

[9] The government cannot have it both ways: if the government's tortured interpretation of the regulations as applying to Plaintiffs were correct, there would be no need for a protective order in the first place.

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

### 2. The Reference to Third-party Obligations in the Internal Guidance Document Does Not Apply to Non-governmental parties.

Even if the regulations could read as ambiguous on this issue, the government's internal agency guidance does not actually support the government's position and, to the extent the government argues otherwise, its interpretation is not entitled to any deference.

First, while noting that third-party recipients are bound by the "confidentiality requirements of 8 CFR 208.6,"[10] the guidance fails to identify which third parties it is referring to. The most logical reading of the guidance is that it applies to third parties in the executive branch or their contractors, to whom disclosures are permitted under § 208.6(c)(1). Applying the regulations' substantive requirements to the other two groups to whom information may be disclosed—courts, § 208.6(c)(2), and others who have written consent of the individual who is the subject of the records, § 208.6(a)—makes little sense. As to the second group, DHS's own privacy waiver form does not extend the substantive provisions of the regulations to individuals who receive information with written consent under § 208.6(a). Instead, that form is clear that "DHS has no control over how the Recipient will use or disseminate [the] information."[11] And if the regulation were read to limit federal courts' use of information disclosed pursuant to court order under § 208.6(c)(2), which appears to be the government's interpretation of its own internal guidance, this reading would raise separation of powers concerns. The most plausible reading of the guidance is that it simply does not contemplate whether, if information is provided to Plaintiffs' counsel pursuant to a court order, class counsel is then bound by the regulations. In reality, the government is attempting to bootstrap a litigation position into internal guidance that is silent on the issue at hand. That

---

[10] The internal agency guidance relates only to 8 C.F.R. § 208.6 and not to its companion regulation, 8 C.F.R. § 1208.6.

[11] ICE Form 60-001 (2/11), Privacy Waiver Authorizing Disclosure to a Third Party, https://www.ice.gov/doclib/news/library/forms/pdf/60-001.pdf.

litigation position is due no deference. *Kisor*, 139 S. Ct. at 2416-17 (to receive deference, an interpretation must be the agency's "authoritative" or "official position," and a court "should decline to defer to a merely 'convenient litigating position'"); *Southeast Alaska Conservation Council v. U.S. Forest Service*, 443 F. Supp. 3d 995, 1020-21 (D. Alaska 2020) (applying *Kisor* to conclude deference to an agency's litigation position interpreting regulations was unwarranted).

Second, reading the guidance to mean that "third parties" includes class counsel is not a "reasonable" reading and would stretch the regulations far beyond their plain language. *See Kisor*, 139 S. Ct. at 2415-19. The regulations simply do not state that they apply to private parties in possession of information that, if in government custody, would be subject to the regulations. Because the regulations give no notice of such a possibility, the interpretation is entitled no deference because it would "create[] 'unfair surprise' to regulated parties." *Id.* at 2417-18.

For all of these reasons, Sections 208.6 and 1208.6 do not apply to information disclosed to Plaintiffs' counsel pursuant to the Court's orders, and the government lacks any legal basis for requiring that Plaintiffs be subject to a protective order imposing on them the regulations' substantive provisions.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion and instead order Defendants to comply with the Court's prior order and share relevant information with Plaintiffs.

Dated: January 5, 2021

MAYER BROWN LLP
    Matthew H. Marmolejo
    Ori Lev
    Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
    Melissa Crow
    Sarah Rich
    Rebecca Cassler

PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER

1

2   CENTER FOR CONSTITUTIONAL
    RIGHTS
3       Baher Azmy
        Angelo Guisado
4

5   AMERICAN IMMIGRATION
    COUNCIL
6       Karolina Walters

7

8   By: */s/ Ori Lev*
        Ori Lev
9

    *Attorneys for Plaintiffs*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

**CERTIFICATE OF SERVICE**

  I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: January 5, 2021      MAYER BROWN LLP


             By _/s/ Ori Lev_____

1    MAYER BROWN LLP
       Matthew H. Marmolejo (CA Bar No. 242964)
2      *mmarmolejo@mayerbrown.com*
     350 S. Grand Avenue
3    25th Floor
     Los Angeles, CA 90071-1503
4      Ori Lev (DC Bar No. 452565)
       (*pro hac vice*)
5      *olev@mayerbrown.com*
       Stephen M. Medlock (VA Bar No. 78819)
6      (*pro hac vice*)
       *smedlock@mayerbrown.com*
7    1999 K Street, N.W.
     Washington, D.C. 20006
8    Telephone:  +1.202.263.3000
     Facsimile:    +1.202.263.3300
9
     SOUTHERN POVERTY LAW CENTER
10     Melissa Crow (DC Bar No. 453487)
       (*pro hac vice*)
11     *melissa.crow@splcenter.org*
     1101 17th Street, N.W., Suite 705
12   Washington, D.C. 20036
     Telephone: +1.202.355.4471
13   Facsimile: +1.404.221.5857

14   *Additional counsel listed on next page*
     *Attorneys for Plaintiffs*
15
                **UNITED STATES DISTRICT COURT**
16
             **SOUTHERN DISTRICT OF CALIFORNIA**
17

18   Al Otro Lado, Inc., *et al.*,          Case No.:  17-cv-02366-BAS-KSC

19              Plaintiffs,              **DECLARATION OF REBECCA M.
                                         CASSLER IN SUPPORT OF
20        v.                             PLAINTIFFS' OPPOSITION TO
                                         DEFENDANTS' MOTION FOR
21   Chad F. Wolf,[1] *et al.*,          PROTECTIVE ORDER
                                         CONCERNING ASYLUM
22              Defendants.              INFORMATION OF POTENTIAL
                                         PRELIMINARY-INJUNCTION
23                                       CLASS MEMBERS

24

25

26

     _____
27   [1] Acting Secretary Wolf is automatically substituted for former Acting Secretary
28   McAleenan pursuant to Fed. R. Civ. P. 25(d).

                                         DECLARATION OF REBECCA M. CASSLER

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

DECLARATION OF REBECCA M. CASSLER

## DECLARATION OF REBECCA M. CASSLER

I, Rebecca M. Cassler, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am an attorney with the Southern Poverty Law Center and counsel for the Plaintiffs in this case.

2.      Pursuant to Civ. L.R. 7.1(f), I make this declaration in support of Plaintiffs' Opposition to Defendant's Motion for Protective Order Concerning Asylum Information of Potential Preliminary-Injunction Class Members ("the Motion").

