# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:22-cv-01130 |
| | ) | |
| MERRICK GARLAND, | ) | |
| in his official capacity as Attorney | ) | |
| General of the United States, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL PLAINTIFFS TO PRODUCE DISCOVERY

## TABLE OF CONTENTS

A.  Background ................................................................................................ 3

B.  Standard of Review ................................................................................... 6

C.  Plaintiffs refuse to produce documents from State agencies upon whose alleged harm they base standing .................................................................... 6

D.  Plaintiffs have not provided enough information or detail for Defendants to adequately review their responses ............................................................ 11

    a.  Plaintiffs improperly assert numerous general objections .................. 11

    b.  None of the documents are labeled or organized ............................... 14

    c.  Plaintiffs do not state whether documents are being withheld on the basis of their objections ..................................................................... 17

E.  Issues with specific responses ................................................................ 18

    i.  RFPs 8-9, 13-15, 18, 20, 25-26, 34-36 ............................................. 18

    ii.  RFPs 21-23, 27, 29 ........................................................................... 20

    iii.  RFPs 28, 31-33 ................................................................................ 21

CONCLUSION ................................................................................................ 24

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Adams v. Mem'l Hermann,*
   973 F.3d 343 (5th Cir. 2020) ...................................................................................... 28

*Atcherley v. Clark,*
   No. 1:12cv00225, 2014 WL 4660842 (E. D. Cal. Sept. 17, 2014) ...................................... 21

*Coughlin v. Lee,*
   946 F.2d 1152 (5th Cir. 1991) ............................................................................... 7, 27

*Crosby v. La. Health Serv. and Indem. Co.,*
   647 F.3d 258 (5th Cir. 2011) ...................................................................................... 27

*Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.,*
   258 F.R.D. 149 (S.D. Tex. 2009) ...................................................................... 14, 15, 16

*Heller v. City of Dallas,*
   303 F.R.D. 466 (N.D. Tex. 2014) ........................................................................... 21, 22

*In re Int'l Sys. & Controls Corp. Sec. Litig.,*
   693 F.2d 1235 (5th Cir. 1982) .................................................................................... 28

*In re Santa Fe Int'l Corp.,*
   272 F.3d 705 (5th Cir.2001) ...................................................................................... 22

*Irwin v. Veterans Admin.,*
   874 F.2d 1092 (5th Cir.1989) .............................................................................. 2, 5, 13

*Krispy Krunchy Foods, L.L.C. v. Jenna Mktg., L.L.C.,*
   No. 6:20-CV-01424, 2023 WL 2817734 (W.D. La. Apr. 6, 2023) ........................................ 26

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................... 2, 13, 27

*McGehee v. Wal-Mart La., LLC,*
   No. 2:17-CV-1372, 2023 WL 186946 (W.D. La. Jan. 13, 2023) ............................................ 7

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
   894 F.2d 1482 (5th Cir. 1990) ......................................................................... 7, 15, 16, 17

*New York ex rel Boardman v. Nat'l R.R. Passenger Corp.,*
   233 F.R.D. 259 (N.D.N.Y. 2006) ............................................................................ 11, 12

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978) ............................................................................................. 26, 27

*S.E.C. v. Brady*,
  238 F.R.D. 429 (N.D. Tex. 2006) .................................................................... 15

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) .................................................................... 25, 26

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................................ 27

*United States v. Morris*,
  80 F.3d 1151 (7th Cir. 1996) ........................................................................ 11

## FEDERAL RULES

Fed. R. Civ. P. 26(b)(1) ................................................................................ 6

Fed. R. Civ. P. 26(b)(3) .............................................................................. 28

Fed. R. Civ. P. 26(b)(5) .............................................................................. 22

Fed. R. Civ. P. 26(g) .................................................................................. 17

Fed. R. Civ. P. 33(b)(4) .............................................................................. 14

Fed. R. Civ. P. 34 ...................................................................................... 14

Fed. R. Civ. P. 34(b)(2)(B) .................................................................... 14, 23

Fed. R. Civ. P. 34(b)(2)(C) .................................................................... 21, 22

Fed. R. Civ. P. 34(b)(2)(E)(i) ...................................................................... 20

Fed. R. Civ. P. 37(a)(3)(B)(iv) ...................................................................... 7

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:22-cv-01130 |
| | ) | |
| MERRICK GARLAND, | ) | |
| in his official capacity as Attorney | ) | |
| General of the United States, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO COMPEL PLAINTIFFS TO PRODUCE DISCOVERY**

Plaintiffs allege that they have Article III standing to challenge the Asylum Officer Rule because their State agencies have sustained, and are continuing to sustain, financial injury as a result of the Rule. Notwithstanding that position, Plaintiffs—led by Louisiana[1]—have taken the untenable position in discovery that they are not obligated to produce *any* documents that are in the possession of the State's agencies, who Plaintiffs contend are "third parties" who "are not part of this case." Indeed, counsel for the State of Louisiana admitted at a meet-and-confer that he has not even shared Defendants' discovery demands with the State's agencies upon whose injury standing is based because he does not represent those agencies. And yet, when Defendants' counsel asked whether counsel for Louisiana had even discussed the demands with the State's agencies, Plaintiffs' counsel took the position that this information was protected by the attorney-client

---

[1] Defendants note that Plaintiff Florida has provided Defendants with numerous documents from their State agencies, so the majority of this motion concerns the actions, or lack thereof, of Plaintiff Louisiana.

privilege. Plaintiff has provided no authority for the position that a State can base Article III standing upon injuries sustained by State agencies, and simultaneously refuse to produce documents in the possession of those agencies on the grounds that they are somehow separate from the State and not parties to the lawsuit. That is because no such authority exists. In short, Plaintiffs cannot have it both ways—either the agencies are not parties to this case and the State cannot ground its claim to standing on their alleged injuries, or the agencies are part of the State, and counsel for the State must respond to discovery on their behalf.

