UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| STATE OF ARIZONA, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, <br><br> *Defendants.* | Civil Action No. 6:22-cv-01130 |

**<u>DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL PLAINTIFFS TO PRODUCE DISCOVERY</u>**

Defendants have moved to compel discovery related to Plaintiffs' standing to bring this suit, which they base on fiscal injuries within their States. As set out below, Plaintiffs' opposition does not meaningfully engage with the arguments in favor of this basic, plainly relevant discovery ordered by the Court. Accordingly, the Court should grant Defendants' motion to compel.

**A. The Court should Order Plaintiffs to produce documents from State agencies upon whose alleged harm they base standing.**

Plaintiffs spend much of their opposition telling the Court that their asserted harm is to the State itself and that the State is *not* its agencies. ECF No. 166 at 6-7. Yet Plaintiffs never fill in the missing piece—if the State is not its agencies, then what is "the State" and from whom can Defendants obtain discovery of the State's claimed injuries? ECF No. 166 at 7 ("To be sure, State agencies may be harmed too, and they may have evidence that supports the States' claims. That does not mean that the States themselves aren't harmed."). Plaintiffs have produced no evidence in response to Defendants' requests showing any injury to the State itself, nor do they identify in their complaint or their opposition any alleged injuries that do not relate to costs to agencies of the States. Plaintiffs cannot have it both ways – if alleged injuries to State agencies are the basis for Plaintiffs' standing, then those agencies are part of this case and Plaintiffs must provide documents from those agencies proving their alleged injuries; if the State agencies are not part of this case and Plaintiffs will not provide agency documents, then they cannot base standing on alleged injuries to those agencies.

Plaintiffs claim that it is the *States* and not their agencies that have certain powers, such as taxation and appropriations. *Id.* Yet that taxation, for example, is carried out by a State agency— the Louisiana Department of Revenue. The harms that Plaintiff Louisiana alleges to State services like education, healthcare, and public assistance (ECF No. 86 at ¶ 80) are administered by the Louisiana Department of Education, Department of Healthcare, and Department of Children and

1

Families, respectively. Those "limited resources" Louisiana will have to expend come from the budgets of those agencies, because "a state acts through its agencies." *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, No. 77 B 8999, 1991 WL 66187, at *2 (N.D. Ill. Apr. 24, 1991). Plaintiffs cannot claim harm to the State through these agencies and the programs the agencies administer, but refuse to allow discovery to test those injuries by arguing the necessary documents are in the "possession, custody or control" of agencies who are not part of this case. As Defendants explained in their original motion—Plaintiffs cannot have it both ways.

Plaintiffs point to the matter of *Texas v. United States* and the finding that the State had demonstrated standing because it was able to show a cost in issuing drivers licenses, trying to claim that the injury was "*through* the Texas Department of Public Safety" rather than *to* the Department of Public Safety. *Id.* at 8 (emphasis added). But to show standing, Texas provided evidence from its Department of Public Safety, specifying costs the *Department* would incur—not the costs the *State* would incur. *See* Declarations from Texas Department of Public Safety, annexed hereto as Exhibit "M." This is the same type of evidence Defendants seek here, and which Plaintiffs assured the Court they would provide. Yet in their responses to Defendants' discovery requests seeking this evidence—and again in their opposition—Plaintiffs claim the requests were served on *Plaintiffs' counsel*, and therefore they had no non-privileged information. ECF No. 166 at 13-14. This position is especially inexplicable because Plaintiff Florida produced evidence from their State agencies in response to Defendants' discovery requests.

In the background of Plaintiffs' Opposition to Defendants' Motion to Compel, Plaintiffs refer to Plaintiffs' counsel—the Louisiana Department of Justice and the Florida Department of Legal Affairs—as "the States' captive law firms with no relevant operational activities." ECF No. 166 at 3. As an attorney representing a client, it strains credibility to claim that you believe the

opposition's discovery requests are being served on you or your law firm, rather than on your client through you as their representative. Yet that seems to be exactly the interpretation Plaintiffs have taken here, claiming that Defendants' discovery requests were somehow directed at the Louisiana Department of Justice and the Florida Department of Legal Affairs—Plaintiffs' counsel—rather than at the State of Louisiana and the State of Florida—the Plaintiffs.

