# EXHIBIT L

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

|   |   |
|---|---|
| STATE OF ARIZONA, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | Civil Action No. 6:22-cv-01130 |
| ) | |
| MERRICK GARLAND, ) | |
| in his official capacity as Attorney ) | |
| General of the United States, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |

**DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION,
INTERROGATORIES, AND REQUESTS FOR ADMISSION
TO PLAINTIFF STATES REGARDING STANDING**

Pursuant to Federal Rule of Civil Procedure 33, 34, 36, Defendants United States of America, et al., hereby serve the following Requests for Production, Interrogatories, and Requests for Admission upon all Plaintiff States. Plaintiffs shall respond fully, in writing and under oath, in accordance with the Federal Rules of Civil Procedure.

Pursuant to Court order, responses are to be served electronically to Defendants within fourteen days of receiving these requests for production.

## DEFINITIONS

1. "Applicant for Admission" means a noncitizen who is either an "arriving alien," as defined in 8 C.F.R. § 1.2, or has entered the United States, whether or not through a designated port of entry, and was placed in removal proceedings and claimed a fear of return to their country of origin. 8 U.S.C. § 1225(a)(1).

2. "Undocumented Immigrant" means a noncitizen who is not an Applicant for Admission and is present in the United States without lawful status, regardless of whether or not they have been placed in removal proceedings.

3. "Asylum IFR" refers to the Interim Final Rule, the federal government published on March 29, 2022, at 87 Fed. Reg. 18,163 (Mar. 29, 2022).

4. "Document" means any record of information, including writings, data, correspondence, photographs, video and audio recordings, and images. It specifically includes all communications and electronically stored information, including text messages and emails.

5. "Southwest border" means the international border between the United States and Mexico.

6. "You" means any Plaintiff State, including all its agencies, subdivisions, and officers acting in official capacity.

7. "Noncitizen" means any person who is not a citizen of the United States.

8. "Asylee" means any person who has been granted asylum in the United States.

9. The time period for these demands pertain to the period of January 1, 2019 to the present, unless stated otherwise.

**INSTRUCTIONS**

1. Each Interrogatory should be answered in full, in writing, and signed by the person answering them, and any objections signed by the attorney making them.

2. If you object to any Interrogatory or to a part of an Interrogatory, clearly state the basis for the objection. If you object to only part of any Interrogatory, answer the remainder of the Interrogatory. If an objection is based on a claim of privilege or other protection, clearly state the particular privilege or protection invoked.

3. If you object to any Request for Production, you must state whether you are withholding documents on the basis of the objection(s). FRCP 34(b)(2)(C).

4. Every document produced in response to these Requests for Production should be Bates labelled, and include an indication of which Plaintiff State is producing the material.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:** Provide all documents, including but not limited to, writings, data, and correspondence that you contend support your allegation that the "Asylum IFR makes it substantially easier for unauthorized economic migrants to enter the United States and obtain asylum through false claims," than it was prior to the IFR's effective date, as you allege in paragraph 2 of the Second Amended Complaint, ECF No. 86.

**REQUEST FOR PRODUCTION NO. 2:** Provide all documents, including but not limited to, writings, data, and correspondence that you contend support your allegation that the "predictable result [of the Asylum IFR] will be a substantial increase in the approval rate of non-meritorious

3

asylum claims," as you allege in paragraph 3 of the Complaint, ECF No. 86.

**REQUEST FOR PRODUCTION NO. 3:** Provide all documents, including but not limited to, writings, data, and correspondence that you contend support your contention that asylum officers will approve asylum claims at a higher rate than immigration judges.

**REQUEST FOR PRODUCTION NO. 4:** Provide all documents, including but not limited to, writings, data, and correspondence that you contend support your allegation that the "increase in approval rates [of asylum claims] will incentivize even higher rates of illegal immigration into the United States," as you allege in paragraph 3 of the Complaint, ECF No. 86.

**REQUEST FOR PRODUCTION NO. 5:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of asylees who have established residence in Florida and Louisiana, broken down by State, month, and year.

**REQUEST FOR PRODUCTION NO. 6:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Applicants for Admission paroled by the federal government at the Southwest border pending their applications for asylum or their removal proceedings who have established residence in the Florida and Louisiana, broken down by State, month, and year.

**REQUEST FOR PRODUCTION NO. 7:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Undocumented Immigrants who have established residence in Florida and Louisiana, broken down by State, month, and year.

**REQUEST FOR PRODUCTION NO. 8:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Applicants for Admission released by the federal government at the Southwest border pending their applications for asylum or their removal proceedings who receive SNAP, TANF, Medicaid, or education provided by Florida and

Louisiana, broken down by State, benefit or service, month, and year.

