UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| STATE OF ARIZONA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, *et al.*, <br><br> Defendants. | No. 6:22-CV-01130 <br><br> Judge David C. Joseph <br><br> Magistrate Judge Carol B. Whitehurst |

**MEMORANDUM IN SUPPORT OF PLAINTIFF STATES'
SECOND MOTION TO COMPEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION ................................................................................................................................. 1

BACKGROUND .................................................................................................................................... 2

    I.    THE DISPUTE OVER DEFENDANTS' MAY 22 DISCOVERY RESPONSES ........................................ 2

    II.   THE DISPUTE OVER RECIPROCAL DISCOVERY ................................................................. 3

LEGAL STANDARD ............................................................................................................................. 4

ARGUMENT .......................................................................................................................................... 5

    I.    THE COURT SHOULD COMPEL DEFENDANTS TO RESPOND ADEQUATELY TO PLAINTIFF STATES' APRIL 20 DISCOVERY REQUESTS ................................................................................ 5

        A.   Defendants' General Objection to the Definition of "Identify" is Meritless .......................... 5

        B.   Defendants' Blanket Assertions of Privilege are *Per Se* Inadequate ........................... 6

        C.   Defendants' Objection to the Number of Plaintiffs' Interrogatories is Mistaken .................. 7

        D.   Defendants' Ambiguity Objections are Meritless and Unexplained .......................... 9

        E.   Defendants may not withhold responsive documents based on speculation that they "may include material related only to the merits of Plaintiffs' claims." ............................ 10

        F.   Defendants should be compelled to explain the basis for their claim that there are no non-deliberative documents related to a "pause" in applying the Asylum IFR. ............................ 11

    II.   IF THE COURT GRANTS DEFENDANTS' MOTION TO COMPEL, THE COURT MUST ALSO COMPEL DEFENDANTS TO COMPLY WITH EVERY PURPORTED OBLIGATION RAISED IN DEFENDANTS' MOTION. ........................................................................................................................ 11

        A.   Agency Control ................................................................................................ 12

        B.   Statement as to Whether Documents are Being Withheld on the Basis of Objections. .. 12

        C.   Categorical and Otherwise Improper Assertions of Privilege ............................... 13

        D.   Metadata and Unilateral Redactions ..................................................................... 14

        E.   Failure to Organize Responsive Documents ........................................................ 14

CONCLUSION ..................................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Walters*,
   No. 3:22-CV-552, — F. Supp. 3d —, 2023 WL 424788 (N.D. Tex. Jan. 26, 2023) ........................10

*Data Mktg. P'ship v. United States Dep't of Lab.*,
   45 F.4th 846 (5th Cir. 2022)...............................................................................................................1

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
   315 F.R.D. 191 (E.D. Tex. 2016) ......................................................................................................8

*Est. of Manship v. United States*,
   232 F.R.D. 552 (M.D. La. 2005) ......................................................................................................8

*Heller v. City of Dallas*,
   303 F.R.D. 466 (N.D. Tex. 2014) ............................................................................................passim

*In re Santa Fe Int'l Corp.*,
   272 F.3d 705 (5th Cir. 2001)............................................................................................................6

*L.M.-M v. Cuccinelli*,
   442 F. Supp. 3d 1 (D.D.C. 2020) ...................................................................................................13

*Mancia v. Mayflower Textile Servs. Co.*,
   253 F.R.D. 354 (D. Md. 2008).........................................................................................................6

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
   894 F.2d 1482 (5th Cir. 1990)..........................................................................................................5

*Orchestrate HR, Inc. v. Trombetta*,
   178 F. Supp. 3d 476 (N.D. Tex. 2015) ............................................................................................4

*Texas v. Biden*,
   20 F.4th 928, 970–71 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *cert. granted*, 142 S. Ct. 1098 (2022),
   *rev'd and remanded on other grounds*, 142 S. Ct. 2528 (2022) .....................................................1

