# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

|  |  |
|---|---|
| STATE OF ARIZONA,<br>By and through its Attorney General,<br>Mark Brnovich, et al., | ) <br> ) <br> ) <br> ) <br> ) |
| *Plaintiffs,* | ) <br> ) |
| v. | )   Civil Action No. 6:22-cv-01130 <br> ) |
| MERRICK GARLAND, in his<br>official capacity as Attorney General<br>of the United States, *et al.*, | ) <br> ) <br> ) <br> ) |
| *Defendants.* | ) <br> ) |

**DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST**
**SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION,**
**AND REQUESTS FOR ADMISSIONS**

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36 Defendants hereby submit their objections and responses to Plaintiffs' First Set of Interrogatories, Requests for Production, and Requests for Admissions.

## GENERAL STATEMENT

Defendants' responses and objections are based on the information known to Defendants at this time and are made without prejudice to the assertion of additional responses and objections should Defendants identify additional grounds thereof. Defendants reserve the right to supplement, clarify, revise, or correct any or all of their responses to Plaintiffs' Interrogatories, Requests for Production, and/or Requests for Admissions. By answering any requests, Defendants do not concede the materiality of the subject to which it refers. Defendants' responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information provided, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

Finally, inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute a waiver of any privilege or other ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of Defendants' right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

# INTERROGATORIES

## INTERROGATORY NO. 1

IDENTIFY EACH Individual involved in the decision to issue the ASYLUM NPRM and/or the ASYLUM IFR.

## RESPONSE TO INTERROGATORY NO. 1

Defendants object to Interrogatory No. 1 on the grounds that it is vague, and potentially overbroad, as to what Plaintiffs mean by "involved." Defendants also object to this Interrogatory as outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24 ("IT IS FURTHER ORDERED that the parties engage in a 30-day period of limited discovery as to: (1) The likely effect the subject Interim Final Rule will have on the number of immigrants granted asylum and/or otherwise residing in Plaintiff states; and (2) The cost or other measurable effect these additional persons (which the Plaintiff States contend will have been illegally granted asylum) will have on Plaintiff states."). Additionally, this Interrogatory is not relevant to Plaintiffs' "Article III standing." *Id*.

Subject to and without waiving these objections, Defendants refer Plaintiffs to the Administrative Record and the IFR itself for the names of the individuals who were involved in the decision to issue the IFR by signing the IFR. The identity of any other individuals who may have been involved prior to the issuance of the IFR is pre-decisional, and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

## INTERROGATORY NO. 2

IDENTIFY the author, title, subject matter, and date of each memorandum or other internal DOCUMENT regarding YOUR analysis of the consequences of the ASYLUM NPRM and/or the

ASYLUM IFR.   For the avoidance of doubt, this interrogatory includes both pre- and post-decisional memoranda.

**RESPONSE TO INTERROGATORY NO. 2**

Defendants object to Interrogatory No. 2 on the grounds that it is outside the scope of the limited discovery ordered by the Court.  *See* Docket No. 24.

Defendants also object on the grounds that Plaintiffs' challenges to the Asylum NPRM and Asylum IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  The agencies' views on the anticipated consequences of the ASYLUM NPRM and/or the ASYLUM IFR are contained in the NPRM and IFR, and are supported by the Administrative Record that has already been produced. To the extent Plaintiffs seek internal pre-decisional documents, Defendants also object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). To the extent Plaintiffs seek internal documents that contain confidential attorney-client communications, Defendants further object that any such documents are not subject to discovery under the attorney-client or attorney-work product privileges. *Mead Data Central, Inc. v. Department of the Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977) (explaining attorney-client and attorney work-product privileges).

**INTERROGATORY NO. 3**

IDENTIFY the author, title, subject matter, and date of each memorandum or other internal DOCUMENT regarding YOUR preparation for the effects of lifting the ASYLUM NPRM and/or

the ASYLUM IFR.  For the avoidance of doubt, this interrogatory includes both pre- and post-decisional memoranda.

## RESPONSE TO INTERROGATORY NO. 3

Defendants object to Interrogatory No. 3 on the grounds that it is outside the scope of the limited discovery ordered by the Court.  *See* Docket No. 24.  Defendants also object on the grounds that it is vague as to what Plaintiffs mean by "lifting the ASYLUM NPRM and/or the ASYLUM IFR."  Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The agencies' views on the anticipated consequences of the ASYLUM NPRM and/or the ASYLUM IFR are contained in the NPRM and IFR, and supported by the Administrative Record that has already been produced. To the extent Plaintiffs seek internal pre-decisional documents, Defendants also object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  To the extent that Plaintiffs seek internal documents that contain confidential attorney-client communications, Defendants further object that any such documents are not subject to discovery under the attorney-client or attorney work-product privileges. *See Mead Data*, 566 F.2d at 254 (D.C. Cir. 1977).

**INTERROGATORY NO. 4**

IDENTIFY EACH NGO with which YOU have communicated, supported, or otherwise coordinated in order to "bolster [] the capacity of NGOs to receive noncitizens" as mentioned in the APRIL 26 MEMORANDUM under "Border Security Pillar 4."

**RESPONSE TO INTERROGATORY NO. 4**

Defendants object to Interrogatory No. 4 on the grounds that it is outside the scope of the limited discovery ordered by the Court, as it does not go to standing. *See* Docket No. 24. Defendants further object as it is seeking information about the APRIL 26 MEMORANDUM, which is a different policy than those at issue in this lawsuit, and this Interrogatory is therefore not relevant. Defendants also object as the identity of any NGOs is not relevant to this matter.

**INTERROGATORY NO. 5**

IDENTIFY EACH individual invited to or in attendance at any MEETING involving the DOJ, DHS, or any named Defendant with one another or with any members of the Federal Executive regarding the decision to issue the ASYLUM NPRM and/or the ASYLUM IFR or to prepare for the consequences of implementing them.

**RESPONSE TO INTERROGATORY NO. 5**

Defendants object to Interrogatory No. 5 on the grounds that it is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24. Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Documents about the agencies' decision to issue the ASYLUM NPRM and/or the ASYLUM IFR are contained in the Administrative Record that has already been produced. To the extent Plaintiffs seek internal pre-decisional documents, Defendants also object

that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

## INTERROGATORY NO. 6

IDENTIFY EACH individual invited to or in attendance at any MEETING involving the DOJ, DHS, or any named Defendant with any members of the public or NGOs regarding the decision to issue the ASYLUM NPRM and/or the ASYLUM IFR or to prepare for the consequences of the [sic] implementing them.

## RESPONSE TO INTERROGATORY NO. 6

Defendants object to Interrogatory No. 6 on the grounds that it is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24. Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Documents about the agencies' decision to issue the ASYLUM NPRM and/or the ASYLUM IFR are contained in the Administrative Record that has already been produced. To the extent Plaintiff seek internal pre-decisional documents, Defendants also object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

## INTERROGATORY NO. 7

Do Defendants contend that the ASYLUM IFR will not affect the rate at which asylum claims are granted? If so, IDENTIFY all DOCUMENTS supporting or refuting that contention.

