# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:22-cv-01130 |
| | ) | |
| MERRICK GARLAND, | ) | |
| in his official capacity as Attorney | ) | |
| General of the United States, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 3

    A.   Plaintiffs' argument on the defintion of "Identify" is irrelevant to the disputes Plaintiffs raise with respect to the April 20 discovery requests. .............................3

    B.   Defendants did not make a blanket assertion of privilege.................................................4

    C.   Plaintiffs have served more than 25 interrogatories without the required leave of Court to do so.........................................................................................7

    D.   Defendants' ambiguity objections to requests for admission numbers 1 and 2 are valid ...............................................................................................10

    E.   Defendants' objections to discovery related to the merits of Plaintiffs' claims are valid.......................................................................................................11

    F.   Plaintiffs have not provided any explanation for why discovery related to any pause in applying the asylum processing IFR is relevant to their standing, or for why the discovery they have received on its implementation is inadequate ............12

    G.   The remainder of Plaintiffs' brief addresses arguments and issues that were previously briefed and resolved by the Court in motions related to the earlier rounds of discovery or that are otherwise irrelevant to the April 20 requests.................13

CONCLUSION.............................................................................................................. 16

## TABLE OF AUTHORITIES

### Cases

*Bar MK Ranches v. Yeutter*,
  994 F.2d 735 (10th Cir. 1993) ................................................................. 15

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ............................................................................... 12

*City of Dallas v. Hall*,
  No. 307-CV-0060, 2007 WL 3257188 (N.D. Tex. oct. 29, 2007) .......................... 15

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ........................................................................... 15

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
  315 F.R.D. 191 (E.D. Tex. 2016) .................................................................. 8

*Est. of Manship v. United States*,
  232 F.R.D. 552 (M.D. La. 2005) ............................................................... 8, 9

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ............................................................................... 12

*FTC v. Think All Pub., L.L.C.*,
  No. 4:07-CV-011, 2008 WL 687455 (E.D. Tex. Mar. 11, 2008) ............................ 8

*Heller v. City of Dallas*,
  303 F.R.D. 466 (N.D. Tex. 2014) ............................................................... 12

*In re U.S. Dep't of Homeland Security*,
  459 F.3d 565 (5th Cir. 2006) ............................................................... 15, 16

*King v. Univ. Healthcare Sys., L.C.*,
  No. CV 08-1060, 2008 WL 11353694 (E.D. La. Oct. 31, 2008) ...................... 10, 11

*Louisiana v. Becerra*,
  No. 3:21-CV-04370, 2022 WL 1716243 (W.D. La. May 16, 2022) ..................... 4, 6

*Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*,
  No. CV 19-11793, 2021 WL 4239080 (E.D. La. Mar. 16, 2021) .......................... 10

*Oceana v. Ross*,
  920 F.3d 855 (D.C. Cir. 2019) ................................................................. 15

*Perez v. Holder*,
   No. 2:12-CV-2924, 2015 WL 4094692 (W.D. La. Apr. 1, 2015).............................................. 4

*Stephens v. Fla. Marine Transporters, Inc.*,
   No. CV 12-1873, 2013 WL 12120393 (E.D. La. Feb. 21, 2013)............................................. 10

## Rules

Fed. R. Civ. P. 26(b)(1)............................................................................................................... 5

Fed. R. Civ. P. 33(a)(1)............................................................................................................... 7

## INTRODUCTION

On May 23, 2023, Plaintiffs filed a motion to compel related to Defendants' responses to Plaintiffs' third set of discovery requests, which were served on April 20, 2023. ECF No. 168-1 at 2. Much of Plaintiffs' motion is, however, actually a sur-reply related to the prior discovery requests and related motions, filed on the eve of the May 24, 2023 hearing on those motions, and requesting that, to the extent the Court granted any relief to Defendants on Defendants' motion to compel, that relief somehow also be "applied with equal force to Defendants' responses." *Id*. at 4; *see also id*. at 3-4; 11-15 (citing and responding to "Defendants' motion to compel ... Doc. 157"). The issues addressed in the Parties' earlier cross motions to compel about the earlier rounds of discovery were resolved by the Court's order on those motions. *See* ECF No. 170. Accordingly, those issues are moot to the extent Plaintiffs do not specifically relate them to the April 20, 2023 discovery requests on which Plaintiffs base their new motion to compel. Defendants focus this response on the issues Plaintiffs raise with Defendants' responses to those April 20 requests.

