UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **STATE OF ARIZONA**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **MERRICK GARLAND**, *et al.*, <br><br> Defendants. | No. 6:22-CV-01130 <br><br> Judge David C. Joseph <br><br> Magistrate Judge Carol B. Whitehurst |

### STATES' REPLY SUPPORTING SECOND MOTION TO COMPEL

"[T]he tide of illegal immigration has been dramatically increasing" under DHS's present leadership. *Texas v. Biden (Border Wall)*, 2023 WL 4044448, at *6 (5th Cir. June 16, 2023). So it is unsurprising that DHS[1] has refused to fully cooperate in jurisdictional discovery aimed at answering the commonsense question whether a single State has likely spent, or will likely soon spend, a single dollar as a result of the Asylum IFR. So too is it unsurprising that—as the Court has observed—DHS apparently designed "[a] lot" of its discovery "to create headache for the [S]tates." Doc. 175, 5/23/23 Hrg. Tr. at 43:6–10. It is that approach to discovery that culminated in the States' second motion to compel.

The States' second motion to compel was part protective and part affirmative. It was protective insofar as it needed to be filed by midnight on May 23—before the then-close of discovery—to preserve the States' objection to any asymmetrical interpretation of the parties' discovery obligations. The need to protectively file additionally arose from the fact that DHS wouldn't voluntarily conform its discovery to positions DHS had taken in its own motion to compel. The protective portions of the States' second motion to compel—Sections II(A)–(E)—have necessarily been resolved by the Court's May 24 discovery rulings, which confirmed the parties' discovery obligations are indeed reciprocal.

But the affirmative portions remain live. After all, federal agencies are "not exempt from the rules of discovery." *CFPB v. Brown*, 2023 WL 3939432, at *1 (11th Cir. June 12, 2023). But DHS seems to think that it is an exception. Among other examples, DHS's approach to its jurisdictional discovery responses has required the States to play a game of whack-a-mole: when the States reveal one objection to be unfounded, DHS conjures up another one (or some new explanation) to avoid a full and fair response. Most critically, however, DHS has declined to respond to discovery aimed at uncovering the full factual and legal basis for DHS's standing arguments. Fifth Circuit precedent requires disclosure of all of that information—either now or later, in response to an additional round of discovery tailored to DHS's actual motion to dismiss. *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981).

---

[1] The States refer to the federal defendants collectively as "DHS."

1

### I. The Court's May 24 Rulings Defeat DHS's Objection to the Definition of "Identify."

The Court compelled DHS to do what it should've done all along—produce[2] alien names, dates of birth, addresses, and A-numbers in response to RFP Nos. 4, 5, 6. Doc. 170 at 1 & Doc. 175, 5/23/23 Hrg. Tr., at 5, 30. That order defeats DHS's confidentiality-regulation-based objection to the definition of "identify." Doc. 168-6 at 2–3. The remaining objections are that the definition is "overbroad" and "unduly burdensome." *Id.* at 4–5. But DHS offered zero evidence to support those objections in its certified discovery responses. *Id.* Nor in the response brief that it had a full 21 days to write.[3] Doc. 174. If DHS wanted to stand on those objections, DHS had to offer evidence supporting them. *Heller v. City of Dall.*, 303 F.R.D. 466, 485 (N.D. Tex. 2014). But it didn't. So the objections never should've been lodged. FED. R. CIV. P. 26(g)(1)(B); *id.* 26(g)(3). And DHS should be compelled to answer any discovery it hasn't answered based on the objections. If DHS isn't withholding anything based on these unfounded objections, DHS should say so—saving the States' (and the Court's) time.[4]

### II. The Court's May 24 Rulings Resolve the Reciprocity Problem.

The States moved to compel protectively to ensure the Court's interpretation of the States' discovery obligations would also apply to DHS. Doc. 168-1 at 15–18. The States generally understand that the Court has ruled that the same discovery obligations apply to the parties. Docs. 170 & 175. More specifically, the States understand that the Court has (1) endorsed the goose–gander/reciprocity

---

[2] Subject to a to-be-negotiated protective order.

