# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF ARIZONA, et al., <br><br>                      Plaintiffs, <br><br>   v. <br><br>MERRICK GARLAND in his official capacity as Attorney General of the United States of America; et al., <br><br>                      Defendants. | Civil Action No. 6:22-cv-01130 |

## **LOUISIANA'S OPPOSITION TO EXTENSION OF DISCOVERY**

What should be a routine APA case has been pending for nearly 18 months. The Court granted Defendants' request for "**limited**" jurisdictional discovery over 10 months ago. Dkt. 91. It did so over Plaintiff States' objection that a 12(b)(1) motion may be "beyond the bounds of Rule 11 after [Defendants] conduct a reasonable investigation of their own data." Dkt. 89 at 2. Defendants now point to a non-dispute regarding the **94 topics** they noticed for deposition and plea for yet more time. Dkt. 186. That Defendants feel the need to notice 94 topics suggest they have no Rule 11 basis for moving to dismiss. The topics themselves confirm it.

Many seek testimony about information that is definitively within Defendants' control, such as "the number of asylees who have established residence in [Louisiana]" or "[t]he number of Applicants for Admission paroled by the federal government … who have established residence in [Louisiana]." Exh. 1 at 4. But rather than produce the definitive data on which they now demand burdensome depositions, Defendants broadly objected to discovery that "is not limited to asylum applicants affected by the IFR." Dkt. 144-5 at, e.g., ECF p.6. Other topics cross the line into outright abuse.

Sixteen are directed to a Louisiana agency that Defendants acknowledge is beyond the scope of discovery authorized by the Court. Exh. 1 at 25-28 (16 topics directed to the Louisiana Department of Public Safety and Corrections); Exh. 2 at 2 ("Our understanding is that Plaintiff told the Court in a status conference that it was only going to show standing based on certain agencies that did not include LDPSC…."); Dkt. 144-5 at ECF p.6 (Defendants objecting to discovery: "The Court permitted jurisdictional discovery related to …. 'the effect of the IFR on certain discrete programs in the states of Louisiana and Florida.'").

Given Defendants' possession of the data on which they seek depositions, the concededly excessive scope of Defendants' notice, Defendants' patently inconsistent positions on relevance, and the facial burden of preparing a witness on 94 topics, Louisiana objected. Defendants then sat on Louisiana's objections for nearly a **month** before taking issue. Exh. 2 at 2-3; Exh. 3. And as Defendants concede, they then refused to meet and confer regarding Louisiana's objections, despite the express requirement in Rule 30(b)(6) that they do so. The explanation for that refusal? Defendants unilaterally decreed the required meet-and-confer wouldn't be "meaningful." Exh. 2 at 2. The Court need go no further. Defendants have not complied with the mandatory requirements for a Rule 30(b)(6) deposition.

Were the Court to reach Defendant's gripe, Louisiana informed Defendants that Louisiana agencies were "cooperating with the Attorney General" — indeed, the Louisiana Department of Health, Louisiana Department of Children and Family Services, and Louisiana Department of Education had calendared prep sessions for Louisiana's witness — such that Defendants present only a hypothetical dispute to the Court. Exh. 2 at 1; *see also* Exhs. 4-6.

In any event, the Court noted in its May 24 post-hearing status conference that pending Supreme Court cases would likely affect its view of standing. Those cases have now issued. *Biden v. Nebraska*, 143 S. Ct. 2355 (2023), cited in Louisiana's objections, is particularly instructive. In that case,

the Supreme Court held a State — proceeding through its attorney general — had standing to assert injury accruing through a state instrumentality. 143 S. Ct. at 2365-68 & n.3, 2385-2391; *see also Nebraksa v. Biden*, 636 F. Supp. 3d 991, 998-1000 (E.D. Mo. 2022); Exh. 7 (complaint). The Court reached that conclusion despite the instrumentality having "a legal personality separate from the state," despite the instrumentality being ultimately controlled by the State's governor rather than the State's attorney general, and despite the instrumentality's refusal to cooperate with the attorney general's lawsuit. 143 S.Ct. at 490, 492, 526. The Supreme Court explained that the instrumentality performed an "essential public function" such that a harm to the instrumentality "is necessarily a direct injury to [the State] itself," notwithstanding the instrumentality's independence. *Id.* at 490, 525-26. The Court notably distinguished cases holding that a similar instrumentality was not part of the state, explaining that "a public corporation can count as part of the State for some but not other purposes." *Id.* at 493 n.3. Louisiana and Fifth Circuit law are in accord. *See State ex rel. Caldwell v. Molina Healthcare, Inc.*, 283 So. 3d 472, 487 (La. 2019) (holding the Attorney General has authority to assert claims on behalf of the State related to Medicaid due to Medicaid contractor's "involvement with government functions" notwithstanding state agency's lack of participation in the suit); *Louisiana Highway Comm'n v. Farnsworth*, 74 F.2d 910, 912-13 (5th Cir. 1935) (citing *Saint v. Allen*, 134 So. 246 (La. 1931), and holding a Louisiana state agency is distinct from the state itself).[1]