3.      In the course of conferrals between the parties' counsel following the government's insistence on a protective order governing asylum-related information of preliminary injunction (PI) class members, described in detail in the Declaration of Ori Lev, Dkt. 644-2, Plaintiffs' counsel repeatedly requested legal authority for the government's argument that the limitations on information-sharing in 8 C.F.R. §§ 208.6 and 1208.6 extend to Plaintiffs' use of such information. The government did not provide any such authority during a month of conferrals beginning in early November 2020. The government's stated position was that because, in the government's view, its proposed protective order was consistent with the "purpose" of the regulations, the government would not provide the information ordered by the Court to Plaintiffs without Plaintiffs first agreeing to the government's terms. The government repeatedly stated over the course of the conferrals that it did not believe the Court's existing order to share information with Plaintiffs, *see* Dkt. 330, was sufficient to authorize the government to share the specified information with Plaintiffs, and therefore the government would not produce asylum-related information of PI class members to Plaintiffs without an additional order from the Court.

4.     In its Motion for Protective Order, filed on December 15, 2020, the government for the first time pointed to the Memorandum from Joseph E. Langlois, Director, Asylum Division, USCIS, "Fact Sheet on Confidentiality" (June 15, 2004),[2] , as the purported legal basis for extending the substantive requirements of the regulations to private parties such as Plaintiffs.

5.     In the course of preparing filings in relation to Plaintiffs' *Ex Parte* Emergency Motion to Enforce Preliminary Injunction and Temporarily Enjoin Removal of Preliminary Injunction Class Member (Dkt. 574), I encountered multiple logistical issues that inhibited my ability to meaningfully and confidentially communicate with the affected class member ("Applicant") in a timely manner. At that time, the Applicant was in the custody of Immigration and Customs Enforcement (ICE) at Prairieland Detention Facility in Alvarado, Texas.

6.     First, due to the emergency nature of that matter, in-person and telephonic attorney visits on the weekend were necessary. When I inquired with the facility about whether weekend attorney calls or visits were possible, I received inconsistent answers, which caused me to spend significant time investigating how to arrange such visits. After making repeated requests to detention facility staff and ICE to arrange an attorney visit at Prairieland over a weekend, I ultimately was permitted to do so on one occasion. However, over the following weekend, facility personnel denied my request to conduct a weekend legal visit or obtain signatures. I received approval for this second weekend visit, which occurred telephonically, only after contacting Defendants' counsel in this case to ensure confidential access to the Applicant. I estimate that I spent well over an hour making inquiries necessary to set up these two legal visits.

7.     Second, because of the configuration of the attorney visitation room at Prairieland, I was unable to conduct a confidential in-person visit with the Applicant

---

[2]
https://www.uscis.gov/sites/default/files/document/memos/fctsheetconf061505.pdf

in a language she understood. The Applicant does not speak fluent English, and I do not speak any of her languages. There was no way to dial in a telephonic interpreter because there was no telephone in the attorney visitation room and I was not permitted to bring my cell phone with me. Thus, in order to communicate with me, the Applicant first had to agree to communicate with the assistance of another detained person who was not trained as an interpreter. Although my normal practice is to communicate confidentially with clients, I exercised my professional judgment to make an exception in this case, with the Applicant's oral agreement, in order to zealously protect her interests. Plaintiffs' counsel would have never discovered that the Applicant was a class member if the Applicant had not agreed to communicate in this manner, which was necessitated by the conditions in the ICE facility.

8.    Third, it was impossible to obtain the Applicant's signature in a timely manner (i.e., without going through the mail, which can take many days or even weeks depending on the facility) while maintaining confidentiality. During my in-person visit, I spoke with the Applicant through a telephone, while we were on opposite sides of a glass panel. The only option for obtaining the Applicant's signature was to hand documents to a guard who would deliver them to the Applicant for signature outside of my view. Remotely, the only option for obtaining the Applicant's signature was to email a document to facility staff to print, deliver to the Applicant for signature, scan, and send back to me. Because obtaining the Applicant's signature on an English-language DHS form was necessary before Defendants would agree to share information about the Applicant's case with Plaintiffs' counsel, I exercised my professional judgment to obtain her signature in a non-confidential manner in order to zealously protect her interests.

9.    Fourth, it would have been impossible for Plaintiffs' counsel to identify the Applicant as a PI class member to whom the Asylum Ban had been applied without communicating with the Applicant's sister about the details of the Applicant's case. I thus communicated multiple times with the Applicant's sister by

email and telephone in order to prepare filings in connection with the *Ex Parte* Emergency Motion. Some such communications occurred even before I had the chance to communicate with the Applicant through a trained interpreter. Although my normal practice is to obtain informed oral consent in a language my client understands prior to communicating with a third party about a case, and to obtain written consent where appropriate, I exercised my professional judgment to communicate with the Applicant's sister in order to zealously protect the Applicant's interests.

10.     Because of the logistical barriers to scheduling legal visits, bringing a professional interpreter into the detention facility, and obtaining signatures in a timely manner, I was forced to resort to filing a declaration in my own name documenting my conversations with the Applicant to support the *Ex Parte* Emergency Motion. *See* Dkt. 574-2.

11.     Attached here to as Exhibit A is a true and correct copy of a protective ordered entered in *Ms. L v. U.S. Immigration & Customs Enforcement*, No. 3:18-cv-00428-DMS-MDD (S.D. Cal. July 8, 2018)).

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 4th day of January 2021 at Fort Worth, Texas.

By: */s/ Rebecca M. Cassler*
       Rebecca M. Cassler

DECLARATION OF REBECCA M. CASSLER

4

**Exhibit A**

CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 616-047
 Fax: (202) 616-8962

ADAM L. BRAVERMAN
Acting United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
CAROLINE J. PRIME
Assistant U.S. Attorney
California Bar No. 220000
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893

*Attorneys for Federal Respondents- Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L., et al.,

         Plaintiffs/Petitioners

         v.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.,

         Respondents/Defendants.

)
)
) Case No.: 3:18-cv-00428-DMS
)
)
)
)
)
)
)
)
)
)

**STIPULATION AND [PROPOSED] PROTECTIVE ORDER GOVERNING
THE HANDLING OF CONFIDENTIAL MATERIAL**

1    I.    Plaintiffs and Defendants (collective, the "Parties") in the above

2    captioned action *Ms. L., et al., v. U.S. Immigration and Customs Enforcement, et*

3    *al.*, Case No. 3:18-cv-00428-DMS ("Litigation" or "Action") recognize that

4    information about putative or confirmed class members and their children

5    exchanged by the Parties in the Litigation for the purpose of facilitating compliance

6    with the Court's preliminary injunction order may include private information

7    related to individuals in the custody and care of the United States Government and

8    that such materials may reasonably, in good faith, be confidential and protected

9    from disclosure to the public or to one or more of the Parties under Rule 26(c) of

10   the Federal Rules of Civil Procedure.

11

12   II.    The Parties desire to enter into this stipulation to facilitate the

13   exchange of documents and information while protecting against the unauthorized

14   disclosure of confidential documents and information.

15

16   IV. The Parties believe good cause exists for approving the stipulation

17   because it seeks to protect against injury caused by the dissemination of protected

18   materials. The materials to be protected include personally identifiable information,

19   the disclosure of which could be prohibited by the Privacy Act or other law.