This is not how discovery works, let alone in a case where this Court has repeatedly informed Plaintiffs that they must produce sufficient information to demonstrate their injury. Either Plaintiffs mean what they say—that they are injured by the Rule because State agencies' suffer harm from the Rule, and so must provide responsive documents from those agencies—or Plaintiffs have been bluffing all along, and cannot in fact demonstrate standing. Unless Plaintiffs produce evidence from the State agencies proving their alleged injury, they cannot base standing on alleged injuries to those agencies. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (Article III standing requirements "are not mere pleading requirements" and must be proven with "evidence").[2]

More generally, in their responses to Defendants' discovery requests, Plaintiffs assert numerous baseless objections, refuse to search for responsive documents, and fail to comply with numerous, basic requirements of the Federal Rules of Civil Procedure. Very few of the documents

---

[2] Whether this case proceeds with a motion to dismiss raising a factual challenge to jurisdiction, or on motions for summary judgment, Plaintiffs bear the burden to demonstrate standing and must submit "evidence" in support of their position, without which they lack standing. *See, e.g., Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" as to standing.); *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir.1989) ("To defeat a factual attack" to standing on motion to dismiss "a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence" and is "obliged to submit facts through some evidentiary method to sustain his burden of proof.").

Plaintiff Louisiana has provided to date are clearly responsive to any of Defendants' discovery requests, and Plaintiffs do not indicate in their discovery responses which documents they have produced are responsive to each individual request. Instead, they simply list examples of responsive documents in their responses, with a "*see, e.g.,*". And while Plaintiffs say they are still searching for responsive documents, they fail to provide a date certain by when those searches may be complete.

The Court should not permit Plaintiffs to continue this cavalier approach to proving their case. Plaintiffs have the burden to show they were injured as a result of the policies at issue in this case, yet they refuse to provide Defendants with evidence substantiating this claim. For the reasons discussed below, the Court should order Plaintiffs to comply with their discovery obligations and produce responsive documents to Defendants by a date certain.

## A. Background

The parties began discovery in 2022; Defendants produced a 14,952-page Administrative Record on June 3, 2022, and on June 17, 2022, Defendants produced an additional 2,477 pages of discovery in response to Plaintiffs' first set of discovery requests. Plaintiffs never responded to Defendants' first set of discovery requests, served on Plaintiffs on June 6, 2022. Instead of responding to those requests, Plaintiffs asked to confer on the scope of discovery, and the time to complete discovery was extended as a result. ECF Nos. 70, 71. On July 20, 2022, Plaintiffs advised the Court they were withdrawing their motion for a preliminary injunction, and as a result, Defendants agreed to withdraw their June 2022 discovery requests until after Plaintiffs filed their Second Amended Complaint. ECF No. 76. Defendants also withdrew their discovery requests, in part, because Plaintiffs assured Defendants, and the Court, that they would clarify and narrow their allegations with respect to injury and standing. ECF No. 89 at 5. The Court permitted Plaintiffs to

amend their Complaint and granted them until August 21, 2022 to file their Second Amended Complaint. ECF No. 79. Plaintiffs, however, requested and were granted numerous extensions, before filing their Second Amended Complaint on November 10, 2022. ECF Nos. 80, 85, 86. Despite their earlier assurances, Plaintiffs' allegations regarding standing and injury remained largely unchanged. *Compare* ECF No. 1 *with* ECF No. 86.

On December 2, 2022, the parties filed a joint status report proposing the scope and timing of discovery. ECF No. 89. The Court held a status conference on December 16, 2022 and directed Plaintiffs to provide Defendants with additional information regarding the factual basis of their alleged Article III standing before the parties commenced discovery on January 3, 2023. ECF No. 91. Plaintiffs never responded to Defendants' request for this information, so the Court held additional status conferences on January 9 and January 17, 2023. ECF Nos. 95, 98. On January 17, 2023, Plaintiffs finally clarified that they would be basing standing on "certain discrete programs in the states of Louisiana and Florida." ECF No. 98. The Court set the close of jurisdictional discovery for March 24, 2023 (ECF No. 98) and the parties exchanged the relevant discovery requests in February 2023. On March 21, 2023, the parties filed a joint motion with the Court asking for a 60-day extension of the discovery deadline, which the Court granted on March 22, 2023. ECF Nos. 128, 129.

Plaintiffs served their discovery responses on Defendants on April 3, 2023. *See* Plaintiffs' Discovery Responses, annexed hereto as Exhibit "A". On April 6, 2023, Plaintiffs produced 2,460 pages of documents which were unlabeled as to subject matter or request number, and were not organized in any logical fashion. Plaintiffs did not reference these documents by description or Bates numbers in their discovery responses, which stated only that Plaintiffs were continuing to search for responsive documents. *Id.* Therefore, on April 10, 2023, Defendants asked that Plaintiffs

update their responses to indicate which documents were responsive to which request, so Defendants could adequately review Plaintiffs' responses for completeness. *See* Email from Erin Ryan, dated April 10, 2023, annexed hereto as Exhibit "B". On April 11, 2023, Plaintiffs informed Defendants that they would label their documents only "to the extent required by Rule 34(b)(2)(E)—after their document production was substantially complete." *See* Email from Joseph St. John, dated April 11, 2023, annexed hereto as Exhibit "C".