Defendants' discovery requests specifically define "You" as used in the requests as "any Plaintiff State, including all its agencies, subdivisions, and officers acting in official capacity." *See* Defendants' Discovery Requests, dated February 16, 2023, annexed hereto as Exhibit "L" at 2. There is no confusion there. If Plaintiffs' counsel genuinely thought Defendants were attempting to solely obtain documents from Plaintiffs' *counsel*, Plaintiffs could—and should—have raised that with Defendants when they obtained Defendants' discovery requests. Yet Plaintiffs did no such thing. Indeed, Plaintiffs' counsel apparently reached out to the relevant State agencies in June 2022 in response to Defendants' (now withdrawn) first set of discovery requests to discuss obtaining documents, so it is clear that Plaintiffs' counsel knew and understood the target of Defendants' requests. ECF No. 166-1, Declaration of Attorney Joseph Scott St. John. Yet, upon learning that the State agencies would require a subpoena to provide documents—even to Plaintiffs' counsel—Plaintiffs said nothing to Defendants for over 10 months, despite the fact that the parties were in contact on this issue at that time, nor did they raise this issue in the multiple hearings with the Court specifically discussing discovery with respect to State agencies prior to April 2023. As detailed in Defendants' motion, the parties were emailing on this issue on June 28, 2022—less than a week after Plaintiffs' counsel apparently spoke with State agencies—and yet Plaintiffs' counsel told Defendants they were "presently working to collect data" from State agencies. ECF No. 166, Declaration of Attorney Joseph Scott St. John, at ¶¶ 3-6; Ex. I ("As I

3

mentioned at the hearing today, [Arizona], [Florida], [Missouri], and [Louisiana] are all presently working to collect data from their respective state agencies."). Plaintiffs then responded to the Defendants' discovery requests as if they were targeted at Plaintiffs' counsel—again not mentioning that a subpoena was necessary to obtain the information sought in any of their responses to Defendants' discovery requests. *See, generally,* Ex. H.

Plaintiffs illogically claim that Defendants "believed" that "a full presentation of evidence will show Plaintiff States lack of standing" then Defendants "would have issued subpoenas to the state agencies that have evidence months ago." ECF No. 166 at 12-13. Had Defendants known what Plaintiffs' counsel knew 11 months ago—that the agencies apparently consider themselves separate and apart from the State itself and would require subpoenas to comply with the States' own lawsuit—then Defendants would have had an opportunity to serve subpoenas, though Defendants still dispute that Plaintiffs can represent alleged injuries to State agencies identified in their complaint directly while simultaneously arguing they are not part of this case and Defendants cannot obtain related discovery directly from Plaintiffs.[1] But this information was never provided to Defendants. Plaintiffs' position is further undercut by Plaintiffs' actions during the parties meet and confer—when Defendants asked for the contact information of the attorneys for the State agencies, Plaintiffs refused to provide the information, stating that the agencies were not part of this case. Yet Plaintiffs' counsel reached out to those same agencies to discuss "discovery issues" in June 2022, which would be unnecessary if those agencies truly were not part of this case. ECF No. 166-1, Decl. The constant moving of the goal posts and ever evolving definition of what the

---

[1] At a minimum, if Plaintiffs had disclosed this issue earlier, Defendants could have raised it to the Court at the outset of discovery, or moved to compel sooner, rather than devote substantial time to serving and awaiting responses to requests Plaintiffs knew from the outset that they never planned to respond to, based on grounds they never disclosed.

4

"State" is reeks of gamesmanship.

Nowhere is this gamesmanship more apparent than in Plaintiffs' argument that documents in the custody of State agencies are not within the "possession, custody or control" of the "State of Louisiana" and because the State agencies are not named parties to this action, evidence in their possession is off limits without a subpoena. ECF No. 166 at 9-12. A State's Attorney General may be a separately elected official, but Louisiana's Attorney General is not the Plaintiff named in the caption here—the State of Louisiana is, and the State is made up of agencies who implement the State's policies and laws. *See, e.g., Washington v. GEO Grp., Inc.*, No. 3:17-CV-05806-RJB, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018) ("In this Court's view, where the plaintiff is the State of Washington, discovery addressed to the State of Washington includes its agencies. Because the AGO is the law firm to the State of Washington, the AGO should respond to and produce discovery on behalf of the State of Washington, including its agencies. This view should not be construed as a finding for any other purposes."). Plaintiffs provide no binding case law in support of their position that they do not have to provide documents from those agencies to support their allegation of injury. And none of the case law they do provide is persuasive on the current dispute.