**REQUEST FOR PRODUCTION NO. 9:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the nationality of Applicants for Admission released by the federal government at the Southwest border pending their applications for asylum or their removal proceedings who receive SNAP, TANF, Medicaid, or education provided by Florida and Louisiana, broken down by State, benefit or service, month, and year.

**REQUEST FOR PRODUCTION NO. 10:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the eligibility requirements in Florida and Louisiana for SNAP, TANF, Medicaid, or any education services provided by Florida and Louisiana, broken down by State, benefit or service, month, and year.

**REQUEST FOR PRODUCTION NO. 11:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the cost of providing SNAP, TANF, Medicaid, or education to Applicants for Admission, Undocumented Immigrants, and asylees by Florida and Louisiana, broken down by State, type of benefit or service, month, and year.

**REQUEST FOR PRODUCTION NO. 12:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the amount and type of funding or financial assistance Florida and Louisiana receive from the federal government, and/or other sources of funding for the purposes of providing SNAP, TANF, Medicaid, or education, broken down by State, type of benefit or service, month, and year.

**REQUEST FOR PRODUCTION NO. 13:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Undocumented Immigrants who receive SNAP, TANF, Medicaid, or education provided by Florida and Louisiana, broken down by State, type of benefit or service, month, and year.

**REQUEST FOR PRODUCTION NO. 14:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of asylees who receive SNAP, TANF, Medicaid, or education provided by Florida and Louisiana, broken down by State, type of benefit or service, month, and year.

**REQUEST FOR PRODUCTION NO. 15:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of children granted asylum enrolled in public school in Florida and Louisiana, broken down by State, month, and year.

**REQUEST FOR PRODUCTION NO. 16:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Applicants for Admission released by the federal government at the Southwest border pending their applications for asylum or their removal proceedings who are enrolled in public schools in Florida and Louisiana, broken down by State, month, and year.

**REQUEST FOR PRODUCTION NO. 17:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Undocumented Immigrant children enrolled in public schools in Florida and Louisiana, broken down by State, month, and year.

**REQUEST FOR PRODUCTION NO. 18:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Undocumented Immigrant children, children who are Applicants for Admission, and children granted asylum have moved to Florida and Louisiana from other States, broken down by State and year.

**REQUEST FOR PRODUCTION NO. 19:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the average cost per child per year of providing a public education in Florida and Louisiana, broken down by State, month, and year.

**REQUEST FOR PRODUCTION NO. 20:** Provide all documents, including but not limited to,

6

writings, data, and correspondence that establish the amount and type of funding or financial assistance Florida and Louisiana receive from the federal government, local governments, and/or other sources of funding for the purposes of assisting in or supporting education, broken down by State and year.

**REQUEST FOR PRODUCTION NO. 21:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the yearly income, sales, and property tax revenue collected by Florida and Louisiana from Applicants for Admission released by the federal government at the Southwest border pending their applications for asylum or their removal proceedings, broken down by State and year.

**REQUEST FOR PRODUCTION NO. 22:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the yearly income, sales, and property tax revenue collected by Florida and Louisiana from asylees, broken down by State and year.

**REQUEST FOR PRODUCTION NO. 23:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the economic impact to Florida and Louisiana and businesses in these States of labor shortages, broken down by State and year.

**REQUEST FOR PRODUCTION NO. 24:** Provide all documents, including but not limited to, writings, data, and correspondence that demonstrate that "state budgets and resource allocations" have been made based on an expectation that the asylum and/or expedited removal process would not change, as alleged in the Complaint, ECF No. 86, ¶ 181.

**REQUEST FOR PRODUCTION NO. 25:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Applicants for Admission who apply for asylum while living in Los Angeles, Miami, Newark, Boston, New York, Chicago, and San Francisco that have then moved to Florida and Louisiana, broken down by State, departure

city, and year.

**REQUEST FOR PRODUCTION NO. 26:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the number of Applicants for Admission applying for asylum in Los Angeles, Miami, Newark, Boston, New York, Chicago, and San Francisco who are likely to move to Florida and Louisiana, broken down by departure city and destination State in the next year.

**REQUEST FOR PRODUCTION NO. 27:** Provide all documents, including but not limited to, writings, data, and correspondence that show the number of Applicants for Admission, noncitizens, and Undocumented Immigrants who resided in Florida and Louisiana, and have moved out of each State, broken down by year.

**REQUEST FOR PRODUCTION NO. 28:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the basis for the claims in paragraph 80 of the Complaint, ECF No. 86, that "Louisiana will also be injured gravely by the Asylum IFR. Louisiana will be required to stretch its resources even further under the Asylum IFR, because the IFR will cause an influx of aliens at the border, causing Defendants to release hundreds of thousands of aliens into the United States monthly and similarly increasing the number of aliens Defendants fail to apprehend initially. … In addition, by incentivizing further illegal immigration, the Asylum IFR will force Louisiana to expend limited resources on education, healthcare, public assistance, and general government services."