*United States v. Charles*,
   No. 08-CR-0011, 2008 WL 5172587 (W.D. La. Dec. 9, 2008)......................................................14

*Zenith Ins. Co. v. Tex. Institute for Surgery, L.L.P.*,
   328 F.R.D. 153 (N.D. Tex. 2018) ................................................................................................ 4, 5

**Rules**

Fed. R. Civ. P. 26(b)(1)..........................................................................................................................4

Fed. R. Civ. P. 26(b)(5)(A)....................................................................................................................7

Fed. R. Civ. P. 26(g)(1)(B) ...................................................................................................................7

Fed. R. Civ. P. 34(b)(2)(B) ...................................................................................................................4

**Regulations**

8 C.F.R. § 208.6 ....................................................................................................................................5

8 C.F.R. §1208.6 ...................................................................................................................................5

## INTRODUCTION

The parties have spent the last few months engaging in pre-Rule 12 discovery on the narrow question whether a single Plaintiff State can show a single dollar of actual or impending harm that is fairly traceable to the Asylum IFR under the doubly relaxed standing framework applicable to sovereign states that—like Louisiana and Florida here—are owed special solicitude under binding Fifth Circuit precedent. *See Texas v. Biden*, 20 F.4th 928, 970–71 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *cert. granted*, 142 S. Ct. 1098 (2022), *rev'd and remanded on other grounds*, 142 S. Ct. 2528 (2022).[1]

Discovery is now closing. And the reason Defendants wanted pre-Rule 12 discovery has become clear: documents in Defendants' possession, custody, or control leave no doubt as to the standing of Plaintiff States. We now know that is so because Defendants have provided RFAs admitting—as to both Louisiana and Florida—that at least one alien with an address in Louisiana and in Florida that "is having his or her claim considered under the procedures set forth in the Asylum Processing IFR has been paroled or otherwise released. "*See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, Response to RFA Nos. 3–4, at 16–18.

Viewed in this light, Defendants' approach to discovery is more understandable. Deprived of their one and only defense, Defendants simply refuse to engage in the follow-on discovery the parties always contemplated. Defendants refuse, for example, to provide documents about a widely-reported "pause" in application of the Asylum Rule in connection with the end of Title 42, contending they "have not identified any relevant non-deliberative documents." *Id.,* Response to RFP 15, at 6. And Defendants refuse to respond to requests materially-identical to those they responded to in the parallel Texas litigation. The remaining refusals clash with the positions Defendants' took in their own motion to compel, forcing Plaintiff States to protectively move on those issues too.

---

[1] Although the Supreme Court reversed the judgment on other grounds, *Texas v. Biden*'s standing analysis remains binding under the rule of orderliness. S*ee Data Mktg. P'ship v. United States Dep't of Lab.*, 45 F.4th 846, 856 n.2 (5th Cir. 2022)

# BACKGROUND

The Court is well-acquainted with the facts underlying this 19-State challenge to the lawfulness of the Asylum IFR. *See* 87 Fed. Reg. 18,078 (Mar. 29, 2022) (Asylum IFR). So Plaintiff States recount only those facts strictly necessary to resolve this latest discovery dispute.[2]

## I. THE DISPUTE OVER DEFENDANTS' MAY 22 DISCOVERY RESPONSES

On April 20, 2023, Plaintiff States served a third set of requests for production, interrogatories, and requests for admission on Defendants. *See* Exh. 1, Plaintiff States' 3rd Set of Discovery Requests. The requests were modest: they consisted of only three requests for production, twelve interrogatories, and eight requests for admission. *Id.* The requests largely tracked discovery to which Defendants responded in co-pending litigation over the Asylum IFR. *See* Exh. 2, Texas's Discovery to Defendants in N.D. Tex. No. 2:22-CV-94; Exh. 3 Defendants' Response to Texas's Discovery.