## RESPONSE TO INTERROGATORY NO. 7

Defendants object to Interrogatory No. 7 on the grounds that it asks Defendants to speculate as to the future rate of asylum claims being granted. Without waiving this objection, Defendants state that the IFR identifies no reason why the IFR should have a material effect on the overall rate

that asylum applications are granted.  The agencies considered the possible effects of the IFR, and the IFR states:

> The Departments do not expect this rule to encourage or cause an increase in the number of individuals seeking asylum in the United States. As explained above, this rule is not expected to create any significant new incentives that would drive increase irregular migration.  To the contrary, by reducing the amount of time a noncitizen can expect to remain in the United States with a pending asylum claim that originated in credible fear screening, the rule dramatically reduces a critical incentive for noncitizens not in need of protection to exploit the system. […] This rule does not change the substantive standard for asylum eligibility[…].

87 Fed. Reg. at 18192.  Regarding the approval rate, the IFR further states:

> The approval rate [total cases granted/total cases granted + total case denied + total cases referred (USCIS affirmative asylum processing only)] of asylum officers and IJs on the merits of asylum claims from Fiscal Years 2017 through 2021 show approval rates for asylum claims adjudicated by asylum officers to be in the 26–37 percent range, while IJ approval rates on asylum claims that started as credible fear screenings ranged from 31–39 percent and on all asylum claims (regardless of whether they began in the expedited removal or credible fear process) ranged from 26–37 percent. This information suggests that asylum officers are just as equipped to identify individuals not meeting asylum eligibility requirements as IJs who use the adversarial process with the participation of ICE's Office of the Principal Legal Advisor to reach a decision on asylum eligibility.

87 Fed. Reg. at 18116, FN 57.  The IFR also states:

> However, to the extent that the significant delays in the adjudication of asylum claims today contribute to rates of irregular migration, the Departments believe that the efficiencies introduced by the rule will help to reduce any incentive to exploit the system and enhance the Government's efforts to address irregular migration. By limiting the amount of time a noncitizen may remain in the United States while a claim for relief or protection is pending, the rule stands to dramatically reduce potential incentives for noncitizens to make false claims for relief and protection.

87 Fed. Reg. at 18111.

To the extent Plaintiffs seek internal pre-decisional documents and/or communications on how these determinations were made, Defendants object that any such documents would be deliberative in nature, and/or involve confidential attorney-client communications or attorney

work product, and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

## INTERROGATORY NO. 8

IDENTIFY monthly statistics (e.g., counts) for each fiscal year since 2005 about the following, both nationwide and for applicants in the State of Arizona:

a. AFFIRMATIVE ASYLUM CLAIMS
b. DEFENSIVE ASYLUM CLAIMS
c. Positive CREDIBLE FEAR DETERMINATION by AOs
d. Negative CREDIBLE FEAR DETERMINATION by AOs
e. ASYLUM CLAIMS filed after a positive CREDIBLE FEAR DETERMINATION by AOs
f. Positive CREDIBLE FEAR DETERMINATION by IJs
g. Negative CREDIBLE FEAR DETERMINATION by IJs
h. ASYLUM CLAIMS filed after a positive CREDIBLE FEAR DETERMINATION by IJs
i. Grant of AFFIRMATIVE ASYLUM CLAIMS by IJs
j. Denial of AFFIRMATIVE ASYLUM CLAIMS by IJs
k. Grant of DEFENSIVE ASYLUM CLAIMS by IJs
l. Denial of DEFENSIVE ASYLUM CLAIMS by IJs
m. Grant of AFFIRMATIVE ASYLUM CLAIMS by AOs
n. Denial of AFFIRMATIVE ASYLUM CLAIMS by AOs
o. Grant of DEFENSIVE ASYLUM CLAIMS by AOs
p. Denial of DEFENSIVE ASYLUM CLAIMS by AOs
q. BIA appeals filed by aliens denied an ASYLUM CLAIM, where the initial CREDIBLE FEAR DETERMINATION was approved by an AO, and statistics about how the BIAs disposed of the appeals
r. BIA appeals filed by aliens denied an ASYLUM CLAIM, where the initial CREDIBLE FEAR DETERMINATION was approved by an IJ, and statistics about how the BIAs disposed of the appeals
s. Asylum claimants paroled while awaiting further consideration or proceedings
t. Asylum claimants released on bond while awaiting further consideration or proceedings.

## RESPONSE TO INTERROGATORY NO. 8

Defendants object to Interrogatory No. 8, and all its subparts, on the grounds that it is overbroad and not sufficiently limited in time or scope, as it seeks 17 years of information, much of which would not be relevant to the NPRM and IFR or to Plaintiffs' standing to challenge the IFR. Defendants also object that it is unduly burdensome and disproportionate to the needs of this

case to seek information over 17 years and to request information that is broken down by state to the extent such information is not already broken down by state in the normal course.

Defendants also object that this Interrogatory exceeds the limits in Federal Rule of Civil Procedure 33(a)(1), which limits the parties to 25 written interrogatories, "including all discrete subparts." Fed. R. Civ. P. 33(a)(1); *see also* Local Rule 33.1 ("No party shall serve on any other party more than 25 interrogatories in the aggregate without leave of court. Each sub-part of an interrogatory shall count as an additional interrogatory."). As Interrogatory No. 8 contains 20 discrete subparts, Plaintiffs have improperly served 30 Interrogatories on Defendants.

Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Many of the statistics requested by this Interrogatory are contained in the Administrative Record that has already been produced. Defendants also object to subsections (o) and (p) as vague, confusing, and definitionally meaningless. According, Defendants are not producing information responsive to these subsections.

Subject to and without waiving these objections, Defendants are producing the following document containing information responsive to subsections (a), (c), (d), (m), and (n):

- DHS Rog 8 Responses Spreadsheet, USA007272-007273.

Defendants are producing the following document containing information responsive to subsections (a), (b), (e), (f), (g), (h), (i), (j), (k), (l), (q), and (r):

- EOIR Rog 8 Responses Spreadsheet, USA008083-008136.