For the April 20 requests, Plaintiffs' motion (1) challenges objections to two requests for production (RFPs), (2) disputes that Plaintiffs have exceeded Rule 33's limit of 25 interrogatories, and, (3) challenges an objection to two requests for admission (RFAs). None of these arguments have merit.

Plaintiffs' April 20 third set of discovery requests include three additional requests for production. RFP 14 asks for "All documents related to the 'phased implementation' of the Asylum IFR," and RFP 15 asks for "All documents related to any pause in applying the Asylum IFR." *See* ECF No. 168-3 at 2. Plaintiffs' motion to compel addresses those two requests, RFP 14 and 15, but does not mention RFP 16. *See generally* ECF No. 168-1. Here, Plaintiffs challenge Defendants' objections to their definitions, Mot. at 5, objections to conducing burdensome additional searches

1

that are unlikely to lead to any additional producible information as outside the scope of discovery permitted under Rule 26, *id*. at 6, an objection to providing discovery related to the merits of Plaintiffs' claims rather than their standing, *id*. at 10, and, Defendants' statement that they were unable to locate any producible documents in response to RFP 15, *id*. at 11. For the reasons set out below, in each case there are good grounds for Defendants' position.

Plaintiffs' third set of discovery requests also include an additional 13 interrogatories. ECF No. 168-3 at 2-4.[1] Defendants contend that those interrogatories exceed the 25-interrogatory limit in the federal and local rules, and previously objected that Plaintiffs had reached that limit when responding to an earlier round of interrogatories Plaintiffs served. In their motion, Plaintiffs dispute that they have reached the 25-interrogatory limit. But because Rule 33 explicitly counts discrete subparts, Plaintiffs have already exceeded Rule 33's limit on interrogatories, and there is no basis to compel responses to interrogatories beyond that limit.

Finally, Plaintiffs' third set of discovery requests include an additional eight requests for admission. ECF No. 168-3 at 4-5. Plaintiffs' motion to compel challenges an objection Defendants made in response to RFA Nos. 1 and 2 based on some ambiguous language in those two requests. *See* ECF No. 168-1 at 9. There are good grounds for those objections and Defendants have, in any event, provided substantial information that will give Plaintiffs the answer to whatever questions they were attempting to ask with those two requests.

The remainder of Plaintiffs' motion raises general arguments about the earlier rounds of discovery that similarly lack merit.

For the reasons set out below, the Court should deny Plaintiffs' motion.

---

[1] Plaintiffs numbered these interrogatories 1 through 13, but they previously served a round of requests for production, interrogatories, and requests for admission in May 2022, and have not numbered their more recent requests sequentially to those earlier requests.

**ARGUMENT**

A.     **Plaintiffs' argument on the definition of "Identify" is irrelevant to the disputes Plaintiffs raise with respect to the April 20 discovery requests.**

Plaintiffs first argue that Defendants' objection to the definition of "Identify" is "meritless." Mot. 5-6. But this argument has no bearing on the present dispute. First, the Parties briefed their disagreements on providing identifying information about asylum seekers as part of the disputes on earlier rounds of discovery, and the Court has already resolved that dispute by ruling on what identifying information should be provided in what circumstances and the manner in which that information should be provided. *See* ECF No. 170. Second, the definition of "Identify" is irrelevant to the disputes on the current round of requests. With respect to the interrogatories, the dispute is to whether Plaintiffs have exceeded the number of interrogatories permitted by the federal and local rules—*i.e.*, a dispute over whether Defendants have to respond to those requests at all, rather than a dispute about providing identifying information. As noted above, Plaintiffs otherwise raise issues with RFPs 14 and 15, and RFAs 1 and 2. None of those requests use the word "Identify" or ask Defendants to provide identifying information about asylum seekers.