[3] By contrast, the States had under *27 hours* to draft and file their second motion to compel (and in so doing preserve their right to discovery) before the then-close of discovery on May 23, given DHS's decisions to (1) wait over two weeks before offering any serious, substantive response to the States' requests to confer on reciprocity issues, Doc. 168-8 at 8–11, and (2) delay delivering its deficient discovery responses until 9:14 p.m. CDT the night before the close of discovery, Doc. 168-7 at 2.

[4] DHS's only real rejoinder is that its unfounded objections are now "irrelevant." Doc. 174 at 7. Not so. They remain relevant unless and until DHS confirms it's not withholding anything based on them. And DHS's decision to lodge undue-burden and overbreadth objections with zero support for them reflects a bigger, still-relevant problem: DHS's penchant for conducting discovery in a manner designed purely "to create headache for the [S]tates." Doc.175, 5/23/23 Hrg. Tr. at 43:6–10.

principle; (2) denied DHS's motion insofar as it sought to compel the States to further elaborate on whether documents were being withheld based on privilege or some other objection; (3) denied DHS's motion insofar as it challenges the States' assertion of privilege over documents internal to the States' law firms; (4) denied DHS's motion insofar as it requests that the States be compelled to further label or organize responsive documents; and (5) denied any request by DHS to require the States to search for and/or recreate any metadata. Accordingly, if the States' understanding of these rulings is correct, then the reciprocity issues protectively raised in sections II(B)–(E) of the States' second motion to compel (Doc. 168-1 at 16–20) have been resolved and do not require the Court's further attention.

That leaves Section II(A) of the States' motion, which aimed to ensure that the same interpretation of agency control applies to all parties. Doc. 168-1 at 16. The States understand that the Court has ruled that Louisiana and Florida must "produce any responsive, non-privileged documents from state agencies relied upon . . . to show Article III standing." Doc. 170 at 2. Louisiana disagrees with that ruling and reserves its right to seek further review of it. The States understand, however, that the Court has also ruled that DHS must abide by the same general principle—i.e., that the States are entitled to ask "the Executive Branch" to search for and produce standing-related documents from "the Unitary Executive Branch." Doc. 175, 5/25/23 Hrg. Tr., at 40:18–22. If the States' understanding is correct, then the reciprocity issue protectively raised in section II(A) of the States' second motion to compel (ECF 168-1 at 16) has been resolved and does not require the Court's further attention.

### III. DHS Can't Withhold Jurisdictional Discovery Based On DHS's Unreviewable Speculation That Such Discovery "May" Also Relate to the Merits.

DHS's response confirms that it thinks it can withhold jurisdictional discovery based on its unreviewable determination that responsive documents "may" also relate to the merits. Doc. 174 at 15–16. But that can't be right, and it isn't. "Simply because the discovery requested may reveal facts relevant to both jurisdiction and the merits does not preclude that discovery from being jurisdictional in nature." *In re Cathode Ray Antitrust Litig.*, No. C-07-5944, 2018 WL 4775595, at *4 (N.D. Cal. 2018).

3

Where the documents withheld "are peculiarly likely to impact" the merits and jurisdiction, "an order requiring full production is necessary." *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1151 (N.D. Ill. 1979). That's for an obvious reason: withholding based on a merits-versus-jurisdiction distinction "will likely involve the unreviewable discretion of the party segregating and withholding[.]" *Id.* And here, placing that unreviewable discretion in the hands of a party with DHS's recent "track record" would prove particularly problematic. *Florida v. United States*, 2023 WL 3813774, at *2 (11th Cir. June 5, 2023).