---

[1] *See also, e.g., Vermont Agency of Nat'l Res. v. United States ex rel Stevens*, 529 U.S. 765, 787 (2000) (holding that a private *qui tam* relator has Article III standing to assert an injury to the United States); *Hudson v. City of New Orleans*, 174 F.3d 677, 680-691 (5th Cir. 1999) (focusing on "political realities" and holding that Louisiana district attorneys are not subject to Eleventh Amendment sovereign immunity, despite the State constitution classifying them as state officials, their litigating on behalf of the state, and their being subject to some control by the Attorney General); *State ex rel Guste v. Simoni, Heck, & Associates*, 331 So. 2d 478, 482 (La. 1976) (recognizing the State through the Attorney General and a state agency can both have a cause of action arising from the same transaction, then holding the State's action continued notwithstanding agency's declining to appeal); *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 622 (5th Cir. 1973) (holding that for purposes of a subpoena, documents were in control of agency head); *State ex rel Porterie v. Smith*, 162 So. 413, 419-420 (La. 1935) (recognizing that both the governor and the attorney general have causes of action: "Since the state has an interest in this suit, the Attorney General has a right to assert it."). Applied to discovery requests, the inquiry

Setting aside the merits, Defendants' lack of diligence precludes any extension of discovery. As recounted above, Defendants sat on Louisiana's 30(b)(6) objections for nearly a month. Then, on Tuesday, October 10, Defendants noted the "upcoming [discovery] deadline" and asked Louisiana to provide "names and potential dates for your deponents" by that Friday, all without identifying any scheduling conflicts. Exh. 3. Louisiana responded on Thursday, October 12, that former Border Patrol Chief Rodney Scott "preliminarily responded that he is available on October 23," but both Chief Scott's and former Immigration Judge Art Arthur's availability depended on the form of deposition due to travel commitments. Exh. 2 at 2. Having received no response, on Friday, October 13, Louisiana confirmed Chief Scott's availability for October 23, and that Mr. Arthur was available on October 24 or 25. Exh. 2 at 1. The following Monday, Defendants reversed course and refused to take the depositions they had requested, claiming "none of the dates … provided … work for us due to previously scheduled commitments." Exh. 8 at 3. Tellingly, Defendants also declared their expert unavailable despite apparently having never contacted him, then stated they would seek his availability "in the next few months." *Id.* at 1.

Enough is enough. This case has been pending for 18 months, and Defendants have had 10 months to take discovery. Defendants have evaded answering or moving to dismiss. Having put off discovery until the last minute, Defendants now seek yet more time to take discovery of facts that are largely within their own control, on which Louisiana has already produced evidence, and that Defendants have elsewhere urged are not relevant. Far from being good cause to extend the schedule, Defendants' conduct mandates a protective order. *See* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court **must** limit the frequency or extent of discovery otherwise allowed … if it determines

---

is whether a party has a legal right or practical ability to obtain the requested information. Merely establishing ownership or a parent-subsidiary relationship is not enough. *See, e.g.*, *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138-39 (2d Cir. 2007); *Kestrel Coal Pty, Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 404-05 (7th Cir. 2004).

that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information").

In terms of the scheduling provisions of the Federal Rules, "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause under Rule 16(b) requires a party to show that the deadlines cannot reasonably be met despite the diligence of the party [seeking] the extension." *Bennett v. Consolidated Gravity Drainiage Dist. No. 1*, 648 Fed. App'x 425, 248 (5th Cir. 2016); *see also, e.g.*, *Puig v. Citibank, N.A.*, 514 Fed. App'x 483, 488 (5th Cir. 2013) ("[W]e look to the Puigs' diligence in conducting discovery within the scheduling order's timeline."). But Defendants offer no excuse for their delay in bringing their hypothetical dispute to the Court or for declining to take depositions offered within the existing schedule. Defendants also don't engage with the prejudice to Plaintiff States of further delay, including increased migration, increased grants of asylum, and increased benefits expenditures on indigent aliens, including as a result of void actions asylum officers acting in excess of their statutory authority. [2] Indeed, Defendants' request comes only two days after they announced they were re-starting implementation of the challenged Asylum IFR. Exh. 9. Defendants' request for yet another discovery extension should be denied.

---

[2] On the same day Defendants' lodged their request, some of the harm from the Asylum IFR reared its head when it became public that U.S.C.I.S. had hired the Palestine Liberation Organization's former spokeswoman as an asylum officer. Exh. 10. The Palestine Liberation Organization is, of course, condemned by statute as a terrorist organization, 22 U.S.C. § 5201(b), and the asylum officer's public statements are more-than-consistent with that statutory finding. *See* Exh. 10, 11. Suffice it to say such a person would have difficulty passing the character and fitness portion requirements for bar admission, as is required to be an immigration judge.

Dated: October 23, 2023        Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL OF LOUISIANA**

/s/ Joseph S. St. John
ELIZABETH B. MURRILL (La #20685)
  Solicitor General
JOSEPH SCOTT ST. JOHN (La #36682)
  Deputy Solicitor General
JORDAN BAILEY REDMON (La #37272)
  Assistant Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
redmonj@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*