20   However, the Privacy Act provides, as an exception, that such materials may be

21   released "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. §

22   552a(b)(11). An order of this Court, therefore, would provide a basis for release of

23   the requested materials pursuant to the Privacy Act and Fed. R. Civ. P. 26(c). The

24   parties also seek to protect other personal information regarding putative or

25   confirmed class members or their children.

26                                    **Stipulation**

27   NOW, THEREFORE, the Parties stipulate and agree, through their

28   undersigned counsel, to the following terms and conditions to govern the

-2-

Case 3:18-cv-00428-DMS-MDD   Document 95-1   Filed 07/09/2018   PageID.1850   Page 10 of 362

 1   production of information that the producing party reasonably and in good faith

 2   deems confidential, and request that the Court enter a protective order (hereafter

 3   "Protective Order" or "Order") consistent with the terms of this stipulation.

 4        **1.    Scope.** The following terms govern with respect to class information

 5   exchanged by the Parties in the Litigation for the purpose of facilitating compliance

 6   with the Court's preliminary injunction order (collectively "Protected Material").

 7        **2.    Protected Material.** The categories of Protected Material include:

 8             **a.**    Information, documents or tangible things protected by the

 9   Privacy Act, 5 U.S.C. § 552a, *et seq.*, or information that would be covered by the

10   Privacy Act if the subject of the information had been a U.S. citizen or a person

11   lawfully admitted for permanent residence.

12             **b.**    Personally Identifying Information (PII), Protected Health

13   Information (PHI), and any information that is protected or restricted from

14   disclosure by statute or regulation.

15             **c.**    All other protected documents, information or tangible things

16   not identified above that the parties agree in writing or the Court orders qualify for

17   protection under Federal Rule of Civil Procedure 26(c).

18             **d.**    Defendants do not waive their right to assert other or further

19   privileges over the information and redact such information.   For instance,

20   Defendants may withhold or redact information that is protected by statute for

21   which no exceptions permitting disclosure apply or exist or information that is

22   subject to a claim of privilege or exemption from disclosure such as withholding

23   classified national security information the Deliberative Process Privilege, Law

24   Enforcement Privilege, Attorney-Client Privilege or Attorney Work Product.

25        **3. Designations.** It shall be the duty of the party producing the Protected

26   Material ("Producing Party") to give notice of material that is to be considered

27   covered by this Protective Order in the manner set forth in paragraphs 5, 8 and 11

28   below.  Protected Material may be designated as "PROTECTED MATERIAL" if

1   the Producing Party believes in good faith that such material is covered by this
2   Protective Order. A Party may designate material that it obtained from a Third
3   Party pursuant to this Protective Order, if it believes in good faith that it qualifies as
4   Protected Material under this Order.

5       **4.    Duties.**  The duty of the Party or Parties receiving the Protected
6   Material ("Receiving Party") and of all other persons bound by this Protective
7   Order to maintain the confidentiality of Protected Material so designated shall
8   commence with such notice. Protected Material shall be designated by the
9   Producing Party, subject to the provisions of this Order, with the designation of
10  "PROTECTED MATERIAL." No person subject to this Protective Order may
11  disclose, in public or private, any Protected Material designated by a Party as
12  "PROTECTED MATERIAL," except as provided for in this Protective Order or as
13  further ordered by the Court.

14      **5.    Method Of Designation.**  Each page of any material the Producing
15  Party wishes to designate as Protected Material must be labeled PROTECTED
16  MATERIAL, at the time the material, or a copy thereof, is provided to the
17  Receiving Party. In the case of material contained in or on media other than paper,
18  the Producing Party shall affix such a label to the material or use its best efforts to
19  identify the material as Protected Material and affix the applicable designation.

20      **6.    Access To Protected Material.**  Only the following persons shall have
21  access to or retain material designated as PROTECTED MATERIAL pursuant to
22  this Order:

23          a.    The Court and its official personnel;

24          b.    Counsel for any Party and any of Defendants' personnel with
25  whom Counsel for Defendants determines it is appropriate to share such
26  information for the purpose of this litigation. For the purposes of this Protective
27  Order, "Counsel" means the attorneys representing the Parties for this Action,

28

1    including paralegals, office clerks, secretaries, and other support staff assisting

2    those attorneys, working on the Action;

3            **c.**    For information designated as PROTECTED MATERIAL

4    relating to an individual member of the class, to the individual class member and

5    counsel who represent individual class members, or any prospective counsel that is

6    evaluating whether to take on the representation of a class member. The individual

7    class member and counsel shall only be provided PROTECTED MATERIAL

8    relating to the individual class member, and the individual may not be provided any

9    information pertaining to other class members. Prospective counsel must execute

10   Exhibit A, the Acknowledgment Regarding the Order before receiving this limited

11   PROTECTED MATERIAL;

12           **d.**    Outside experts, consultants retained by the Receiving Party's

13   Counsel to assist in this Litigation (and the experts' or consultants' staff whose

14   duties and responsibilities require access to such materials);

15           **e.**    Court reporters and translators;

16           **f.**    Outside litigation support personnel retained by Counsel to

17   assist in the preparation and/or litigation of the Action, including contract attorneys

18   or outside copying service vendors or electronic document management vendors;

19           **g.**    Any person not otherwise covered by subparagraph (a), (b), (c),

20   or (d) who was involved in the preparation of such material or who received or

21   reviewed such material for purposes other than this Action or who has been alleged

22   to have received or reviewed such material for purposes other than this Action;

23           **h.**    Witnesses at deposition not otherwise covered by subparagraphs

24   (a), (b), (c) or (d);

25           **i.**    Persons whom the Producing Party agrees in writing or on the

26   record at a deposition may be shown PROTECTED MATERIAL.

27           **j.**    Any individuals or persons who Class Counsel designates for

28   the purpose of facilitating the reunification of Class Members and their children,

1  including (but not limited to) nonprofit organizations, lawyers, faith-based groups,
2  shelters, or any other organization or individuals who may be able to assist in the
3  reunification process. Given the urgency of the deadlines in the Court's preliminary
4  injunction order, the individuals or persons described in this paragraph may receive
5  a limited set of PROTECTED MATERIAL as follows prior to executing Exhibit A,
6  the Acknowledgment, as long as the information is treated as protected under this
7  Order, and an Acknowledgment is signed within a reasonable time thereafter.
8  Information which may be shared for the purpose of facilitating the reunification of
9  Class Members and their children includes Class Members' names and the name(s)
10 of the class member's child(ren); Alien Number for the Class Member and his or
11 her child(ren); detention location or other location information regarding the Class
12 Member and his or her child(ren). The individuals or persons described in this
13 paragraph may receive any additional PROTECTED MATERIAL necessary to
14 assist in facilitating reunification related to the class member(s) they are serving or
15 being consulted to serve after signing the Acknowledgment. The individual or
16 organization may not receive information about any other class members.

17  7.  **Agreement By Persons Accessing Protected Materials.** All persons
18 identified in paragraph 6 (d), (e), (f), (g), (h) (i), and (j) who in the course of the
19 case may be given access to Protected Material shall be required to read this
20 Protective Order and agree, in writing, to be bound by this Protective Order by
21 executing an acknowledgment in the form of Exhibit A that is annexed to this
22 Protective Order. All such acknowledgments shall be maintained in the files of the
23 counsel allowing access by such person to the Protected Material.