After further reviewing Plaintiffs' responses, Defendants sent Plaintiffs an email detailing the deficiencies in their responses and asking that Plaintiffs cure these issues or make themselves available for a meet and confer. *See* Deficiency Letter, dated April 12, 2023, annexed hereto as Exhibit "D". Plaintiffs advised they would not be available for a meet and confer until April 17, 2023. *See* Email Response from Joseph St. John, dated April 13, 2023, annexed hereto as Exhibit "E".

Counsel for Defendants and Plaintiff Louisiana conferred by telephone on April 17, 2023 for approximately 90 minutes in an attempt to amicably resolve these issues, as is required by Local Rule 37.1.[3] On certain issues (noted below), Plaintiffs stood on the positions stated in their responses, and on other issues they took Defendants' position under advisement. Plaintiffs asked to have until the end of the week—until April 21, 2023—to consider and respond further. Defendants agreed to this timeline and to not file a motion to compel until Plaintiffs responded. On April 18, 2023, Plaintiffs responded in part. *See* Email from Joseph St. John, dated April 18, 2023, annexed hereto as Exhibit "F". Then, in the early morning of April 22, Plaintiffs provided a further response, attaching updated discovery responses and listing perceived deficiencies in *Defendants'* document production from June 2022. *See* Email from Joseph St. John, dated April

---

[3] Counsel for Plaintiff Florida was not part of the meet and confer, despite signing the discovery requests at issue in this motion.

22, 2023, annexed hereto as Exhibit "G"; *see* Plaintiffs' Corrected Responses, annexed hereto as exhibit "H."

In their corrected discovery responses, Plaintiffs withdrew some of their improper general objections (discussed *infra*), renamed their general objections as general "statements", and updated their responses to many of the individual responses. While Defendants appreciate Plaintiffs updates, these changes did not address many of the issues Defendants raised with Plaintiffs. The remaining issues are discussed below.

## B.  Standard of Review

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). A party seeking discovery may move for an order compelling production if a party fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). In the Fifth Circuit, the party resisting discovery bears the burden of showing "specifically how each [discovery request] is not relevant or how each [request] is overly broad, burdensome, or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *see also, e.g.*, *McGehee v. Wal-Mart La., LLC*, No. 2:17-CV-1372, 2023 WL 186946 (W.D. La. Jan. 13, 2023) (citing *McCleod* and granting motion to compel: "The party resisting discovery must show how the request is not relevant."). "Courts have traditionally construed 'relevance' broadly: information is relevant if it encompasses any matter that bears on, or that reasonable could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (cleaned up).

## C.  Plaintiffs refuse to produce documents from State agencies upon whose alleged harm they base standing.

The largest, and most concerning, issue is Plaintiffs' position that they cannot, or will not,

produce documents from any State agencies outside the Attorney General's Office. Plaintiffs informed Defendants of this position for the first time during the April 17 conferral, and this extreme position is at the heart of most of the deficiencies in Plaintiffs' discovery responses. Plaintiff Louisiana's explanation was that, although the "State of Louisiana" is the named Plaintiff, because the State brought this suit "through its [A]ttorney [G]eneral" and the Attorney General was separately elected from the governor, Plaintiffs only have an obligation to search for responsive documents within the Office of the Attorney General. *See* Ex. F.[4] When Defendants asked if Plaintiffs had shared the requests with the State agencies, counsel for Louisiana admitted they had not. When Defendants inquired into whether counsel had even discussed Defendants' discovery requests with the relevant State agencies, counsel refused to answer the question based on work product and attorney-client privileges. Plaintiffs' counsel were unable to explain how he could simultaneously take the position that he did not represent the State agencies, but that the attorney-client privilege applied. Nonetheless, Defendants requested contact information for attorneys for the State agencies so they could serve discovery requests on the agencies directly, and Plaintiffs refused to provide it, saying the agencies were not part of this case.

Plaintiffs base their standing to bring this case on alleged injuries suffered by State agencies—specifically regarding costs of public education, SNAP, TANF, and Medicaid programs. *See* ECF No. 86, Second Am. Compl., ¶¶ 80-83, 96-98; ECF 98 ("The Plaintiff States advised the Court that they intend to establish Article III standing by showing the effect of the IFR on certain discrete programs in the states of Louisiana and Florida."). In response to Defendants'

---

[4] This position also seems to account for other issues with Plaintiffs' discovery responses, like refusing to search for, or identify in a privilege log, any responsive documents that were "created or modified prior to after [sic] August 20, 2021 (when the NPRM was published), or alternatively, March 29, 22 (when the Final Rule was published), or alternatively, April 28, 2022 (when Plaintiff States' original complaint was filed). Pl. Corr. Resp., Ex. H at 2. Rather than detail each of these issues, Defendants believe correcting the core issue discussed in this section will cure the other issues that result from Plaintiffs' misplaced position.

Interrogatory No. 18 asking Plaintiffs to describe their injuries, Plaintiffs again alleged injuries based on their State agencies: "Plaintiff States suffer fiscal injuries in their sovereign, quasi-sovereign, and sovereign capacities when they expend funds on aliens, including via education, Medicaid, TANF, and SNAP." Pl. Corr. Resp., Ex. H at 36-37.[5]