First, Plaintiffs' reliance on *United States v. American Express Co.* is misplaced. This was an antitrust action brought against a corporation and the motion to compel at issue in this decision did not deal with the factual basis for the States' standing to bring the case. *United States v. American Express Co.*, 10-CV-04496 (NGG) (RER), 2011 WL 13073683 (E.D.N.Y. July 29, 2011).[2] The Court in *American Express Co.* does make an important point that Plaintiffs also

---

[2] Notably, this decision notes that the parties both cited *United States v. AT&T*, 461 F. Supp. 1314 (D.D.C. 1978) in support of their respective positions. *Am. Express Co.*, 2011 WL 13073683 at *1. "In *AT&T*, the district court found that when the United States was the named party in an

5

disregard here—the inefficiency and burden of requiring Defendants to serve a Rule 45 subpoena on each individual State agency, and any potential motion practice that may result from those subpoenas, when Plaintiffs' counsel could arguably just pick up the phone and ask for the documents that form the basis for this lawsuit. *Id*. at *4. ("All this said, I cannot agree with Plaintiff States that Rule 45 is a more efficient, less burdensome approach for Amex. To the contrary, I recognize that party discovery would be unquestionably more efficient."). If Plaintiffs' counsel claim that they cannot obtain discovery from their own State agencies, even voluntarily, it again raises the concerns Defendants highlighted in their original moving papers: how were Plaintiffs able to assert injury in their Complaint if they had no access to their own agencies' documents or information? ECF No. 157 at 9.

Similarly, *Colorado v. Warner Chilcott Holdings Co. III* is also an antitrust case in which the plaintiff states were bringing suit in their *parens patriae* capacity and were not making allegations "based on harm to any individual entity such as a Medicaid agency." *Colorado v. Warner Chilcott Holdings Co. III*, 05-cv-2182 (CKK)(AK), 2007 WL 9813287, at *2 (D.D.C. May 8, 2007). The same is not true here. In this case, Plaintiff States are alleging specific harm to their agencies based on having to expend resources on "education, healthcare, public assistance, and general government services." ECF No. 86 at ¶ 80. Another key difference is that in *Colorado*, the discovery was being sought by the defendants to explore whether it would be relevant to a defense, whereas here, the information sought was affirmatively alleged by Plaintiffs to establish standing

---

antitrust enforcement action, the United States Department of Justice ("DOJ") could not alone be considered the plaintiff, and thus sole government agency subject to discovery. Accordingly, the court found that executive branch agencies were subject to party discovery. The court noted that DOJ likely would not have brought the suit 'without consultation with government executives involved in economic policy and possibly with the White House itself.'" *Id.* The same logic applies here with respect to Louisiana's Department of Justice and the State's agencies.

to bring the case and Defendants are probing the veracity of those allegations. This difference may seem like semantics, but it is actually a crucial distinction as to Plaintiffs' discovery obligations in the instant motion because Plaintiffs have the burden of proving their alleged injuries and standing and have specifically implicated these State agencies in their complaint and other statements as their basis for doing so.

The same distinction undermines Plaintiffs' reliance on *United States and State of Louisiana v. CITGO Patrol. Corp.*. In that case, the defendant corporation was seeking discovery of, in part, inter-agency communications and documents related to a separate ongoing litigation. *United States v. CITGO Petrol. Corp.*, 2010 WL 1754167, at *1-2 (W.D. La. Apr. 29, 2010). The State of Louisiana objected to these requests on the grounds of the work-product privilege, but the Court granted the motion to compel for all non-privileged documents. *Id.* at *3-4 (ruling "motion will be granted with regard to unprivileged correspondence between LDEQ [Louisiana Department of Environmental Quality] and/or LOSCO [Louisiana Oil Spill Coordinator's Office ]"). So, although Plaintiffs include a single, out-of-context line from the beginning of the decision in their opposition, the Court ultimately granted the motion to compel in part against the State of Louisiana for documents from State agencies. *Id.*

Plaintiffs point out a number of allegations in their Amended Complaint they assert "speak in terms of harm to the *State* itself" in support of their position that they are not required to provide documents from State agencies. *See* ECF No. 166 at 8, citing ECF No. 86 at ¶ 80. These allegations, which address "education, healthcare, public assistance, and general government services," *id.*, are the exact allegations Defendants seek discovery on, and yet Plaintiff has refused to respond to Defendants' requests related to these allegations, claiming the requests were not relevant, outside the scope of discovery, and privileged. ECF 157 at 19-23.