**REQUEST FOR PRODUCTION NO. 29:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the basis for the claims in the memorandum of understanding, referenced in paragraph 81 of the Complaint, ECF No. 86, that Louisiana "is directly and concretely affected by changes to DHS rules and policies that have the effect of easing, relaxing, or limiting immigration enforcement. Such changes can negatively impact [Louisiana's]

… budgets, as well as its other important health, … and pecuniary interests," and that 'rules, policies, procedures, and decisions that could result in significant increases to the number of people residing in a community' will 'result in direct and concrete injuries to [Louisiana], including increasing … consumption of public benefits and services, strain upon the healthcare system."

**REQUEST FOR PRODUCTION NO. 30:** Provide all documents, including but not limited to, writings, data, and correspondence—other than those referenced in footnote 14 of the Complaint, ECF No. 86—that establish "Louisiana has approximately 70,000 to 78,000 aliens living in the State who are not lawfully in the United States. More than 70% of them do not have health insurance, about 34% of them have incomes below the poverty level, and they cost Louisiana taxpayers more than $362 million a year. More illegal aliens entering the State will increase the costs of the State's healthcare system."

**REQUEST FOR PRODUCTION NO. 31:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the basis for the claims in paragraph 83 of the complaint, ECF No. 86, that "DHS releases illegal aliens from those detention facilities to Louisiana cities through-out the Western District, including Lafayette, Monroe, and Shreveport. Releases in Lafayette are so common that a California business advertises 'immigration bail bonds in Lafayette' and urges illegal immigrants and their families to 'contact our Lafayette bail bondsmen' 'if you have a family member who finds him or herself in custody of [DHS],'" and "DHS 'paroles' many illegal immigrants into Louisiana cities without even the minimal security of a bond. The Asylum IFR will increase the use of DHS detention facilities and lead to the increased release of aliens into the Western District and throughout the State."

**REQUEST FOR PRODUCTION NO. 32:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the basis for the claim in paragraphs 96 that the "IFR will result in … more unvetted migrants … in Florida's communities."

9

**REQUEST FOR PRODUCTION NO. 33:** Provide all documents, including but not limited to, writings, data, and correspondence that establish the basis for the claims in paragraphs 96 and 97 of the complaint, ECF No. 86, that Florida has costs related to Medicaid and temporary cash assistance as a result of the IFR.

**REQUEST FOR PRODUCTION NO. 34:** Provide all documents, including but not limited to, writings, data, and correspondence that establish Florida has additional education costs as a result of the IFR.

**REQUEST FOR PRODUCTION NO. 35:** Provide all documents, including but not limited to, writings, data, and correspondence—other than those referenced in footnote 17 of the Complaint—that establish that "Florida currently has approximately 772,000 to 957,000 illegal aliens living in the State, costing Florida taxpayers more than $4.7 billion a year," as alleged in paragraph 98 of the Complaint.

**REQUEST FOR PRODUCTION 30**: All documents, including but not limited to, writings, data, and correspondence, consulted or relied upon in responding to Defendants' interrogatories and requests for admission.

**INTERROGATORIES**

**INTERROGATORY NO. 1:** How many noncitizens have been granted asylum and established residence in Florida and Louisiana, broken down by year and State, for years 2019-2023?

**INTERROGATORY NO. 2:** Describe your means of tracking the data requested in Interrogatory No. 1.

**INTERROGATORY NO. 3:** State, for the years, 2015-2023, the number of applicants for admission who were granted asylum while living in each of the following cities, who subsequently

moved to Florida and Louisiana, broken down by year and State:

    a. Miami

    b. San Francisco

    c. New York

    d. Los Angeles

    e. Boston

    f. Newark

    g. Chicago

**INTERROGATORY NO. 4:** Describe your means of tracking the data requested in Interrogatory No. 3.

**INTERROGATORY NO. 5:** Define "non-meritorious asylum claim[s]" with respect to your claim that a "predictable result [of the Asylum IFR] will be a substantial increase in the approval rate of non-meritorious asylum claims," as you allege in paragraph 3 of the Complaint, ECF No. 86.

**INTERROGATORY NO. 6:** What percentage of asylees residing within Florida and Louisiana have non-meritorious asylum claims, as the term "non-meritorious asylum claims" is defined by you in response to Interrogatory No. 5?