Defendants served their responses at 9:14 p.m. CDT the night before the May 23 discovery deadline. *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests. Plaintiff States reviewed those responses later that night, identified deficiencies, and—given the impending close of discovery—requested that Defendants make themselves available for a meet and confer. *See* Exh. 5, Email Chain re May 22 Responses, at 1. Defendants replied that "[w]ith multiple traveling today for the hearing[,] we are not available to meet and confer today." *Id.* Because discovery closes today, and because Defendants say they are "not available" to discuss deficiencies in the discovery responses they served at 9:14 p.m. last night, Plaintiff States have no choice but to move to compel to protect their right to receive adequate discovery before the discovery period closes.

---

[2] Plaintiff States' citations to page numbers of record documents correspond to the page numbers assigned by the Court's CM/ECF system and appearing at the top of each page.

## II. THE DISPUTE OVER RECIPROCAL DISCOVERY

After Plaintiff States moved to compel, Dkt. 144 & 144-1, Defendants filed their own motion to compel, Dkt. 157 & 157-1. Among other arguments, Defendants contended that Plaintiff States should be deemed to control documents in the possession, custody, or control of State agencies; that Plaintiff States should not be permitted to categorically assert privilege over documents internal to Plaintiff States' respective law firms; that Plaintiff States' production was not "labeled or organized" in the manner Defendants would prefer; and that Plaintiff States failed to "state whether documents are being withheld on the basis of their objections." *Id.* Plaintiff States disagree. Dkt. 166.

Despite disagreeing with Defendants' position, Plaintiff States requested that, to the extent Defendants believed their motion to compel accurately represented the law, Defendants conform their own discovery responses to the positions taken in their motion to compel and related correspondence. *See* Exh. 6, Email Chain re Reciprocity, at 1–12. Among other issues, Plaintiff States specifically inquired about the scope of Defendants' search in the light of Defendants' expansive interpretation of the scope of control; the absence of email and metadata from Defendants' document production; the presence of redactions for no apparent reason; and legally improper invocations of privilege. *Id.*. Plaintiff States also requested that Defendants correct materially incorrect statements contained in their motion-to-compel briefing, and that Defendants make themselves available to discuss the inconsistencies between the positions taken in Defendants' motion to compel and the positions Defendants have taken in responding to Plaintiff States discovery. *Id.* at 3–4. The parties held a meet-and-confer on May 22, 2023; it proved unsuccessful. *Id.* at 1–2.

Defendants have declined to voluntarily conform their discovery responses to the interpretation of the Federal Rules of Civil Procedure Defendants offer in their motion to compel. And Defendants' conduct indicates that Defendants do not believe they should be bound by the same set of discovery obligations that Defendants have asked the Court to apply to Plaintiff States. So

3

Plaintiff States seek the Court's intervention to ensure that any discovery obligation the Court finds applicable to Plaintiff States' responses is applied with equal force to Defendants' responses.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Zenith Ins. Co. v. Tex. Institute for Surgery, L.L.P.*, 328 F.R.D. 153, 160 (N.D. Tex. 2018) (quotation omitted).

In response to a request for production, "for each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). And "in responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, . . . the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014).

"An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specific the part and permit inspection of the rest." *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2015). "Once responses,

4

answers, and objections have been served subject to Rule 26(g), the party who has objected to a discovery request then must, in response to a Rule 37(a) motion to compel[,] . . . urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection." *Zenith Ins. Co.*, 328 F.R.D. at 161 (quotation omitted).

Finally, "the party resisting discovery bears the burden of show[ing] specifically how each [discovery request] is not relevant or how each [request] is overly broad, burdensome, or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

## ARGUMENT

**I. THE COURT SHOULD COMPEL DEFENDANTS TO RESPOND ADEQUATELY TO PLAINTIFF STATES' APRIL 20 DISCOVERY REQUESTS.**

**A. Defendants' General Objection to the Definition of "Identify" is Meritless.**

The Court should overrule Defendants' (1) inconsistent, (2) legally wrong, and (3) factually unsupported general objection to the definition of "identify."