In response to subsections (s) and (t), Defendants refer Plaintiffs to the HRIFA Reports (USA007274-007673). Specifically, Defendants refer Plaintiffs to:

- FY 2006: See FY2006 Section 903 HRIFA: Table 9, pages 44 – 46;
- FY 2008: See FY2008 Section 903 HRIFA: Table 9, pages 18 – 20;

- FY 2009: See FY2009-2010 Section 903 HRIFA: Table 8a, pages 45 – 47;
- FY 2010: See FY2009-2010 Section 903 HRIFA: Table 8b, pages 48 – 50;
- FY 2012: See FY2012 Section 903 HRIFA: Tables 8a, 8b, 8c, pages 26 – 28;
- FY 2013: See FY2013 Section 903 HRIFA: Tables 8a, 8b, 8c, pages 23 – 25;
- FY 2014: See FY2014 Section 903 HRIFA: Tables 8a, 8b, 8c, pages 24 – 26;
- FY 2015: See FY2015 Section 903 HRIFA: Tables 8a, 8b, 8c, pages 22 – 24;
- FY 2017: See FY2017 Section 903 HRIFA: Tables 8a, 8b, 8c, pages 23 – 25;
- FY 2018: See FY2018 Section 903 HRIFA: Tables 8a, 8b, 8c, pages 26 – 28;
- FY 2019: See FY2019 Section 903 HRIFA: Tables 8a, 8b, 8c, pages 26 – 28;
- FY 2020: See FY2020 Section 903 HRIFA: Tables 8a, 8b, 8c, pages 27 – 29.

Defendants also identify the following sources that contain some of the statistics sought in this Interrogatory in producible form:

- https://www.justice.gov/eoir/page/file/1062971/download;
- https://www.justice.gov/eoir/page/file/1104856/download;
- https://www.justice.gov/eoir/page/file/1163611/download;
- https://www.justice.gov/eoir/page/file/1163616/download;
- https://www.justice.gov/eoir/page/file/1242491/download;
- https://www.justice.gov/eoir/file/1176421/download;
- https://www.uscis.gov/tools/reports-and-studies/immigration-and-citizenship-data;
- https://www.uscis.gov/tools/reports-and-studies/semi-monthly-credible-fear-and-reasonable-fear-receipts-and-decisions;
- https://www.dhs.gov/immigration-statistics/refugees-asylees.

## INTERROGATORY NO. 9

IDENTIFY each facility in which asylum claimants have been detained since 2017 and, for each facility, the number of claimants released paroled, or bonded out of the facility (on a monthly basis) prior to final adjudication of their asylum claims.

## RESPONSE TO INTERROGATORY NO. 9

Defendants object to Interrogatory No. 9 on the grounds that it is overbroad and not sufficiently limited in scope, as it seeks information for all facilities nationwide.  It is also overbroad and not sufficiently limited in time, as it seeks 5 years of information, much of which

would not be relevant to the NPRM and IFR.  Defendants also object to this request as unduly burdensome.

Defendants also object that this Interrogatory exceeds the limits in Federal Rule of Civil Procedure 33(a)(1), which limits the parties to 25 written interrogatories, "including all discrete subparts." Fed. R. Civ. P. 33(a)(1); *see also* Local Rule 33.1 ("No party shall serve on any other party more than 25 interrogatories in the aggregate without leave of court. Each sub-part of an interrogatory shall count as an additional interrogatory.").  As Interrogatory No. 8 contains 20 discrete subparts, Plaintiffs have improperly served 30 Interrogatories on Defendants.

Subject to and without waiving these objections, Defendants identify the following sources that contain some of the information sought in this Interrogatory in producible form:

- HRIFA Reports for 2017-2020, USA007544-007673.

## INTERROGATORY NO. 10

Regarding YOUR responses to the Requests for Admission below, IDENTIFY all persons who have knowledge of the facts upon which YOU based YOUR responses and all DOCUMENTS or COMMUNICATIONS that support your responses.

## RESPONSE TO INTERROGATORY NO. 10

Defendants object to Interrogatory No. 10 on the grounds that it is outside the scope of the limited discovery ordered by the Court.  *See* Docket No. 24.  Defendants also object that this Interrogatory exceeds the limits in Federal Rule of Civil Procedure 33(a)(1), which limits the parties to 25 written interrogatories, "including all discrete subparts." Fed. R. Civ. P. 33(a)(1); *see also* Local Rule 33.1 ("No party shall serve on any other party more than 25 interrogatories in the aggregate without leave of court. Each sub-part of an interrogatory shall count as an additional

interrogatory.").  As Interrogatory No. 8 contains 20 discrete subparts, Plaintiffs have improperly served 30 Interrogatories on Defendants.

Defendants also object on the grounds that Plaintiffs are seeking information that is protected by attorney-client and/or attorney work product doctrine privilege.  *Shapiro v. United States DOJ*, 969 F. Supp. 2d 18, 27-28 (D.D.C. 2013) (explaining attorney-client privilege and attorney work product doctrine).

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

Provide copies of all DOCUMENTS or COMMUNICATIONS in connection with the preparation or issuance of the APRIL 26 MEMORANDUM and the SOUTHWEST BORDER CONTINGENCY PLAN to the extent that such DOCUMENTS or COMMUNICATIONS relate to or mention ASYLUM CLAIMS, the ASYLUM NPRM, ASYLUM IFR, CREDIBLE FEAR, IJs, or AOs.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1

Defendants object to Request for Production No. 1 on the grounds that it is overbroad and seeks documents not relevant to this lawsuit, but which relate instead to the separate memo and plan identified in this Request. Defendants also object as this Request is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24. Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record, and all non-privileged documents considered directly or indirectly by the agencies in issuing the IFR are contained in the Administrative Record that has already been produced. To the extent Plaintiffs seek internal pre-decisional documents and/or communications related to the memo and plan identified in this Request, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), or are attorney work product and/or constitute protected attorney-client communications and thus are not subject to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (explaining deliberative process privilege); *Shapiro v. United States DOJ*, 969 F. Supp. 2d 18, 27-28 (D.D.C. 2013) (explaining attorney-client privilege and attorney work product doctrine).

Subject to and without waiving these objections, Defendants refer Plaintiffs to the Administrative Record for responsive, non-privileged documents related to the preparation or issuance of the memo and plan identified in this request that mention the NPRM or IFR. To the extent Plaintiffs seek any documents that mention asylum claims, credible fear, IJs, or AOs, Defendants object that this request is overbroad and not targeted towards information related to standing, unduly burdensome, and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 2**

Provide copies of all DOCUMENTS or COMMUNICATIONS provided to or received from the NGOs identified in response to Interrogatory #4 regarding "bolstering the capacity of NGOs to receive noncitizens" or in order to otherwise carry out "Border Security Pillar 4" of the APRIL 26 MEMORANDUM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

Defendants object to Request for Production No. 2 on the grounds that it is overbroad and seeks documents not relevant to this lawsuit. Defendants also object as this Request is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24. Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant non-privileged documents considered directly or indirectly by the agencies in issuing the IFR are contained in the Administrative Record that has already been produced.

Based on these objections, Defendants will not be searching for and/or producing responsive documents, if any, in response to this Request.