In any case, Plaintiffs' argument is also incorrect. Plaintiffs argue that Defendants have taken inconsistent positions on providing identifying information in this case and in the Texas case challenging the same asylum processing IFR. Mot. at 5. Texas did not, however, ask for the same personal identifiable information that Plaintiffs in this case have sought. *See* ECF No. 168-4. Texas noted in the Definitions section of their requests that "Requests to *identify* persons do not request personal information that would be protected from disclosure by federal law." *Id*. at 2. Defendants thus did not need to object to providing that information because Texas did not request it.

**B.      Defendants did not make a blanket assertion of privilege.**

Plaintiffs next argue that Defendants have improperly invoked the deliberative process privilege "in blanket fashion" in response to RFPs 14 and 15, which seek documents related to the "phased implementation" of the asylum processing IFR and "any pause in applying" the IFR. Mot. at 6-7. Plaintiffs misunderstand the nature of Defendants' objections.

In response to RFP Nos. 14 and 15, Defendants noted that, to the extent that these requests could be construed as extending to internal agency communications and deliberations on implementation of the IFR, collecting and reviewing such internal agency documents would be burdensome and thus disproportionate to the needs of this case. That is because any internal, pre-decisional agency deliberations or communications on how to implement the IFR would be subject to the deliberative process privilege. "The deliberate process privilege covers communications that are pre-decisional and deliberative," leading up to "any final agency decisions on the relevant matter," when "the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Louisiana v. Becerra*, No. 3:21-CV-04370, 2022 WL 1716243, at *5 (W.D. La. May 16, 2022); *see also Perez v. Holder*, No. 2:12-CV-2924, 2015 WL 4094692, at *5 (W.D. La. Apr. 1, 2015). Thus, if Defendants were required to search through agency email and communications for all potentially responsive documents, the likely result would be a lengthy and burdensome process of collecting and logging documents in service of providing a privilege log but no actual information that is useful to the litigation. Accordingly, Defendants objected in response to RFPs 14 and 15 to the extent these requests: "extend to internal agency communications or deliberations on implementation of the rule," because "[i]nternal agency deliberations are privileged, and searching for, collecting, and reviewing such documents would be disproportionate to the needs of the case given that such a search would likely yield little to no

4

producible information, nor would it aid in resolution of Plaintiffs' standing in this matter." ECF No. 168-6 at 4-5.

Under Rule 26, discovery is generally permitted "[u]nless otherwise limited by court order" on "any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Here, whatever the burden ultimately would be to collect, review, and create a privilege log for deliberative internal agency documents, that burden easily outweighs the benefit since there is likely no benefit whatsoever. The likely outcome is that such a search would lead to no information that could be disclosed to Plaintiffs, placing a potentially substantial burden on Defendants for no benefit to Plaintiffs or the case. Plaintiffs have not explained why such a search is necessary or proportional to the needs of the case, and their motion to compel does not address this issue whatsoever.

Proportionality must also be judged in the context of the other information that has been produced and by whether there are less burdensome means of obtaining the same or similar information. Fed. R. Civ. P. 26(b)(1) (noting courts should consider "the importance of the issues at stake in the action, … the parties' relative access to relevant information, … the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" when assessing proportionally and the needs of the case); Advisory Committed Notes to 2015 Amendments (explaining that the proportionality language "is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse"). If Plaintiffs seek information on where and how frequently the asylum processing rule is being implemented, Defendants have provided documents and information on the planned phased implementation of the IFR, as well as documents and information on the actual implementation, locations, and numbers of cases processed under the rule in response to Plaintiffs' other discovery

requests. Plaintiffs have not explained why an additional burdensome and likely fruitless search of internal agency communications related to how the agency considered implementing the rule is necessary when Defendants are producing and have produced information on how the rule *actually* has been implemented.