The first set of documents sought relate to a widely reported "pause" in applying the Asylum IFR.[5] Doc. 168-6 at 7. DHS says those documents "may" be relevant to the merits. *Id.* But they're also relevant to standing. That's because the "pause" confirms the Asylum IFR is doing precisely what the States have said all along—it's "increas[ing] asylum processing at the border" by way of an asylum-officer-screening process that is "more quickly adjudicating asylum cases," and in turn causing at least one additional alien to reside in at least one Plaintiff State. *Owen*, *supra* n.5. That the Biden Administration thought it had to "pause" its signature asylum policy to cope with the uptick in asylum applications expected to accompany Title 42's expiration is itself evidence that the Asylum IFR is causing an increase in alien migration to Plaintiff States. And the "resource constraints" DHS's counsel pointed to as justifying the "pause" during the Court's untranscribed May 24 status conference confirm that logic. In any event, it's common sense: If the Asylum IFR were decreasing (or even keeping constant) the net number of alien migrants, there'd be no need to "pause" the Asylum IFR as Title 42 expired. Documents related to this "pause" are thus relevant to standing.[6] And the Court shouldn't allow DHS to withhold those documents based on DHS's exercise of its unreviewable discretion.

---

[5] *See, e.g.*, Quinn Owen, *Biden Admin Pauses Asylum Processing Changes for Migrants at Border*, ABC News (Apr. 12, 2023), https://abcnews.go.com/Politics/biden-admin-pauses-asylum-processing-migrants-border/story?id=98543305.

[6] DHS's relevance complaints are thus meritless. Doc. 174 at 12–13. Besides, it was DHS's burden—as the party resisting discovery—to "show specifically" how documents related to the pause were not relevant. *McLeod, Alexander, Powel & Apfel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). DHS has not—and cannot—carry that burden.

The same is true of the States' request for documents related to DHS's phased implementation of the Asylum IFR. Doc. 168-6 at 5-6. DHS has again objected in part on the ground that responsive documents "may" relate to the merits. *Id.* But that is no basis to withhold; the phased implementation of the Asylum IFR is also relevant to standing. As DHS itself confirms, "[i]mplementation is taking place in a phased manner, beginning with a small number of individuals, and will grow as USCIS builds operational capacity over time." Department of Homeland Security, *Fact Sheet: Implementation of the Credible Fear and Asylum Processing Interim Final Rule* (May 26, 2022).[7] Documents related to that phased implementation are relevant insofar as they reveal how implementation has occurred, or is occurring, in Louisiana and in Florida. That information will shed light on the standing-related question whether a single alien migrant has or will soon enter Louisiana and Florida under the Asylum IFR and so predictably cause at least one of those States to spend at least one additional dollar.

In sum, the Court should reject DHS's objections based on its unreviewable determination that documents "may" relate to the merits versus jurisdiction. And if DHS isn't actually withholding anything based on that unreviewable determination, the Court (again) should compel DHS to say so.

### IV. DHS May Not Blanketly Assert the Deliberative-Process Privilege to Avoid Producing Any Documents Related to the Pause in Applying the Asylum IFR.

DHS insists it hasn't blanketly asserted deliberative-process privilege in response to RFPs 14 & 15. Doc. 174 at 9–10. And even if it has, DHS says, it's no harm, no foul because the States have done the same thing. *Id.* at 10. But—in DHS's own words—such arguments amount only to "finger pointing and blame shifting on this issue in [an] attempt to avoid accountability." Doc. 157-1 at 22 n.13 (DHS's own motion to compel). And DHS is wrong on both counts in any event.

On the first count, the relevant portion of DHS's objection speaks for itself:

> Defendants also object that this request *might extend to internal agency communications or deliberations on implementation of the rule.* Internal agency deliberations are privileged, and searing for, collecting, and reviewing such documents would be disproportionate to

---

[7] https://bit.ly/449AGvS.

>the needs of the case given that such a search would likely yield little to no producible information, nor would it aid in resolution of Plaintiffs' standing in this matter.