24  8.  **Treatment Of Protected Material During Inspection Of**
25 **Documents.** It is contemplated that a Party might make available certain of its files
26 for inspection by other Parties, which files may contain protected material as well
27 as non-protected material, and that following such inspection, the inspecting party
28 will designate documents to be copied and the copies will be furnished or produced

1   to it. All documents and their contents made available for such inspection shall be
2   treated as PROTECTED MATERIAL until the Party allowing inspection has had a
3   reasonable opportunity, not to exceed twenty one (21) calendar days absent an
4   agreement by the parties, to designate and mark those documents which were
5   copied as PROTECTED MATERIAL.

6       9.    **Copies, Summarizations, Extracts Protected.**  Protected Material
7   designated under this Order shall include, without limitation: (a) all copies, extracts,
8   and complete or partial summaries prepared from such documents, things, or
9   information so designated; (b) portions of deposition transcripts and exhibits to
10  deposition transcripts that contain, summarize, or reflect the content of any such
11  documents, things, or information; and (c) portions of briefs, memoranda, or any
12  other writings filed with the Court and exhibits thereto that contain, summarize, or
13  reflect the content of any such documents, things, or information. The Parties agree
14  that information regarding the aggregated numbers for any category of individuals
15  contained in the chart may be excluded from this paragraph. Moreover, a Party may
16  make a request to the producing Party that certain material contained in such
17  copies, extracts, and complete or partial summaries not be treated as PROTECTED
18  MATERIAL. The Parties will meet and confer in good faith within five days of any
19  such request to resolve the request.

20      10.   **Pleadings And Briefs Containing Protected Material.**  Before any
21  materials produced in discovery, answers to interrogatories, responses to requests
22  for admissions, deposition transcripts, or other documents which are designated as
23  confidential information are filed with the Court for any purpose, the party seeking
24  to file such material must seek permission of the Court to file the material under
25  seal, unless the Parties agree that the documents can be redacted to remove the
26  Protected Material. The receiving party shall meet and confer with the producing
27  party regarding any proposed redactions before seeking leave from the Court, and
28

1    the producing party shall not unreasonably withhold its consent to the filing of a

2    redacted copy of the Protected Material.

3         11.    **Court Hearings And Other Proceedings.** Nothing contained in this

4    Protective Order shall be construed to prejudice any Party's right to use before the

5    Court any Protected Material. Before doing so, however, and to the extent not

6    otherwise authorized to be so used hereunder, the Party intending to use Protected

7    Material shall so inform the Court and the Producing Party, so that any Party or

8    Third Party may apply to the Court for appropriate protection, including clearing

9    the hearing room or courtroom of persons not entitled to receive Protected Material

10    pursuant to paragraph 6.

11         12.    **Testimony At Pretrial Court Hearings And Other Proceedings.**

12    All testimony elicited during hearings and other proceedings that counsel for a

13    Party or Third Party indicated on the record may be subject to the protections of this

14    Order shall be deemed PROTECTED MATERIAL until the expiration of twenty

15    one (21) calendar days after delivery of a copy of the transcript of the testimony by

16    the court reporter to counsel who requested a copy of the transcript. Within the

17    twenty one (21) calendar day period following such mailing of the transcript, any

18    Party may move to seal the transcript under LRCiv 79-5, designating all or any

19    portion of the testimony as PROTECTED MATERIAL. Upon being informed that

20    certain portions of a transcript are designated as PROTECTED MATERIAL, each

21    Party must have each copy in their custody, possession or control immediately

22    marked with the appropriate designation at the appropriate pages. Such designation

23    must remain until the Court rules on the motion to seal.

24         13.    **This Order Only Applies To The Exchange of Information About**

25    **Putative or Confirmed Class Members and Their Children For The Purpose**

26    **Of Facilitating Compliance With The Court's Preliminary Injunction Order.**

27    Nothing contained in this Order shall restrict or limit any Party's right to present

28

1    Protected Material to the Court during a trial in the Action. The use of Protected

2    Material at trial shall be governed by the pretrial order.

3        14.    **This Order Does Not Apply To Non-Private Information.**  The

4    restrictions set forth in this Protective Order shall not apply to documents, things, or

5    information that: (a) have been publicly disclosed by either Party; or (b) have been

6    independently obtained by the Receiving Party through lawful means.  If the

7    Producing Party challenges the Receiving Party's invocation of this provision, then

8    the Receiving Party shall provide written documentation showing the material falls

9    within categories of non-private information referenced in this provision.  This

10    paragraph does not purport to waive or in any other way limit any protection that

11    exists under law, including the Privacy Act, 5 U.S.C. § 552a, *et seq.*

12        15.    **Challenge To Designations.**  If a Party may objects to a designation

13    of the materials as Protected Material on the ground that such protection is not

14    warranted under controlling law, the following procedure shall be used: The Party

15    objecting to the designation of Protected Material must notify, in writing, counsel

16    for the other Party of the objected-to materials and the grounds for the objection.

17    The writing shall be by email to all counsel for the other Party, followed by a hard

18    copy sent next business day courier.  The objecting Party shall request to meet and

19    confer with the other Party prior to submitting the dispute to the Court for a ruling.

20    If the dispute is not resolved consensually between the parties within ten (10)

21    business days of receipt of such a notice of objections, the objecting party may

22    move the Court for a ruling on the objection. The materials at issue must be treated

23    as Protected Material, until the Court has ruled on the objection or the matter has

24    been otherwise resolved.

25        16.    **No Waiver By Failure To Challenge Designation.**  For purposes of

26    the Action or any other action, no Party concedes that any material designated as

27    PROTECTED MATERIAL does in fact contain or reflect Protected Material.  A

28    Party shall not be obligated to challenge the propriety of the designation of

1   Protected Material at the time made, and failure to do so shall not preclude a
2   subsequent challenge.

3      17.   **Inadvertent Disclosure Of Protected Material.**  The failure by a
4   Producing Party to designate specific documents or materials as Protected Material
5   shall not, by itself, be deemed a waiver in whole or in part of a claim of
6   confidentiality as to such documents or materials.   Upon written notice to the
7   Receiving Party of such failure to designate, or of incorrect designation, the
8   Receiving Party shall cooperate to retrieve disseminated copies, and restore the
9   confidentiality of the inadvertently disclosed information beyond those persons
10  authorized to review such information pursuant to paragraph 6, and shall thereafter
11  take reasonable steps to ensure that the Protected Material is treated in accordance
12  with the designation.   No person or Party shall incur any liability under this
13  Protective Order with respect to disclosure that occurred prior to the receipt of
14  written notice of the mistaken designation.