Given these allegations in the Complaint and statements to the Court, Defendants served requests for production seeking documents showing those alleged injuries. Having seen those requests, Plaintiffs now claim they have no access to agency documents. Plaintiffs go as far as to claim that they are unable to produce any documents *from their own agencies* without a subpoena. Plaintiff Louisiana's position is particularly egregious as its co-lead Plaintiff, the State of Florida, does not seem to share it. The Attorney General of Florida is also elected separately from the governor, yet Plaintiff Florida has not asserted these objections. And on April 14, Plaintiff Florida produced hundreds of documents from its Department of Children and Families and Department of Education. So, only Plaintiff Louisiana is refusing to comply with its burden to show standing and injury, despite being on notice by the Court that this would be required. At the May 18, 2022 conference, the Court made clear what it expected Plaintiffs would have to do to show standing: "THE COURT: Again, I think a lot of the work that the states need to do may be internal … with state agencies to figure out what the costs are of people who have been granted asylum residing in their states … ." Transcript of May 18, 2022 Conference, 81:8-13. Plaintiffs acknowledged the Court's warning and made no mention of issues working with State agencies or requiring subpoenas to meet their discovery obligations, *id.* at 82:8, a position Plaintiffs reiterated by email

---

[5] Defendants also note that Plaintiffs' interrogatory responses are signed only by counsel and are not accompanied by a certificate from any individual who may have provided necessary information to answer these interrogatories, in violation of Rule 33(b)(5). *See* Pl. Corr. Resp., Ex. H. This deficiency is particularly concerning now given Plaintiffs' position that they have no knowledge of or access to the State agencies, so counsel would therefore not be in a position to accurately respond to Defendants' interrogatories about Plaintiffs' alleged injuries.

to Defendants on June 28, 2022. *See* Email from Beau Roysden, dated June 28, 2022, annexed hereto as Exhibit "I" ("As I mentioned at the hearing today, [Arizona], [Florida], [Missouri], and [Louisiana] are all presently working to collect data from their respective state agencies."). If Louisiana was working to collect data from their state agencies almost a year ago, and after assuring the Court they were doing so, it is inexplicable why now, on the eve of the close of discovery, Plaintiff Louisiana would suddenly declare they cannot and will not provide agency documents or information.

Defendants have numerous concerns about Plaintiff Louisiana's position and have not been able to get adequate explanations. First, Louisiana's position begs the question of how they were able to assert injury in their Complaint if they had no access to their own agencies' documents or information. Defendants are also skeptical as to how Plaintiff Louisiana can assert attorney-client privilege over conversations with State agencies if the agencies are wholly separate from the Attorney General's Office and not part of this case. And even if that were true, it is inexplicable that Plaintiff's counsel refuse to put Defendants in contact with attorneys so as to permit Defendants to contact them directly. Likewise, it is not clear that Plaintiffs can assert work product privilege over something they have *not* done—Plaintiffs are claiming that the work product privilege prohibits any questions about their failure to share Defendants' discovery requests with State agencies.

Despite arguing at the meet and confer that there was strong support for Plaintiffs' position that they did not need to share Defendants' discovery requests with the relevant State agencies whose alleged injuries form the basis of Plaintiffs' Article III standing, when asked to supply the relevant authority for their position, Plaintiffs supplied a single out-of-circuit case.[6] Plaintiffs cited

---

[6] Plaintiffs also noted that: "Brief research indicates that analogous rules apply in the *Brady* context, too, e.g., *United States v. Morris*, 80 F.3d 1151 (7th Cir. 1996)." Ex. F. *Brady* has no bearing on this case, and *Morris* provides no

*New York ex rel Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259 (N.D.N.Y. 2006) as the "authority supporting Louisiana's position." Plaintiffs did not identify any Louisiana statue or constitutional provision in support of this position or even any case from within this circuit. Moreover, *New York ex rel Boardman*, does not stand for the proposition that a State can base Article III standing upon injuries to a State agency, and simultaneously refuse to produce evidence on behalf of that agency on the grounds that the agency is a non-party. *Boardman* involved a contract dispute between the Department of Transportation (DOT) and Amtrak, for which the State of New York sued on behalf of the DOT. Amtrak sought discovery not only from the DOT, but also from the Office of the State Comptroller (OSC), which was not a party to the case and on whose behalf the State had not alleged any harm. Amtrak argued, however, that because the Office of State Comptroller was part of the State of New York, it should be able to obtain documents from it via a Rule 34 request rather than a Rule 45 subpoena. The Court disagreed because a specific provision of the New York State Constitution expressly set off the comptroller as a separate entity independent of the rest of the executive branch. Id. at 263. "The New York State Constitution … indisputably distinguished OSC from all other state departments," and created that office in a separate constitutional provision from the provision that created the rest of the executive departments. *Id*. at 263-64. Plaintiffs here have not identified any support for applying the same approach to the various Louisiana State agencies on which Louisiana asserts harm, and even if it did, Defendants here are not seeking discovery from a State agency that has not otherwise been implicated in this case. Rather, Defendants are seeking discovery into the allegations of harm Plaintiffs included in their amended complaint, signed by their attorneys.

　　If these State agencies are to be treated as third parties, then Plaintiffs should not be

---

support for the proposition that a Plaintiff State can assert injury and standing based on State agencies but fend off discovery into those allegations by claiming the agencies are actually third parties.

permitted to put forward evidence from these agencies or rely on allegations related to these agencies to assert standing on behalf of the State. In other words, they should be permitted to base standing upon harm to these agencies but also claim the agencies are third parties so as to shield themselves from discovery that might undermine their allegations of harm. Plaintiffs have implicated these State agencies in this suit by raising these allegations, and *New York ex rel Boardman* does not support the position that Defendants cannot test those allegations through discovery.

Plaintiffs cannot have it both ways – if alleged injuries to State agencies are the basis for Plaintiffs' standing, then those agencies are part of this case and Plaintiffs must provide documents from those agencies proving their alleged injuries; if the State agencies are not part of this case and Plaintiffs will not provide agency documents, then they cannot base standing on alleged injuries to those agencies. *See, e.g.*, *Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" as to standing.); *Irwin v. Veterans Admin.,* 874 F.2d 1092, 1096 (5th Cir.1989) ("To defeat a factual attack" to standing on motion to dismiss "a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence" and is "obliged to submit facts through some evidentiary method to sustain his burden of proof.").