7

The bottom line is this: if Plaintiffs have evidence of the injuries they allege support their claim of standing, they have an obligation to produce it to Defendants and respond to discovery requests related to and designed to test the basis of those allegations. Yet Plaintiffs have not made a single affirmative production that contains evidence related to their allegations of standing. If Plaintiffs want to assert harm to State agencies as the basis for their standing, despite their claim that the State agencies are separate and apart from "the State," they have to provide evidence. Such evidence cannot be cherry picked by Plaintiffs to create a skewed evidentiary record—Defendants have a right to probe Plaintiffs' claims and test that evidence in discovery, rather than permitting Plaintiffs to choose what information they would like to voluntarily provide in support of their claims. Plaintiffs have gone to great lengths to avoid responding to reasonable discovery requests, and waited ten months to disclose their novel argument for avoiding providing discovery from State agencies. The Court should not permit such games and should order Plaintiffs to provide the documents necessary to fully assess their alleged standing.

**A.  The remainder of Plaintiffs' opposition is baseless.**

Plaintiffs claim that discovery seeking specific data about the harms to the States is irrelevant to standing under Fifth Circuit law. ECF No. 166 at 17-18. Yet Plaintiffs fail to respond to Defendants' specific explanations for why each of these requests specifically address "offsetting benefits that are of the same type and arise from the same transaction" as the alleged costs. ECF No. 157 at 20; *Texas v. United States*, 809 F.3d 134, 155-56 (5th Cir. 2015). Plaintiffs also do not respond to Defendants' argument that relevance for the purposes of discovery is broader than what might ultimately be admissible, or what Plaintiffs might argue the Court should look to in resolving their standing on the merits. ECF No. 157 at 21.

Much of the rest of Plaintiffs' opposition addresses arguments Defendants made only in the context of Plaintiffs' improper belief that the discovery requests were directed solely at

8

Plaintiffs' counsel rather than to the States as the actual party. *See, e.g.,* ECF No. 166 at 15 ("Discovery targeting a law firms—especially discovery seeking documents produced after litigation was foreseeable—is the quintessential case for such categorical privilege assertions."). Defendants do not disagree that a law firm would have many privileged documents that would not be producible in discovery but, again, Defendants did not target discovery at "a law firm"—Defendants targeted discovery at that "law firm's" client who brought this case and is alleging injury. This misreading of the discovery requests by Plaintiffs undercuts much of their argument for privilege, burden, and limiting the scope of the searches they conduct because of their status as a "law firm."

Plaintiffs improperly assert that "Defendants notably do not challenge the stated scope of Plaintiff States' search." ECF No. 166 at 14. This could not be more incorrect—Defendants challenge Plaintiffs' scope to the extent the search was limited only to the Louisiana's Department of Justice. And it is that fundamental misunderstanding by Plaintiffs—intentional or not—which is at the heart of most of the issues with Plaintiffs' discovery responses. Plaintiffs then spend the rest of their opposition playing the blame game, trying to excuse their own deficiencies by pointing at perceived deficiencies or inconsistencies by Defendants without directly addressing Defendants' arguments. Defendants will not waste the Court's time engaging in this *quid pro quo* approach Plaintiffs insist on. As set out in detail in Defendants' response to Plaintiffs' motion to compel, ECF No. 161, Defendants have responded to Plaintiffs' multiple rounds of discovery requests and produced a large volume of responsive discovery. Here, Defendants raised the issues they had with Plaintiffs' discovery responses, gave Plaintiffs time to cure those issues, and now properly bring them to the Court's attention.

Plaintiffs concede in their opposition that "standing is largely a question of law and data."

ECF No. 166 at 15. That necessary data, which is in the possession of Plaintiffs and their state agencies, is precisely what Defendants seek to compel.

## CONCLUSION

For the reasons stated above, and those in Defendants' original moving papers, Defendants respectfully request that the Court order Plaintiffs to cure the deficiencies in their discovery responses and participate in jurisdictional discovery.

Date:  May 18, 2023                           Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN WARD
*Senior Litigation Counsel*

/s/ *Erin T. Ryan*
ERIN T. RYAN
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 532-5802
Email: erin.t.ryan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

By: */s/ Erin T. Ryan*
ERIN T. RYAN
Trial Attorney
United States Department of Justice
Civil Division