**INTERROGATORY NO. 7:** Describe your means of tracking the data requested in Interrogatory No. 6.

**INTERROGATORY NO. 8**: How many Applicants for Admission paroled by the federal government at the Southwest border pending their applications for asylum or their removal proceedings have established residence in Florida and Louisiana, broken down by year and State, for years 2019-2023?

**INTERROGATORY NO. 9:** Describe your means of tracking the data requested in Interrogatory No. 8.

**INTERROGATORY NO. 10:** What percentage of Undocumented Immigrants residing within Florida and Louisiana entered the United States in whole or in part due to their perception that "approval rates [of asylum claims] will incentivize even higher rates of illegal immigration into the United States," as you allege in paragraph 3 of the Complaint, ECF No. 86?

**INTERROGATORY NO. 11:** Describe your means of tracking the data requested in Interrogatory No. 10.

**INTERROGATORY NO. 12:** Identify the amount and type of funding or financial assistance Florida and Louisiana receive from the federal government for the purposes of providing social services, broken down by service, year, and State.

**INTERROGATORY NO. 13:** Do you contend that prior to the effective date of the Asylum IFR noncitizens were incentivized to enter the United States based on their perception that the United States has lax immigration enforcement policies?

**INTERROGATORY NO. 14:** Do you contend that noncitizens perceive USCIS to be more likely to grant asylum than Immigration Judges?

**INTERROGATORY NO. 15:** State all grounds for your response to Interrogatory 13 and Interrogatory 14 including reference to any evidence supporting your contentions.

**INTERROGATORY NO. 16:** Identify all of the regulatory changes made through the Asylum IFR that you contend will draw immigrants who are not already motivated to come to the United States.

**INTERROGATORY NO. 17:** Identify the individuals who were involved with the negotiation and/or creation of the Memorandum of Understanding, referenced in paragraphs 75 and 81 of the

12

Complaint, ECF No. 86.

**INTERROGATORY NO. 18:** Describe your injury with respect to each count in your second amended complaint, ECF No. 86, broken down by count.

**INTERROGATORY N0. 19**: Explain how you will determine whether the Asylum IFR is the but-for cause of any expenditures for Applicants for Admission released by the federal government at the Southwest border.

**INTERROGATORY N0. 20**: Explain how you will determine whether the Asylum IFR is the but-for cause of any expenditures for asylees.

**INTERROGATORY NO. 21**: For any Request for Admission that you deny, please explain the basis for your denial and identify any evidence supporting your denial.

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:** Prior to the effective date of the Asylum IFR, Florida and Louisiana provided public benefits to individuals granted asylum by U.S. Citizenship and Immigration Services.

**REQUEST FOR ADMISSION NO. 2:**  Prior to the effective date of the Asylum IFR, Florida and Louisiana provided public benefits to individuals granted asylum by an Immigration Judge.

**REQUEST FOR ADMISSION NO. 3:** Prior to the effective date of the Asylum IFR, the federal government released Applicants for Admission at the Southwest border pending their applications for asylum or their removal proceedings.

**REQUEST FOR ADMISSION NO. 4:** Asylum grant rates fluctuate over time based on changes in Board of Immigration Appeals' precedent.

**REQUEST FOR ADMISSION NO. 5:** Asylum grant rates fluctuate over time based on Attorney

13

General decisions in cases that are referred to the Attorney General from the Board of Immigration Appeals for review.

**REQUEST FOR ADMISSION NO. 6:** Asylum grant rates fluctuate over time based judicial decisions.

**REQUEST FOR ADMISSION NO. 7:** Asylum grant rates fluctuate over time based on conditions in the countries from which asylum is sought.

**REQUEST FOR ADMISSION NO. 8:** Asylees who meet state income requirements are eligible for Medicare.

**REQUEST FOR ADMISSION NO. 9:** Asylees who do not qualify for Medicare under the rules of your state are eligible for Refugee Medical Assistance (RMA) for a period of eight months.

**REQUEST FOR ADMISSION NO. 10:** Asylees and parolees who are eligible for work permits may be able to obtain health insurance from their employers.

**REQUEST FOR ADMISSION NO. 11:** Asylees and parolees who are eligible for private insurance.

**REQUEST FOR ADMISSION NO. 12:** Asylees and parolees who are eligible to purchase insurance on the public exchange under the Affordable Care Act.

**REQUEST FOR ADMISSION NO. 13:** Florida does not track the citizenship or immigration status of students.

**REQUEST FOR ADMISSION NO. 14:** Louisiana does not track the citizenship or immigration status of students.

Date: February 16, 2023

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

JOSEPH DARROW
ELISSA FUDIM
ERIN RYAN
*Trial Attorneys*

/s/ *Brian C. Ward*
BRIAN C. WARD
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 616-9121
Email: brian.c.ward@usdoj.gov

15