Start with inconsistency. Defendants did not object to a substantially similar definition of "identify" in their responses in co-pending litigation concerning the Asylum IFR. *See* Exh. 2, Texas's Discovery to Defendants in N.D. Tex. No. 2:22-CV-94, at 2; Exh. 3 Defendants' Response to Texas's Discovery, at 1–21. So it is unclear why Defendants now believe that a substantially similar definition is objectionable. *Compare* Exh. 3, Defendants' Response to Texas's Discovery, at 1–21 *with* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, at 2.

Inconsistent positions aside, Defendants' objection fails on the merits. Invoking 8 C.F.R. §§ 208.6 & 1208.6, Defendants contend that they cannot disclose information relating to the identity of persons who have applied for asylum, withholding of removal, or CAT protection. *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, at 2. But Defendants' selective invocation of those confidentiality regulations fail as a matter of law for the reasons already given in Plaintiff States' first motion to compel. *See* Doc. 144-1 at 17–20.

5

Besides inconsistently invoking inapplicable regulations, Defendants also complain that Plaintiff States' definition of "identify" is unduly burdensome. *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, at 2. "A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive." *Heller*, 303 F.R.D. at 490. "This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* Here, Defendants' invocation of undue burden is unsupported by anything other than counsel's say so. *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, at 2. Defendants' failure to offer any evidence to substantiate Defendants' claimed undue burden "makes such an unsupported objection nothing more than unsustainable boilerplate," *Heller*, 303 F.R.D. at 490, which "is prima facie evidence of a Rule 26(g) violation," *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008).

### B.  Defendants' Blanket Assertions of Privilege are *Per Se* Inadequate.

In their responses to two of Plaintiff States' three latest requests for production, Defendants invoke deliberative-process privilege in blanket fashion. *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, Response to RFP Nos. 14 & 15, at 4–6. And it appears that Defendants have categorically invoked the deliberative-process privilege without even attempting to conduct a reasonable investigation to ascertain whether the privilege actually applies; as to both at-issue requests, Defendants simply "object that this request *might* extend to internal agency communications or deliberations on implementation of the rule." *Id.* (emphasis added).

As the party "asserting a privilege exemption from discovery," Defendants bore "the burden of demonstrating [the] applicability" of the privilege. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). To support an objection to a request "to the extent" that the request seeks privileged materials, the responding party must at the very least provide the information required by Rule

6

26(b)(5)(A). *Heller,* 303 F.R.D. at 486. Rule 26(b)(5)(A), in turn, requires the party asserting the objection to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess them." Fed. R. Civ. P. 26(b)(5)(A).

Defendants failed to carry their burden to establish the applicability of the deliberative-process privilege in response to RFPs 14 & 15. Defendants' qualifier-laden responses do not contain information sufficient to allow Plaintiff States to assess the validity of any deliberative-process privilege claim. On the contrary, Defendants' responses suggest that Defendants do not even know whether the deliberative-process privilege reasonably applies to the particular requests. *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, Response to RFP Nos. 14 & 15, at 4–6 ("Defendants also object that this request might extend to internal agency communications or deliberations on implementation of the rule."). And Defendants' invocation of deliberative-process privilege on the basis that the privilege "might" attach to unidentified responsive documents calls into question the adequacy of Defendants' certifications. *See generally* Fed. R. Civ. P. 26(g)(1)(B) (requiring "a reasonable inquiry" before lodging an objection).[3]

      **C.**      **Defendants' Objection to the Number of Plaintiffs' Interrogatories is Mistaken.**

Defendants refuse to answer any of the 12 interrogatories included in Plaintiff States' third set of discovery requests because Defendants believe that Plaintiff States have exceeded the 25-interrogatory limit of Rule 33(a)(1). *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, Response to ROG Nos. 1–12, at 4–6.