## REQUEST FOR PRODUCTION NO. 3

Provide copies of all DOCUMENTS or COMMUNICATIONS, including but not limited to meeting minutes, attendance lists, calendar appointments, and memoranda created from or for a MEETING, regarding any MEETING involving the DOJ, DHS, or any named Defendant with one another or with any members of the Federal Executive regarding the decision to issue the ASYLUM NPRM or ASYLUM IFR or to prepare for the consequences of implementing either of them.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3

Defendants object to Request for Production No. 3 on the grounds that it is overbroad and seeks documents not relevant to this lawsuit. Defendants also object as this Request is outside the scope of the limited discovery ordered by the Court and would impose an undue burden on Defendants compared to the needs of the case to produce such information. *See* Docket No. 24. Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant non-privileged documents considered directly or indirectly by the agencies in issuing the IFR are contained in the Administrative Record that has already been produced. To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore

privileged and not subject to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), or are attorney work product and/or constitute protected attorney-client communications and thus are not subject to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (explaining deliberative process privilege); *Shapiro v. United States DOJ*, 969 F. Supp. 2d 18, 27-28 (D.D.C. 2013) (explaining attorney-client privilege and attorney work product doctrine).

Based on these objections, Defendants will not be searching for and/or producing responsive documents, if any, in response to this Request.

**REQUEST FOR PRODUCTION NO. 4**

Provide copies of all DOCUMENTS or COMMUNICATIONS, including but not limited to meeting minutes, attendance lists, calendar appointments, and memoranda created from or for a MEETING, regarding any MEETING involving the DOJ, DHS, or any named Defendant with any members of the public or NGOs regarding the decision to issue the ASYLUM NPRM or ASYLUM IFR or to prepare for the consequences of implementing either of them.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

Defendants object to Request for Production No. 4 on the grounds that it is overbroad and seeks documents not relevant to this lawsuit and would impose an undue burden on Defendants compared to the needs of the case to produce such information. Defendants also object as this Request is outside the scope of the limited discovery ordered by the Court, as this does not go to Plaintiffs' standing. *See* Docket No. 24. Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-

44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant non-privileged documents considered directly or indirectly by the agencies in issuing the IFR are contained in the Administrative Record that has already been produced.   To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), or are attorney work product and/or constitute protected attorney-client communications and thus are not subject to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (explaining deliberative process privilege); *Shapiro v. United States DOJ*, 969 F. Supp. 2d 18, 27-28 (D.D.C. 2013) (explaining attorney-client privilege and attorney work product doctrine).

Based on these objections, Defendants will not be searching for and/or producing responsive documents, if any, in response to this Request.

**REQUEST FOR PRODUCTION NO. 5**

Provide copies of all DOCUMENTS or COMMUNICATIONS between the WHITE HOUSE and any named Defendant regarding the ASYLUM NPRM or ASYLUM IFR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

Defendants object to Request for Production No. 5 on the grounds that it is overbroad and seeks documents not relevant to this lawsuit.  Defendants also object as this Request is outside the scope of the limited discovery ordered by the Court.  *See* Docket No. 24.  Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co.*

*v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401

U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973).   Accordingly, all relevant non-

privileged documents considered directly or indirectly by the agencies in issuing the IFR are

contained in the Administrative Record that has already been produced. To the extent Plaintiffs

seek internal pre-decisional documents and/or communications, Defendants object that any such

documents would be deliberative in nature and therefore privileged and not subject to discovery,

*see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), or are attorney

work product and/or constitute protected attorney-client communications and thus are not subject

to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)

(explaining deliberative process privilege); *Shapiro v. United States DOJ*, 969 F. Supp. 2d 18, 27-

28 (D.D.C. 2013) (explaining attorney-client privilege and attorney work product doctrine).

Based on these objections, Defendants will not be searching for and/or producing

responsive documents, if any, in response to this Request.

**REQUEST FOR PRODUCTION NO. 6**

Provide copies of all DOCUMENTS or COMMUNICATIONS regarding the estimated

impact of implementing the ASYLUM NPRM or ASYLUM IFR, including but not limited to any

expected change in the number of border crossings, changes in rates of asylum approvals or

applications, the number or rate of asylum claims, or legal or illegal immigration levels more

generally, and the impact of the ASYLUM NPRM or ASYLUM IFR on public health, the

environment, crime, or law enforcement or other state or local resources.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

Defendants object to Request for Production No. 6 on the grounds that Plaintiffs'

challenges to the NPRM and IFR must be governed by review of the Certified Administrative

Record.  Under the APA, the district court's review must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  Accordingly, all relevant non-privileged documents are contained in the Administrative Record that has already been produced, and the agencies' views on the impact of implementing the NPRM and the IFR are contained in the IFR.  To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Based on these objections, Defendants refer Plaintiffs to the Administrative Record for responsive, non-privileged documents.

**REQUEST FOR PRODUCTION NO. 7**

Provide copies of all DOCUMENTS or COMMUNICATIONS containing or expressing analysis, commentary, or opinion of DOJ or DHS personnel on the ASYLUM NPRM or ASYLUM IFR, including emails and other COMMUNICATIONS and all memorandum or other internal DOCUMENTS identified in your responses to Interrogatory #s 2 and 3.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**

Defendants object to Request for Production No. 7 on the grounds that it is outside the scope of the limited discovery ordered by the Court and would impose an undue burden on Defendants that is disproportionate to the needs of the case or limited purpose of discovery.  *See* Docket No. 24.  To the extent Plaintiffs seek documents related to Interrogatory Nos. 2 and 3, Defendants incorporate their response and objections to those Interrogatory into this response.

Defendants also object because Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant non-privileged documents are contained in the Administrative Record that has already been produced, and the agencies' views on the impact of implementing the NPRM and the IFR are contained in the IFR. To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), or are attorney work product and/or constitute protected attorney-client communications and thus are not subject to discovery, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (explaining deliberative process privilege); *Shapiro v. United States DOJ*, 969 F. Supp. 2d 18, 27-28 (D.D.C. 2013) (explaining attorney-client privilege and attorney work product doctrine).

Additionally, Defendants object to the request for emails as unduly burdensome; given that the agencies' relevant "analysis, commentary, or opinion" are contained in the IFR itself and in the Administrative Record, and any pre-decisional documents are privileged and not subject to discovery, undertaking a search of emails and/or other communications is unlikely to lead to producible documents. Therefore, any such search would be unduly burdensome and not proportional to the needs of the case.

Based on these objections, Defendants refer Plaintiffs to the Administrative Record for responsive, non-privileged documents. Defendants also identify the following source that contain some of the information sought in this Request in producible form:

- https://www.justice.gov/opa/pr/justice-department-and-department-homeland-security-issue-rule-efficiently-and-fairly-process.

Defendants are not withholding any documents on the basis of privilege.