"The deliberative process privilege rests upon the same understanding that motivated the Framers of the Constitution in Philadelphia: if agencies were to operate in a fishbowl, the frank exchange of ideas and opinions would cease, and the quality of administrative decision would consequently suffer." *Becerra*, 2022 WL 1716243, at *5. "The deliberate process privilege reflects the position that agency officials should be judged by what they decided, not for matters they considered before making up their minds." *Id*. Since Defendants have produced information showing the actions the agency actually took, requiring Defendants to search for, collect, and log privileged deliberations leading up to those decisions is clearly disproportionate to the needs of this case.

Finally, Defendants note that Plaintiffs raised a similar objection in response to Defendants' discovery requests:

> Plaintiff States assert that documents not transmitted outside the Office of the Attorney General of Louisiana, the Louisiana Department of Justice, the Office of the Attorney General of Florida, and the Florida Department of Legal Affairs, are categorically privileged under the attorney client privilege, work product doctrine, and/or deliberative process privilege, and that requiring Plaintiff States to search for, review, and prepare a log of such documents is not proportional to the needs of the case because those agencies were acting as counsel for Plaintiff States. Plaintiff States will neither search for nor prepare a log of such internal documents.

*See* ECF No. 157-2 at 2. Plaintiffs have thus taken the same position when responding to Defendants' requests on searching sources that would likely be entirely privileged and yield no producible documents.

**C.**   **Plaintiffs have served more than 25 interrogatories without the required leave of Court to do so.**

In response to Plaintiffs' latest set of interrogatories, Defendants objected that Plaintiffs had already exceeded the limit in Federal Rule of Civil Procedure 33(a)(1), which limits the parties to 25 written interrogatories, "including all discrete subparts." Fed. R. Civ. P. 33(a)(1); *see also* Local Rule 33.1. Defendants had previously objected to Plaintiffs' first set of interrogatories that the first set alone exceeded the 25-interogatory limit when counting discrete subparts. *See* ECF No. 168-9 at 10-11. Counting discrete subparts, Plaintiffs served 30 interrogatories on Defendants in that first round of discovery. *See* Local Rule 33.1 ("Each sub-part of an interrogatory shall count as an additional interrogatory."). No party is permitted to "serve on any other party more than 25 interrogatories in the aggregate without leave of court." Local Rule 33.1.

Plaintiffs argue that they have not exceeded the 25-interogatory limit. Mot. at 7-9. They assert that "Defendants have failed to extend Plaintiff States the courtesy of explaining the basis for their calculation," but then correctly identify the explanation Defendants provided to them, "that Interrogatory No. 8 consists of 20 discrete subparts." Mot. at 8 (citing Defendants' response to Interrogatory No. 8, ECF No. 168-9 at 10-11).[2] This dispute thus turns on whether the following interrogatory contains discrete subparts, as Defendants maintain, or is one interrogatory, as Plaintiffs argue:

> **INTERROGATORY NO. 8**
> IDENTIFY monthly statistics (e.g., counts) for each fiscal year since 2005 about the following, both nationwide and for applicants in the State of Arizona:
> a.   AFFIRMATIVE ASYLUM CLAIMS

---

[2] If Plaintiffs really were unclear about the basis for Defendants' objection, Plaintiffs could have conferred with Defendants before filing a motion. Plaintiffs demanded that Defendants make themselves available for a meet and confer during a 2-hour time window on May 23, when multiple counsel for Defendants where in transit to Louisiana for the hearing the following day on the prior motions to compel. *See* ECF No. 168-7 at 1. When Defendants noted that they were unavailable at that time for that reason, Plaintiffs filed their motion without first conferring.