Doc. 168-6 at 5-6 (emphasis added). That objection bears all the hallmarks of an improper blanket assertion of privilege: it is asserted over an undifferentiated group of unidentified documents, and it contains none of the information Rule 26(b)(5)(A) requires. *See Heller*, 303 F.R.D. at 486. Neither the Court nor the States know if documents have been withheld, which documents, how many such documents, etc., and neither the Court nor the States can evaluate DHS's assertions of privilege.

On the second count, DHS is wrong to say the States have invoked the deliberative-process privilege in anywhere near the same manner DHS has. Take RFP 15 for example. Responding to it, DHS claims it has "not identified any relevant non-deliberative documents" related to the pause in applying the Asylum IFR. Doc. 168-6 at 7. DHS won't say whether it's withholding responsive documents related to the pause based on the deliberative-process privilege. *Id.* at 6–7. But presumably it is, because it hasn't denied the existence of the pause. *Id.* at 6–7. The upshot of DHS's position is that it thinks it may blanketly withhold an entire category of relevant, responsive documents evidencing the Administration's pause of its signature immigration policy without providing any explanation.

DHS's only remaining rejoinder is that conducting a reasonable search would be "clearly disproportionate to the needs of the case." Doc. 174 at 10. There are two problems with this argument. First, it's not supported by any evidence. *See Deutsche Bank Nat'l Tr. Co. as Tr. for Ameriquest Mortg. Sec. Inc. v. Pink*, No. 7:18-CV-00020-O-BP, 2019 WL 399533, at *5 (N.D. Tex. Jan. 31, 2019) (O'Connor, J.) ("[A] party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." (internal citations and quotation marks omitted)); *see also id.* ("Plaintiff has not produced any affidavits or other evidence supporting its proportionality objections. Accordingly, the Court finds that the Plaintiff has not met its burden to resist Defendants' discovery."). And second, it rests entirely on DHS's unreviewable say so. On the latter point, respectfully, DHS's representations "ring somewhat

Case 6:22-cv-01130-DCJ-CBW Document 176 Filed 06/19/23 Page 8 of 12 PageID #: 7852


hollow on this record, considering the Department's track record" of struggling to conform its in-court representations to reality. *Florida*, WL 3813774, at *2. "Given" that "track record," the States—like the Eleventh Circuit—may properly view "DHS's latest claims . . . with some skepticism." *Id.*

Finally, "[t]he point" of the deliberative-process privilege "is not to protect Government secrecy pure and simple." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001). The privilege protects only "predecisional materials reflecting deliberative or policy-making processes, but not materials that are purely factual." *Skelton v. U.S. Postal Service*, 678 F.2d 35, 38 (5th Cir. 1982). But "Government secrecy pure and simple" is the only apparent point of DHS's objection: its blanket invocation of the privilege shrouds from discovery even the "purely factual" information that surely accompanies this Administration's decision to "pause" its signature asylum policy. *See id.*

**V. DHS Must Disclose the Full Factual and Legal Basis for All of Its Standing Arguments—Either Now, In Response to the States' Interrogatories, or Later, In Response to a Round of Discovery Tailored to DHS's Actual Motion to Dismiss.**

DHS says ROG 8 equals 20 separate ROGs.[8] Doc. 174 at 11–14. That's wrong for the reasons given in the States' opening brief. Doc. 168-1 at 11–13. But even if the Court thinks ROG 8 somehow does equal 20 separate ROGs, the States are still owed the discovery DHS now refuses to answer; the only question is *when* the Court will require DHS to provide that discovery—now or in response to an additional round of discovery tailored to DHS's to-be-filed Rule 12(b)(1) motion. *See McAllister v. F.D.I.C.*, 87 F.3d 762, 766 (5th Cir. 1996) ("When a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiff an opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss.").