15     18.   **Disclosure To Producing Party's Personnel.**    Nothing in this
16  Protective Order shall affect the right of the Producing Party to disclose to its client
17  agency personnel, employees, consultants, or experts, any documents, things, or
18  information designated by it as Protected Material pursuant to this Order; such
19  disclosure shall not waive the protection of this Protective Order and shall not entitle
20  other Parties or their attorneys to disclose such information, documents, things, or
21  information in violation of this Order.

22     19.   **Disclosure To Unauthorized Persons.**  If information subject to this
23  Protective Order is disclosed to any unauthorized person either through
24  inadvertence, mistake, or otherwise without authorization by the Producing Party,
25  or other than in the manner authorized by this Protective Order, the person
26  responsible for the disclosure shall immediately (a) inform the Producing Party of
27  all pertinent facts relating to such disclosure, including without limitation, the
28  name, address, and telephone number of the recipient and his or her employer;

1   (b) use his or her best efforts to retrieve the disclosed information and all copies
2   thereof; (c) advise the recipient of the improperly disclosed information, in writing,
3   of the terms of this Protective Order; (d) make his or her best efforts to require the
4   recipient to execute an agreement to be bound by the terms of this Protective Order
5   in the form of the declaration attached to this Protective Order as Exhibit A; and
6   (e) take all other reasonable steps to prevent further disclosure by or to the
7   unauthorized person who received the Protected Material.

8       20.   **"Admissibility" Of Protected Material.**  This Protective Order shall
9   not constitute a waiver of any Party's or non-party's right to object to the
10   admissibility into evidence of any Protected Material under Federal law.

11       21.   **All Objections Preserved.**   This Protective Order is intended to
12   provide a mechanism for handling the disclosure or production of Protected
13   Material to which there is no objection other than confidentiality.  The protection
14   afforded by this Order shall in no way affect a Producing Party's right to withhold
15   or redact documents as:  (a) privileged under the attorney-client or other privilege,
16   (b) protected by the work product doctrine, or (c) otherwise exempted from
17   discovery under Rule 26 of the Federal Rules of Civil Procedure or under any law.
18   Additionally, this Protective Order shall not prejudice the right of a Party to:
19   (a) seek additional protective treatment for any information it considers to be very
20   highly sensitive, or otherwise exempt from disclosure, such  that the protections in
21   this Protective Order would be insufficient, (b) object to the designation of any
22   document  or  information  as  PROTECTED  MATERIAL,  or  (c) seek  any
23   modification of or relief from any provision of this Protective Order, either
24   generally or as to any particular Protected Material, by properly noticed motion
25   with notice to all Parties and their respective counsel.

26       22.   **Advice To Client.**  Nothing in this Protective Order shall prevent or
27   otherwise restrict counsel from rendering legal advice to the clients in this
28   Litigation and, in the course of this Litigation, relying generally on examination of

1    designated p Protected Material; provided, however, that in rendering such advice
2    and otherwise communicating with such client, counsel shall not disclose the
3    specific contents of Protected Materials to persons not authorized to receive such
4    material pursuant to the Protective Order.

5        23.    **Inadvertent Disclosure Of Privileged Information.**

6        **a.**    The inadvertent disclosure of Material covered by the attorney-
7    client privilege, the work-product doctrine, or any other recognized privilege shall
8    be governed by Federal Rule of Evidence 502 and this Protective Order.

9        **b.**    If, in connection with the pending Litigation, a Producing Party
10    inadvertently discloses information subject to a claim of a privilege or protection
11    described in paragraph 26(a) ("Inadvertently Disclosed Information"), such
12    disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of
13    privilege or work-product protection that the Producing Party would otherwise be
14    entitled to assert with respect to the Inadvertently Disclosed Information and its
15    subject matter.

16        **c.**    If a claim of inadvertent disclosure is made by a Producing Party
17    with respect to Inadvertently Disclosed Information, the Receiving Party shall,
18    within five (5) business days, return or destroy all copies of the Inadvertently
19    Disclosed Information and provide a certification of counsel that all such
20    Inadvertently Disclosed Information has been returned or destroyed.

21        **d.**    Within twenty-one (21) calendar days of the notification that
22    such Inadvertently Disclosed Information has been returned or destroyed, or within
23    a different time upon written agreement of the Parties or order of the Court, the
24    Producing Party shall produce a privilege log with respect to the Inadvertently
25    Disclosed Information.

26        **e.**    Nothing in this Protective Order shall limit the right of any Party
27    to petition the Court for an order compelling production of such Inadvertently
28

1  Disclosed Information, or for an in-camera review of the Inadvertently Disclosed

2  Information.

3      **24.**    **Good Faith Designations.**  Each Party agrees that designation of

4  Protected Material and responses to requests to permit further disclosure of

5  Protected Material shall be made in good faith and not:  (a) to impose burden or

6  delay on an opposing Party, or (b) for tactical or other advantage in litigation.

7  Further, each Party agrees to make best efforts to avoid as much as possible

8  inclusion of Protected Material in briefs and other captioned documents filed in

9  court, in order to minimize sealing and designating such documents as Protected

10  Material.

11      **25.**    **Use Of Information Subject To Protective Order.**  The Receiving

12  Party's use of any information or documents obtained from the Producing Party

13  subject to this Protective Order, including all information derived therefrom, shall

14  be restricted to use in this Litigation (subject to the applicable rules of evidence and

15  subject to the confidentiality of such materials being maintained) and shall not be

16  used by anyone subject to the terms of this agreement, for any purpose outside of

17  this Litigation or any other proceeding between the Parties, except as otherwise

18  provided in this Order.

19      **26.**    **Meet And Confer.**  Prior to filing any motion or application before the

20  Court to enforce this Protective Order, the moving party shall notify the other

21  Party(ies) in writing and meet and confer in good faith in an attempt to resolve their

22  dispute(s).

23      **27.**    **Injunctive Relief.**  In the event anyone violates or threatens to violate

24  any of the terms of this Protective Order, the Parties and Third Parties agree that the

25  aggrieved party may, subject to the "meet and confer" requirement set forth above,

26  apply to the Court to obtain injunctive relief against any such person violating or

27  threatening to violate any of the terms of this Protective Order.  In the event the

28  aggrieved party brings such motion or application, the responding person subject to

1  the provisions of this Protective Order shall not employ as a defense the claim that
2  the aggrieved party possesses an adequate remedy at law. The Parties and Third
3  Parties shall not use or reveal, directly or indirectly, any information in violation of
4  this Protective Order. Because of the confidential and proprietary nature of the
5  information contemplated to be covered by this Protective Order, the Parties and
6  Third Parties' agree that legal remedies are inadequate. Therefore, the Parties and
7  Third Parties stipulate that injunctive relief is an appropriate remedy to prevent any
8  person from using or disclosing Protected Material in violation of this Protective
9  Order. The Parties and Third Parties waive and release any and all requirements for
10  a bond or undertaking to support any injunctive relief for enforcement of this
11  Protective Order.