## D.  Plaintiffs have not provided enough information or detail for Defendants to adequately review their responses.

### a. *Plaintiffs improperly assert numerous general objections, styled as general "statements".*

First, Plaintiffs improperly lodge most of their objections to Defendants' requests as a generalized or boilerplate objections that do not specifically respond to and/or explain their relevance to Defendants' discovery requests. Pl. Corr. Resp., Ex. H, 1-5. This general-objection approach flagrantly violates Rules 33 and 34 and Plaintiffs should be directed to specify how these

general and boilerplate objections pertain to particular requests or have them deemed waived.

The party resisting discovery bears the burden to clarify and explain its objections and to provide support for those objections. *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009). The Federal Rules provide that, in responding to requests for production, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Rule 34 was amended in 2015 particularly "to require that objections to Rule 34 requests be stated with specificity. This provision adopts the language of Rule 33(b)(4) [requiring specificity in interrogatory objections], eliminating any doubt that less specific objections might be suitable under Rule 34." Adv. Comm. Notes to Fed. R. Civ. P. 34, 2015 Amdt. The same rule applies to interrogatories: "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

Under Rules 33 and 34, "[b]oilerplate objections are not acceptable" and "specific objections are required." *Enron Corp. Sav. Plan*, 258 F.R.D. at 159. The party resisting discovery "must show *specifically* how ... *each* interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990) (emphasis added). "'Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request.'" *Enron Corp. Sav. Plan*, 258 F.R.D. at 159 (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 436 (N.D. Tex. 2006)).

In their responses, Plaintiffs offer several objections to Defendants' requests that are the "broad-based, non-specific" admittedly "general" objections that Plaintiffs provide in an

undistinguished mass at the beginning of their response. Pl. Resp., Ex. H, 1-5. And even though they have been re-labeled as general "statements" in Plaintiffs' updated responses, they are still objections.  For example, general "statements' 10-15 all begin with "Plaintiff States object to…" *See, e.g., id.* at 4-5. Changing the title of this section does not address the problem.[7]

While Plaintiffs raise a few objections in response to Defendants' individual requests, they do not particularize the general objections, stating only instead that each response "incorporate[s] their general statements as if fully set forth herein." *See, e.g., id.* 6-7. This approach is insufficient under the Federal Rules: it fails to specify *which* general objections apply to which requests and *how* those objections are implicated by those requests, "making it almost impossible to assess on their merits." *Enron Corp. Sav. Plan*, 258 F.R.D. at 159; *see Quarles,* 894 F.2d at 1485.

Even the few objections Plaintiffs provide specific to individual requests are often mere boilerplate and fail to explain precisely how the objection pertains to the particular request. For example, some of Plaintiff's frequently repeated objections are: "Plaintiff States object to this request as unduly burdensome in that it seeks information already in the possession, custody, or control of Defendants;" "Plaintiff States object that responding to this request requires information in the possession, custody, or control of Defendants, which has not been provided;" and "Plaintiff States further object to this request as violating Fed. R. Civ. P. 26(g) in view of Defendants' public statements." *See, e.g.,* Pl. Resp., Ex. H, 6-13. The objections, even if included in Plaintiffs' specific response sections, nevertheless are legally insufficient because they are mere boilerplate. They fail to show specifically how each request addresses information in Defendants' possession (and what

---

[7] One of Plaintiffs' newly added general "statements" asserts work product privilege over "any relevant, responsive documents transmitted between the Attorney Generals' offices of Plaintiff States and any retained expert." Pl. Corr. Resp., Ex. H, at 3. This is the first mention of Plaintiffs retaining an expert, or relying on expert testimony to show standing. Because this was included in Plaintiffs' general objections, Defendants do not know which responses this relates to, or whether any documents are being withheld on the basis of this objection.

that information is) or how it is implicated by "Defendants' public statements" (and what statements are being referred to). *See Quarles,* 894 F.2d at 1485.

This is particularly egregious because Plaintiffs know that general, conclusory objections are improper—they included case law saying the same in their own motion to compel. *See* ECF No. 144-1 at 5 ("Moreover, conclusory, non-specific recitations of expense, burden, irrelevance, and the like are insufficient to state an objection. *McCleod*, 894 F.2d at 1485."). While general objections may be less work for Plaintiffs, it is not the proper, let alone required, practice. When this issue was raised during the parties' April 17 conferral, however, Plaintiffs' counsel mocked defense counsel for this position, stating that he would have his paralegal "copy and paste" all the general objections into each response, despite defense counsel asserting numerous times that this would also not be proper.[8]

Plaintiffs should be directed to supplement their general and boilerplate objections with explanations specifying their relevance and meaning for the individual discovery requests to which they apply or have them deemed waived.

b.   *None of the documents are labeled or organized.*

Plaintiffs' written responses do not identify, with specificity, the responsive documents being produced. All of Plaintiffs' responses either refuse to search at all, state that Plaintiffs are continuing to search for responsive documents, or cite a few documents as responsive using the

---

[8] Defendants expect Plaintiffs will attempt to distract the Court in their opposition by pointing to a general statement Defendants included in the beginning of their responses to Plaintiffs' discovery requests. *See* Def. Resp, annexed hereto as Exhibit "J". The difference, however, is clear. Defendants' general statement only addresses the treatment of any inadvertent production of privileged information that might occur, and preserves Defendants' right to object to the materiality of documents produced later in the proceedings.