---

[3] What is more, Defendants appear to be asserting a deliberative-process privilege over an administrative action—the "pause" in applying the Asylum IFR—that Defendants do not deny exists, but for which Defendants claim that no non-deliberative documents exist. As explained below, Plaintiff States sincerely but strongly question whether there are no non-deliberative documents evidencing a "pause" in applying the Asylum IFR.

7

Defendants have not clearly explained the basis for their belief that Plaintiffs have exceeded the 25-interrogatory limit. *See* Exh. 5, Email Chain re May 22 Responses, at 1 (stating without explaining that "you already served and received responses to more than 25 interrogatories"). Plaintiff States' first set of discovery included ten interrogatories, *see* Exh. 7, Defendants Response to Plaintiff States' 1st set of Discovery Requests, Response to ROGS 1–10, at 3–14, Plaintiff States' second set of discovery included no interrogatories at all, *see* Exh. 8, Defendants' Response to Plaintiff States' 2nd Set of Discovery Requests, and Plaintiff States' third and final set of discovery included 12 interrogatories, *see* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, Response to ROG Nos. 1–12, at 4–6. That adds to just 22 total interrogatories.

Although Defendants have failed to extend to Plaintiff States the courtesy of explaining the basis for their calculation, it appears that Defendants' calculation is based on Defendants' belief that Interrogatory No. 8 consists of 20 discrete subparts. *See* Exh. 7, Defendants Response to Plaintiff States' 1st set of Discovery Requests, Response to ROG 8, at 9–11.

Defendants are wrong. "[S]ubparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 196 (E.D. Tex. 2016). Subparts that "are simply designed to obtain additional details concerning the general theme presented in the primary interrogatory question" constitute a single interrogatory. *Est. of Manship v. United States*, 232 F.R.D. 552, 555 (M.D. La. 2005). Here, Interrogatory No. 8 asks Defendants to identify monthly statistics for certain specified types of asylum-related claims. *See* Exh. 7, Defendants Response to Plaintiff States' 1st set of Discovery Requests, Response to ROG 8, at 9. Each supposed subpart is both "logically" and "factually" "subsumed" within the primary question requesting an identification of monthly statistics for asylum-related claims because each supposed subpart seeks monthly statistics respecting a particular type of asylum-related claim. *Est. of Manship*, 232 F.R.D. at 555. Because the

8

supposed subparts of Interrogatory No. 8 "would not make sense without the primary question," the supposed subparts constitute a single interrogatory for counting purposes. *See id.* Accordingly, Defendants' objection to the number of interrogatories should be overruled, and Defendants should be compelled to respond promptly to Plaintiff States' third set of interrogatories. "

### D. Defendants' Ambiguity Objections are Meritless and Unexplained.

In response to two requests for admission, Defendants object to the phrase "has been processed pursuant to the Asylum IFR" as "ambiguous." Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, Response to RFA Nos. 1 & 2, at 14–15. Defendants nowhere explain how or why Defendants believe that phrase is ambiguous. *See id.* That is fatal to their objection.

"The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity." *Heller*, 303 F.R.D. at 492 (quotation omitted). "A party objecting on these grounds must explain the specific and particular way in which a request is vague." *Id.* (quotation omitted). And "if a party believes that the request is vague, that party [should] attempt to obtain clarification prior to objecting on this ground." *Id.* at 492 (quotation omitted).

Here, Defendants failed to carry their burden to show that the phrase "has been processed pursuant to the Asylum IFR" is so vague and ambiguous "as to be incapable of reasonable interpretation and to prohibit [Defendants'] responses." *See id.* As noted above, Defendants failed to "explain the specific and particular way" that Defendants believed the phrase is vague. *See id.* And Defendants did not even bother to attempt to "obtain clarification" from Plaintiff States' before lodging their unexplained ambiguity objection. *Id.* Accordingly, "the circumstances here" could well "lead the Court to find that Defendant[s'] vague and ambiguous objections . . . were made without Defendant[s'] counsel pausing and considering whether, based on a reasonable inquiry, there is a factual basis for [the] objection." *Id.* The objections should be overruled, and Defendants should be directed to respond promptly—and fully—to RFA Nos. 1 & 2.