## REQUEST FOR PRODUCTION NO. 8

Provide copies of all DOCUMENTS or COMMUNICATIONS related to any workforce modelling or anticipated staffing levels of ASYLUM OFFICERS for implementing the ASYLUM NPRM or ASYLUM IFR including all DOCUMENTS or COMMUNICATIONS related to the creation of Tables 7 and 8 of the ASYLUM IFR and ASYLUM NPRM.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8

Defendants object to Request for Production No. 8 on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant non-privileged documents are contained in the Administrative Record that has already been produced, and the agencies' views on the impact of implementing the NPRM and the IFR are contained in the IFR. To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Subject to and without waiving these objections, Defendants identify the following source that contain some of the information sought in this Request in producible form:

- https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/fact-sheet-implementation-of-the-credible-fear-and-asylum-processing-interim-final-rule.

Defendants are not withholding any documents on the basis of privilege.

## REQUEST FOR PRODUCTION NO. 9

Provide copies of all DOCUMENTS or COMMUNICATIONS related to required procedures for ASYLUM OFFICERS to approve or deny a grant of asylum or to approve or deny a credible fear determination.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9

Defendants object to Request for Production No. 9 on the grounds that it is overbroad, as it is not limited in time in any way, and because Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant non-privileged documents are contained in the Administrative Record that has already been produced, and the IFR contains the procedures for USCIS to consider asylum claims that are processed under the IFR.  To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Subject to and without waiving these objections, and limiting this response to documents currently in effect, Defendants will produce the following documents:

- USCIS training materials on Credible Fear Determinations, USA007674-007709;

Defendants are withholding responsive documents on the basis of law enforcement privilege.  A privilege log will be produced.

## REQUEST FOR PRODUCTION NO. 10

Provide copies of all DOCUMENTS or COMMUNICATIONS related to job requirements, position descriptions, education requirements, or training requirements for Asylum Officers or Immigration Judges.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10

Defendants object to Request for Production No. 10 on the grounds that it is outside the scope of the limited discovery ordered by the Court.  *See* Docket No. 24.  Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant documents are contained in the Administrative Record that has already been produced. To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Subject to and without waiving these objections, Defendants identify the following sources that contain some of the information sought in this Request in producible form:

- https://www.justice.gov/eoir/Adjudicators.

Defendants are also producing the following documents:

- Asylum Officer and Supervisory Asylum Officer Job Announcements, USA007910-007926, USA007940-007955;

- Asylum Officer and Supervisory Asylum Officer Position Descriptions, USA007927-007939;

- Immigration Judge Position Descriptions, USA008201-008212;

- Immigration Judge Job Announcement, USA008213-008225.

Defendants are not withholding any documents on the basis of privilege.

**REQUEST FOR PRODUCTION NO. 11**

Provide copies of all DOCUMENTS or COMMUNICATIONS related to training materials, courses, guidance, handbooks, or manuals for Immigration Judges or Asylum Officers related to adjudication of aliens' credible fear claims or asylum claims, or related to implementing the ASYLUM NPRM or ASYLUM IFR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**

Defendants object to Request for Production No. 11 on the grounds that it is outside the scope of the limited discovery ordered by the Court.  *See* Docket No. 24.  Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant documents are contained in the Administrative Record that has already been produced. To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants

object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Subject to and without waiving these objections, Defendants identify the following sources that contain some of the information sought in this Request in producible form:

- https://www.justice.gov/eoir/eoir-policy-manual/part-ii-ocij-practice-manual.

Defendants are also producing the following documents:

- Asylum Merits Interview training materials, USA007956-007985, USA008051;

- Convention Against Torture training materials, USA007990-008050;

- Statutory Withholding Removal training materials, USA008052-008082;

- Asylum Officer and Supervisory Asylum Officer training schedules, USA007986-007989;

- New Immigration Judge Training Agenda, USA008137-008157;

- Overview of Domestic Violence and Family-based Cases in Light of *Matter of AB III* and *Matter of L-E-A- III*, USA008158-008200;

- Immigration Judge Training on Asylum and Credible Fear 2019 – 2022, USA008226-009668;

- EOIR Training on the IFR, USA009669-009731.

Defendants are withholding responsive documents on the basis of law enforcement privilege. A privilege log will be produced.

**REQUEST FOR PRODUCTION NO. 12**

Provide copies of all DOCUMENTS or COMMUNICATIONS related to how the ASYLUM NPRM or ASYLUM IFR and the TITLE 42 TERMINATION ORDER or TITLE 42 POLICY may interact with or affect each other.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**

Defendants object to Request for Production No. 12 on the grounds that it is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24. Defendants further object to this Request as not relevant to this matter. *See* Asylum IFR, at 18194-5 ("*G. Comments Outside of the Scope of This Rulemaking* … the title 42 order issued by the Centers for Disease Control and Prevention…"). Also, to the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Subject to and without waiving these objections, Defendants are not aware of any additional documents that discuss the interaction between the IFR and Title 42. Based on these objections, Defendants will not be producing anything in response to this Request.

**REQUEST FOR PRODUCTION NO. 13**

Provide copies of all DOCUMENTS or COMMUNICATIONS related to the timeline for appeals of asylum claims under current rules and under the ASYLUM NPRM or ASYLUM IFR and predictions, opinions, or models of the impact of the ASYLUM NPRM or ASYLUM IFR on appeals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**

Defendants object to Request for Production No. 13 on the grounds that it is vague as to what Plaintiffs mean by "appeals." Defendants also object as this Request is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24.

Defendants also object on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Accordingly, any relevant documents are contained in the Administrative Record that has already been produced. Additionally, the agencies' views on the "impact of the ASYLUM NPRM or ASYLUM IFR on appeals" is contained in the IFR itself. To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Subject to and without waiving these objections, Defendants are not aware of any responsive documents that compare the timeline for appeals under current rules and under the IFR.

## REQUEST FOR PRODUCTION NO. 14

Provide copies of all DOCUMENTS or COMMUNICATIONS related to implementation of the ASYLUM IFR, including all documents relating to its phased roll-out.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 14

Defendants object to Request for Production No. 14 on the grounds that Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant non-privileged documents are

contained in the Administrative Record that has already been produced, and the IFR contains information about the phased roll-out. To the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Subject to and without waiving these objections, Defendants refer Plaintiffs to the EOIR training materials being produced with these responses (USA007956-007985, USA008051, USA007990-008050, USA008052-008082, USA007986-007989, USA008137-008157, USA008158-008200, USA008226-009668, USA009669-009731). Defendants also identify the following sources that contain some of the information sought in this Request in producible form:

- https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/fact-sheet-implementation-of-the-credible-fear-and-asylum-processing-interim-final-rule.

Defendants are not withholding any documents on the basis of privilege.

**REQUEST FOR PRODUCTION NO. 15**

Provide copies of all DOCUMENTS or COMMUNICATIONS listed in your answer to Interrogatory #9.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**

Defendants object to Request for Production No. 15 on the grounds that it is overbroad and not sufficiently limited in scope, as it seeks information for all facilities nationwide. It is also overbroad and not sufficiently limited in time, as it seeks 5 years of information, much of which would not be relevant to the NPRM and IFR. Defendants also object to this request as unduly burdensome. Also, to the extent Plaintiffs seek internal pre-decisional documents and/or communications, Defendants object that any such documents would be deliberative in nature and

therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Subject to and without waiving these objections, Defendants identify the following sources that contain some of the information sought in this Interrogatory in producible form:

- HRIFA Reports for 2017-2020, USA007544-007673.