b. DEFENSIVE ASYLUM CLAIMS

c. Positive CREDIBLE FEAR DETERMINATION by AOs

d. Negative CREDIBLE FEAR DETERMINATION by AOs

e. ASYLUM CLAIMS filed after a positive CREDIBLE FEAR DETERMINATION by AOs

f. Positive CREDIBLE FEAR DETERMINATION by IJs

g. Negative CREDIBLE FEAR DETERMINATION by IJs

h. ASYLUM CLAIMS filed after a positive CREDIBLE FEAR DETERMINATION by IJs

i. Grant of AFFIRMATIVE ASYLUM CLAIMS by IJs

j. Denial of AFFIRMATIVE ASYLUM CLAIMS by IJs

k. Grant of DEFENSIVE ASYLUM CLAIMS by IJs

l. Denial of DEFENSIVE ASYLUM CLAIMS by IJs

m. Grant of AFFIRMATIVE ASYLUM CLAIMS by AOs

n. Denial of AFFIRMATIVE ASYLUM CLAIMS by AOs

o. Grant of DEFENSIVE ASYLUM CLAIMS by AOs

p. Denial of DEFENSIVE ASYLUM CLAIMS by AOs

q. BIA appeals filed by aliens denied an ASYLUM CLAIM, where the initial CREDI-BLE FEAR DETERMINATION was approved by an AO, and statistics about how the BIAs disposed of the appeals

r. BIA appeals filed by aliens denied an ASYLUM CLAIM, where the initial CREDI-BLE FEAR DETERMINATION was approved by an IJ, and statistics about how the BIAs disposed of the appeals

s. Asylum claimants paroled while awaiting further consideration or proceedings

t. Asylum claimants released on bond while awaiting further consideration or proceed-ings.

ECF No. 168-9 at 10. Plaintiffs argue that these subparts are logically and factually subsumed within the primary question and should not be counted as separate interrogatories, citing two out-of-district cases. Mot. at 8-9 (citing *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co*., 315 F.R.D. 191, 196 (E.D. Tex. 2016), and *Est. of Manship v. United States*, 232 F.R.D. 552, 555 (M.D. La. 2005)). Neither of these cases support Plaintiffs' position.

The district court in *Eli Lilly* explained, as many courts have similarly concluded, that "where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed" within it. 315 F.R.D. at 196 (quoting *FTC v. Think All Pub., L.L.C.*, No. 4:07-CV-011, 2008 WL

687455, at *1 (E.D. Tex. Mar. 11, 2008), and collecting similar cases). That is the case here. For example, Plaintiffs asked in 8.a for the "monthly statistics (e.g., counts) for each fiscal year since 2005" for "affirmative asylum claims." This request relates to asylum claims filed with USCIS, and can be answered without answering the entirely separate question in 8.b about defensive asylum claims, which are filed in the immigration courts, are part of a separate agency, and involve an entirely separate set of statistics. And the answers to those questions can be provided fully and completely without answering the requests Plaintiffs served under Interrogatory No. 8 related to credible fear determinations by asylum officers; asylum claims filed after positive credible fear determinations; credible fear determinations by immigration judges; asylum claims filed after positive credible fear determinations by immigration judges; decisions on affirmative asylum claims by immigration judges; decisions on defensive asylum claims by immigration judges; decisions on affirmative asylum claims by asylum officers; decisions on defensive asylum claims by asylum officers; appeals to the Board of Immigration Appeals in various circumstances; statistics on parole; and, statistics on bonds. *See* Interrogatory No. 8.c-8.t. These are not subparts that seek details about or subcategories of the information sought in a preceding request—they are entirely separate requests seeking separate buckets of information.

*Estate of Manship*, the other case Plaintiffs cite, similarly supports the conclusion that subparts that ask questions such as those in Interrogatory No. 8 that can, and must, be answered independently, count as discrete subparts and thus separate interrogatories. "In making this determination, the Court should decide whether the first question is primary and subsequent questions are secondary to the primary question; or whether the subsequent question could stand alone and is independent of the first question?" 232 F.R.D. at 554-55. The latter is the case here. Each subpart of Interrogatory No. 8 could stand alone as its own interrogatory, and as explained,

must stand alone because each asks for different categories of information about different categories of individuals or actions, and separate statistics related to asylum officers under USCIS, the immigration courts, and statistics from the Board of Immigration Appeals.