---

[8] DHS suggests that it did in fact extend to the States the courtesy of explaining the basis for its ROG calculation. Doc. 174 at 11 & n.2. But that is, respectfully, untrue. Although it would have been easy for DHS to do so, DHS did not tell the States that DHS's calculation was based on DHS's belief that ROG 8 counted as 20 ROGs; instead, DHS chose to withhold that information, requiring the States to go searching for the basis for DHS's ROG calculation in the less than 27 hours the States had to brief and file their motion to compel before the then-close of discovery on May 23, 2023.

The States know little about DHS's actual standing arguments. The States do not know the factual or legal basis for DHS's apparent belief that at least one State has not suffered, or will not imminently suffer, at least one dollar of harm fairly traceable to the Asylum IFR. The States do not know the factual or legal basis for DHS's apparent belief that harm fairly traceable to the Asylum IFR can be offset by some corresponding federal benefit. *Cf. Texas v. United States (DAPA)*, 809 F.3d 134, 156 (5th Cir. 2015) (foreclosing any potential argument that harm caused by the Asylum IFR can be offset by a corresponding, indirect benefit; courts "cannot engage" in that "accounting exercise"). Nor do the States know the factual or legal basis for DHS's apparent belief that Plaintiff States are not entitled to special solicitude under binding Fifth Circuit precedent. *Cf. Border Wall,* 2023 WL 4044448, at *5–6 (foreclosing any potential argument that States are not entitled to special solicitude in vindicating their procedural rights under the APA to challenge the harms immigration-related rules inflict on States' quasi-sovereign interests); *DAPA*, 809 F.3d at 154–55 (same); *Texas v. United States (DACA)*, 50 F.4th 498, 514–20 (5th Cir. 2022) (same); *Texas v. Biden (MPP)*, 20 F.4th 928, 970–71 (5th Cir. 2021) (same), *as revised* (Dec. 21, 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022). So Plaintiff States served interrogatories to try to find all that out. ECF 168-6 at 8–15.

But DHS won't answer them. Doc. 168-6 at 8–15. And that's a problem: "[T]he district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981). Over the States' objection, Doc. 89 at 3, DHS was permitted jurisdictional discovery before DHS was required to file its Rule 12(b)(1) motion, Doc. 24. So the States lack the benefit of a pending Rule 12(b)(1) motion, which would've allowed them to tailor their jurisdictional discovery to DHS's hitherto unknown standing arguments. Doc. 89 at 3. And DHS has so far refused to provide in discovery the information the States would've been able to ascertain from the face of DHS's Rule 12(b)(1) motion. *See, e.g.*, Doc. 168-6 at ROG 1 (refusing to identify testimony DHS may rely on); *id.* at ROG 2 (refusing to explain

8

the grounds for DHS's belief that the States lack standing); *id.* at ROG 3 (refusing to explain the grounds for DHS's apparent belief that the States aren't owed special solicitude); *id.* at RFP 16 (refusing to respond to request for documents DHS may rely on, even to the extent the request sought documents related to "the motion-to-dismiss stage"). As a result, the States don't know the standing arguments DHS intends to make. Nor do they know the evidence DHS intends to rely on. So the States do not know—and cannot know—what further discovery they may need to take.

All of this means that the States have not had "an opportunity for discovery . . . appropriate to the nature of" DHS's yet-to-be-filed Rule 12(b)(1) motion. *Williamson*, 645 F.2d at 414. And that leaves two options on the table: either (1) the Court can order DHS to answer the discovery now, providing the full factual and legal bases for all of the standing arguments DHS intends to raise; or (2) the Court can grant the States leave to conduct discovery tailored to DHS's actual motion to dismiss later—if and when DHS finally files its Rule 12(b)(1) motion. If the Court declines to take one of those two paths and ultimately enters a Rule 12(b)(1) dismissal, then the Court will have abused its discretion. *See, e.g.*, *Williamson*, 645 F.2d at 414 (district court abused its discretion in denying discovery "appropriate to the nature of the motion to dismiss"); *McAllister*, 87 F.3d at 766 (same).