12      **28.    Other Actions.**  If any Party is (a) subpoenaed in another action,
13  (b) served with a demand in another action to which it is a Party, or (c) served with
14  any legal process by one not a party to this action, seeking information or material
15  which was produced or designated as Protected Material by someone other than that
16  Party, the Party shall give prompt actual written notice, by hand or facsimile
17  transmission, within ten (10) calendar days of receipt of such subpoena, demand, or
18  legal process, to those who produced the Protected Material prior to compliance
19  with the subpoena so as to allow the Producing Party to seek protection from the
20  relevant court(s). Nothing in this Protective Order shall be construed as requiring
21  the Party or anyone else covered by this Protective Order to challenge or appeal any
22  order requiring production of information or material covered by this Protective
23  Order, or to subject itself to any penalties for noncompliance with any legal process
24  or order, or to seek any relief from this Court.

25      **29.    Survival And Final Disposition Of Designated Material.**  Final
26  termination of the Litigation, including exhaustion of appellate remedies, shall not
27  terminate the limitations on use and disclosure imposed by the Protective Order.

28

1        **a.**    Within sixty (60) days of the final termination of the Litigation

2    by final judgment (whether by settlement, trial, or otherwise), including the time for

3    filing and resolution of all appeals, or within such other period as the Parties may

4    agree upon, all Protected Material and copies of Protected Material, including such

5    material in the hands of outside experts or consultants or attorneys who considered

6    or accepted representation of a class member or child, shall be delivered by counsel

7    of record for the Receiving Party to counsel of record for the Producing Party of

8    such material or destroyed, with confirmation of that destruction to the producing

9    Party in writing.

10        **b.**    Any Protected Material filed or lodged with and retained by the

11    Court shall not be subject to the provisions of this paragraph 32.

12        **c.**    Notwithstanding the foregoing, counsel may retain copies of

13    briefs and other papers filed with the Court, deposition transcripts, discovery

14    responses, and attorney work product that contains or constitutes Protected

15    Material. Further, counsel are not required to delete information that may reside on

16    their firm's electronic back-up systems that are over-written in the normal course of

17    business. Any such archival copies that contain or constitute Protected Material

18    remain subject to this Protective Order and shall be maintained in a safe and secure

19    manner.

20        **30.**    **Amendment Or Termination Of Protective Order.** No part of the

21    restrictions imposed by this Protective Order may be terminated, except by written

22    stipulation executed by counsel of record for each Producing Party or by an Order

23    of this Court for good cause shown. The terms of this Protective Order shall

24    survive termination of the Action.

25        **31.**    **Jurisdiction For Enforcement.** The Court retains jurisdiction

26    subsequent to settlement or entry of judgment to enforce the terms of this Protective

27    Order. Each person to whom disclosure of any Protected Information is made

28    agrees to subject himself to the jurisdiction of the Court in which this action is

Case 3:18-cv-00428-DMS-MDD   Document 68-1   Filed 07/09/18   PageID.870   Page 16 of 19
Case 3-18-cv-00428-DMS-MDD   Document 60   Filed in CASD on 07/08/2018   Page 16 of 19
3265

1   pending for the purpose of proceedings relating to the performance under,
2   compliance with, or violation of this Protective Order.

3       **32.**    **Limitations**.  Nothing in this Order shall be deemed to restrict in any
4   manner the use by any party of its own documents or materials.  Nothing in this
5   Protective Order should be construed as prohibiting a non-party from seeking
6   additional protections of records or information that it owns or controls.

7   Dated:      July 8, 2018          AMERICAN CIVIL LIBERTIES UNION
8                                     FOUNDATION
9                                     IMMIGRANTS' RIGHTS PROJECT

10                                    /s/ Lee Gelernt
11                                    LEE GELERNT
                                      Email: LGELERNT@aclu.org
12
                                      Counsel for Plaintiffs
13

14

15  Dated:      July 8, 2018          UNITED STATED DEPARTMENT OF
16                                    JUSTICE, OFFICE OF IMMIGRATION
                                      LITIGATION
17
                                      /S/ Sarah B. Fabian
18                                    SARAH B. FABIAN
19                                    Email: Sarah.B.Fabian@usdoj.gov

20                                    Counsel for Defendants
21
    **[CONTINUED ON THE NEXT PAGE]**
22

23

24

25

26

27

28

                                    -16-

1

## ORDER

2      For good cause shown, pursuant to Rule 26(c) of the Federal Rules of Civil

3   Procedure, all discovery and other materials exchanged by the Parties or Third

4   Parties, or filed with the Court, in *Ms. L, et al., v. U.S. Immigration and Customs

5   Enforcement et al.*, 3:18-cv-00428 (S.D. Cal.) shall be provided subject to the

6   conditions set forth in the foregoing Stipulated Protective Order.  This order shall

7   be construed as a lawful order pursuant to the Privacy Act permitting release

8   consistent with the terms of this Order.

9      **IT IS SO ORDERED**

10

11   Date:____7·8·18____                    _____

12                                         Hon. Dana M. Sabraw
                                           United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-

Case 3:18-cv-00428-DMS-MDD   Document 69-1   Filed 07/09/18   PageID.850   Page 05 of 51
Case 3-18-cv-00428-DMS-MDD   Document 59-7   Filed in CASD on 07/08/2018   Page 18 of 19
557

1

## STIPULATION EXHIBIT A

2

3   ## ACKNOWLEDGMENT AND AGREEMENT CONCERNING
PROTECTED INFORMATION

4

5

6       **1.**     My name is _____ (first, middle

7   initial, last).

8       **2.**     I live at _____ (street address),

9   _____ (city), _____ (state) _____ (zip

10  code).

11      **3.**     I    am    employed    as    a/an    _____    by

12  _____ (company),    which    is    located    at

13  _____            (street          address),

14  _____ (city), _____ (state) _____ (zip

15  code). Its telephone number is _____.

16  I have read the attached Stipulated Protective Order entered in the action of *Ms. L,*

17  *et al. v. U.S. Immigration and Customs Enforcement et al.*, pending in the Southern

18  District of California and bearing Case No. 3:18-cv-00428, and a copy of the

19  Stipulated Protective Order has been given to me.

20      **4.**     I agree to be bound by the terms of the Stipulated Protective Order,

21  and agree that any Protected Material, within the meaning of the Stipulated

22  Protective Order, will be used by me only to assist counsel in connection with the

23  above-referenced litigation or as otherwise authorized by the Stipulated Protective

24  Order.

25      **5.**     I agree that I will not disclose or discuss Protected Material so

26  designated with anyone other than the persons described in paragraph 6 of the

27  Stipulated Protective Order.

28

-18-

6.    I understand that any disclosure or use of Protected Material in any manner contrary to the provisions of the Stipulated Protective Order may subject me to sanctions for contempt of the Court's Order.

7.    I agree to be subject *in personam* to the jurisdiction of the Southern District of California in connection with any proceeding relating to the enforcement of the Stipulated Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.