Defendants also included objections to Plaintiffs' definitions and instructions, such as the definition Plaintiffs provided for "asylum applicant" and their instruction on the relevant time period. Ex. J at 2-4. And Defendants specifically noted where these objections to the definitions and instructions applied to a particular request. *See, e.g., id.* at 5 (response to Request for Production No. 1, noting objection to definition of asylum applicants and to the relevant time period in that request).

citation "*see, e.g.*"[9]—yet Plaintiffs produced thousands of unlabeled, unorganized pages of documents. Defendants have no way of knowing which documents respond to which requests. Using "*e.g.*" and citing a few documents is not sufficient to allow Defendants to know what universe of documents Plaintiffs may rely on in support of the issues raised in these requests, which is part of the aim of discovery. If Plaintiffs have produced all responsive documents, they should identify each document that is responsive to each request, and Defendants can review to determine whether they believe Court intervention is necessary to compel additional documents. If Plaintiffs are continuing to search and produce documents, they should so state so Defendants know that Court intervention is not yet required. But Plaintiff cannot use "*see, e.g.*" to cite to a single responsive document produced during discovery—as they do in response to Request for Production No. 2, for example—to leave the door open to later rely on any document they want to support those issues.  As detailed above in the "Background" section, Defendants asked Plaintiffs to either update their responses to indicate which documents were being produced in response to which request, or to organize the documents as required by Rule 34(b)(2)(E)(i). *See* Exs. B, C, D. To date, the only update Plaintiffs have made is adding "*see, e.g.*" and citing a few examples in some of their responses. *See* Pl. Corr. Resp., Ex. H.[10]

Further complicating Defendants' ability to tie documents produced to specific requests is that many of the documents themselves are also not clearly, on their face, responsive to any requests. For example, as part of their April 6, 2023 production, Plaintiff Louisiana provided, *inter alia*, Congressional reports from 1996 (LADOJ-ASYLUM 1374, LADOJ-ASYLUM 1924)[11]; a 2017 blog post from the Shelby Law Firm discussing asylum in Louisiana (LADOJ-ASYLUM

---

[9] For example, Plaintiffs' responses to Requests for Production Nos. 1-4. Pl. Corr. Resp., Ex. H.
[10] The specific responses in which Plaintiffs improperly cite some selected documents using "*see, e.g.*" are Nos. 1-7, 10-12, 16-17, 19, 28-31.
[11] As these documents are lengthy, Defendants include only the title page to indicate the contents for the Court.

1360-1368); and a news article about asylum seekers not being permitted to call their families, published in July 2021, before the policy challenged in this case was announced (LADOJ-ASYLUM 2414-2419). Examples of Plaintiffs' Production annexed hereto as Exhibit "K". Defendants cannot even begin to guess at what the relevance of these documents may be, and none of them are mentioned in Plaintiffs' discovery responses. *See* Pl. Corr. Resp., Exhibit H. To the extent these documents are relevant and are responsive to a particular demand, Plaintiffs should be—and are—required to identify that demand so that Defendants can adequately prepare for summary judgment or trial, when Defendants may have to address these documents. To be clear, not only do Plaintiffs' discovery responses not indicate which documents are responsive to which demands, the documents Plaintiffs produced are not labeled or organized in any way to convey that information. For all Defendants know, these documents may be part of Plaintiffs' affirmative Rule 26(a) production and are not responsive to Defendants' discovery requests at all.

The documents Plaintiffs have produced are also not ones that Plaintiffs would keep in the normal course of business—none of the produced documents are from the Louisiana Attorney General's Office or a Louisiana State agency—so Rule 34(b)(2)(E)(i) directs that Plaintiffs "must organize and label [the documents] to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Plaintiffs did not comply with this rule, making their responses not just impossible to parse, but legally deficient. Defendants should not have to guess at whether or not Plaintiffs have fulfilled their discovery obligations. Defendants respectfully request that the Court order Plaintiffs to update their discovery responses to indicate which documents they are producing in response to each request. [12]

---

[12] Defendants note that Plaintiff Florida produced numerous documents from Florida State agencies, and some were organized in folders to indicate which request it was in response to. However, not all of Plaintiff Florida's documents were organized as such, nor are any of the documents referenced in the written discovery responses, so this request is also directed at Plaintiff Florida to the extent it only partially complied with the requirements of Rule 34(b)(2)(E)(i).

c. *Plaintiffs do not state whether documents are being withheld on the basis of their objections.*

Plaintiffs must also amend their responses to indicate affirmatively whether any documents are being withheld on the basis of privilege or other objection. Rule 34 provides that any "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Under the rule, "[a] party served with written discovery must fully answer each interrogatory or document request … and affirmatively explain whether any responsive information or documents have been withheld." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014). If, on the other hand, no responsive documents were found, "'the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'" *Id.* (quoting *Atcherley v. Clark*, No. 1:12cv00225, 2014 WL 4660842, at *1 (E. D. Cal. Sept. 17, 2014) and collecting other cases in support).

In the "General Objections" section in Plaintiffs' Response as well as in its responses to Defendants' individual requests for production, Plaintiffs identify a number of privileges and other objections, but fails to indicate whether any documents are being withheld on the basis of these privileges or objections. Pl. Corr. Resp., Ex. H. This violates the plain requirements of Rule 34 and prevents Defendants and the Court from determining whether Plaintiffs are properly asserting privilege over specific material and generally whether they conducted a reasonable inquiry in their search. Fed. R. Civ. P. 34(b)(2)(C); *Heller*, 303 F.R.D. at 485. Plaintiffs should be ordered to amend their response to indicate affirmatively whether any documents have been identified and are being withheld on the basis of privilege or other objection – and provide a privilege log detailing those documents and specific assertion of privilege, *see* Fed. R. Civ. P. 26(b)(5); *In re*

17

*Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir.2001) (holding that the "party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability") – or indicate that no documents were found in those instances where that is the case.