9

### E. Defendants may not withhold responsive documents based on speculation that they "may include material related only to the merits of Plaintiffs' claims."

In response to two RFPs, Defendants object on the basis that each "request is overbroad in comparison to that permitted scope of discovery" because responsive documents "*may* include materials related only to the merits of Plaintiffs' claims." Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, Response to RFA Nos. 14 & 15, at 4–5 (emphasis added).

That objection fails for a few reasons. First, it is factually unsupported. As the party raising an overbreadth objection, Defendants had to "show how the requested discovery is overly broad . . . by submitting affidavits or offering evidence revealing the nature of the burden," *Baker v. Walters*, No. 3:22-CV-552, — F. Supp. 3d —, 2023 WL 424788, at *8 (N.D. Tex. Jan. 26, 2023) (quotation omitted) (ellipsis original). But Defendants offered zero evidence to support their overbreadth objection. *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, Response to RFA Nos. 14 & 15, at 4–5. So the objection can and should be overruled for that reason alone.

Those factual failures aside, Defendants also may not object based on speculation about what other information responsive documents "may include." *Id.*. As the party objecting to discovery, Defendants had an affirmative obligation to (1) determine—following a reasonable inquiry—the extent to which Defendants' requests in fact "include materials related only to the merits of Plaintiffs' claim"; and then (2) "pause[] and consider[] whether, based on [that] reasonable inquiry, there is a factual basis [for the] . . . objection." *Heller*, 303 F.R.D. at 477. That (apparently) did not happen here.

Accordingly, because Defendants' overbreadth objection based on speculation about what other information responsive documents "may include" is deficient both (1) factually and (2) legally, the Court should overrule the objection and direct Defendants to fully—and promptly—respond.

10

      **F.     Defendants should be compelled to explain the basis for their claim that there are no non-deliberative documents related to a "pause" in applying the Asylum IFR.**

Plaintiff States requested documents related to any pause in applying the Asylum IFR. In response, Defendants did not deny the existence of such a pause. *See* Exh. 4, Defendants' Response to Plaintiff States' 3rd Set of Discovery Requests, RFP No. 15, at 5–6. Instead, Defendants claimed that they "have not identified any relevant non-deliberative documents." *Id.* at 5. That assertion raises two possibilities; neither is good. Either (1) Defendants have not conducted a reasonably diligent search for responsive, non-deliberative documents related to the pause that Defendants do not deny exists or (2) the Administration's pause of a major immigration policy is not evidenced by any non-deliberative documents and so amounts to a secret and unreviewable agency action. The Court should compel Defendants to supplement RFP No. 15 to identify which of these possibilities reflects reality.

**II.    IF THE COURT GRANTS DEFENDANTS' MOTION TO COMPEL, THE COURT MUST ALSO COMPEL DEFENDANTS TO COMPLY WITH EVERY PURPORTED OBLIGATION RAISED IN DEFENDANTS' MOTION.**

Defendants moved to compel based on Plaintiff States' purported failure to comply with purported discovery obligations. *See* Docs. 157-1 & 167. Plaintiff States disagree with nearly every sentence of Defendants' motion and related filings. *See id.* That disagreement extends not only to Defendants' characterization of the law but also to Defendants' recitation of the facts. *See, e.g.*, Exh. A, Email Chain re Reciprocity, at 4–5 (requesting that Defendants correct false and misleading statements in their motion-to-compel briefing). Plaintiff States have done everything the Federal Rules of Civil Procedure require of them, and Defendants' description of Plaintiff States' discovery obligations is wrong—legally and factually. So Defendants' motion should be denied.

If the Court grants any aspect of Defendants' motion, however, Plaintiff States respectfully and conditionally move—on a protective basis—for an order compelling Defendants to comply with each of the supposed discovery obligations underlying Defendants' own motion to compel.