Defendants are not withholding any documents on the basis of privilege.

## REQUEST FOR PRODUCTION NO. 16

All EOIR "Statistics Yearbooks" and all reports pursuant to Section 903 of the Haitian Refugee Immigration Fairness Act of 1998, P.L. 105-27.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16

Defendants object to Request for Production No. 16 on the grounds that it is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24. Defendants also object as this is overbroad and not sufficiently limited in time, as it requests "all" documents without limitations. Defendants also object as Plaintiffs' challenges to the NPRM and IFR must be governed by review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Accordingly, all relevant documents are contained in the Administrative Record that has already been produced.

Subject to and without waiving these objections, Defendants identify the following sources that contain some of the information sought in this Request in producible form:

- EOIR Statistics Yearbooks, FY 2000 – FY 2018 – https://www.justice.gov/eoir/statistical-year-book;

- EOIR Current Workload and Adjudication Statistics – https://www.justice.gov/eoir/workload-and-adjudication-statistics;

- EOIR Archived Workload and Adjudication Statistics – https://www.justice.gov/eoir/page/file/1242491/download;

- HRIFA Report, FY 2006 – https://www.ice.gov/doclib/foia/hrifa/fy06hrifasection903report.pdf;

- HRIFA Report FY 2007 – https://www.ice.gov/doclib/foia/hrifa/fy07hrifasection903report.pdf;

- HRIFA Report FY 2008 – https://www.ice.gov/doclib/foia/hrifa/fy08hrifasection903report.pdf;

- HRIFA Report FY 2009 and FY 2010 – https://www.ice.gov/doclib/foia/reports/detained-asylum-seekers2009-2010.pdf;

- HRIFA Reports 2012 – 2020[1], USA007417-007673.

---

[1] The HRIFA Report for FY 2020 is the latest available report.  Defendants have been unable to locate the HRIFA Report for FY 2011.  Defendants will supplement this response if they are able to locate the report.

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1

Admit that the Asylum IFR will increase the overall rate that asylum applications are granted.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1

In response to Request for Admission No. 1, Defendants state that they lack sufficient information to predict with certainty the rate at which asylum applications will be granted in the future, and therefore DENY.

### REQUEST FOR ADMISSION NO. 2

Admit that the Asylum IFR will have no material effect on the overall rate that asylum applications are granted.

### RESPONSE TO REQUEST FOR ADMISSION NO. 2

In response to Request for Admission No. 2, Defendants state that they lack sufficient information to predict with certainty, but ADMIT only that the IFR identifies no reason why the IFR should have a material effect on the overall rate that asylum applications are granted. The remainder of this Request is DENIED.

### REQUEST FOR ADMISSION NO. 3

Admit that Defendants have analyzed whether the Asylum IFR is likely to affect the overall rate that asylum applications are granted.

### RESPONSE TO REQUEST FOR ADMISSION NO. 3

Defendants object to Request for Admission No. 3 on the grounds that it is vague as to what Plaintiffs mean by "analyzed." Without waiving this objection, Defendants ADMIT that the agencies considered what effects the IFR might have, and that the IFR states:

> The Departments do not expect this rule to encourage or cause an increase in the number of individuals seeking asylum in the United States. As explained above, this rule is not expected to create any significant new incentives that would drive increase irregular migration. To the contrary, by reducing the amount of time a noncitizen can expect to remain in the United States with a pending asylum claim that originated in credible fear screening, the rule dramatically reduces the critical incentive for noncitizens not in need of protection to exploit the system. […] This rule does not change the substantive standard for asylum eligibility[…].

87 Fed. Reg. at 18192. Defendants also ADMIT that, regarding the approval rate, the IFR further

states:

> The approval rate [total cases granted/total cases granted + total case denied + total cases referred (USCIS affirmative asylum processing only)] of asylum officers and IJs on the merits of asylum claims from Fiscal Years 2017 through 2021 show approval rates for asylum claims adjudicated by asylum officers to be in the 26–37 percent range, while IJ approval rates on asylum claims that started as credible fear screenings ranged from 31–39 percent and on all asylum claims (regardless of whether they began in the expedited removal or credible fear process) ranged from 26–37 percent. This information suggests that asylum officers are just as equipped to identify individuals not meeting asylum eligibility requirements as IJs who use the adversarial process with the participation of ICE's Office of the Principal Legal Advisor to reach a decision on asylum eligibility.

87 Fed. Reg. at 18116, FN 57. Defendants also ADMIT that the IFR states:

> However, to the extent that the significant delays in the adjudication of asylum claims today contribute to rates of irregular migration, the Departments believe that the efficiencies introduced by the rule will help to reduce any incentive to exploit the system and enhance the Government's efforts to address irregular migration. By limiting the amount of time a noncitizen may remain in the United States while a claim for relief or protection is pending, the rule stands to dramatically reduce potential incentives for noncitizens to make false claims for relief and protection.

87 Fed. Reg. at 18111. The remainder of this Request is DENIED.

## REQUEST FOR ADMISSION NO. 4

Admit that Defendants have not analyzed whether the Asylum IFR is likely to affect the overall rate that asylum applications are granted.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4**

Defendants object to Request for Admission No. 4 on the grounds that it is vague as to what Plaintiffs mean by "analyzed." Without waiving this objection, Defendants DENY the statement in Request for Admission No. 4, except state that the agencies considered what effects the IFR might have, and that the IFR states:

> The Departments do not expect this rule to encourage or cause an increase in the number of individuals seeking asylum in the United States. As explained above, this rule is not expected to create any significant new incentives that would drive increase irregular migration. To the contrary, by reducing the amount of time a noncitizen can expect to remain in the United States with a pending asylum claim that originated in credible fear screening, the rule dramatically reduces the a critical incentive for noncitizens not in need of protection to exploit the system. […] This rule does not change the substantive standard for asylum eligibility[…].

87 Fed. Reg. at 18192. Defendants also state that, regarding the approval rate, the IFR further states:

> The approval rate [total cases granted/total cases granted + total case denied + total cases referred (USCIS affirmative asylum processing only)] of asylum officers and IJs on the merits of asylum claims from Fiscal Years 2017 through 2021 show approval rates for asylum claims adjudicated by asylum officers to be in the 26–37 percent range, while IJ approval rates on asylum claims that started as credible fear screenings ranged from 31–39 percent and on all asylum claims (regardless of whether they began in the expedited removal or credible fear process) ranged from 26–37 percent. This information suggests that asylum officers are just as equipped to identify individuals not meeting asylum eligibility requirements as IJs who use the adversarial process with the participation of ICE's Office of the Principal Legal Advisor to reach a decision on asylum eligibility.