A "party cannot evade the 25 interrogatory limit through the use of 'subparts' that seek information about discrete separate subjects." *Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 19-11793, 2021 WL 4239080, at *3 (E.D. La. Mar. 16, 2021). When "a party has propounded excessive interrogatories," the responding party may respond to "the 'first' 25 Interrogatories which constitute discrete questions, and strike the rest." *Stephens v. Fla. Marine Transporters, Inc.*, No. CV 12-1873, 2013 WL 12120393, at *3 (E.D. La. Feb. 21, 2013) (collecting cases). That is what Defendants did here with respect to the additional round of interrogatories Plaintiffs served, all of which were beyond the 25-interogatory limit Plaintiffs hit with the first round of interrogatories they served. Plaintiffs have not moved for leave to seek more than 25 interrogatories in this case, and there would be no basis to do so here. *King v. Univ. Healthcare Sys., L.C.*, No. CV 08-1060, 2008 WL 11353694, at *2 (E.D. La. Oct. 31, 2008) (party seeking to serve more than 25 interrogatories must first seek leave and must show "particularized showing of need").

**D.    Defendants' ambiguity objections to requests for admission numbers 1 and 2 are valid.**

Plaintiffs' request for admission number 1 asked Defendants to admit that: "At least one alien 'with an intent to reside in or near … New Orleans, LA' has been processed pursuant to the Asylum IFR." ECF No. 168-6 at 14. Plaintiffs' second request for admission asked the same question with respect to Miami, FL rather than New Orleans. *Id*. In both cases Defendants objected to the phrase "has been processed pursuant to the Asylum IFR" as ambiguous. *Id*. Defendants did so because it is genuinely unclear in these requests whether Plaintiffs are asking whether anyone

10

has begun the process set out in asylum processing IFR in these two locations, or whether they are seeking answers to whether anyone has actually completed the process set out in the IFR and had their asylum claim decided under the rule. With respect to New Orleans, this distinction is particularly important because the IFR has largely had no effect on Louisiana, and at the time Defendants responded there were no individuals who had expressed an intent to travel to New Orleans who had had their claim decided under the rule. In contrast, for Florida, in addition to objecting, Defendants also responded by stating that "Defendants admit that some noncitizens are having their claims considered under the procedures set forth in the Asylum Processing IFR by the Miami asylum office or the Miami Immigration Court." *Id*.

In any event, Defendants have also provided information in response to Plaintiffs' other requests setting out the number of cases pending in each location under the rule, the number of decisions, and the type of decisions, which should provide Plaintiffs with the answers they seek regardless of how these questions are construed. This detailed information about actual implementation and results under the IFR answers whatever question Plaintiffs intended to target with these somewhat vague requests.

## E.     Defendants' objections to discovery related to the merits of Plaintiffs' claims are valid.

Plaintiffs next argue that Defendants improperly objected to RFPs 14 and 15 to the extent those requests sought discovery related to the merits of Plaintiffs' claims. Mot. at 10.[3] Plaintiffs cite *Baker v. Walters* for the proposition that Defendants should have submitted affidavits explaining why the requests are overbroad. *Id*. (citing 2023 WL 424788). The question here is, however, not a question of burden or some other issue on which Defendants would have evidence

---

[3] Plaintiffs' motion refers to "RFA Nos. 14 & 15," Mot. at 10, but Defendants assume they mean RFPs 14 and 15 based on the nature of Plaintiffs' arguments and because Plaintiffs third set of discovery requests did not include RFAs with those numbers.

or information that could be provided through affidavits to explain why discovery related to the merits of Plaintiffs' claims is overbroad. The issue here is the nature of the claims and the scope of discovery the Court ordered in this case. Plaintiffs in this case raised claims under the APA. *See* ECF No. 86. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Extra-record evidence is appropriate here only to assess Plaintiffs' standing to bring these claims, not to resolve the merits of those claims. Thus, the Court ordered only "jurisdictional discovery" related to Plaintiffs' alleged Article III standing based on "the effect of the IFR on certain discrete programs in the states of Louisiana and Florida." ECF No. 98. Any discovery targeted instead at the merits of the asylum processing IFR is thus overbroad and beyond the scope of the discovery the Court ordered.