**VI. DHS's Response Confirms Its Ambiguity Objections Lack Merit.**

Without even attempting to "obtain clarification" from the States, *Heller*, 303 F.R.D. at 492, DHS lodged ambiguity objections to two RFAs that sought information about aliens "processed pursuant to the Asylum IFR" in New Orleans and Miami, respectively. Doc. 168-6 at 15–16. DHS's response confirms that DHS had no basis for the objections. Doc. 174 at 14-15.

To start, DHS does not even try to defend its failure to "attempt to obtain clarification prior to objecting on this ground." *Heller*, 303 F.R.D. at 492. Doc. 174 at 14–15. Had DHS tried to obtain clarification as to the meaning of the phrase—as it was duty-bound to do, *see Heller*, 303 F.R.D. at 492—this dispute might have been avoided. *See id.* The more troubling thing, though, is that the States

9

were again forced to move to compel just to get the information DHS should've provided on the face of its discovery responses; DHS's "objections included no explanation for the specific and particular way in which a particular request's wording was vague or ambiguous." *Id.* Now facing a potential *second* order compelling DHS to participate in discovery, DHS belatedly offers the information that it should've offered when it served its discovery responses. Doc. 174 at 14–15; *Heller*, 303 F.R.D. at 492. According to DHS, "it is genuinely unclear in these requests whether Plaintiffs are asking whether anyone has begun the process set out in [sic] asylum processing IFR in these two locations, or whether they are seeking answers to whether anyone has actually completed the process set out in the Asylum IFR and had their asylum claim decided under the rule." Doc. 174 at 15.

But DHS's belated explanation doesn't hold up. Adopting a "reasonable interpretation" of the phrase, as DHS was obliged to do, *Heller*, 303 F.R.D. at 492, it is clear that in using the phrase "has been processed pursuant to the Asylum IFR," the States were simply asking whether an alien has had his or her asylum claim processed under the Asylum IFR. The phrase "has been processed pursuant to the Asylum IFR" is "certainly [is] not so vague or ambiguous as to be incapable of reasonable interpretation and to prohibit [DHS's] responses." *Id.* So DHS should have fully responded to RFAs 1 & 2.[9] Because DHS refused to do so, the Court should compel DHS's full and complete responses.

\* \* \*

The States respectfully request that the Court direct DHS to (i) withdraw its factually unsupported objections, (ii) withdraw or (at a minimum) further elaborate on its blanket assertions of deliberative-process privilege, and (iii) respond fully and completely to the States' jurisdictional discovery.

---

[9] DHS rejoins that "the IFR has largely had no effect on Louisiana, and at the time Defendants responded there were no individuals who had expressed an intent to travel to New Orleans who had their claim decided under the Rule." Doc. 174 at 15. But DHS represented to the Court at the May 24 hearing that "there have [sic] been commencement of the IFR in the State of Louisiana." Doc. 175, 5/23/23 Hrg. Tr., 21:3–4, 21:13–17. And the Court has accordingly ordered DHS to "supplement [its] discovery production" in light of the rollout of the Asylum IFR in Louisiana. *Id.* at 21:5.

10

Dated: June 19, 2023    Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL OF LOUISIANA**

/s/ Jordan Bailey Redmon
ELIZABETH B. MURRILL (La #20685)
  Solicitor General
JOSEPH SCOTT ST. JOHN (La #36682)
  Deputy Solicitor General
JORDAN BAILEY REDMON (La #37272)
  Assistant Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
redmonj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

## CERTIFICATE OF SERVICE

I certify that on June 19, 2023, I filed this document using the CM/ECF system, which will automatically send electronic notice of filing to all counsel of record.

/s/ Jordan Bailey Redmon
JORDAN BAILEY REDMON
Assistant Solicitor General