_____          _____
(date)                                          (signature)

-19-

1  MAYER BROWN LLP
     Matthew H. Marmolejo (CA Bar No. 242964)
2    *mmarmolejo@mayerbrown.com*
   350 S. Grand Avenue
3  25th Floor
   Los Angeles, CA 90071-1503
4    Ori Lev (DC Bar No. 452565)
     (*pro hac vice*)
5    *olev@mayerbrown.com*
     Stephen M. Medlock (VA Bar No. 78819)
6    (*pro hac vice*)
     *smedlock@mayerbrown.com*
7  1999 K Street, N.W.
   Washington, D.C. 20006
8  Telephone:  +1.202.263.3000
   Facsimile:  +1.202.263.3300
9
   SOUTHERN POVERTY LAW CENTER
10   Melissa Crow (DC Bar No. 453487)
     (*pro hac vice*)
11   *melissa.crow@splcenter.org*
   1101 17th Street, N.W., Suite 705
12 Washington, D.C. 20036
   Telephone: +1.202.355.4471
13 Facsimile: +1.404.221.5857

14 *Additional counsel listed on next page*
   *Attorneys for Plaintiffs*
15
                **UNITED STATES DISTRICT COURT**
16
                **SOUTHERN DISTRICT OF CALIFORNIA**
17

18 Al Otro Lado, Inc., *et al.*,            Case No.:  17-cv-02366-BAS-KSC

19                  Plaintiffs,            **DECLARATION OF ERIKA
                                           PINHEIRO IN SUPPORT OF
20        v.                               PLAINTIFFS' OPPOSITION TO
                                           DEFENDANTS' MOTION FOR
21 Chad F. Wolf,[1] *et al.*,              PROTECTIVE ORDER
                                           CONCERNING ASYLUM
22                  Defendants.            INFORMATION OF POTENTIAL
                                           PRELIMINARY-INJUNCTION
23                                         CLASS MEMBERS

24

25

26

   ───────────────────
27 [1] Acting Secretary Wolf is automatically substituted for former Acting Secretary
28 McAleenan pursuant to Fed. R. Civ. P. 25(d).

1  CENTER FOR CONSTITUTIONAL RIGHTS
2      Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
       *bazmy@ccrjustice.org*
3      Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
       *aguisado@ccrjustice.org*
4  666 Broadway, 7th Floor
5  New York, NY 10012
   Telephone: +1.212.614.6464
6  Facsimile: +1.212.614.6499

7  SOUTHERN POVERTY LAW CENTER
       Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
8      *sarah.rich@splcenter.org*
       Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
9      *rebecca.cassler@splcenter.org*
10 150 E. Ponce de Leon Ave., Suite 340
   Decatur, GA 30030
11 Telephone: +1.404.521.6700
   Facsimile: +1.404.221.5857
12
   AMERICAN IMMIGRATION COUNCIL
13     Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
14     *kwalters@immcouncil.org*
15 1331 G St. NW, Suite 200
   Washington, D.C. 20005
   Telephone: +1.202.507.7523
16 Facsimile: +1.202.742.5619

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ERIKA PINHEIRO

## DECLARATION OF ERIKA PINHEIRO

I, Erika Pinheiro, hereby declare as follows:

1.  I make this declaration based on my personal knowledge except where I have indicated otherwise.  If called as a witness, I could and would testify competently and truthfully to these matters.

2.  I am the Litigation and Policy Director of Al Otro Lado, a binational nonprofit serving refugees, deportees, and other migrants in Tijuana, Mexico and throughout Southern California. I am currently based primarily in Tijuana, Mexico, and oversee various programs and operations in our Tijuana, Los Angeles and San Diego offices. In particular, I oversee our Adelanto and Otay Mesa Release Projects, focused on representation of detained immigrants in Southern California, and our Southeast Litigation Project, focused on representation of immigrants detained in Louisiana and Georgia. I also oversee and have done substantial work in Al Otro Lado's Family Reunification Program, which primarily represents parents who were separated from their children at the US-Mexico border in 2017 or 2018 and subsequently deported without them. Our current Family Reunification Program clients were deported to and reside in Honduras, El Salvador, Guatemala, and Mexico.

3.  Prior to joining Al Otro Lado, I had significant experience working with detained and deported migrants. In 2006 and 2007, I led a human rights

1

fact finding mission to Guatemala focused on the phenomena of return migration following deportation and "transnational" gangs; a summary of our findings was published by the Georgetown Law Center Human Rights Institute.[1] In 2008, I traveled to Haiti with the Georgetown Human Rights Institute and met with deportee-led organizations in Port-au-Prince as part of a larger research project focused on Haiti-US migration. From 2010-2015, I worked with detained immigrant adults and unaccompanied children at the Esperanza Immigrant Rights Project, where I became the Director of Community Education. In that position, I oversaw Department of Justice-funded Legal Orientation Programs at the Mira Loma and Adelanto Detention Facilities; oversaw legal orientation for unaccompanied children detained in Office of Refugee Resettlement facilities; oversaw legal orientation for sponsors of unaccompanied children recently released from detention; oversaw a legal orientation program for immigrants detained in L.A. County jails, and created an all-volunteer Legal Orientation Program at ICE facilities in Orange County, California. In my subsequent role as Managing Attorney for CARECEN, I created a legal orientation program for refugee families in removal proceedings at the Los Angeles immigration court. Many participants were mothers with minor children whose husbands/partners had been separated

---

[1] https://scholarship.law.georgetown.edu/hri_papers/2/.

from them at the border and were either detained by ICE or CBP, or had already been deported to Central America.

*Challenges in Working with Detained Migrants*

4.   Representation of migrants detained in CBP custody poses significant challenges due to an almost complete lack of access to counsel. Often, Al Otro Lado is called upon to advocate for migrants in CBP custody, but in almost every case, we are unable to speak to or meet with the migrants while they are in Border Patrol or CBP facilities. In some cases, we have met with the individual in Tijuana prior to their crossing the border and being placed into CBP custody. In other cases, we are contacted by a family member seeking legal assistance on behalf of a detained migrant who contacted them directly. We frequently submit G-28 forms (Notice of Entry of Appearance as Attorney or Accredited Representative) to CBP without detained migrants' signatures because it is impossible to communicate with – much less obtain verbal consent or a signature from – individuals already in CBP or Border Patrol custody. Most of the time, CBP and Border Patrol accept an unsigned G-28 for purposes of communication regarding an individual's case, but their practice is inconsistent. On many occasions, we have been unable to make any contact with individuals

for whom we have submitted unsigned G-28s until they are in ICE custody or after they have been deported.

5.  Al Otro Lado also receives requests for legal services from and on behalf of immigrants in ICE detention facilities all over the country. Barriers to access exist at every detention facility I have encountered, and these challenges have become more acute due to COVID outbreaks in numerous ICE facilities. The time required to travel to a detention facility, obtain access to a person held there, and navigate other barriers to access (e.g. need for telephonic interpretation, restrictions on attorney-client meetings during certain time periods), all significantly increase the resources required to advocate on behalf of detained individuals.