**E.  Issues with specific responses.**

In addition to the overarching issues discussed above, there are also issues with Plaintiffs' responses to specific requests. Again, the issues are broad and overlap multiple requests, so the specific requests are grouped below to assist the Court in reviewing these issues.

*i.  RFPs 8-9, 13-15, 18, 20, 25-26, 34-36*

In response to these requests, Plaintiffs first reiterate their improper general objections, but state they will produce documents after doing a reasonable search. However, Plaintiffs do not provide a date certain by when they will update their responses to confirm their search is complete and/or provide responsive documents. This is improper and makes it impossible for Defendants to review Plaintiffs' response for completeness, or to know when the parties may be at an impasse and Court intervention may be needed. *See* Fed. R. Civ. P. 34(b)(2)(B) ("The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request **or another reasonable time specified in the response**.") (emphasis added).

During the conferral, Plaintiffs refused to provide a date certain by when their search or rolling production would be complete, and insisted that filing a motion to compel before Plaintiffs confirmed their production was complete would be inappropriate.[13] Plaintiffs cannot—or will

---

[13] Once again, Defendants expect that Plaintiffs' opposition will contain much finger pointing and blame shifting on this issue in an attempt to avoid accountability. Any such arguments that Plaintiffs attempt to advance are of no moment. First, any perceived deficiency in Defendants' discovery responses does not excuse the same deficiency by Plaintiffs. Second, this issue—specifically, not having a date certain by when Defendants' production will be complete—was

not—say how much time they need to complete their searches and production, only that it will be "weeks" which makes it impossible for Defendants to know the best way to proceed with further discovery.

Additionally, Plaintiffs' position that they need an unknown number of weeks to search for responsive documents is particularly baffling in light of Plaintiffs' position that they only have to search their own office for responsive documents, and that most of those documents are privileged or do not exist. Were Plaintiffs working with their State agencies to review documents for production as Defendants are, then such a delay would be understandable. But as explained, Louisiana has repeatedly refused to engage with their agencies, taking the position that those agencies are not part of this case, and any information they have is in any event not relevant to Plaintiffs allegations of injury premised on those agencies. This delay also seems to be mainly from Plaintiff Louisiana, as on April 14, 2023, Plaintiff Florida produced over 800 pages from their Department of Children and Families and Department of Education. So, if Plaintiff Florida was able to work with multiple State agencies to compile and produce hundreds of responsive documents within the agreed upon timeframe, Plaintiff Louisiana's delay to only search their own office is inexplicable.

Defendants request that the Court order Plaintiffs to provide a date certain by which they will update their responses to these requests and produce responsive documents.

ii.    *RFPs 21-23, 27, 29*

Plaintiffs also refused to search for or produce documents in response to Requests for

---

not raised by Plaintiffs at the parties' conferral on Plaintiffs' motion to compel, so should Plaintiffs raise it in their opposition to this motion for the first time, the Court should view it for what it is—as distraction. Finally, it is also not accurate. Defendants have always informed Plaintiffs of their intended timeline for their searches and productions— a timeline that the parties jointly informed the Court of. *See* ECF No. 128 ("The Parties anticipate providing responses and objections to the discovery requests in the next week, **but also anticipate that it will take at least another 30 days to identify, collect, review, and produce responsive documents**."). Regardless, the issue is also now moot: Defendants completed their production to Plaintiffs on April 24, 2023, as intended.

Production Nos. 21-23, 27 and 29. Plaintiffs objected that these requests were not relevant and outside of the scope of discovery, citing *Texas v. United States*, 809 F.3d 134, 155-56 (5th Cir. 2015). *See, e.g.*, Pl. Corr. Resp., Ex. H at 18. At the meet and confer, Defendants asked Plaintiffs to explain their position on these requests, to which Plaintiffs' counsel responded that standing is not "an accounting exercise," presumably referring to the Fifth Circuit's statement in *Texas*, 809 F.3d at 156. The Fifth Circuit said, however, that courts *should* consider "those offsetting benefits that are of the same type and arise from the same transaction as the costs." *Id*. As Defendants explained at the meet and confer, these requests for production have a direct nexus to the costs Plaintiffs identify in their complaint as supporting injury. For example, Plaintiffs allege in their Second Amended Complaint that "the Asylum IFR will force Louisiana to expend limited resources on education, healthcare," and "public assistance." ECF No. 86, ¶ 80. If Plaintiffs seek to base their standing on particular costs, information on who actually bears those costs is plainly relevant and directly related to the costs Plaintiffs assert as relevant.

The same is true with respect to the other requests that fall into this category, and to which Plaintiffs raised the same objection. Plaintiffs allege in their complaint that immigrants cost the States taxpayer dollars. *See, e.g.*, ECF No. 86, ¶¶ 82, 98. Requests for Production Nos. 21 and 22 ask about the taxes and revenue that immigrants contribute to these States. Plaintiffs allege that immigrants affect the labor market in these States. *See, e.g.*, ECF No. 86, ¶¶ 89, 190. Request for Production No. 23 asks whether Plaintiffs have any documents that show the impact of labor shortages in these States. Finally, Plaintiffs repeatedly allege harm based on immigration to their States, and Request for Production No. 27 asks the related question of whether Plaintiffs have any documents that show whether immigrants remain in these States or whether they instead move on to other locations.