11

### A. Agency Control

Defendants' motion to compel takes the position that the Federal Rules require Plaintiff States to search for and produce documents outside the possession, custody, or control of the Plaintiff States' attorneys general. *See* Doc. 157-1 at 10–15; Doc. 167 at 2–9. According to Defendants, documents in the possession, custody, or control of nonparty State agencies are also in the control of Plaintiff States. *See* Doc. 157-1 at 10–15; Doc. 167 at 2–9. Plaintiff States disagree with that position. *See* Doc. 166 at 12–18. If the Court agrees with Defendants' expansive interpretation of the scope of control, however, the Court must apply that same expansive interpretation to Defendants' own discovery obligations. That means, at a minimum, ordering Defendants to search for and produce responsive documents in the possession, custody, or control of all federal instrumentalities known to be involved in border control issues and/or implementation of the Asylum Rule, including the White House, the Executive Office of the President, and the Department of Defense.

### B. Statement as to Whether Documents are Being Withheld on the Basis of Objections.

Defendants' motion to compel submits that Plaintiff States "must" amend their responses to "indicate affirmatively whether any documents are being withheld on the basis of privilege or other objection." Doc. 157-1 at 21–22. Plaintiff States disagree with Defendants' characterization of Plaintiff States' responses. If the Court agrees with Defendants and directs Plaintiff States to amend any responses, however, the Court must similarly order Defendants to amend each and every one of their responses that raises a privilege or other objection to specifically state whether Defendants are withholding documents based on such a privilege or other objection. At a minimum, that means directing Defendants to amend each applicable response to specifically state whether responsive documents are being withheld on the basis of privilege or any other objection. *See* Exh. 8, Defendants' Response to Plaintiff States' 2nd RFPs, RFP Response Nos. 7, 8A, 8B, 9, 10, 11(a), 11(b), 11(c), 11(d),

11(h), 11(i), 11(k), 12, 13 at 12–22*;* Ex. 4, Defendants' Response to Plaintiff States 3rd RFPs, RFP Response Nos. 14–15, at 4–6.

### C. Categorical and Otherwise Improper Assertions of Privilege

Defendants contend it is improper for Plaintiff States to categorically assert privilege over documents internal to the Louisiana Department of Justice and the Florida Department of Legal Affairs *See* Doc. 157-1 at 7–8 & n.4. Plaintiff States disagree. *See* Doc. 166 at 15–16.

If the Court concludes that Plaintiff States may not properly assert a categorical privilege over documents internal to their own law firms, however, the Court must necessarily reject Defendants' categorical assertions of deliberative-process privilege. That means directing Defendants to search for and identify on a privilege log (1) all documents for which Defendants categorically invoked the deliberative-process privilege in their administrative-record certifications, and (2) all documents responsive to each request for which Defendants have invoked deliberative-process privilege. *See, e.g.*, Exh. B, Defendants' Response to Plaintiff States' Second RFPs, Response to RFP No. 7, at 12, Exh. C, Defendants' Response to Plaintiff States' Third RFPs, Responses to RFP Nos. 14 & 15, at 4–6.

The Court should also reject Defendants invocation of law-enforcement privilege to shield from discovery three policy-manual-type documents. *See* Exh. 9, Privilege Log. Factually, the assertion of privilege over these documents is difficult to understand given that (1) a version of the Affirmative Asylum Procedures Manual is currently posted online[4]; and (2) the "Credible Fear Procedures Manual" appears to have been produced in a previous litigation, *L.M.-M v. Cuccinelli*, 442 F. Supp. 3d 1, 12, 18 (D.D.C. 2020), and excerpts of it appear to have been publicly filed in yet another litigation, *M.M.V. v. Wolf*, No. 1:19-CV-2773 (D.D.C.), ECF No. 72-2, Exh. 4. And legally, the law-enforcement privilege does not attach to these policy-manual-type documents. "[I]n the Fifth Circuit, the law enforcement