87 Fed. Reg. at 18116, FN 57. The IFR also states:

> However, to the extent that the significant delays in the adjudication of asylum claims today contribute to rates of irregular migration, the Departments believe that the efficiencies introduced by the rule will help to reduce any incentive to exploit the system and enhance the Government's efforts to address irregular migration. By limiting the amount of time a noncitizen may remain in the United States while a claim for relief or protection is pending, the rule stands to dramatically reduce potential incentives for noncitizens to make false claims for relief and protection.

87 Fed. Reg. at 18111.

**REQUEST FOR ADMISSION NO. 5**

Admit that states are required to provide education services to immigrants, both lawfully and unlawfully present in the United States, under *Plyer v. Doe*, 457 U.S. 202 (1982).

**RESPONSE TO REQUEST FOR ADMISSION NO. 5**

Defendants object to Request for Admission No. 5 to the extent that it merely seeks a conclusion of law, which is impermissible under Federal Rule of Civil Procedure 36. *See, e.g., Tarleton v. DG La. LLC*, No. 6:20-CV-00294, 2022 U.S. Dist. LEXIS 88144, at *4 (W.D. La. May 16, 2022) ("However, requests for admission are not for compelling admission of conclusions of law or for establishing obviously disputed facts."), citing *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (collecting cases). The case law cited in the Request speaks for itself.

**REQUEST FOR ADMISSION NO. 6**

Admit that under federal law (including C.F.R. § 440.255), the States are required to pay for certain healthcare procedures for aliens that are lawfully present in the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**

Defendants object to Request for Admission No. 6 to the extent that that it merely seeks a conclusion of law, which is impermissible under Federal Rule of Civil Procedure 36. *See, e.g., Tarleton v. DG La. LLC*, No. 6:20-CV-00294, 2022 U.S. Dist. LEXIS 88144, at *4 (W.D. La. May 16, 2022) ("However, requests for admission are not for compelling admission of conclusions of law or for establishing obviously disputed facts."), citing *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (collecting cases). The regulation cited in the Request speaks for itself.

**REQUEST FOR ADMISSION NO. 7**

Admit that under federal law (including C.F.R. § 440.255), the States are required to pay for certain healthcare procedures for aliens that are not lawfully present in the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Defendants object to Request for Admission No. 7 to the extent that that it merely seeks a conclusion of law, which is impermissible under Federal Rule of Civil Procedure 36. *See, e.g., Tarleton v. DG La. LLC*, No. 6:20-CV-00294, 2022 U.S. Dist. LEXIS 88144, at *4 (W.D. La. May 16, 2022) ("However, requests for admission are not for compelling admission of conclusions of law or for establishing obviously disputed facts."), citing *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (collecting cases).   The regulation cited in the Request speaks for itself.

**REQUEST FOR ADMISSION NO. 8**

Admit that Defendants considered the effect of terminating the TITLE 42 POLICY when drafting the Asylum NPRM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Defendants object to Request for Admission No. 8 on the grounds that it is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24.  Defendants further object to this Request as not relevant to this matter. *See* Asylum IFR, at 18194-5 ("*G. Comments Outside of the Scope of This Rulemaking* … the title 42 order issued by the Centers for Disease Control and Prevention…").

**REQUEST FOR ADMISSION NO. 9**

Admit that Defendants did not consider the effect of terminating the TITLE 42 POLICY when drafting the Asylum NPRM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Defendants object to Request for Admission No. 9 on the grounds that it is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24.  Defendants further object to this Request as not relevant to this matter. *See* Asylum IFR, at 18194-5 ("*G. Comments Outside*

*of the Scope of This Rulemaking* … the title 42 order issued by the Centers for Disease Control and Prevention…").

**REQUEST FOR ADMISSION NO. 10**

Admit that Defendants considered the effect of terminating the TITLE 42 POLICY when drafting the Asylum IFR.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10**

Defendants object to Request for Admission No. 10 on the grounds that it is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24. Defendants further object to this Request as not relevant to this matter. *See* Asylum IFR, at 18194-5 ("*G. Comments Outside of the Scope of This Rulemaking* … the title 42 order issued by the Centers for Disease Control and Prevention…").

**REQUEST FOR ADMISSION NO. 11**

Admit that Defendants did not consider the effect of terminating the TITLE 42 POLICY when drafting the Asylum IFR.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11**

Defendants object to Request for Admission No. 11 on the grounds that it is outside the scope of the limited discovery ordered by the Court. *See* Docket No. 24. Defendants further object to this Request as not relevant to this matter. *See* Asylum IFR, at 18194-5 ("*G. Comments Outside of the Scope of This Rulemaking* … the title 42 order issued by the Centers for Disease Control and Prevention…").

**REQUEST FOR ADMISSION NO. 12**

Admit Defendants expect the ASYLUM IFR to increase the number of aliens that apply for asylum.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12**

In response to Request for Admission No. 12, Defendants state that the IFR considered this issue and identified no reason to believe the IFR would increase the number of noncitizens that apply for asylum, but the agencies lack sufficient information to answer this question definitively, and therefore DENY.

**REQUEST FOR ADMISSION NO. 13**

Admit Defendants expect the ASYLUM IFR will not increase the number of aliens that apply for asylum.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13**

In response to Request for Admission No. 13, Defendants ADMIT that the IFR considered this issue and identified no reason to believe the IFR would increase the number of noncitizens that apply for asylum, but the agencies lack sufficient information to answer this question definitively. The remainder of this Request is DENIED.

**REQUEST FOR ADMISSION NO. 14**

Admit Defendants have analyzed whether the ASYLUM IFR will increase the number of aliens that apply for asylum.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14**

Defendants object to Request for Admission No. 14 on the grounds that it is vague as to what Plaintiffs mean by "analyzed." Without waiving this objection, Defendants ADMIT that the agencies considered what effects the IFR might have, and that the IFR states:

> The Departments do not expect this rule to encourage or cause an increase in the number of individuals seeking asylum in the United States. As explained above, this rule is not expected to create any significant new incentives that would drive increase irregular migration. To the contrary, by reducing the amount of time a noncitizen can expect to remain in the United States with a pending asylum claim that originated in credible fear screening, the rule dramatically reduces the a critical

incentive for noncitizens not in need of protection to exploit the system. [...] This rule does not change the substantive standard for asylum eligibility[...].