**F.     Plaintiffs have not provided any explanation for why discovery related to any pause in applying the asylum processing IFR is relevant to their standing, or for why the discovery they have received on its implementation is inadequate.**

Plaintiffs next challenge the assertion that Defendants have been unable to locate any nondeliberative documents in response to RFP No. 15, which seeks "All documents related to any pause in applying the Asylum IFR." Mot. at 11; 168-6 at 5. Agency counsel for the Defendant agencies have searched for any nonprivileged documents addressing any pause in implementation of the asylum processing IFR and have represented to undersigned counsel that they have not found any such documents. Plaintiffs have not identified any reason or basis to doubt that position. *See, e.g.*, *Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014) ("The fact that a party may disbelieve or disagree with a response to a discovery request … is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect."). Moreover, it is unclear how this request relates to Plaintiffs' standing

to bring their claims. If Plaintiffs are seeking information on how many individuals are being processed under the asylum processing IFR each month in Florida and Louisiana, Defendants have already provided that information to Plaintiffs in response to their other requests.[4] Since Plaintiffs are already in possession of actual implementation data for the asylum processing rule, it is unclear what additional information they seek under this request that would be relevant to their standing.

**G.     The remainder of Plaintiffs' brief addresses arguments and issues that were previously briefed and resolved by the Court in motions related to the earlier rounds of discovery or that are otherwise irrelevant to the April 20 requests.**

Plaintiffs devote the remainder of their brief largely to responding to issues raised in Defendants' motion to compel. *See* Mot. 11-14. These arguments do not relate to the April 20 requests on which their motion seeks to compel additional information.

Plaintiffs first argue again that State Attorneys General representing State agencies in litigation do not have to respond to discovery requests seeking information from State agencies identified in the complaint. Mot. at 12. The Court has already resolved that issue at the hearing on May 24, 2023. *See also* ECF No. 170. Plaintiffs point to no responses from Defendants where this was an issue, which is unsurprising because Defendants did not make any similar argument in response to Plaintiffs' requests about custody of documents from relevant agencies. *See* Mot. at 12.

Plaintiffs next argue that Defendants have not explained whether documents are being withheld on the basis of their objections and that Defendants have made improper categorical assertions of privilege. Mot. at 12-13. This is incorrect. Plaintiffs cite discovery requests that

---

[4] USCIS has also disclosed this information publicly, and has updated the publicly available information on the number of individuals processed under the IFR each month, broken down by location, with information on the outcome of those proceedings, as additional months of data become available. *See* https://www.dhs.gov/immigration-statistics/special-reports/asylum-processing-rule-report.

Defendants objected to as outside the scope of discovery or that seek information that would be too burdensome to search for and collect. Mot. at 12. These are not requests where the discovery requested was within the scope permitted by Rule 26 or the Court's order authorizing limited discovery on standing, such that Defendants searched for and collected those documents but ultimately withheld certain documents on the basis of privilege. In that case Defendants do not dispute that disclosing whether any documents were withheld based on privilege objections would be necessary. And, where that situation arose, Defendants did disclose that information. *See, e.g.*, 168-9 at 23, 24, 26, 30, 31 (noting "Defendants are not withholding any documents on the basis of privilege"); *id*. at 25, 27 (noting "Defendants are withholding responsive documents on the basis of law enforcement privilege. A privilege log will be produced."); Exhibit 1 at 6, 8, 10, 12, 20 (noting "Based on privacy and asylum confidentially restrictions, Defendants are withholding names of applicants but are otherwise not withholding documents based on the objections above.").[5] Plaintiffs' arguments all relate to either requests that were outside the scope of discovery permitted under Rule 26 and ordered by the Court, in which case no search for documents was required to begin with, or to responses that were revised when Defendants completed their search for responsive documents and served updated responses.