6.  In-person visits to ICE detention facilities to obtain signatures and conduct other legal business are time-consuming and risky. Even before the pandemic, our attorneys and staff often faced long wait times to see clients, sometimes stretching to several hours. On several occasions, Al Otro Lado staff, volunteers, and I have been locked inside of ICE facilities for hours due to security lockdowns, some of which were instituted due to protests outside of the facilities. In some cases, our staff have not been able to access detained individuals at all due to the facility's failure to train front desk staff on legal access rules and frequently-changing facility clearance procedures.

7.  Since the pandemic started, various ICE detention facilities have limited or eliminated in-person access to detainees, which can make obtaining signatures on legal documents difficult or impossible. Early in the pandemic, Al Otro Lado staff and other attorneys were denied access to ICE detention facilities for lack of an N95 mask, even though N95 masks were difficult to obtain at that time.[2] At various points throughout the pandemic, Al Otro Lado has discouraged or prohibited staff from making in-person visits to ICE facilities due to the elevated danger of contracting COVID, especially after Al Otro Lado staff observed multiple detention facility personnel not wearing masks and failing to comply with other public health protocols.

8.  Even telephonic communication with detained immigrants can be challenging. At various times over the past few years, Al Otro Lado clients and others seeking our assistance have been unable to make free, confidential legal calls to our staff. Even during paid, recorded phone calls from ICE detention facilities, the connection is often poor and can terminate after only a few minutes. Clients making paid calls from ICE detention facilities must have

---

[2] Policies requiring attorneys and other legal representatives to obtain N95 masks and other PPE in order to access the Adelanto Detention Facility, as well as other policies restricting phone and in-person access to detained individuals, were challenged by the ACLU of Southern California and other legal groups. A subsequent settlement has improved attorney access at Adelanto, https://www.aclusocal.org/sites/default/files/aclu_socal_torres_20200326_tr o.pdf, but challenges at that and other ICE facilities continue.

money in their accounts to initiate the calls, during which they are often surrounded by other detained individuals, making confidentiality impossible. In order to obtain free, confidential calls with individuals detained at ICE facilities, Al Otro Lado has at times submitted unsigned G-28 forms at the request of detained individuals' family members; the facilities have generally accepted these forms, especially since COVID outbreaks have dramatically increased the risk of obtaining in-person signatures.

## *Challenges in Working with Deported Migrants*

9. Over the past 14 years, I have personally interviewed dozens of deported individuals. Since I joined Al Otro Lado, our organization has screened hundreds of deported individuals. Through my personal experience and the experience of my organization, I have observed numerous challenges to communication with and representation of deported individuals, all of which have been exacerbated by the COVID crisis and recent natural disasters in Central America.

10. The biggest challenge to communication with deported individuals is locating them. Locating deported individuals is especially challenging immediately following deportation due to U.S. and country-of-origin processing procedures. Individuals deported from the United States often report that they

are missing cash, cell phones, written contact information, and other property,

even if they entered CBP or ICE custody with these items. In some countries,

officials send migrants from the repatriation point to the interior of the country

without giving them an opportunity to contact attorneys or other advocates. For

example, when migrants are deported to Mexico City, Mexican immigration

officials work with the International Organization for Migration (IOM) to

screen migrants, take them directly from the airport to the bus station, and send

them back to their states of origin. Deported individuals can end up in remote

locations without a cell phone, cash, or any means of communication with legal

representatives or family members.

11. Deported individuals often lack official identity documents upon

arrival in their countries of origin, making it practically impossible to receive

money sent from abroad to pay for an international phone call or purchase a cell

phone. Many recently deported individuals fall completely out of

communication and are often unable to access basic needs until they are able to

obtain new identity documents or find a trusted individual to facilitate

communication.

12. Many deported people cannot be located in their home countries

because they go into hiding or migrate shortly after being deported, especially if

they are at risk of persecution. For example, Al Otro Lado has represented

numerous separated parents who suffered threats, beatings, and attempted

killings after being deported. Some went into hiding, while others had migrated

to another city or country by the time we made contact.

13. Locating deported asylum seekers in their home countries can be

difficult and risky for advocates. For example, Al Otro Lado works closely with

the steering committee in *Ms. L v. ICE*, No. 3:18-cv-00428-DMS-MDD (S.D.

Cal.) to represent separated and deported parents. The *Ms. L* Steering

Committee is comprised of several nonprofit organizations and a *pro bono* law

firm, and their main task now is locating separated class member parents in

countries of origin to determine whether they could reunify with their children

under the terms of the settlement agreement. Our partners at Justice in Motion

send human rights "defenders" into Central American and Mexican towns to

locate *Ms. L* class members before they are screened and potentially referred to

Al Otro Lado for representation. Defenders have thus far been unable to find

almost 600 parents, due in part to the risks and challenges inherent in

conducting in-person searches. Defenders seeking information regarding

deported asylum seekers may not receive accurate information if local

townspeople are seeking to protect the deported individual from their

persecutors. In addition, such inquiries may put the defender at risk if they

come into contact with persecutors still searching for the individual. For these

reasons, on-the-ground searches for deported individuals must be conducted with the utmost care and with rigorous security protocols, which require significant resources. Even where such resources are available, finding deported individuals is sometimes impossible.

14. Once Al Otro Lado makes contact with deported clients, representation presents its own challenges. In many cases, our deported clients live in remote areas that lack internet access, phone reception, or even electricity. When we need to obtain signatures on legal documents, we often have to contract with a local attorney or organization (like Justice in Motion) to send a local staff member to obtain the signature, or provide resources for the client to safely travel to a local attorney's office to sign documents. In many cases, either clients or defenders have to travel for a full day, often through dangerous territory, to obtain signatures. Without substantial resources and local contacts, it is impossible to obtain signatures on legal documents for deported individuals living in remote locations.

15. The COVID crisis has exacerbated the challenges of working with deported individuals. Many countries have instituted various levels of lockdown which make contact with deported clients more difficult. For example, during much of the pandemic, Honduras has allowed citizens to exit their homes only on certain days, based on the last digit of their identity documents. Al Otro

9

Lado has routinely contracted with a local attorney to obtain signatures on legal

documents, but we have recently been unable to obtain signatures for clients

who live more than a few hours away from her. Due to the dangers of traveling

at night in Honduras, the attorney would have to stay in the client's location

until her designated "travel" day arrived, which could be more than a week

later. We have faced similar challenges working with deported clients in other

countries that are enforcing restrictions on movement due to COVID. In

addition, many deported clients have lost their ability to work in their home

countries due to the COVID crisis, making communication with counsel more

difficult unless we can raise funds to cover the costs of calls, phones, or internet

access.

16. Finally, the recent hurricanes in Central America have impeded our

work with deported clients living in affected areas. The resulting infrastructure

damage has displaced thousands and severely limited communication. Most of

our clients affected by the hurricanes have no source of income, and some are

still living without power. In many cases, there are no accessible locations

where a client could print, sign, and scan a document, and phone

communication is unpredictable.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed on this 4th day of January 2021 in Tijuana, Mexico.


Erika Pinheiro