When the Parties ultimately brief the States' standing to bring their claims, Plaintiffs can raise whatever arguments they may have about the proper weight to be given to adverse evidence related to their alleged injuries that may undermine their theory of harm. But for purposes of discovery, the standard of relevance under Rule 26(b)(1) is broader, permitting "discovery regarding any nonprivileged matter that is relevant to any party's claim or defenses." "Information" ultimately does not even "need to be admissible in evidence to be discoverable." *Id.* "Accordingly, 'relevance' is interpreted broadly at the discovery stage, in keeping with the notice pleading requirements of the Federal Rules." *Krispy Krunchy Foods, L.L.C. v. Jenna Mktg., L.L.C.,* No. 6:20-CV-01424, 2023 WL 2817734, at *1 (W.D. La. Apr. 6, 2023) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Evidence on who actually bears the specific costs Plaintiffs allege give them standing in the complaint has a direct nexus to any claim of standing based on those costs and is plainly relevant to the claims and defenses. Allowing Plaintiffs to oppose discovery into this information would improperly permit them to skew the evidentiary record in their favor and prejudice Defendants' defense.

    *iii.*    *RFPs 28, 31-33*

These requests all seek documents that establish the alleged injuries specifically claimed in the Second Amended Complaint. *See* Pl. Corr. Resp., Ex. H at 21-26. In response to these requests, however, Plaintiffs object that the information sought is "not relevant and is outside the scope of discovery," "in possession of Defendants," "privileged work product," and that Defendants must file a Rule 11 motion before they would be entitled to the documents sought. *Id.*

As an initial matter, requests asking for the basis for allegations of injury and standing Plaintiffs included in their Complaint is what all discovery is based upon—Plaintiffs make allegations; Defendants probe the validity of those allegations. Refusing to provide documents that

show Plaintiffs' basis for alleging injury or standing in the complaint that their attorneys signed on their behalf is not a valid objection. Plaintiffs' objection that these requests are not relevant to jurisdictional discovery is equally baseless. Generally, the scope of discovery is broad, and a discovery request is relevant "when the request seeks admissible evidence or is reasonably calculated to the discovery of admissible evidence." *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (internal marks omitted). "At the discovery stage, relevancy is broadly construed, and information is considered relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Here, where the parties are engaged in jurisdictional discovery specifically related to Plaintiffs' standing to bring this matter, requests probing the assertion of injuries is clearly relevant, as proof of injury is one of the required elements of standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (To show Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). It is also baseless to claim that evidence of Plaintiffs' own alleged injuries is somehow in the possession of Defendants. Plaintiffs have reiterated multiple times during this litigation that the States have suffered financial injuries as a result of noncitizens in their States. The evidence of those alleged financial injuries is solely within the possession of Plaintiffs. *See* Transcript of May 18, 2022 Conference, 81:8-13 ("THE COURT: Again, I think a lot of the work that the states need to do may be internal … with state agencies to figure out what the costs are of people who have been granted asylum residing in their states … .").

22

Plaintiffs make the curious distinction between documents "that establish the basis" for allegations—which they will not search for—and documents that "support" the allegations—which Plaintiffs will search for—but again, apparently only within the Office of the Attorney General. Pl. Corr. Resp., Ex. H at 21-26. Defendants have asked Plaintiff to explain the difference but to date, no explanation has been provided. *See* Ex F. First, documents that "establish the basis" for allegations in Plaintiffs' complaint are documents that Plaintiffs should have already had in their possession before filing this case; no search for these documents should be necessary if Plaintiffs did their due diligence before drafting their Complaint. And a Rule 11 motion is not required for Defendants to obtain basic discovery showing Plaintiffs' alleged injuries. If Plaintiffs had a valid evidentiary basis for making the allegations in their Complaint, they should have no issue providing same to Defendants.

Second, the work product privilege protects "documents and tangible things that **are prepared in anticipation of litigation or for trial by or for another party or its representative**." Fed. R. Civ. P. 26(b)(3) (emphasis added). But "the work-product doctrine protects only the [attorney's work product] and not the underlying facts." *Adams v. Mem'l Hermann*, 973 F.3d 343, 350 (5th Cir. 2020), citing *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). Plaintiffs have wisely not taken the nonsensical position that the only basis for their alleged injuries are documents solely created in anticipation of this litigation, so the work product privilege does not apply. Further, Plaintiffs have made it clear that the State agencies are not parties to this case, nor does the Attorney General's Office represent them, so Plaintiffs cannot assert work product privilege over documents created by the agencies, should they exist. Once again, Plaintiffs cannot have it both ways.

If Plaintiffs do not have responsive documents supporting the injuries alleged in their

Complaint, they should so state; if they do have responsive documents, they should be produced.

## <u>CONCLUSION</u>

Plaintiffs brought this case; it is their burden to show they have standing. For the reasons stated above, Defendants respectfully request that the Court order Plaintiffs to cure the deficiencies in their discovery responses and participate in jurisdictional discovery. Defendants will be prepared to discuss this motion at the conference currently scheduled for May 11, 2023.

Date:  April 25, 2023

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN WARD
*Senior Litigation Counsel*

/s/ *Erin T. Ryan*
ERIN T. RYAN
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 532-5802
Email: erin.t.ryan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

By: */s/ Erin T. Ryan*
ERIN T. RYAN
Trial Attorney
United States Department of Justice
Civil Division

## LOCAL RULE 37.1 CERTIFICATE

I hereby certify that on April 17, 2023, counsel conferred by telephone for purposes of amicably resolving various discovery issues. The unresolved issues necessitated the filing of this motion and are addressed above.

By: */s/ Erin T. Ryan*
ERIN T. RYAN
Trial Attorney
United States Department of Justice
Civil Division