---

[4] https://www.uscis.gov/sites/default/files/document/guides/AAPM-2016.pdf)

13

privilege is limited to investigative files in ongoing criminal investigations." *United States v. Charles*, No. 08-CR-0011, 2008 WL 5172587, at *2 (W.D. La. Dec. 9, 2008). From the meager description the privilege log supplies, it is clear that the three policy-manual-type documents listed on their privilege log are not "investigative files." *Id.* Nor are those policy-manual-type documents related to "ongoing criminal investigations." *Id.* So Defendants had no business withholding them.

### D.   Metadata and Unilateral Redactions

Defendants have taken the position that they are "entitled" to metadata. *See* Exh. 6, Email Chain re Reciprocity, at 7. But Defendants have again failed to practice what they preach: Plaintiff States' review of Defendants' production indicates that Defendants have not produced any metadata themselves, and—even worse—that Defendants have redacted the names of some document authors. *See, e.g.*, Exh. 10, at USA USA8811, USA9304, USA9309, USA9724-25. If the Court concludes that Plaintiff States must produce the metadata to which Defendants believe they are "entitled," the Court must also order Defendants to (1) restore, on a document-by-document basis, the metadata Defendants appear to have scrubbed and (2) unredact the names of document authors.

### E.   Failure to Organize Responsive Documents

Defendants complain that Plaintiff States have not "labelled or organized" responsive documents in the manner that Defendants would prefer. *See* Doc. 157-1 at 18–20. Plaintiff States disagree. If the Court finds Defendants' complaint persuasive, however, the Court must necessarily direct Defendants to segregate all data relating to aliens residing in Florida from all data relating to aliens residing to Louisiana, which data Defendants have unilaterally amalgamated for the ostensible purpose of intentionally reducing its utility to Plaintiff States. *See* Doc. 165-1.

## CONCLUSION

The Court should compel Defendants to respond—promptly and adequately—to Plaintiff States' third set of discovery. And to the extent the Court grants Defendants' motion to compel in

any respect, the Court should similarly compel Defendants to conform their discovery responses to the principles underlying any order granting Defendants' motion to compel.

Dated: May 23, 2023

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL OF LOUISIANA**

/s/ Jordan Bailey Redmon
ELIZABETH B. MURRILL (La #20685)
  Solicitor General
JOSEPH SCOTT ST. JOHN (La #36682)
  Deputy Solicitor General
JORDAN BAILEY REDMON (La #37272)
  Assistant Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
redmonj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

ASHLEY MOODY
  Attorney General
JAMES H. PERCIVAL*
  Chief of Staff
OFFICE OF THE FLORIDA
ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Phone: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

## LOCAL RULE 37.1 CERTIFICATE

I certify that on May 22, 2023, from approximately 2:00–2:45 p.m. CDT, counsel for Plaintiff States conferred with counsel for Defendants by phone for purposes of amicably resolving the discovery disputes outlined above. I further certify that Defendants served their latest responses to Plaintiff States Third Set of Interrogatories, Requests for Production, and Requests for Admissions at about 9:14 p.m. CDT on May 22, 2023. After reviewing those responses and determining that they were deficient, given the impending discovery deadline, counsel for Plaintiff States requested that counsel for Defendants make themselves available for a meet and confer today. Counsel for Defendants stated that "[w]ith multiple people travelling today for the hearing[,] we are not available to meet and confer today." The unresolved issues necessitated the filing of this motion.

/s/ Jordan Bailey Redmon
JORDAN BAILEY REDMON
Assistant Solicitor General

## CERTIFICATE OF SERVICE

I certify that on May 23, 2023, I electronically filed this document using the CM/ECF system, which will automatically send electronic notice of filing to all counsel of record.

/s/ Jordan Bailey Redmon
JORDAN BAILEY REDMON
Assistant Solicitor General