87 Fed. Reg. at 18192.  Defendants also ADMIT that, regarding the approval rate, the IFR further

states:

> The approval rate [total cases granted/total cases granted + total case denied + total cases referred (USCIS affirmative asylum processing only)] of asylum officers and IJs on the merits of asylum claims from Fiscal Years 2017 through 2021 show approval rates for asylum claims adjudicated by asylum officers to be in the 26–37 percent range, while IJ approval rates on asylum claims that started as credible fear screenings ranged from 31–39 percent and on all asylum claims (regardless of whether they began in the expedited removal or credible fear process) ranged from 26–37 percent. This information suggests that asylum officers are just as equipped to identify individuals not meeting asylum eligibility requirements as IJs who use the adversarial process with the participation of ICE's Office of the Principal Legal Advisor to reach a decision on asylum eligibility.

87 Fed. Reg. at 18116, FN 57.  Defendants also ADMIT that the IFR states:

> However, to the extent that the significant delays in the adjudication of asylum claims today contribute to rates of irregular migration, the Departments believe that the efficiencies introduced by the rule will help to reduce any incentive to exploit the system and enhance the Government's efforts to address irregular migration. By limiting the amount of time a noncitizen may remain in the United States while a claim for relief or protection is pending, the rule stands to dramatically reduce potential incentives for noncitizens to make false claims for relief and protection.

87 Fed. Reg. at 18111.  The remainder of this Request is DENIED.

## REQUEST FOR ADMISSION NO. 15

Admit Defendants have not analyzed whether the ASYLUM IFR will increase the number

of aliens that apply for asylum.

## RESPONSE TO REQUEST FOR ADMISSION NO. 15

Defendants object to Request for Admission No. 15 on the grounds that it is vague as to

what Plaintiffs mean by "analyzed."  Without waiving this objection, Defendants DENY the

statement in Request for Admission No. 15, except state that the agencies considered what effects

the IFR might have, and that the IFR states:

The Departments do not expect this rule to encourage or cause an increase in the number of individuals seeking asylum in the United States. As explained above, this rule is not expected to create any significant new incentives that would drive increase irregular migration. To the contrary, by reducing the amount of time a noncitizen can expect to remain in the United States with a pending asylum claim that originated in credible fear screening, the rule dramatically reduces the a critical incentive for noncitizens not in need of protection to exploit the system. […] This rule does not change the substantive standard for asylum eligibility[…].

87 Fed. Reg. at 18192. Defendants also state that, regarding the approval rate, the IFR further

states:

The approval rate [total cases granted/total cases granted + total case denied + total cases referred (USCIS affirmative asylum processing only)] of asylum officers and IJs on the merits of asylum claims from Fiscal Years 2017 through 2021 show approval rates for asylum claims adjudicated by asylum officers to be in the 26–37 percent range, while IJ approval rates on asylum claims that started as credible fear screenings ranged from 31–39 percent and on all asylum claims (regardless of whether they began in the expedited removal or credible fear process) ranged from 26–37 percent. This information suggests that asylum officers are just as equipped to identify individuals not meeting asylum eligibility requirements as IJs who use the adversarial process with the participation of ICE's Office of the Principal Legal Advisor to reach a decision on asylum eligibility.

87 Fed. Reg. at 18116, FN 57.

Date:  June 17, 2022                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        *Principal Deputy Assistant Attorney General*

                                        WILLIAM C. PEACHEY
                                        *Director*
                                        Office of Immigration Litigation
                                        District Court Section

                                        EREZ REUVENI
                                        *Assistant Director*

                                        JOSEPH DARROW
                                        ELISSA FUDIM
                                        ERIN RYAN
                                        *Trial Attorneys*

/s/ *Brian C. Ward*
BRIAN C. WARD
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 616-9121
Brian.c.ward@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 17, 2022, I served **DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSIONS** via email on all counsel for Plaintiffs in *State of Arizona v. Merrick Garland, et al.*, No. 6:22-cv-01130.

By: */s/ Brian C. Ward*
BRIAN C. WARD
United States Department of Justice

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

|  |  |  |
|---|---|---|
| STATE OF ARIZONA,<br>By and through its Attorney General,<br>Mark Brnovich, et al., | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Civil Action No. 6:22-cv-01130 |
| MERRICK GARLAND, in his<br>official capacity as Attorney General<br>of the United States, *et al.,* | ) ) ) ) | |
| *Defendants.* | ) ) ) | |

## CERTIFICATION OF RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

I, David Saadat, hereby declare that I am the Deputy General Counsel for the Executive Office for Immigration Review (EOIR). Based on reasonable inquiry and information provided to me in my official capacity, I certify that the information regarding EOIR contained in the Defendants' responses to Plaintiffs' First Set of Interrogatories is true and correct to the best of my knowledge, information, and belief.

Dated: June 17, 2022

DAVID SAADAT
Digitally signed by DAVID SAADAT
Date: 2022.06.17 13:45:17 -04'00'

_____

David Saadat

Deputy General Counsel

Executive Office for Immigration Review

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, | ) | |
| By and through its Attorney General, | ) | |
| Mark Brnovich, et al., | ) | |
|  | ) | |
| *Plaintiffs,* | ) | |
|  | ) | |
| v. | ) | Civil Action No. 6:22-cv-01130 |
|  | ) | |
| MERRICK GARLAND, in his | ) | |
| official capacity as Attorney General | ) | |
| of the United States, *et al.*, | ) | |
|  | ) | |
| *Defendants.* | ) | |
|  | ) | |

**CERTIFICATION OF RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

I, Renà Cutlip-Mason, hearby declare that I am the Humanitarian Affairs Division Chief, Office of Policy & Strategy for the Unites States Citizenship and Immigration Services (USCIS). Based on reasonable inquiry and information provided to me in my official capacity, I certify that the information regarding USCIS contained in the Defendants' responses to Plaintiffs' First Set of Interrogatories is true and correct to the best of my knowledge, information, and belief.

Dated:  June 17, 2022

RENA E CUTLIP-MASON
Digitally signed by
RENA E CUTLIP-MASON
Date: 2022.06.17
17:21:05 -04'00'

Renà Cutlip-Mason
Humanitarian Affairs Division Chief, OP&S
U.S. Citizenship and Immigration Services

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

|  |  |
|---|---|
| STATE OF ARIZONA, By and through its Attorney General, Mark Brnovich, et al., | ) ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) ) Civil Action No. 6:22-cv-01130 |
| MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, | ) ) ) ) |
| *Defendants.* | ) ) ) |

## CERTIFICATION OF RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

I, Marc Rosenblum, hereby declare that I am the Deputy Assistant Secretary in the Office of Immigration Statistics for the Department of Homeland Security. Based on reasonable inquiry and information provided to me in my official capacity, I certify that the information regarding the Department of Homeland Security contained in the Defendants' responses to Interrogatory 8 (a), (c), (d), (m), and (n) of Plaintiffs' First Set of Interrogatories is true and correct to the best of my knowledge, information, and belief.

Dated:  June 17, 2022

MARC R ROSENBLUM
Digitally signed by MARC R ROSENBLUM
Date: 2022.06.17 15:19:17 -04'00'

_____

Marc Rosenblum

Deputy Assistant Secretary

Department of Homeland Security