Plaintiffs' arguments about categorical privilege assertions fail for similar reasons. As noted above, Defendants did not invoke categorical privilege assertions. *See supra* at 3-6. Plaintiffs also appear to argue that Defendants should have provided discovery related to the administrative

---

[5] Plaintiffs attached as Exhibit 8 to their motion Defendants' initial responses to Plaintiffs' second set of discovery requests, which Defendants provided on March 24, 2023. ECF No. 168-10. As those responses note, Defendants were still in the process of searching for responsive documents and planned to serve revised responses and objections once that search was complete, as the Parties had agreed. *Id*. at 1. Plaintiffs did not attach or acknowledge the revised responses and objections Defendants served on April 24, 2023. *See* Ex. 1.

record on the same basis, Mot. at 13, but discovery into the administrative record would not fall under the jurisdictional discovery the Court authorized on Plaintiffs' standing, and Plaintiffs have otherwise not met, or even attempted to meet, the high standard required to seek discovery into an administrative record. *See, e.g.*, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019); *Oceana v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019); *City of Dallas v. Hall*, No. 307-CV-0060, 2007 WL 3257188, at *4 (N.D. Tex. oct. 29, 2007) (citing *Bar MK Ranches v. Yeutter*, 994 F.2d 735, 740 (10th Cir. 1993)).

Plaintiffs next argue that Defendants improperly invoked the law enforcement privilege for portions of agency manuals. Mot. at 13. Defendants stand by the position that information about law enforcement procedures which might reveal sensitive law enforcement case handling techniques that could undermine border and national security if disclosed may be subject to the law enforcement privilege. *See, e.g.*, *In re U.S. Dep't of Homeland Security*, 459 F.3d 565, 568-69 (5th Cir. 2006) (noting that "such a privilege should have been recognized" in a case involving "law enforcement methods and techniques" particularly where "production of government documents could impact sensitive matters relating to national security"); *see also id*. n.2 (discussing "investigative techniques and sources"). However, as Defendants previously informed Plaintiffs, Defendants are evaluating whether additional portions of these manuals have been released or can be released, and anticipate providing a revised production to the extent this information has been previously disclosed.

Plaintiffs also argue that Defendants failed to provide metadata with some documents that were produced. Mot. 14. As Defendants have explained, part of the issue is that some of the information that was produced did not exist prior to Defendants extracting, compiling, and producing that information to Plaintiffs so those documents will have limited metadata. Defendants

did not intentionally remove metadata before producing documents. Moreover, Plaintiffs' actual complaint appears to be that they want "the names of document authors," *id*. but at no point, either in the Parties' discussions or in their motion have Plaintiffs provided an explanation for how providing document authors relates in any way to their standing to bring this suit.

Finally, Plaintiffs complain that Defendants have not labelled or organized responsive documents. Mot. at 14. This is simply incorrect. Defendants identified in their responses the responsive documents that were produced in a manner that makes clear which documents correspond to which request by providing either names of documents and sources of information, or Bates numbers. *See, e.g.*, ECF No. 168-9 at 25-27, 30-32; Ex. 1 at 5-6, 8, 10, 12, 13, 17-20.

## <u>CONCLUSION</u>

For these reasons, the Court should deny Plaintiffs' motion.

Date: June 13, 2023                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       *Principal Deputy Assistant Attorney General*

                                       WILLIAM C. PEACHEY
                                       *Director*
                                       Office of Immigration Litigation
                                       District Court Section

                                       EREZ REUVENI
                                       *Assistant Director*

                                       Elissa Fudim
                                       Erin Ryan
                                       *Trial Attorneys*

                                       /s/ *Brian C. Ward*
                                       BRIAN WARD
                                       *Senior Litigation Counsel*
                                       U.S. Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC 20044
                                       Tel.: (202) 616-9121
                                       Email: brian.c.ward@usdoj.gov