EXHIBIT 3



# Supplemental Nutrition Assistance Program

## Guidance on Non-Citizen Eligibility





















**United States Department of Agriculture**

**June 2011**

**FOOD AND NUTRITION SERVICE**

**FIGHTING HUNGER AND IMPROVING NUTRITION FOR OVER 40 YEARS**

USDA IS AN EQUAL OPPORTUNITY EMPLOYER AND PROVIDER

LADOJ-ASYLUM5333

## PURPOSE

For over 40 years, the Supplemental Nutrition Assistance Program (SNAP) (formerly known as the Food Stamp Program) has served as the cornerstone of the nation's nutrition safety net by providing food assistance to low-income families and individuals.  Since SNAP is an entitlement program, it is available to nearly everyone with limited income and resources as long as they are citizens or meet certain immigration status requirements.  This Guidance seeks to help simplify and clarify SNAP policy on non-citizen eligibility so that all those who are eligible for SNAP get the benefits they are eligible to receive, especially children in need.

"It is particularly troubling that there were more than 500,000 families in which a child experienced hunger multiple times over the course of the year. Our children's ability to grow, learn, and meet their full potential...depends on regular access to healthy meals."

President Obama, in response to a USDA report that in 2008, almost 50 million families struggled to put food on the table.

SNAP eligibility has never been extended to undocumented non-citizens.  Specific requirements for non-citizens who may be eligible have changed substantially over the years and become more complicated in certain areas.  The goal of this Guidance is to assist people in understanding current eligibility requirements in order to bridge the gap between eligible persons in need of food assistance and SNAP benefits.



Although many non-citizens are now eligible for SNAP, SNAP participation has been historically low among eligible non-citizen households.  In 2008, the participation rate for non-citizens was 51% and the rate for citizen children living with non-citizen adults was 55% as compared to the national participation rate of 67% among all eligible individuals[1] and a national participation rate of 86% for all eligible children.

---

[1] Source: Mathematica Policy Research, *Trends in Supplemental Nutrition Assistance Program Participation Rates: 2001-2008* (June 2010).

LADOJ-ASYLUM5334

The reasons why some non-citizen households do not participate in SNAP even though they may be eligible are numerous and varied, and include the following:

| ✔ | **Public charge.**  There is a perception that participating in SNAP could affect immigration status or hurt a non-citizen's chances of becoming an American citizen, but this is not true. It is important for non-citizens to know they will not be deported, denied entry to the country, or denied permanent status because they apply for or receive SNAP benefits. |
|---|---|
| ✔ | **Sponsor deeming and liability.**  Some non-citizens have concerns about what effect receiving SNAP may have on the applicant's sponsor. |
| ✔ | **Language or literacy issues.**  Non-citizens may not be able to read or write in their native language or have limited English proficiency.  Even though anyone can apply for SNAP benefits, and local offices have applications in many language, some people believe they cannot apply for SNAP benefits without speaking English. |
| ✔ | **Lack of knowledge about the program.**  Individuals who are eligible for benefits may not apply as a result of misinformation about program rules, or because they are unaware that the program is available to eligible non-citizens. |



Because SNAP policy on non-citizen eligibility is complicated, it is essential to understand not just the categories of eligible non-citizens but how issues like sponsorship, deeming, special income rules, reporting, and public charge can affect the decision to apply for benefits and the level of benefit allotments.  How policies are understood and communicated is critical to enabling people to make informed decisions, as there are real opportunities to reach more eligible people.

LADOJ-ASYLUM5335

## A NOTE ABOUT TERMINOLOGY

There are many terms that describe non-citizens.  We have listed some of those terms and their more formal, legally-based definitions below.[1]  However, no one term describes all of those who are eligible for SNAP.  The purpose of this Guidance is to serve as a general guide to non-citizen SNAP eligibility and to use exact terms throughout affects readability.  Accordingly, throughout this Guidance, we use the term **non-citizen** to describe any individual present in the United States who is not a United States citizen, including but not limited to qualified aliens, lawful permanent residents, and undocumented immigrants.

---

[1] The following terms are commonly more formally defined as:

**Alien** – any person not a citizen or national of the United States.  Immigration and Nationality Act (INA), §101.

**Immigrant** – every alien except an alien who is within one of the classes of nonimmigrant aliens set forth in the INA, §101(a)(15).

**Lawful Permanent Resident (LPR)** – any person with the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.  INA §101.  LPRs are granted a permanent resident card, commonly called a "green card," as proof of having the status of LPR.

**Qualified Alien** – an individual who meets the specific definition of "qualified alien" found at 7 CFR 273.4(a)(5)(i), which includes lawful permanent residents, asylees, refugees, parolees, individuals granted withholding of deportation or removal, conditional entrants, Cuban or Haitian entrants, battered aliens, and alien victims of a severe form of trafficking.  See also PRWORA, 8 U.S.C. § 1641.  The term qualified alien is not itself an immigration status, but includes a collection of immigration statuses.  It is a term used for Federal public benefits purposes.

LADOJ-ASYLUM5336

## SHORT HISTORY OF SNAP POLICY ON NON-CITIZENS

Prior to the 1996 welfare reform legislation under the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), most non-citizens lawfully residing in the United States were eligible for SNAP benefits on the same basis as citizens.  With the enactment of PRWORA, most lawfully present non-citizens lost eligibility even if they had been in the country when the law was passed on August 22, 1996.  As a result, PRWORA had, and continues to have, a significant impact on the requirements and policy concerning non-citizen eligibility for SNAP benefits.  In 1998, Congress began restoring eligibility to some non-citizens who were in the United States before August 22, 1996, including certain elderly, children, the disabled, and to certain non-citizens who were members of Hmong or Highland Laotian tribes that rendered assistance to the United States during the Vietnam era.

In remarks made at Ellis Island in July 2001, President George W. Bush said, "Immigration is not a problem to be solved.  It is a sign of a confident and successful nation.  And people who seek to make America their home...should be greeted not with suspicion and resentment, but with openness and courtesy."

Full restoration of SNAP eligibility to certain non-citizens was a top priority under The Farm Security and Rural Investment Act of 2002, Public Law 107-171, commonly referred to as the 2002 Farm Bill.  The 2002 Farm Bill broadly restored SNAP eligibility to most lawfully present non-citizens, including individuals who resided in the United States for five years, children under 18, and individuals receiving disability-related assistance or benefits.

Due to the 2002 Farm Bill restorations, many non-citizens, from working-poor families and their children, to elderly lawfully residing in the U.S. and 65 or older on August 22, 1996 and the disabled, once again had access to nutrition assistance through SNAP.  In April 2003, qualified aliens who had lived in the U.S. for five years regained eligibility, and in October 2003, eligibility was restored to all qualified alien children without a waiting period.  As a result, in 2004, approximately one million non-citizens became eligible for SNAP benefits.

On January 29, 2010, the final rules implementing the 2002 Farm Bill[1] established new eligibility and certification requirements for the receipt of SNAP benefits.  The 2008 Farm Bill then changed the name of the program from the Food Stamp Program to SNAP.  All of these changes presented important reasons for this update of FNS's 2003 Guidance.

---

[1] U.S. Department of Agriculture (USDA), *Food Stamp Program:  Eligibility and Certification Provisions of the Farm Security and Rural Investment Act of 2002*, 75 FR 4912 (January 29, 2010).

LADOJ-ASYLUM5337

## TABLE OF CONTENTS

| Section I | General Eligibility | Pgs 1-10 |
|---|---|---|
| Section II | Eligibility Based On Five-Year Residency | Pgs 11-13 |
| Section III | Eligibility Based On 40 Work Quarters | Pgs 14-15 |
| Section IV | Victims of Trafficking and Battered Non-Citizens | Pgs 16-21 |
| Section V | Verification of Immigration Status | Pgs 22-29 |
| Section VI | Sponsor Deeming | Pgs 30-38 |
| Section VII | Sponsor Liability | Pgs 39-42 |
| Section VIII | Treatment of Income and Resources of Ineligible Non-Citizens | Pgs 43-47 |
| Section IX | Reporting Unlawful Presence, Indigent Non-Citizens, and Final Civil Judgments Against Sponsors | Pgs 48-51 |
| Section X | Public Charge | Pgs 52-53 |
| Section XI | Major Legislation Affecting SNAP Non-Citizens | Pg 54 |

LADOJ-ASYLUM5338

| ACRONYMS | |
|---|---|
| CFR | Code of Federal Regulations |
| DHS | Department of Homeland Security |
| DOJ | Department of Justice |
| FNS | Food and Nutrition Service |
| INA | Immigration and Nationality Act |
| LPR | Lawfully Admitted for Permanent Residence |
| ORR | Office of Refugee and Resettlement |
| PRWORA | Personal Responsibility and Work Opportunity Reconciliation Act |
| SNAP | Supplemental Nutrition Assistance Program |
| SSA | Social Security Administration |
| USCIS | U.S. Citizenship and Immigration Services |
| USDA | United States Department of Agriculture |

LADOJ-ASYLUM5339

## SECTION I – GENERAL ELIGIBILITY

**Who can receive SNAP?**

The Food and Nutrition Act of 2008, as amended, limits eligibility for SNAP benefits to U.S citizens and certain lawfully present non-citizens.  Generally, a non-citizen must be a qualified alien (as defined in PRWORA) in order to be eligible for SNAP.  Non-citizens like tourists and students are generally not eligible.  Individuals who are eligible based on their immigration status must also satisfy other SNAP eligibility requirements such as income and resource limits.

**Who is a qualified alien?**

A "qualified alien" is a non-citizen who has one of the following immigration statuses:[1]

| Non-Citizen Category | Description |
|---|---|
| **Lawfully Admitted for Permanent Residence (LPRs)** | LPRs are holders of green cards.  This category also includes "Amerasian immigrants" as defined under §584 of the Foreign Operations, Export Financing and Related Programs Appropriations Act of 1988. |
| **Asylees** | Granted asylum under Immigration and Nationality Act (INA) §208. |
| **Parolees** | Paroled into the U.S. under § 212(d)(5) of the INA for at least 1 year. |
| **Deportation (or Removal) Withheld** | Deportation is being withheld under §243(h) of the INA as in effect before 4/1/97, or removal is withheld under §241(b)(3) of the INA. |
| **Conditional Entrants** | Granted conditional entry under §203(a)(7) of the INA as in effect before 4/1/80. |
| **Cuban or Haitian Entrants** | Cuban or Haitian entrant under §501(e) of the Refugee Education Assistance Act of 1980. |
| **Battered Non-Citizens** | Under certain circumstances, a battered non-citizen spouse or child, non-citizen parent of a battered child or an non-citizen child of a battered parent with a petition pending. |
| **Refugees** | Refugees admitted to the United States under §207 of the INA. |
| **Trafficking Victims** | Victims under the Trafficking Victims Protection Act of 2000. |
| **Iraqi and Afghan Special Immigrants (SIV)** | Special immigrant status under §101(a)(27) of the INA may be granted to Iraqi and Afghan nationals who have worked on behalf of the U.S. government in Iraq or Afghanistan.  The Department of Defense Appropriations Act of 2010 (DoDAA), P.L. 111-118, §8120 enacted on December 19, 2009, provides that SIVs are eligible for all benefits to the same extent and the same period of time as refugees.[2] |

---

[1] This definition is consistent with PRWORA.
[2] Iraqi and Afghan Special Immigrants are a type of LPR and are considered qualified aliens even though they are not specifically listed under PRWORA.

LADOJ-ASYLUM5340

**Are the qualified aliens listed above the only non-citizens eligible for SNAP?**

No.  Certain groups of non-citizens are not qualified aliens but still may be eligible for SNAP.  These individuals do not have to meet any other non-citizen requirements to be eligible for SNAP:

| Non-Citizen Category | Description |
|---|---|
| **Certain American Indians born abroad** | American Indians born in Canada living in the U.S. under §289 of the INA or non-citizen members of a Federally-recognized Indian tribe under §4(e) of the Indian Self-Determination and Education Assistance Act. |
| **Hmong or Highland Laotian tribal members** | An individual lawfully residing in the U.S. who was a member of a Hmong or Highland Laotian tribe that rendered assistance to U.S. personnel by taking part in a military or rescue operation during the Vietnam era (August 5, 1964 – May 7, 1975). This category includes the spouse (or unmarried surviving spouse) or unmarried dependent children of these individuals. |

**Must eligible non-citizens meet other conditions to be eligible for SNAP?**

To be eligible for SNAP, most non-citizens must be in a qualified alien category **and** meet one additional condition.

**What is considered an additional condition?**

The following illustrates what is considered an additional condition that certain qualified aliens must meet to be eligible for SNAP.  Again, non-citizens who must meet an additional condition need only meet ONE of the following conditions to be eligible for SNAP:

- **5 years of residence** – has lived in the U.S. as a qualified alien for 5 years from the date of entry.
- **40 qualifying work quarters** – an LPR with credit for 40 qualifying work quarters.
- **Children under 18** – any qualified alien under 18 years of age who lawfully resides in the U.S.
- **Blind or disabled** – blind or disabled receiving benefits or assistance for their condition regardless of entry date.
- **Elderly born on or before 8-22-31 who lawfully resided in the U.S. on 8-22-96**.
- **Military connection** – an individual who is lawfully residing in a State and is on active duty in the military (excluding National Guard) or is an honorably discharged veteran whose discharge is not because of immigration status (includes spouse, surviving spouse if not married, and unmarried dependent children).  A discharge "Under Honorable Conditions", which is not the same as an honorable discharge, does not meet this requirement.

LADOJ-ASYLUM5341

If a non-citizen meets one of the above conditions, he or she is eligible for SNAP without a waiting period. For example, an LPR child under 18 does not need to meet the 5-year waiting period to be eligible to receive SNAP benefits.

**Which categories of non-citizens must meet one additional condition?**

LPRs, those granted parole for at least one year, conditional entrants, and battered non-citizens must meet one additional condition to be eligible for SNAP.

**Are some non-citizens eligible for SNAP without having to meet an additional condition?**

Yes. There are some categories of non-citizens who are eligible for SNAP who do not have to meet the 5-year residency requirement or have 40 qualifying quarters of work. The following describes those who are eligible without a waiting period and without having to meet one additional condition:

| No Waiting Period or Additional Condition Needed to be Eligible for SNAP |
|---|
| Refugees |
| Victims of severe trafficking |
| Asylees or Deportation Withheld |
| Amerasians |
| Cuban and Haitian entrants |
| Iraqi and Afghan special immigrants |
| Certain American Indians born abroad |
| Hmong or Highland Laotian tribal members |
| Qualified Alien children under 18 |
| Individuals receiving benefits or assistance for blindness or disability[1] |
| Elderly who were lawfully residing in the U.S. and 65 or older on August 22, 1996 |
| Military connection[2] |

---

[1] Blind or disabled receiving benefits or assistance for their condition regardless of entry date.

[2] As discussed above, an individual who is lawfully residing in a State and is on active duty in the military (excluding National Guard) or is an honorably discharged veteran whose discharge is not because of immigration status (includes spouse, surviving spouse if not remarried, and unmarried dependent children). A discharge "Under Honorable Conditions" does not meet this requirement.

LADOJ-ASYLUM5342

**Is there a limited amount of time that eligible non-citizens can receive SNAP?**

No.  There are no time limits for how long eligible non-citizens can receive SNAP.  Prior to the 2002 Farm Bill, some non-citizens could receive SNAP for a maximum of seven years.  However, the 2002 Farm Bill's provision granting eligibility after the 5-year waiting period effectively eliminated this seven-year time limit.  This is because once the non-citizen has resided in the U.S. in qualified alien status for five years, that individual is eligible indefinitely.

**How do all of these factors – citizenship groups, additional conditions, and waiting periods – relate?**

The following provides a general overview of how immigration status, additional conditions, and waiting periods relate in determining whether a non-citizen may be eligible for SNAP benefits:



| SNAP:  Guidance on Non-Citizen Eligibility | Page 4 |
| --- | --- |

LADOJ-ASYLUM5343

## ELIGIBILITY FOR CERTAIN VULNERABLE NON-CITIZENS

### QUALIFIED ALIEN CHILDREN



Current SNAP policy provides that all qualified alien children under 18 are eligible, regardless of when they came to the United States.  In addition, eligible children are exempt from all deeming requirements.[1]

**Do qualified alien children under 18 have to wait five years before they can start receiving SNAP?**

No.  Qualified alien children under 18 are automatically eligible without a waiting period.  Even if non-citizen parents may not be eligible themselves, they can apply for their children.

**If a non-citizen child receiving SNAP turns 18 years of age during a certification period, and has been living in the United States for over five years, is the child still eligible to receive SNAP?**

Yes.  Once a child turns 18, the child may continue to be eligible for SNAP as long as he or she meets other program criteria.

**If a non-citizen child receiving SNAP turns 18 years of age during a certification period, and has been living in the United States for less than five years, is the child still eligible to receive SNAP?**

Maybe.  If the non-citizen meets one of the other additional conditions described previously and meets other SNAP criteria, he or she continues to be eligible to receive SNAP benefits.



---

[1] We discuss sponsor deeming in detail in Section VI of this Guidance.

LADOJ-ASYLUM5344

## ELDERLY NON-CITIZENS

**Who is considered elderly for SNAP purposes?**

Section 3(j)(1) of the Food and Nutrition Act of 2008 provides that individuals who are 60 years of age or older are elderly for SNAP purposes.



**Are all non-citizens over 60 years old eligible for SNAP?**

No.  A non-citizen in qualified alien status who was born on or before August 22, 1931 and lawfully resided in the U.S. on August 22, 1996 may be eligible for SNAP.  **This is an important distinction – although an individual 60 or older is considered elderly under SNAP general eligibility rules, for a non-citizen to be eligible for SNAP without a waiting period the non-citizen must have been born on or before August 22, 1931 and must have lawfully resided in the U.S. on August 22, 1996.**

## DISABLED NON-CITIZENS

**Who is considered disabled for SNAP purposes?**

Sections 3(j)(2) through (7) of the Act defines individuals as disabled for SNAP purposes if they receive or are certified to receive Supplemental Security Income (SSI), interim assistance pending SSI, Social Security disability, Federal or State disability retirement benefits for a permanent disability, veteran's disability benefits, or railroad retirement disability.  Also, persons receiving disability-related Medicaid, State or Federal supplemental assistance, and disability-related State General Assistance benefits may be considered disabled for SNAP purposes if they are found to be disabled using criteria as stringent as Federal SSI criteria.

**Is an individual considered disabled if that individual receives disability benefits under a State Medicaid or SSI replacement program that is solely State-funded?**

Yes.  An individual receiving medical assistance under a State-funded Medicaid or SSI replacement program would be considered disabled so long as these programs meet the Federal SSI disability or blindness criteria.

**Is an elderly person over 60 years old considered disabled?**

No.  An elderly person is not considered disabled unless that individual is receiving a type of disability-related assistance described above.

LADOJ-ASYLUM5345

**Do State general assistance or medical programs that use a medical practitioner's statement in order to determine that the non-citizen meets the SSI disability criteria meet the disability criteria under the SNAP definition?**

Yes.  So long as the programs meet the SSI disability criteria, the State agency may base its determination on a medical practitioner's statement.

## IRAQI AND AFGHAN SPECIAL IMMIGRANTS

Iraqi and Afghan Special Immigrants are eligible for SNAP.  Special immigrant status under Section 101(a)(27) of the INA may be granted to Iraqi and Afghan nationals who have worked on behalf of the United States government.  Individuals and family members granted Iraqi or Afghan special immigrant visas (SIV) are considered qualified aliens and are eligible for resettlement assistance, entitlement programs, and other federal public benefits the same as refugees admitted under Section 207 of the INA.  **This means that, provided that other eligibility requirements are met, refugees and SIVs are eligible for SNAP benefits indefinitely without a waiting period.**[1]

Iraqi and Afghan special immigrants enter the U.S. either as LPRs with the special immigrant visa or later adjust to special immigrant status after entering the U.S.  Potential eligibility for SNAP can begin when the individual was granted special immigrant status, either from the date of entry to the U.S. as an Iraqi or Afghan Special Immigrant, or the date of adjustment to special immigrant status within the U.S.

## CUBAN OR HAITIAN ENTRANTS

Cubans or Haitians classified as Cuban or Haitian Entrants under Section 501(e) of the Refugee Education Assistance Act of 1980 are considered qualified aliens.  This law defines a Cuban or Haitian Entrant as:

---

[1] The Department of Defense Appropriations Act of 2010 (DoDAA), P.L. 111-118, §8120 enacted on December 19, 2009 superseded prior legislative authority that limited SNAP benefits for SIVs to an 8 month period.  Specifically, the legislation amended prior authority under the National Defense Authorization Act of 2008, P.L. 110-181, and the Afghan Allies Protection Act of 2009, P.L. 111-8, that provided SIV benefit eligibility for a period not to exceed 8 months from the date the non-citizen was granted SIV status.  The DoDAA provides that SIVs are eligible for all benefits to the same extent and the same period of time as refugees.

LADOJ-ASYLUM5346

(1) any individual granted parole as a Cuban/Haitian Entrant (Status Pending) or granted any other special status subsequently established under the immigration laws for nationals of Cuba or Haiti, regardless of the status of the individual at the time assistance or services are provided; and

(2) any other national of Cuba or Haiti –

    (A) who—

        (i) was paroled into the United States and has not acquired any other status under the Immigration and Nationality Act;

        (ii) is the subject of removal proceedings under the Immigration and Nationality Act; or

        (iii) has an application for asylum pending with the Immigration and Naturalization Service; and

    (B) with respect to whom a final, non-appealable, and legally enforceable order of removal has not been entered.

As qualified aliens, Cuban or Haitian Entrants are eligible for SNAP benefits indefinitely without a waiting period.

## MILITARY CONNECTION

FNS wants to ensure that individuals and families with a military connection get the fundamental nutritional support needed to stay healthy.  Some may be particularly vulnerable due to economic conditions or during times of conflict.  Qualified aliens with a military connection are eligible for SNAP benefits without a waiting period.  This includes individuals who are lawfully residing in a State and on active duty (other than for training) in the U.S. Army, Navy, Air Force, Marine Corps, or Coast Guard (but not full-time National Guard).



SNAP eligibility also extends to the spouse and dependent children of veterans and active duty personnel, and to those honorably discharged veterans whose discharge is not due to immigration status.

LADOJ-ASYLUM5347

## INELIGIBLE NON-CITIZENS

**What non-citizens are ineligible for SNAP?**

- Non-citizens who are lawfully present in the United States in a non-qualified status, such as students and H-1B Visa workers are not eligible for SNAP benefits.

- Undocumented non-citizens (e.g. individuals who entered the country as temporary residents and overstayed their visas or who entered without a visa) are not eligible for SNAP benefits.

- Individuals granted Temporary Protected Status (TPS) are permitted to remain temporarily in the U.S. because their home nation is suffering under armed conflict, environmental disaster, or other "extraordinary or temporary" conditions. Any non-citizens granted TPS, unless in some other qualifying status, are not eligible to receive SNAP benefits. For example, this exclusion applies to Haitian nationals granted TPS unless they otherwise meet the definition of a Cuban or Haitian entrant under Section 501(e) of the Refugee Education and Assistance Act of 1980.

- Citizens of nations under Compact of Free Association Agreements (Palau, Micronesia, and the Marshall Islands) who have been admitted under those Agreements are not qualified aliens. They are not eligible for SNAP benefits. Although individuals under existing Compact of Free Association Agreements are not considered lawful permanent residents, they may reside, work, and study in the United States.

- Most individuals present in the United States with a U Visa are not eligible for SNAP. For a more detailed discussion of U Visa holders and their SNAP eligibility, refer to Section IV.

**If there is a household member who is ineligible because of immigration status, are all household members automatically ineligible?**

No. State agencies must still determine eligibility for SNAP for any remaining household members who are seeking assistance. States may not deny an entire household just because a non-citizen member is ineligible due to his or her immigration status. The State agency must determine the eligibility and benefit level of the remaining household members in accordance with SNAP regulations at 7 CFR 273.11(c). See Section VIII of this Guidance for additional information on the treatment of income and resources of ineligible household members.

LADOJ-ASYLUM5348

## REFERENCES

8 U.S.C. §1601 et. seq.

Afghan Allies Protection Act of 2009 (P.L. 111-8).

Department of Defense Appropriations Act of 2010 (P.L. 111-118), §8120.

National Defense Authorization Act of 2008 (P.L. 110-181).

PRWORA (P.L. 104-193), §§402 and 431.

Refugee Education Assistance Act of 1980 (P.L. 96-422) §501.

Trafficking Victims Protection Act of 2000 (P.L. 106-386), §107(b).

7 CFR 273.4.

FNS Memo, *Humanitarian Parole Policy for Certain Haitian Orphans*, available at
http://www.fns.usda.gov/snap/rules/Memo/2010/021910.pdf (February 19, 2010).

FNS Memo, *Clarification on SNAP Eligibility for Haitians Granted Temporary Protected Status*,
available at http://www.fns.usda.gov/snap/rules/Memo/2010/033010.pdf (March, 30, 2010).

USCIS Fact Sheet, *Status of Citizens of the Republic of Palau*, available at
http://www.uscis.gov/files/pressrelease/PalauFS.pdf (February 13, 2008).

USCIS Fact Sheet, *Status of the Citizens of the Freely Associated States of the Federated States
of Micronesia and the Republic of the Marshall Islands*, available at
http://www.uscis.gov/files/pressrelease/Micronesia_MarshallIslFS.pdf (February 13, 2008).

## SECTION II— ELIGIBILITY BASED ON FIVE-YEAR RESIDENCY

### BACKGROUND

PRWORA barred lawfully present non-citizens arriving on or after August 22, 1996 from receiving most Federal benefits, including Temporary Assistance for Needy Families (TANF) and Medicaid, until they had been in the country for five years as qualified aliens.  However, non-citizens with five years of residency were made ineligible for SNAP with certain exceptions. The 2002 Farm Bill enabled qualified aliens to become eligible for SNAP after a five-year period and other qualified aliens to become eligible for SNAP immediately.

**What is the five-year requirement?**

The 2002 Farm Bill restored SNAP eligibility to non-citizens who had lived in the United States as qualified aliens for a period of five years or longer.  The five-year requirement became effective on April 1, 2003.

The 2002 Farm Bill Final Rule clarified that the 5 year period in qualified status may be **either** consecutive or nonconsecutive.  Temporary absences of less than 6 months from the United States with no intention of abandoning U.S. residency do not terminate or interrupt the individual's period of U.S. residency.  If the resident is absent for more than 6 months, the agency shall presume that U.S. residency was interrupted unless the non-citizen presents evidence of his or her intent to resume U.S. residency after the time outside the U.S.  In determining whether a non-citizen with an interrupted period of U.S. residency has resided in the United States for 5 years, the agency shall consider all months of residency in the United States, including any months of residency before the interruption.

**When does the five-year waiting period begin?**

The five-year waiting period begins on the date the non-citizen obtains status as a qualified alien or enters the U.S. in a qualifying status.

**Are all qualified aliens subject to the five-year requirement?**

No.  Some qualified aliens such as asylees, refugees, Amerasians, Cuban/Haitian entrants, trafficking victims, Iraqi and Afghan Special Immigrants, and aliens whose deportation or removal is being withheld are eligible for SNAP benefits without a waiting period.  As illustrated in Section I of this guidance, other qualified aliens have to meet one additional condition to be eligible for SNAP.  The five-year requirement is an example of one additional condition. Examples of other additional conditions include receiving Federal or State disability-related

LADOJ-ASYLUM5350

assistance or benefits or having an LPR status and 40 qualifying quarters of work coverage. Children, the disabled, and elderly non-citizens lawfully residing in the United States and 65 or older on August 22, 1996 are also eligible without a waiting period.

**If a qualified alien is in an exempt category (e.g., asylee or refugee) and later adjusts to LPR status, does the qualified alien have to meet the five-year requirement?**

No.  Those non-citizens are exempt from the five-year residency requirement and are eligible indefinitely, both before and after adjustment of status to LPR.  Their exemption from the five-year waiting period is not affected by their adjustment to LPR status.  An example of this is an individual who was initially granted asylum in January 2009 and then adjusted to LPR status in January 2011.  Even though this non-citizen has not been in a qualified alien status for five years, the qualified alien is eligible indefinitely without a waiting period as an asylee.

When a non-citizen has adjusted to LPR status from another category, the green card usually shows the previous status and the date of the adjustment of status to LPR rather than the date the previous status was granted.  To obtain a history of a non-citizen's status from USCIS, State agencies may have to specifically ask for the information on USCIS Forms G-845 (Document Verification Request) and G-845 Supplement (Document Verification Request Supplement). Generally, these and other USCIS forms are available on the USCIS website.[1]

**Can a qualified alien be denied benefits based on a prior undocumented status?**

No.  As long as the non-citizen is <u>currently</u> a qualified alien, then the non-citizen is potentially eligible for SNAP.

**How is the five-year limit at Section 402 of PRWORA different from the general five-year limit at Section 403 of PRWORA?**

The five-year limit at Section 402 of PRWORA is specific to SNAP while the more general five-year limit at Section 403 of PRWORA applies to all programs that provide Federal means-tested benefits.  On January 14, 1997, the Department of Justice issued a legal interpretation of the law stating that the more specific requirements in Section 402 of PRWORA take precedence over the general requirements in Section 403 of PRWORA.

---

[1] Please note that FNS does not have authority, input or discretion in the substance or acceptability of USCIS forms. With questions regarding these or any other USCIS forms, consult with USCIS.

LADOJ-ASYLUM5351

What this means for SNAP is that the requirements in Section 403 of PRWORA should not be substituted for the five-year requirement at Section 402 of PRWORA.  For example, Section 403 of PRWORA applies to qualified aliens who enter the country on or after August 22, 1996 while Section 402 applies to qualified aliens regardless of when they enter the country.  Consequently, to receive SNAP benefits, a non-citizen who is establishing eligibility based on the five-year requirement must have been in a qualified status for five years even if that non-citizen entered the United States before August 22, 1996.

**REFERENCES**

PRWORA (P.L. 104-193), §403.

Trafficking Victims Protection Act of 2000 (P.L. 106-386), §107(b).

7 CFR 273.4.

Proposed Agency Interpretation of "Federal Means-Tested Public Benefits" under PRWORA, 21 Op. Off. Legal Counsel 21 (Jan. 14, 1997).

USCIS Web Site, www.uscis.gov.

## SECTION III – ELIGIBILITY BASED ON 40 WORK QUARTERS

### BACKGROUND

As discussed in Section II, the 2002 Farm Bill significantly expanded SNAP eligibility for non-citizens residing in the U.S. in a qualified alien status for 5 years.  It also effectively reduced the applicability of the 40 quarters of work requirement for LPRs.  Generally, an LPR must have worked for 10 years cumulatively before becoming eligible to participate in SNAP.  Since an LPR becomes eligible for SNAP after residing in the U.S. for 5 years whether or not he or she has any qualifying quarters as a result of the 2002 Farm Bill, the 40-quarter requirement is now only applicable in limited cases.  For example, LPRs who have been in the United States less than 5 years may claim 40 qualifying quarters of work by claiming quarters credited from the work of a parent earned before the applicant became 18 or from the work of a spouse to be eligible for SNAP.

**How can a State agency verify whether a non-citizen has 40 qualifying quarters?**

The State agency may request information from the Social Security Administration (SSA) using the State data exchange procedures and/or obtain information from the household.

SSA information regarding quarters of coverage may be incomplete due to a lag time or delay in obtaining and processing current information from employers.  If work quarters cannot be verified through the SSA, they can be verified through other means such as wage stubs, tax returns, or statements from employers.

**What if the State agency cannot confirm a non-citizen's 40 work quarter information with Social Security?**

If the household asserts that members have 40 quarters of work history, but the SSA cannot confirm the information and is conducting an investigation to determine if additional quarters can be credited, the State agency must certify the household pending the results of the investigation for up to six months from the date of the original determination of insufficient quarters.

**Are certain quarters prohibited from being counted as a qualifying quarter?**

Yes.  In addition to those quarters in which not enough income was earned to qualify, quarters earned after December 31, 1996 cannot be counted if the non-citizen, during the quarter, received SNAP or any other Federal means-tested public benefits (such as Medicaid,

Supplemental Security Income, State Children's Health Insurance Program, or TANF) during that quarter.

**Can a non-citizen receive credit for work performed by other individuals?**

Yes.  A non-citizen may receive credit for work performed by another person in two ways.  First, a non-citizen may take the quarters worked by his or her parent before the non-citizen turns 18 years old.  Also, a non-citizen may take the quarters worked by the non-citizen's spouse if they are married or if the spouse is deceased.

**Can a non-citizen receive credit for work performed while he or she was in an undocumented status?**

Yes.  The SSA counts quarters worked while a person is living in this country regardless of the person's immigration status at the time the work was performed.  For SNAP purposes, these quarters are counted unless they are quarters in which not enough income was earned or are quarters earned after December 31, 1996 in which the non-citizen received Federal means-tested public benefits.  Therefore, a non-citizen may be eligible for SNAP who has not been in qualified alien status for 5 years if they have reached 40 qualifying quarters.

**May work be credited if Social Security taxes were not withheld?**

Yes.  In March 1997, the Office of Legal Counsel of the Department of Justice issued an interpretation that qualifying quarters of work not covered by Title II of the Social Security Act, commonly referred to as noncovered earnings, may be credited in determining quarters of coverage for non-citizens.  Information on noncovered employment may be accessed through the SSA.

| REFERENCES |
| --- |

PRWORA (P.L. 104-193), §§402, 403, 421, 435.

7 CFR 273.2(f)(1)(ii)(B).

7 CFR 273.4(a)(6)(ii)(A).

Qualification Requirement for Aliens under PRWORA, 21 Op. Off. Legal Counsel 60 (Mar. 27, 1997).

LADOJ-ASYLUM5354

## SECTION IV – VICTIMS OF TRAFFICKING AND BATTERED NON-CITIZENS

Individuals who are determined to be victims of certain violent acts such as battery, extreme cruelty, or human trafficking are eligible for SNAP benefits.  These vulnerable non-citizens are provided special exceptions from the general restrictions governing non-citizen's eligibility for SNAP.

### TRAFFICKING VICTIMS

**What is trafficking?**

The Trafficking Victims Protection Act of 2000, as amended, provided that the term "severe forms of trafficking in persons" means:

- ✓ sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or
- ✓ the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery. [1]

**Are trafficking victims eligible for SNAP?**

Yes.  Individuals who are trafficking victims who are issued a Letter of Certification or Eligibility from the U.S. Department of Health and Human Services (HHS) Office of Refugee Resettlement (ORR) and certain family members[2] of the trafficking victim are qualified aliens under PRWORA.[3]  Most trafficking victims and certain family members are eligible for SNAP benefits to the same extent as refugees.

**How must an individual show status as a trafficking victim?**

Adult victims of a severe form of trafficking must be issued a Certification Letter from ORR to be eligible for SNAP benefits.  Because a certification letter is sufficient to verify the

---

[1] Trafficking Victims Protection Act of 2000 (TVPA), § 103(8), 22 U.S.C. § 7102(8).

[2] This includes individuals who have been issued derivative T visas because they are family members of a trafficking victim.

[3] The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) reauthorized the Trafficking Victims Protection Act of 2000 and amended Section 431(c) of PRWORA by adding trafficking victims as qualified aliens.

LADOJ-ASYLUM5355

individual's eligibility for SNAP, the State agency does not need to contact USCIS to verify the individual's status as a trafficking victim.

ORR issues an Eligibility Letter, similar to the adult certification letter, for children under the age of 18.  The eligibility letter states that the child is a victim of a severe form of trafficking and is eligible for federally funded benefits and services to the same extent as a refugee.  A trafficked minor must have either an interim assistance letter[1] or an eligibility letter from ORR to be eligible for SNAP.  State agencies must accept these letters in place of Department of Homeland Security (DHS) documentation.

**How long are the certification letters and eligibility letters valid?**

Certification letters and eligibility letters do not expire.  However, interim assistance letters, which are provided to children who may have been subjected to trafficking, are valid for 90 days from the effective date in the letter.  ORR may extend interim eligibility an additional 30 days.  During this interim period, ORR will make a determination regarding the long-term eligibility of the child.

**Does an interim assistance letter limit the time period that a child subject to trafficking can receive SNAP?**

Yes.  Children with an interim assistance letter can only receive SNAP benefits for the time period established in the interim letter.  Either prior to or at recertification the State agency should contact ORR at (866) 401-5510 to find out if the child will receive an eligibility letter to establish continued eligibility for SNAP benefits.

**How do family members of a trafficking victim show their status?**

Although ORR issues certification letters only to trafficking victims, DHS has primary responsibility for determining the immigration status of the trafficked victims' family members.  State agencies can verify the status of these individuals through their Systematic Alien Verification for Entitlements (SAVE) system or manual verification process.

---

[1] The William Wilberforce TVPRA of 2008 amended Sec. 107(b)(1) of the TVPA to authorize eligibility for interim assistance of a child who may have been subjected to trafficking, and to require HHS, before the expiration of the period for interim assistance, to determine if the child is eligible for long-term assistance as a victim of trafficking.

LADOJ-ASYLUM5356

**Do trafficking victims and certain family members of a trafficking victim remain eligible for SNAP if they later adjust to LPR status?**

Yes.  A trafficking victim and certain family members of a trafficking victim continue to be eligible for SNAP without a waiting period even if they later adjust to LPR status.  These individuals do not have to meet an additional condition to be eligible for SNAP.

## BATTERED NON-CITIZENS

**Are battered non-citizens eligible for SNAP?**

Yes, if they meet an additional condition.  Section 431(c) of PRWORA provides qualified alien status to categories of non-citizens who have been subjected to battery or extreme cruelty in the United States by a family member with whom they reside.

Qualified alien status also extends to a non-citizen whose child has been abused or a non-citizen child whose parent has been abused.  Additionally, this group of battered non-citizens is exempt from deeming requirements for a 12-month period.[1]  The exemption can be extended beyond the 12-month period if the non-citizen demonstrates that the battery is recognized by a court, administrative order, or by USCIS and if the agency administering the benefits determines that the battery or extreme cruelty has a substantial connection to the need for benefits.

**What conditions must be met to obtain qualified alien status in this category?**

A battered non-citizen is a qualified alien if he or she meets the following 4 requirements:

1)  The battered non-citizens must show that he/she has an approved or pending petition which makes a prima facie case for immigration status in one of the following categories:  1) a Form I-130 (Petition for Alien Relative) filed by their spouse or the child's parent; 2) a Form I-130 petition as a widow(er) of a U.S. citizen; 3) a self-petition under the Violence Against Women Act (including those filed by a parent on behalf of an abused child); or 4) an application for cancellation of removal or suspension of deportation filed as a victim of domestic violence; and

---

[1] Deeming is a process in which the State agency counts a portion of the income and resources of an immigrant's sponsor as income and resources belonging to the immigrant when determining SNAP eligibility.  Please refer to Section VI of this Guidance for information on sponsor deeming.

LADOJ-ASYLUM5357

2) The non-citizen, the non-citizen's child or the non-citizen child's parent has been abused in the United States under one of the following circumstances:

- The non-citizen has been battered or subjected to extreme cruelty in the U.S. by a spouse or parent of the non-citizen, or by a member of the spouse's or parent's family residing in the same household if the spouse or parent consents to or acquiesces in the battery or cruelty; or
- The non-citizen's child has been battered or subjected to extreme cruelty in the U.S. by a spouse or parent of the non-citizen, or by a member of the spouse's or parent's family residing in the same household if the spouse or parent consents to the battery or cruelty, and the non-citizen did not actively participate in the battery or cruelty; or
- The parent of a non-citizen child has been battered or subjected to extreme cruelty in the United States by the parent's spouse, or by a member of the spouse's family residing in the same household as the parent, if the spouse consents to or acquiesces in such battery or cruelty; and

3) There is a substantial connection between the battery or extreme cruelty and the need for the public benefit sought; and

4) The battered non-citizen, child, or parent no longer resides in the same household as the abuser.

**If a non-citizen is determined to be a qualified alien under these conditions, is that person automatically eligible for SNAP benefits based on qualified alien status?**

No, unless the qualified alien is a child under 18.  Otherwise, the conditions discussed above only establish that the battered non-citizen is a qualified alien.  As discussed in Section I, this category of qualified alien must meet one other condition for eligibility such as a five-year residency requirement or an LPR with 40 qualifying quarters of work.

**When does the five-year waiting period begin for abused non-citizens?**

The five-year period begins when the prima facie case determination is issued or when the abused non-citizen's I-360 visa petition is approved, whichever is earlier.  In making its determination, a State agency should keep in mind that the relevant date for eligibility is the date the non-citizen obtained qualified alien status as an abused non-citizen rather than the date of that individual's immigration status, such as that of an LPR.

LADOJ-ASYLUM5358

**How does a State agency determine whether the battery has a substantial connection to the need for benefits?**

On December 11, 1997, the Department of Justice (DOJ) published *Guidance on Standards and Methods for Determining Whether a Substantial Connection Exists Between Battery or Extreme Cruelty and Need for Specific Public Benefits*, 62 FR 65285, guidance for making a determination as to whether a substantial connection exists between the battery or extreme cruelty and the applicant's need for public benefits. Examples in this guidance include the following situations where benefits are needed: to enable the applicant and the applicant's child or parent to become self-sufficient; to escape the abuser or community in which the abuser lives or to ensure the safety of the applicant; because of a loss of financial support, dwelling or source of income due to separation from the abuser; to alleviate nutritional risk; or because the individual requires medical attention or mental health counseling, or has become disabled, as a result of the abuse.

**If a battered non-citizen with a sponsor receives SNAP, can the sponsor be held liable?**

When the non-citizen's sponsor has signed a binding affidavit of support, the sponsor may be liable for reimbursement of the cost of SNAP benefits received by the battered non-citizen. As discussed in Section VII on Sponsor Liability, State agencies have broad discretion in determining whether to pursue legal action against a sponsor.

## U VISAS

**Who can have a U Visa?**

Individuals who are victims of criminal activity who have suffered substantial mental or physical abuse because of the crime may be granted "U" nonimmigrant status, also known as a U Visa. The U Visa allows the victim to remain in the U.S. and assist law enforcement agencies or government officials in the investigation or prosecution of the criminal activity. Non-citizens granted U nonimmigrant status can remain in the U.S. for a period of up to four years.

**Is an individual with a U Visa eligible for SNAP?**

No. Individuals with U Visas, including minor children under the age of 18, are ineligible for SNAP as they have temporary status and are not considered qualified aliens. However, if the individual adjusts to qualified alien status, such as LPR or battered immigrant status, then the individual could potentially be eligible to receive SNAP.

LADOJ-ASYLUM5359

## REFERENCES

Trafficking Victims Protection Act of 2000 (P.L. 106-386) (October 28, 2000).

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) (P.L. 110-457).

DHS, *New Classification for Victims of Criminal Activity; Eligibility for ''U'' Nonimmigrant Status*, 72 FR 53014 (September 17, 2007).

DOJ, *Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996*, 62 FR 61344 (November 17, 1997).

DOJ, *Guidance on Standards and Methods for Determining Whether a Substantial Connection Exists Between Battery or Extreme Cruelty and Need for Specific Public Benefits*, 62 FR 65285 (December 11, 1997).

HHS Fact Sheet, *Access to HHS-Funded Service for Immigrant Survivors of Domestic Violence*, available at http://www.hhs.gov/ocr/civilrights/resources/specialtopics/origin/domesticviolencefactsheet.html

ORR Information on Victims of Human Trafficking, available at http://www.acf.hhs.gov/trafficking.

ORR State Letter #01-13, *The Trafficking Victims Protection Act of 2000*, available at http://www.acf.hhs.gov/programs/orr/policy/sl01-13.htm.

ORR State Letter #02-01, *Removal of Expiration Dates from Certification Letters for Adults and Eligibility Letters for Children*, available at http://www.acf.hhs.gov/programs/orr/policy/sl02-01.htm.

ORR State Letter #02-25, *Toll-Free phone Number for Trafficking Victim Verification*, available at http://www.acf.hhs.gov/programs/orr/policy/sl02-25.htm.

ORR State Letter #04-12, *The Trafficking Victims Protection Reauthorization Act of 2003 – Eligibility for Federally Funded or Administered Benefits and Services to the Same Extent as Refugees Extended to Certain Family Members of Victims of a Severe Form of Trafficking in Persons*, available at http://www.acf.hhs.gov/programs/orr/policy/sl04-12.htm.

ORR State Letter #08-09, *Notification to State Refugee Coordinators and Refugee Health Coordinators of Issuances of Certifications/Eligibility letters to Victims of a Severe Form of Trafficking in Persons*, available at http://www.acf.hhs.gov/programs/orr/policy/sl08-09.htm.

ORR State Letter #10-05, *Requesting Assistance for Child Victims of Human Trafficking*, available at http://www.acf.hhs.gov/programs/orr/policy/sl10-05.htm.

LADOJ-ASYLUM5360

## SECTION V – VERIFICATION OF IMMIGRATION STATUS

### GENERAL REQUIREMENTS

To ensure that only those who are eligible for SNAP receive the benefits they are eligible to receive, State agencies must verify the immigration status of only those individuals who are *applying* for SNAP benefits.  State agencies are not required to verify the immigration status of anyone who is applying for SNAP on behalf of others in their household.  For example, a non-citizen may choose to apply only for his or her U.S. citizen children in the household.

Under **no circumstances** may a State agency:

1) Require any information about the citizenship or immigration status of anyone who is ***not applying*** for SNAP;
2) Deny SNAP to applying household members because a non-applicant household member has not disclosed his or her citizenship or immigration status or Social Security number; or
3) Try to establish or verify immigration status through any means other than the procedures outlined below.  DHS has primary responsibility to determine the status of non-citizens.

**Why is this important?**

Eligible persons have an entitlement to food assistance and the Food and Nutrition Act requires that State agencies provide fair service to applicants.  Some applicants (typically eligible children in families where other adults are not eligible) cannot apply on their own. They depend on adult household members to secure assistance.  States must be able to structure an application process that enables these members to apply for children without divulging information about their own immigration status.



The application process needs to inform potential applicants that they may apply for certain household members, and that persons who do not meet the immigration and SSN requirements will not receive benefits, but must provide other information to complete the application.

LADOJ-ASYLUM5361

## APPLICANT RESPONSIBILITY TO PROVIDE DOCUMENTATION

### Are applicants required to provide proof of immigration status?

Yes.  Applicants have certain responsibilities to provide proof of immigration status.  If a household member is unable or unwilling to provide documentation of immigration status for him or herself or for any household member, 7 CFR 273.4(b)(2) requires a State agency to:

- ✓ Classify that person and/or the household member as an ineligible non-citizen; and
- ✓ Stop efforts to obtain such documentation.

### What are applicants' responsibilities for providing proof of immigration status?

The household has primary responsibility for providing proof of immigration status for all household members applying for SNAP.  Household members applying for SNAP for themselves are required to provide proof of eligible immigration status [1] as a condition of eligibility.  Household members applying on behalf of children in the household, and not any adults, need only provide information regarding the children's immigration status.

Non-citizens who are lawfully present in the U.S. typically have documents issued by DHS which contain information about that individual's immigration status and the date that individual entered the country or adjusted to the status shown on the card.  Some eligible applicants may not have documents issued by DHS, and in some cases the date of entry or adjustment may not be necessary or required.  Until acceptable documentation is provided, a non-citizen is ineligible for SNAP benefits unless:

- The State agency has submitted a copy of a document provided by the household to USCIS for validation.  Pending validation, the State agency cannot deny, delay, reduce or terminate the individual's eligibility for SNAP on the basis of immigration status; or

- The individual provides documentation that SSA is conducting an investigation to determine if more quarters of work coverage can be credited.  In this situation, the State

---

[1] Most non-citizens will provide documentation from DHS.  However, acceptable documentation may also be issued by other Federal agencies, such as ORR, the Bureau of Indian Affairs, or a court.  For purposes of this Guidance, this documentation will be referred to as "proof of eligible immigration status".  Some eligible non-citizens, including but not limited to trafficking victims, Cuban or Haitian entrants and battered non-citizens, may not have documents in their possession.

LADOJ-ASYLUM5362

agency must certify the individual pending the results of the investigation for up to 6 months from the date of original determination of insufficient quarters; or

- The applicant or State agency has submitted a request to a Federal agency (other than USCIS) for verification of information applicable to the individual's immigration status. In this situation, the State agency must certify the individual pending the results of the investigation for up to 6 months from the date of original request for verification.

| Protecting Civil Rights | |
| --- | --- |
|  | The verification of immigration status should never give rise to discrimination.  Four major civil rights laws (the Age Discrimination Act of 1975, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, and Title VI of the Civil Rights Act of 1964) apply to all aspects of SNAP.  SNAP is subject to these laws. |

## VERIFICATION

**What are State agencies' responsibilities for verifying immigration status?**

Although the household has primary responsibility for providing proof of immigration status, SNAP regulations at 7 CFR 273.2(f)(5) provide that the State agency must assist the household in obtaining verification of immigration status provided the household is cooperating with the State agency.  Most State agencies can then verify the validity of immigration documents through its SAVE system.  States that have opted to participate in SAVE must use SAVE.

**Can a non-citizen be treated as a non-applicant and apply only for other household members?**

Yes.  The September 21, 2000 Joint Guidance[1] provides that a non-citizen may be treated as a non-applicant early in the application process.  The Joint Guidance was issued in response to

---

[1]Detailed guidance on procedures for non-applicants is available in the tri-agency memorandum, *Joint Guidance on Citizenship, Immigration Status and Social Security Numbers*, signed by officials from the USDA, and the Administration for Children and Families and the Centers for Medicare and Medicaid Services (previously known as the Health Care Financing Administration) in the U.S. Department of Health and Human Services.  This guidance

LADOJ-ASYLUM5363

concerns that citizen children and other eligible household members were not receiving benefits because of inquiries into citizenship, immigration status, and Social Security numbers for family members not seeking assistance.  Although non-applicants are not eligible to receive SNAP benefits, they must still disclose their income, resources and other information so that the State agency can determine eligibility and benefit amounts for the remaining household members, including citizen children.  This ensures that vulnerable populations like eligible citizen children who cannot apply on their own have access to program benefits.

**What if a household or an individual is unable or unwilling to provide documentation of immigration status?**

SNAP regulations provide that when a household or an individual indicates inability or unwillingness to provide documentation of immigration status for any household member, the State agency must classify that member as an ineligible non-citizen.  SNAP regulations further provide that in such cases the State agency must not continue efforts to obtain that documentation.

**The following illustrates how a State agency can verify immigration status:**

| Immigration status | **Acceptable documentation—**State agencies can obtain information on acceptable immigration documents and USCIS codes from the DOJ Interim Guidance.[1]<br><br>**SAVE—**Most State agencies can verify the validity of immigration documents through USCIS's SAVE system.  States that have opted to participate in SAVE must use SAVE.<br><br>**Discrepant Information—**When the automated check cannot verify the documents or when there is a significant discrepancy between the automated data and the information provided by the applicant/recipient, the State agency must verify the validity of that documentation by submitting USCIS Form G-845 (Document Verification Request) to USCIS with attached photocopies of the documentation.  The State agency must also continue to determine the eligibility of other household members for whom documentation has been provided.  The State agency must also use this manual procedure when it does not have access to SAVE and the documents submitted by the non-citizen are questionable. |
| --- | --- |

---

was released on September 21, 2000 and is available on the FNS website at http://www.fns.usda.gov/snap/rules/Memo/2000/JointGuidanceonCitizenship.htm .

[1] DOJ, *Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996*, 62 FR 61344 (November 17, 1997). Some documents and USCIS codes that eligible applicants may have were created after the 1997 guidance was issued, and may not be listed there.

LADOJ-ASYLUM5364

**The following illustrates how a State agency can verify status for special categories:**

| | |
|---|---|
| **Veteran or active duty status** | SNAP eligibility extends to qualified aliens who are veterans with an "honorable" discharge or who are on active duty (other than for training) in the U.S. Army, Navy, Air Force, Marine Corps, or Coast Guard (but not full-time National Guard) as well as to the spouse and dependent children of veterans and active duty personnel.<br><br>Verification of active duty can be established through the service member's current Military Identification Card or a copy of the member's military orders.<br><br>Verification of honorable discharge status can be established through the veteran's discharge certificate showing "Honorable" discharge from active duty in the U.S. Army, Navy, Air Force, Marine Corps, or Coast Guard.  A discharge "Under Honorable Conditions" does not meet this requirement. |
| **Certain American Indians born abroad** | American Indians born in Canada to whom Section 289 of the INA applies and members of a Federally-recognized tribe are eligible for SNAP benefits on the same basis as citizens.  Some American Indians born in Canada to whom Section 289 of the INA applies may have USCIS documentation establishing LPR status.  This can be verified through SAVE or other procedures States use to verify immigration status.  Applicants without USCIS documents may present a letter or other tribal document certifying at least 50 percent Indian Blood, as required by Section 289 of INA, combined with a birth certificate or other evidence of birth in Canada.<br><br>Applicants can establish membership in a Federally-recognized tribe by presenting a membership card or other tribal document establishing membership in an Indian tribe.  If an applicant has no documentation, the State can verify membership by contacting the applicable tribe.  A list of Indian Tribes and tribal government contacts may be obtained from DOJ's Office of Tribal Justice.[1] |
| **Trafficking Victims** | ORR has been given the authority to certify that an individual is a victim of a severe form of trafficking and issues a certification letter to such individuals.  Applicants in this category must submit their original certification letter from ORR.  Victims of severe form of trafficking are not required to provide immigration documents to verify their status.  State agencies must contact ORR at (866) 401-5510 to confirm the validity of the certification letter. |

---

[1] The Bureau of Indian Affairs also publishes a directory of contact information for Federally recognized tribes that may be a helpful resource for States in verifying the status of individual applicants.  The directory is available at http://www.bia.gov/idc/groups/xois/documents/text/idc002652.pdf

LADOJ-ASYLUM5365

| Hmong or Highland Laotian Tribal Members | SNAP eligibility extends to an individual lawfully residing in the United States who was a member of a Hmong or Highland Laotian tribe that rendered assistance to the United States during the Vietnam era as well as to that individual's spouse (or surviving spouse who has not remarried) or unmarried dependent children. |
|---|---|
| | To verify status in this category, a State agency may refer to FNS Guidance *Technical Assistance Guide for the Implementation of Section 508 of the Agricultural Research, Extension, and Education Reform Act of 1998* (September 28, 1998 ), and a follow-up to this Guidance *Hmong and Highland Laotian Guidance on Verifying Status* (February 24, 1999).  (State agencies may obtain copies of these memoranda from their Regional Offices.) |

**How can a State agency verify how long a non-citizen has been in a qualified status?**

USCIS documents generally contain the date a non-citizen entered the country or adjusted to the immigration status reflected on the document.  If a non-citizen does not have USCIS documentation, the State agency can verify the date of entry into the United States or date status was given by submitting USCIS Form G-845 and Form G-845 Supplement to USCIS.

**What if a non-citizen does not want the State agency to contact USCIS about the non-citizen's status?**

SNAP regulations provide that if a non-citizen does not want the State agency to contact USCIS to verify his or her status, the State agency must give the household the option of withdrawing its application or participating without that member.  A State agency may only verify the immigration status of those applying for SNAP; the State agency may not verify the immigration status of non-applicants living in the applicant's household.

As stated previously, State agencies cannot deny benefits to otherwise eligible household members simply because other members have chosen not to disclose their citizenship, immigration status, Social Security number, or sponsor information.  For additional information, refer to final regulations published by FNS on November 21, 2000 (65 FR 70147) and on January 29, 2010 (75 FR 4916).

**What if an applicant claims to be a U.S. citizen or U.S. national but cannot provide verification?**

SNAP regulations require State application forms to provide a statement allowing applicants to attest, under penalties of perjury, to the citizenship status of the members applying for benefits. This attestation of U.S. citizenship is generally sufficient for SNAP purposes.

If the applicant's status as a U.S. citizen or U.S. national is questionable, other acceptable forms of verification can be found in attachment 4 of the DOJ Interim Guidance.  If the household

LADOJ-ASYLUM5366

cannot provide acceptable verification of U.S. citizenship or national status as provided in the DOJ Interim Guidance and the household can provide a reasonable explanation for the lack of verification, the State agency must accept a signed statement, under penalty of perjury, from a third party indicating a reasonable basis for personal knowledge that the individual in question is a U.S. citizen or non-citizen national. The signed statement must contain a warning of the penalties of helping someone commit fraud.

If a State agency submits a household document to USCIS for verification, the State agency cannot delay, deny, reduce or terminate the individual's eligibility for benefits on the basis of the individual's immigration status pending such verification. Absent verification, or third party attestation of U.S. citizenship or non-citizen national status, the member whose citizenship or non-citizen national status is in question is ineligible to participate until the issue is resolved. The income and resources of the ineligible member will be considered available to any remaining household members as set forth in SNAP regulations.



States must follow SNAP regulations on verifying citizenship when questionable. However, SNAP regulations provide that the guidelines State agencies use to verify questionable information shall not be based on race, religion, ethnic background, or national origin, nor target a particular group.

**REFERENCES**

7 CFR 273.2(f)(1)(ii)

7 CFR 273.2(f)(2)(i) and (ii)

7 CFR 273.2(f)(10)

7 CFR 273.4(b)(2)

7 CFR 272.11(d)

*Joint Guidance on Citizenship, Immigration Status and Social Security Numbers* (September 21, 2000), available at http://www.fns.usda.gov/snap/rules/Memo/2000/JointGuidanceonCitizenship.htm.

DOJ, *Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996*, 62 FR 61344 (November 17, 1997).

DOJ Proposed Rule, *Verification of Eligibility for Public Benefits*, 63 FR 41662 (August 4, 1998).

LADOJ-ASYLUM5367

FNS Final Rule, *Food Stamp Program: Noncitizen Eligibility, and Certification Provisions of Pub. L. 104-193 as Amended by Public Laws 104-208, 105-33 and 105-185*, 65 FR 70134-70212 (November 21, 2000).

FNS Final Rule, *Food Stamp Program: Eligibility and Certification Provisions of the Farm Security and Rural Investment Act of 2002*, 75 FR 4912 (January 29, 2010).

FNS Guidance, *Technical Assistance Guide for the Implementation of Section 508 of the Agriculture Research, Extension, and Education Reform Act of 1998* (September 28, 1998).

FNS Guidance, *Hmong and Highland Laotian Guidance on Verifying Status* (February 24, 1999).

HHS Office of Refugee Resettlement (ORR) Information on Victims of Human Trafficking, available at http://www.acf.hhs.gov/trafficking.

LADOJ-ASYLUM5368

## SECTION VI – SPONSOR DEEMING

### BACKGROUND

**Sponsors** who bring family-based and certain employment-based non-citizens to the U.S. must demonstrate that they can provide enough financial support to the sponsored non-citizens so that they do not have to rely on public benefits.[1]  Sponsor deeming applies only to certain LPRs.  To address that requirement, the income and resources of a sponsor are **deemed** to the sponsored non-citizen when State agencies determine the non-citizen's eligibility for SNAP benefits.

Sponsored non-citizen children, domestic violence survivors and the indigent[2], because they are particularly vulnerable populations in need of food assistance benefits, are exempt from deeming requirements.



**What is deeming?**

Deeming is a process in which the State agency, in determining a non-citizen's eligibility for SNAP and benefit allotment, counts a portion of the income and resources of a non-citizen's sponsor as income and resources available to the non-citizen.

**Who is a sponsor?**

A sponsor is someone who signs an affidavit (most I-864 Affidavit of Support forms under Section 213A of the INA) promising to provide enough financial support to maintain the sponsored non-citizen at an annual income that is not less than 125 percent of the Federal poverty line (100 percent for active duty military if they are sponsoring their spouse or children). It is required that the sponsor sign this legally binding affidavit of support.  The USCIS Final

---

[1] Prior to passage of PRWORA, sponsored non-citizens were subject to deeming in SNAP for up to three years. PRWORA and subsequent amendments made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, P.L. 104-208, extended the length of time that the income and resources of sponsors must be attributed to those sponsored and also provided that agencies may sue sponsors in Federal or State courts to repay the value of those benefits if repayment has been requested and not paid.
[2] As discussed later in this Section, a non-citizen is indigent if his or her own income and any assistance provided by the sponsor or any other individuals is not enough for the non-citizen to obtain food and shelter without food assistance benefits.

LADOJ-ASYLUM5369

Rule at 8 CFR 213a.2(c)(2)(iii)(C) allows for a maximum of two joint sponsors[1], including the principal sponsor, per family unit.  A joint sponsor is only permitted when the principal sponsor's income is insufficient.  The joint sponsor must also sign an affidavit of support.

**Which non-citizens are subject to deeming?**

Deeming applies only to eligible LPRs whose sponsor has signed a legally binding affidavit of support (known as 213A affidavits, mostly I-864 forms) on or after December 19, 1997.  Prior to this time, affidavits of support were not legally binding[2], therefore the sponsor could not be legally compelled to support the non-citizen.  The following are not subject to sponsor deeming:

| Non-Citizen Group | Reason for Exemption From Deeming Requirements |
|---|---|
| Children | Deeming does not apply to children under 18 years old regardless of when they entered the U.S. |
| Battered Spouses or Children | Deeming does not apply during any 12-month period if a non-citizen is a battered spouse, battered child or parent, or child of a battered person provided the battered non-citizen lives in a separate household from the person responsible for the battery.  The exemption can be extended for additional 12-month periods if the non-citizen demonstrates that the battery is recognized by a court, administrative order, or by USCIS and if the agency administering benefits determines that the battery has a substantial connection to the need for benefits. |
| Non-Citizens Without Sponsors | In general, qualified aliens who enter the country under immigration laws other than the family-sponsored categories do not have sponsors of the type that incur a liability when the non-citizen obtains means-tested benefits.  This group includes refugees, asylees, persons granted withholding of deportation, Amerasians, trafficking victims, SIVs, and Cuban or Haitian entrants.  While it is possible for these individuals to be "sponsored" by an organization such as a church or non-governmental organization, they are not sponsored on most I-864 Affidavit of Support forms, and the organization does not have to sign a legally binding affidavit of support that would subject that individual to deeming requirements. |
| Non-Citizens Whose Sponsor has not Signed a Legally Binding Affidavit of Support | This category includes all but family-based and a few employment-based LPRs who applied on or after December 19, 1997 and all non-citizens who became LPRs or whose sponsors signed affidavits of support before December 19, 1997.  Those who are sponsored by an organization or group, such as refugees, also fall into this category. |
| Sponsor in Same SNAP Household | If the sponsor lives in the same household as the sponsored non-citizen, deeming does not apply because the sponsor's income and resources are already counted.  There is, however, no deeming exemption if the sponsor receives SNAP in another household. |

[1] A non-citizen may not have more than one joint sponsor, so the maximum number of joint sponsors a non-citizen may have is two, including the principal sponsor.  Both sponsors are equally responsible for the sponsored non-citizen's support.  Regardless of whether the non-citizen is sponsored by one or two individuals, the income and resources must be counted.

[2] These prior affidavits of support were known as I-134s.  This form has been used for some individuals who immigrated since that date and should confirm that these immigrants are not subject to sponsor deeming or liability.  As discussed in Section II, DHS, and not USDA, is responsible for determining what immigration forms are valid and acceptable.

LADOJ-ASYLUM5370

| Non-Citizen Group | Reason for Exemption From Deeming Requirements |
| --- | --- |
| Indigent Non-Citizens | SNAP regulations provide that a non-citizen is considered "indigent" if the sum of the non-citizen's household's own income and any cash or in-kind assistance provided by the sponsor or others is less than 130 percent of the poverty income line.  The State agency must notify USCIS if an indigence determination is made, unless the non-citizen opts out of the indigence determination.  Each indigence determination is effective for 12 months and may be renewed for additional 12-month periods. |
| Ineligible Members | If the sponsored non-citizen is ineligible for SNAP because of immigration status (i.e., is not a qualified alien or is an LPR without five years of residency), the sponsor's income is not deemed to other eligible members of the non-citizen's household. |

**Which qualified aliens must have a legally binding affidavit of support?**



The only qualified aliens with legally enforceable affidavits are family-sponsored LPRs, including immediate relatives, and a few employment-based LPRs who came to the United States to work for relatives or in companies partially owned (more than five percent) by relatives AND who have filed for a visa application or applied for an adjustment to LPR status on or after December 19, 1997.[1]

Note that some family-based non-citizens who became LPRs after December 19, 1997 do not have binding affidavits of support, and therefore are not subject to deeming because their application for LPR status was filed before that date.

**What affidavit of support forms can be used to show the non-citizen is sponsored?**

Although SNAP regulations at 7 CFR 273.4(c)(1) and (c)(2)(i) refer to forms I-864 and I-864A only, Section 5(i)(1) of the Food and Nutrition Act refers to the "affidavit of support or similar agreement", therefore any form established by DHS that they deem legally binding is acceptable.

**How long does sponsor deeming last?**

Deeming of the sponsor's income and resources to the sponsored non-citizen lasts until:

- the sponsored non-citizen becomes a naturalized citizen;
- the sponsored non-citizen can be credited with 40 qualifying quarters of work;

---

[1] December 19, 1997 is the effective date for the interim (later adopted as final) rule defining the procedures for submitting affidavits of support.

LADOJ-ASYLUM5371

- the sponsored non-citizen loses LPR status and leaves the U.S. (unless the non-citizen submits a Form I-407 abandoning LPR status and leaves, the non-citizen will be considered still to be an LPR until there is an administratively final removal order);
- the sponsored non-citizen obtains in removal proceedings a new grant of adjustment of status as relief from removal (in this case, if a new I-864 form is required, the support obligation and deeming will apply to the new sponsor); or
- the sponsor dies.

**Are State agencies required to impose these deeming rules in their State-funded food assistance programs?**

No.  States may set their own eligibility rules for their State-funded programs.

**Are LPRs with credit for 40 quarters of work history subject to deeming?**

No.  These individuals are exempt from sponsor deeming and liability rules.

**If deeming applies, how much of the sponsor's resources are deemed to the non-citizen?**

SNAP regulations provide that all but $1,500 of the amount of resources (as defined according to SNAP rules) of the sponsor and the sponsor's spouse are deemed to the sponsored non-citizen.

**If deeming applies, how much of the sponsor's income is deemed to the sponsored non-citizen?**

SNAP regulations provide that the amount of the sponsor's income attributed to the sponsored non-citizen is the total monthly earned and unearned income of the sponsor and sponsor's spouse reduced by 20 percent of their earned income and by SNAP's gross income eligibility limit for a household equal in size to the sponsor, sponsor's spouse if living with the sponsor, and any other person who is a dependent or receives support from the sponsor or sponsor's spouse.  If the sponsor signs an affidavit of support for more than one non-citizen, the sponsor's income is pro-rated among the sponsored non-citizens.  Income is defined according to regular SNAP rules.

**What if the non-citizen's sponsor refuses to provide income and resource information?**

Sponsored non-citizens who are exempt from deeming do not need to provide information about the sponsor's income and resources.  If, however, a non-citizen is subject to deeming, the eligible sponsored non-citizen is responsible for obtaining the cooperation of the sponsor and for providing the State agency at the time of application and recertification with the information and documentation necessary to calculate deemed income and resources.  The State agency must

LADOJ-ASYLUM5372

assist the household in obtaining the necessary verification.  If necessary, USCIS through its SAVE program can provide the sponsor's name, address, and Social Security number.

## EXCEPTIONS TO DEEMING FOR CERTAIN VULNERABLE POPULATIONS

The following provides more details about exceptions to deeming for certain vulnerable populations.

### DEEMING AND CHILDREN

**Can a sponsor's income be deemed to children?**

No.  Sponsored non-citizen children under the age of 18 are exempt from deeming requirements.  The 2002 Farm Bill also provided that a sponsor's income cannot be counted in determining the eligibility of U.S. citizen children under the age of 18.  Regardless of whether there are citizen or non-citizen children in the home, all children are treated equitably in that a sponsor's income cannot be considered when determining the child's eligibility for SNAP.  This ensures that eligible children get the benefits they need.



**How does sponsor deeming work when there are adults and children are in the home?**

Since children are not subject to deeming, only a portion of a sponsor's income would be counted for any remaining adult household members subject to sponsor deeming.  The following illustrates how to treat sponsor income before and after the 2002 Farm Bill changes:

| POST-2002 Farm Bill—Effective April 1, 2010[1] | | |
|---|---|---|
| **Household composition** | | **How the sponsor's income of $1000 is currently counted** |
| **Example 1** | Sponsored mom and dad with 1 **non-citizen** child and 1 **citizen** child under the age of  18 | Half ($500) of the income is counted as only a portion is deemed to the parents ($1000/4 x 2 sponsored adults), as sponsor income cannot be deemed to citizen or non-citizen children. |
| **Example 2** | Sponsored mom and dad with 2 **citizen** children under 18 | Half ($500) of the income is counted ($1000/4 x 2 sponsored adults) as sponsor income cannot be deemed to citizen children. |

[1] April 1, 2010 is the effective date of FNS's Final Rule implementing the 2002 Farm Bill.

LADOJ-ASYLUM5373

| PRE-2002 Farm Bill—Prior to April 1, 2010 | | |
|---|---|---|
| **Household composition** | | **How the sponsor's income of $1000 was counted** |
| **Example 1** | Sponsored mom and dad with 2 **non-citizen** children under 18 | Half ($500) of the income was counted as only a portion is deemed to the parents ($1000/4 in the home x 2 sponsored adults), as non-citizen children exempt from sponsor deeming. |
| **Example 2** | Sponsored mom and dad with 2 **citizen** children under 18 | The full $1000 was counted as no exemption for citizen children. |

## INDIGENCE DETERMINATIONS

A non-citizen who is indigent is exempt from sponsor deeming.  A non-citizen is **indigent** if the non-citizen's own income and any assistance provided by the sponsor or any other individuals is not enough for the non-citizen to obtain food and shelter without food assistance benefits.  If the sum of the eligible sponsored non-citizen household's own income, the cash contributions of the sponsor and others, and the value of any in-kind assistance the sponsor and others provide does not exceed 130 percent of the poverty income guideline for the household's size, the sponsored non-citizen's household would be considered indigent.  The State agency makes a determination as to indigence.

Once a determination of indigence is made, the non-citizen remains indigent for 12 months from the date of eligibility, regardless of any additional information that may be obtained from the State agency's SAVE query on the sponsor within the household's certification period.  The 12-month indigence determinations are renewable for additional 12-month periods.

**Does the State agency have to verify the sponsor's income and resources to make an indigence determination?**

No.  On March 6, 2009, FNS issued a policy memo clarifying that verification of a sponsor's income and resources is not needed to make an indigence determination.  A sponsored non-citizen may self-declare that he or she is not being supported by the sponsor.  The State agency does not need to verify non-support from the sponsor because to require such verification would create a barrier to program access, particularly in cases where the sponsor cannot be located.  Even if the sponsor could be located, it is unlikely that he or she would provide verification of failure to support a non-citizen, particularly when a legally binding affidavit of support is in place.

Only after the indigence determination has been made can the normal SNAP budgeting process begin to verify and count actual income received, including any cash contributions from the

LADOJ-ASYLUM5374

sponsor.  If the sponsored non-citizen is not indigent, then sponsor deeming rules apply and the State agency must verify the sponsor's total income and resources.

**In making an indigence determination, is the State agency required to count in-kind assistance (i.e., assistance that is not in the form of cash) provided to the non-citizen by the sponsor or other individuals?  If so, how does the State agency assign a monetary value to this assistance?**

The State agency is required to consider in-kind assistance (such as food and shelter) provided to the non-citizen when it determines if a non-citizen is indigent.  The value of in-kind assistance is only taken into consideration in making this indigence determination; it is not considered when determining eligibility or benefit levels for the non-citizen's household.  As stated in the preamble to final regulations published by FNS on November 21, 2000 (65 FR 70168), FNS has not established specific procedures for how a State agency is to assign a monetary value to in-kind assistance.  State agencies may, therefore, use their discretion in establishing a reasonable method for making this assignment.

**Is the State agency required to notify USCIS of each applicant exempted from sponsor deeming due to an indigence determination?**

Yes.  The State agency must notify USCIS (formerly the Attorney General[1]) if a sponsored non-citizen has been exempted from deeming on the basis of an indigence determination and include in the notification the names of the sponsors and the sponsored non-citizen.  Additionally, upon notification that a sponsored alien has received any benefit under SNAP or other means-tested public benefits program, the appropriate Federal or State agency may request reimbursement by the sponsor in the amount of such assistance.  See Section VII of this Guidance for additional information on sponsor liability and Section IX of this Guidance for notification procedures.

**Can a non-citizen opt out of the indigence determination?**

Yes.  The 2002 Farm Bill Final Rule, *Food Stamp Program: Eligibility and Certification Provisions of the Farm Security and Rural Investment Act of 2002*, 75 FR 4912 (January 29, 2010), provides that the non-citizen may opt out of the indigence determination and be subject to regular sponsor deeming rules.  The opt-out is aimed at lessening an individual's hesitation to

---

[1] As a result of the Homeland Security Act of 2002, P.L. 107-296, on March 1, 2003, the Immigration and Naturalization Service (INS) ceased to exist and its functions were transferred from the DOJ to the newly-created DHS.  Three agencies were established within DHS – USCIS, Immigration and Customs Enforcement (ICE), and Customs and Border Protection (CBP).  This effectively changed the notification of indigence determinations from INS under DOJ to USCIS under DHS.

LADOJ-ASYLUM5375

apply for SNAP benefits that may result from the mandatory reporting requirement of indigence determinations to USCIS and from possible sponsor liability.

Prior to conducting an indigence determination, the State agency **must** explain the purpose of the determination to a non-citizen applying for SNAP and provide the non-citizen or their representative the opportunity to refuse the indigence determination.  The sponsored non-citizen must be informed of the consequences of refusing an indigence determination, i.e., that the sponsor's income and resources will be deemed to the non-citizen.

**Must the sponsored non-citizen provide consent before information is shared with USCIS?**

The 2002 Farm Bill Final Rule allows State agencies to develop an administrative process under which information about the sponsored non-citizen is not shared with USCIS or the sponsor without the sponsored non-citizen's consent.  The State agency must inform the sponsored non-citizen that the consequences of failure to provide such consent are that the sponsored non-citizen will be ineligible, and the State agency will determine the eligibility and benefit level of the remaining household members in accordance with 7 CFR 273.11(c).

**REFERENCES**

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), P.L. 104-208 (September 30, 1996).

PRWORA (P.L. 104-193), §421.

7 CFR 273.4.

8 CFR 213a.

8 CFR 299.

DHS and DOJ  Final Rule, *Affidavits of Support on Behalf of Immigrants*, 71 FR 35732 (June 21, 2006).

FNS 2002 Farm Bill Final Rule, *Food Stamp Program: Eligibility and Certification Provisions of the Farm Security and Rural Investment Act of 2002*, 75 FR 4912 (January 29, 2010),

FNS Memo, *Whether Verification of Sponsor's Income is Required to Determine Indigence* (March 6, 2009), available at http://www.fns.usda.gov/snap/rules/Memo/2009/030609b.pdf.

LADOJ-ASYLUM5376

USCIS – Our History, available at
http://www.uscis.gov/portal/site/uscis/menuitem.eb1d4c2a3e5b9ac89243c6a7543f6d1a/?vgnexto
id=e00c0b89284a3210VgnVCM100000b92ca60aRCRD&vgnextchannel=e00c0b89284a3210Vg
nVCM100000b92ca60aRCRD.

LADOJ-ASYLUM5377

## SECTION VII – SPONSOR LIABILITY

### BACKGROUND

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 requires sponsors of certain non-citizens to meet minimum income requirements and to be financially responsible for non-citizens they sponsor.[1]  A sponsor who has signed a legally binding affidavit of support on or after December 19, 1997 for a non-citizen may be liable for the value of SNAP benefits received by that sponsored non-citizen.

**Which sponsors are legally liable when a non-citizen they sponsor receives SNAP benefits?**

Sponsors may be responsible for SNAP benefits received by non-citizens only if:

- The affidavit of support was filed on or after December 19, 1997.
  - This includes most I-864 forms.
  - This does not include I-134 forms.
- The benefits were received during the period of time an affidavit of support was in effect.

If there is joint sponsorship, both the sponsor and joint sponsor are equally responsible for the sponsored non-citizen's support.  The State agency may seek reimbursement from the sponsor, the joint sponsor, or both.  Sponsors who fail to support non-citizens they sponsor may be sued by government agencies providing means-tested benefits or by the non-citizen they sponsor.

**When does the support obligation begin?**

Although a sponsor who has signed a legally binding affidavit of support may be liable for the value of SNAP benefits received from the sponsored non-citizen during the time the affidavit of support was in effect, a USCIS Final Rule, codified at 8 CFR 213a.2(e)[2], provides that the mere signing of an affidavit of support does not impose any obligations on the sponsor, joint sponsor, or household member as the non-citizen may be held to be inadmissible on some other basis.  For

---

[1] Beginning on December 19, 1997, applications for visas or an adjustment of status must include a legally-enforceable affidavit of support for family-sponsored non-citizens and for employment-based non-citizens who are coming to the United States to work for relatives, or for a company where a relative owns at least five percent of the company.  Sponsors who fail to support the non-citizens they sponsor can be sued by government entities providing means-tested benefits as well as by the non-citizens they sponsor.

[2] For a more detailed discussion on the duration of a sponsor's support obligation, see the joint DHS and DOJ  Final Rule, *Affidavits of Support on Behalf of Immigrants*, 71 FR 35732, 35739-40 (June 21, 2006).

LADOJ-ASYLUM5378

the obligation to arise, the sponsored non-citizen must actually acquire permanent resident status on the basis of the application supported by the affidavit of support.

**When does the support obligation end?**

As discussed in Section VI, the support obligation ends when:

- the sponsored non-citizen becomes a naturalized citizen;
- the sponsored non-citizen can be credited with 40 qualifying quarters of work;
- the sponsored non-citizen loses LPR status and leaves the U.S. (unless the non-citizen submits a Form I-407 abandoning LPR status and leaves, the non-citizen will be considered still to be an LPR until there is an administratively final removal order);
- the sponsored non-citizen obtains in removal proceedings a new grant of adjustment of status as relief from removal (in this case, if a new I-864 form is required, the support obligation and deeming will apply to the new sponsor); or
- the sponsor dies.

The sponsor is not responsible for benefits the sponsored non-citizen receives after the support period has ended.  If, however, benefits were received by sponsored non-citizens during the period when the agreement was in effect, the sponsor or the sponsor's estate may be liable to repay the cost of these benefits for ten years after benefits were last received.

**Are there any exceptions for sponsors?**

Final regulations published by FNS on November 21, 2000 (65 FR 70169) clarified that a State agency cannot request reimbursement from the sponsor during any period of time that the sponsor receives SNAP.  If a sponsor subsequently stops receiving SNAP, the sponsor is still not liable for benefits issued to the sponsored non-citizen during the period of time the sponsor received SNAP.

**What is the State agency's responsibility to enforce sponsor liability?**

A State agency may request reimbursement for any "means-tested public benefits" received by a non-citizen during the period of time a Form I-864 affidavit of support is in effect.  There is no obligation to request reimbursement if the State agency does not intend to sue.  If it does intend to sue, before doing so, the State agency must first make a written request for reimbursement.

Prior to pursuing a request for reimbursement, the State agency must first verify that the non-citizen's sponsor is subject to a liability by determining, for example, if the sponsor signed a

LADOJ-ASYLUM5379

binding affidavit of support, if the sponsor received SNAP while the sponsorship agreement was in effect, or if the affidavit of support period has ended.

**Is SNAP a "means-tested public benefit" for purposes of determining sponsor liability?**

Yes.

**What if the liability is not paid?**

If the amount of the liability is not paid, the State agency *may but is not required to* pursue legal action against the sponsor in a Federal or State court.  Prior to filing a lawsuit against a sponsor to enforce the sponsor's support obligation under Section 213A(b)(2) of the INA, a Federal, State, or local governmental agency or a private entity must wait 45 days from the date it issues a written request for reimbursement under Section 213A(b)(1) of the INA.  For further information, refer to the Final Rule published by the DHS and DOJ on June 21, 2006, *Affidavits of Support on Behalf of Immigrants,* 71 FR 35732, and regulations at 8 CFR 213A.

**Are sponsor liability claims subject to regular SNAP claims rules?**

No.  Benefits issued correctly to sponsored non-citizens cannot be considered as SNAP overpayments under the Food and Nutrition Act of 2008, as amended.   State agencies may not keep a portion of liabilities recouped from sponsors.

**How can a State agency verify if a non-citizen has a sponsor who has signed a legally binding affidavit of support?**

The State agency may verify whether a non-citizen has a sponsor who has signed a binding affidavit of support by submitting to USCIS the "Document Verification Request and Supplement (Form G-845 and G-845 Supplement).  Information provided by USCIS includes the name, Social Security number, and address of the non-citizen's sponsor.

Pending verification, the State agency cannot delay, deny, reduce or terminate the individual's eligibility for benefits on the basis of the individual's immigration status.

**Is sponsor liability subject to Quality Control (QC) review?**

No.  Action taken by the State agency against a sponsor is not reviewable for QC purposes.  QC will review whether the amount of the allotment received by the sponsored non-citizen is correct independent of any action taken by the State agency to determine sponsor liability.

LADOJ-ASYLUM5380

## REFERENCES

IIRIRA, P.L. 104-208 (September 30, 1996).

PRWORA (P.L. 104-193), §551.

8 CFR 213a and 299 (USCIS provisions on affidavits of support).

DHS and DOJ Final Rule, *Affidavits of Support on Behalf of Immigrants*, 71 FR 35732 (June 21, 2006).

DOJ Interim Rule, *Affidavits of Support on Behalf of Immigrants*, 62 FR 54346 (October 20, 1997).

FNS Final Rule, *Food Stamp Program: Noncitizen Eligibility, and Certification Provisions of Pub. L. 104-193 as Amended by Public Laws 104-208, 105-33 and 105-185*, 65 FR 70134-70212 (November 21, 2000).

LADOJ-ASYLUM5381

## SECTION VIII – TREATMENT OF INCOME AND RESOURCES OF INELIGIBLE NON-CITIZENS

### BACKGROUND

SNAP has special rules and procedures for handling the income and resources of ineligible non-citizens living in households with other eligible members.  SNAP policy on how the income and resources of ineligible non-citizens is treated depends on whether the non-citizen:

1) Was ineligible prior to the enactment of  PRWORA; or
2) Became ineligible under PRWORA.

**Why is there a difference in the treatment of income and resources for those ineligible before PRWORA compared to those ineligible under PRWORA?**

PRWORA amended Section 6(f) of the Food and Nutrition Act by granting State agencies the authority on how to treat the income and resources of pre-PRWORA ineligibles when determining the eligibility and benefit amount of eligible household members.

PRWORA made additional categories of non-citizens ineligible for SNAP beyond those ineligible under 6(f) of the Act, including, but not limited to: LPRs; certain asylees and refugees; parolees; individuals with deportation withheld; individuals born on or before August 22, 1931 and who lawfully resided in the U.S. on August 22, 1996; blind or disabled; and special agricultural workers admitted for temporary residence.  Although PRWORA made the vast majority of legal immigrants ineligible for SNAP, the 2002 Farm Bill restored eligibility to some made ineligible under PRWORA, including refugees and asylees, certain aged, blind, or disabled, non-citizens whose deportation or removal has been withheld, and children under 18.

**Which non-citizens are considered ineligible before PRWORA?**

Pre-PRWORA ineligibles consist primarily of visitors, tourists, diplomats, students, and undocumented non-citizens as well as those who are unable or unwilling to provide documentation of their immigration status.

**Which non-citizens became ineligible as a result of PRWORA?**

Currently the majority of non-citizens ineligible under PRWORA whose eligibility for SNAP was not restored under the 2002 Farm Bill consist of LPRs who have to meet the 5-year residency requirement.  PRWORA ineligibles also include parolees and special agricultural workers admitted for temporary residence.

LADOJ-ASYLUM5382

**How is income treated for pre-PRWORA ineligibles?**

PRWORA gave States the option to count either all or all but a pro-rata share of the non-citizen's income and deductible expenses when determining the household's eligibility for SNAP.   A pro-rata share means that the income is divided proportionally among all household members, including eligible and ineligible non-citizens.  States that choose to prorate income may also opt to apply the gross income test before prorating the income and deductible expenses.

**How is income treated for PRWORA ineligibles?**

Unlike the treatment of income for pre-PRWORA ineligibles, there is no provision in the Act on how to treat the income and resources for those made ineligible because of PRWORA.  Rather, FNS gave State agencies certain State-wide options under SNAP regulations.  Like pre-PRWORA ineligibles, States have the option to count a pro-rata share of income and deductible expenses when determining the household's eligibility for SNAP.

Alternatively, the State may opt to not count any of the PRWORA ineligible's income and deductible expenses.  Under this option, States must conduct two benefit calculations to ensure that the benefit amount for the eligible members does not exceed the amount of the allotment the household would have received if the ineligible member had been included.

The following chart lists the State-wide options available on how the ineligible non-citizen's income and deductions are treated when determining SNAP eligibility and benefit levels based on whether the non-citizen is pre-PRWORA ineligible or PRWORA ineligible.  States must pick one available option for pre-PRWORA ineligibles and one available option for PRWORA ineligibles and apply State-wide:

|  |  | **Pre-PRWORA Ineligibles** (e.g. visitors, students, and undocumented) | **PRWORA Ineligibles** (e.g. LPRs that do not have 5-year residency) |
|---|---|---|---|
|  | **State-wide Options** | **Option Available?** | **Option Available?** |
| 1 | Count pro-rata share of income and deductible expenses | **Yes** | **Yes** |
| 2 | Apply gross income test first and then count pro-rata share of income and deductible expenses | **Yes** | No |
| 3 | Count all income and deductible expenses | **Yes** | No |
| 4 | Count none of the income and cap allotment at lower amount | No | **Yes** |

LADOJ-ASYLUM5383

**Which State option is used the most?**



**OPTION 1:** To help simplify program administration, the majority of States opt to prorate income and deductible expenses for pre-PRWORA ineligibles and PRWORA ineligibles.

| EXAMPLES |
| --- |

**PRE-PRWORA INELIGIBLE**

**Scenario A:** Household consists of an undocumented non-citizen parent of three citizen children. Non-citizen parent is employed and makes $1000 a month.

| State-wide Option | Pre-PRWORA Ineligible |
| --- | --- |
| **1** — OR | Count a pro-rata share of $1,000, which equals $750 ($1,000/4 persons in the household multiplied by 3 eligible household members). |
| **2** — OR | Apply the $1,000 to the gross income limit for a household size of 3 (the eligible members).  If over the gross income limit, the household is ineligible. If under the gross income limit, then count a pro-rata share of $1,000, which equals $750 ($1,000/4 persons in the household multiplied by 3 eligible household members) when applying the net income test. |
| **3** | Count all income of $1,000 for the 3 eligible household members. |

**Scenario B:** Household consists of ineligible non-citizen parent on a student visa with two citizen children.  Non-citizen parent is employed and makes $1800 a month.

| State-wide Option | Pre-PRWORA Ineligible |
| --- | --- |
| **1** — OR | Count a pro-rata share of $1,800, which equals $1,200 ($1,800/3 persons in the household multiplied by 2 eligible household members). |
| **2** — OR | Apply the $1,800 to the gross income limit for a household size of 2 (the eligible members).  If over the gross income limit, the household is ineligible. If under the gross income limit, then count pro-rata share of $1,800, which equals $1,200 ($1,800/3 persons in the household multiplied by 2 eligible household members) when applying the net income test. |
| **3** | Count all income of $1,800 for the 2 eligible household members. |

LADOJ-ASYLUM5384

**PRWORA INELIGIBLE**

**Scenario:** Household consists of mom and dad who are both LPRs and two citizen children. Dad and mom are ineligible for SNAP under PRWORA due to the 5-year residency requirement, but their citizen children are potentially eligible.  Dad and mom have combined earnings of $1,500 per month and pay $600 per month in rent with utilities included.

| State-wide Option[1] | PRWORA Ineligible |
|---|---|
| **1 — OR** | Count a pro-rata share of $1,500, which equals $750 ($1,500/4 persons in the household multiplied by 2 eligible household members).  Also, prorate deductible rent amount of $600, which equals $300 ($600/4 persons multiplied by 2 eligible members). |
| **4** | Count none of the ineligible non-citizen's income [2] and cap allotment at the lower amount. Under this option, States must conduct two benefit calculations to ensure that the benefit amount for the eligible members does not exceed the amount of the allotment the household would have received if the ineligible member had been included.   Hence, the allotment for the eligible household members is "capped" at the lower amount.  |

In determining the two allotment amounts, the first computation (Comp 1) is based on a 4-person household as if all household members are eligible, and the full amount of their income and expenses.  The second computation (Comp 2) is based on a 2-person household consisting of the two citizen children only. Under this option none of mom or dad's income and expenses is counted. The allotment is the lesser amount of the two computations as the following illustrates:

| Comp 1 | | Comp 2 | |
|---|---|---|---|
| **4-Person Household** | | **2-Person Household** | |
| a. Total earned income | $1500 | a. Total earned income | $0 |
| b. Less 20% earned income deduction | $300 | b. Less 20% earned income deduction | $0 |
| c. Less standard deduction | $153 | c. Less standard deduction | $0 |
| d. Adjusted income (a-b-c) | $1047 | d. Adjusted income (a-b-c) | $0 |
| e. Shelter expense | $600 | e. Shelter expense | $0 |
| f.  Excess shelter deduction (e-[1/2 of d]) | $77 | f.  Excess shelter deduction (e-[1/2 of d]) | $0 |
| g. Net monthly income (d-f) | $970 | g. Net monthly income (d-f) | $0 |
| h. Maximum allotment for 4 | $668 | h. Maximum allotment for 2 | $367 |
| i. 30% of g | $291 | i. 30% of g | $0 |
| j. Allotment amount (h-i) | $377 | j. Allotment amount (h-i) | $367 |

**The final allotment amount would be $367, the lesser of Comp 1 and Comp 2**

---

[1]Options 2 and 3 are not available to PRWORA ineligibles.

[2]SNAP regulations provide that State agencies must count any money payment (including payments in currency, by check, or electronic transfer) made by the ineligible alien to at least one eligible household member. In this example, we used zero income as no monetary payment was contributed to an eligible household member.

LADOJ-ASYLUM5385

**How are resources treated for pre-PRWORA non-citizens compared to PRWORA ineligibles?**

Regardless of if the non-citizen is ineligible pre-PRWORA or because of PRWORA, all of the ineligible non-citizens' resources are countable for SNAP purposes.

### REFERENCES

7 CFR 273.11(c)(3).

LADOJ-ASYLUM5386

## SECTION IX – REPORTING UNLAWFUL PRESENCE, INDIGENT NON-CITIZENS, AND FINAL CIVIL JUDGMENTS AGAINST SPONSORS

### BRIEF SUMMARY OF REPORTING REQUIREMENTS

As discussed in further detail below, for SNAP purposes, State agencies are required to notify USCIS when:

- The State agency determines that a household member is ineligible to receive SNAP benefits because that member is not lawfully present in the United States;

- The State agency determines a non-citizen is indigent and therefore exempt from sponsor deeming; or

- The State agency obtains a final civil judgment against the sponsor.

### REPORTING UNLAWFUL PRESENCE

**What is a State's reporting requirement?**

Section 404 of PRWORA requires certain Federal and State agencies (but not SNAP) to report to USCIS on a quarterly basis any individual who they "know" is not lawfully present in the United States.  Although this mandate does not apply to SNAP, Section 11(e)(15) of the Food and Nutrition Act of 2008 contains a similar mandate for State agencies.  However, it is important to remember that State agencies may report for unlawful presence only those non-citizens **who have applied for** SNAP benefits – not other household members, and not adults applying strictly for their children.

**How does a State agency know a non-citizen is not lawfully present in the U.S. under PRWORA?**

On September 28, 2000, an Interagency Notice was published in the Federal Register (65 FR 58301) that provided guidance for compliance with Section 404 of PRWORA.  The Interagency Notice clarified that a government entity "knows" that a non-citizen is not lawfully present in the U.S. only when the entity's finding or conclusion of unlawful presence is made as part of a formal determination by the entity, is subject to administrative review and is supported by a determination of DHS or the Executive Office for Immigration Review, such as a Final Order of Deportation.

LADOJ-ASYLUM5387

 A SAVE query showing no record on an individual or an immigration status that would make an individual ineligible for a benefit **is not a finding of fact** or conclusion of law that the individual is not lawfully present in the United States.

**How can SNAP personnel comply with the reporting requirement in the Act?**

SNAP regulation at 7 CFR 273.4(b)(1) provides that a State agency may meet the Act's reporting requirement by conforming with the Interagency Notice.  Therefore, FNS considers States to be compliant with the reporting requirement if they report to USCIS only those household members who are known to be unlawfully present as a result of a State agency's finding or conclusion of unlawful presence based on a formal determination by the State agency on an individual's claim for benefits which is subject to administrative review by the State agency and is supported by a determination by DHS or DOJ.  Again, State agencies must report only individuals seeking to receive SNAP benefits for themselves and only when they meet the requirements specified above.

State agencies must conform to the reporting requirements of the Interagency Notice. This policy is consistent with PRWORA requirements and SNAP regulations.  Conforming to the Interagency Notice allows States to comply with Federal law while protecting the individual civil and privacy rights of the SNAP applicant.  It also ensures that the policy on reporting unlawful presence is consistently applied throughout the United States.

| **Protecting Civil Rights** |
| --- |
| In reporting unlawful presence under Section 11(e)(15) of the Food and Nutrition Act of 2008, as amended, States must also adhere to the Civil Rights compliance provisions of Section 11(c) of the Act.  Reporting unlawful presence should never give rise to discrimination.  Four major civil rights laws (the Age Discrimination Act of 1975, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, and Title VI of the Civil Rights Act of 1964) apply to all aspects of SNAP.  SNAP is subject to these laws.<br><br>Under no circumstances may a SNAP household member be reported as being unlawfully present based on race or national origin or on a suspicion that the member is present in the U.S. in an undocumented status because of the individual's appearance or because the individual speaks limited English or is proficient in another language. |

LADOJ-ASYLUM5388

## REPORTING NON-CITIZENS EXEMPT FROM SPONSOR DEEMING DUE TO INDIGENCE

**When the State agency determines a non-citizen as indigent, is the agency required to notify USCIS?**

Yes.  A sponsored non-citizen is considered indigent when that non-citizen is unable to obtain food and shelter without public assistance.  For additional information on how to make an indigence determination, see Section VI of this guidance.  The State agency must notify USCIS when a sponsored non-citizen has been exempted from deeming on the basis of having been determined to be indigent.  Households should be informed that the names and address of the sponsored non-citizen and the sponsor will be provided to USCIS.

**How should this notification be made?**

Procedures for notifying USCIS are provided in the joint DHS/DOJ Final Rule  on June 21, 2006, *Affidavits of Support on Behalf of Immigrants,* 71 FR 35732,  State agencies are required to send a written notice of the determination, including the name of the sponsored non-citizen and of the sponsor to USCIS.  The written notice should include the reference, "Determinations under 421(e) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996." State agencies may send the notification to the following address:

> Office of Policy and Strategy[1]
> U.S. Citizenship and Immigration Services
> 20 Massachusetts Avenue, NW.
> Washington, DC, 20529

## REPORTING FINAL CIVIL JUDGMENTS AGAINST SPONSORS

When a Federal, State, or local agency requests reimbursement from the sponsor for the costs of any means-tested public benefits paid to the sponsored non-citizen, but the sponsor does not respond to the request for reimbursement, then that sponsor is considered to be noncompliant with the provisions of Section 213A of the INA[2].  The government entity *may* then pursue other actions to pursue collection, including legal action in a Federal or State court.  If this occurs and a final civil judgment is made against the sponsor, then USCIS must be notified.

---

[1] The name of the office has changed since the rule was published.
[2] Section 213A of the INA establishes requirements for sponsor's affidavits of support.

LADOJ-ASYLUM5389

The joint DHS/DOJ Final Rule further provides that failure to file a certified copy of the final civil judgment in accordance with this Section has no effect on the plaintiff's ability to collect on the judgment pursuant to law.

**How should this notification be made?**

Procedures for notifying USCIS are provided in the joint DHS/DOJ Final Rule.  State agencies must send a certified copy of the final civil judgment to USCIS along with a cover letter that includes the reference "Civil Judgments for Congressional Reports under Section 213A(i)(3) of the Act" to:

> Office of Policy and Strategy
> U.S. Citizenship and Immigration Services
> 20 Massachusetts Avenue, NW.
> Washington, DC, 20529

## REFERENCES

Food and Nutrition Act of 2008, §11(e)(15).

7 CFR 273.4(b).

DHS and DOJ Final Rule, *Affidavits of Support on Behalf of Immigrants*, 71 FR 35732 (June 21, 2006).

INS Interim Rule, *Affidavits of Support on Behalf of Immigrants* 62 FR 54346, (October 20, 1997).

Interagency Notice, *Responsibility of Certain Entities to Notify the Immigration and Naturalization Service on any Alien Who the Entity "Knows" Is Not Lawfully Present in the United States*, 65 FR 58301 (September 28, 2000).

## SECTION X – PUBLIC CHARGE

**Who is considered a public charge?**

A **public charge** is an individual who is likely to become primarily dependent on the government for subsistence, as demonstrated by either the receipt of public cash assistance for income maintenance, or institutionalization for long-term care at government expense.  The INA provides that an individual who is likely at any time to become a public charge is ineligible for admission into the United States or adjustment of status to become a lawful permanent resident.  In rare cases, a non-citizen who has become a public charge may also face deportation.



Both DHS and the Department of State make determinations as to who is a public charge.  It is important to note that many non-citizen populations, such as refugees, are exempt from public charge requirements.

**Does applying for or receiving SNAP benefits make a non-citizen a public charge?**

No.  Applying for or receiving SNAP:

- Does not make a non-citizen a public charge.  That is, a non-citizen to the United States will not be deported, denied entry to the country, or denied permanent status because of receipt of SNAP benefits.
- Does not affect the individual's immigration status.
- Does not affect the non-citizen's ability to become a U.S. citizen or a lawful permanent resident.



**Has DHS specifically stated that receipt of SNAP is not subject to public charge determinations?**

Yes.  DHS has provided several fact sheets and additional information on its website that specifically state that SNAP benefits as well as other USDA nutrition assistance programs are not considered when public charge determinations are made.  In its *Field Guidance on Deportability and Inadmissibility on Public Charge Grounds*, 64 FR 28689 (March 26, 1999), INS specifically listed Food Stamp benefits as supplemental non-cash benefits that a non-citizen may receive that should not be considered for public charge purposes.  In addition, on October

20, 2009, DHS issued a new fact sheet restating its longstanding policy on public charge and listed the benefits that are not subject to public charge determinations, including SNAP.

**Why is this important?**

Eligible non-citizen individuals and families within non-citizen communities need to know that applying for or receiving SNAP benefits will not affect their ability to get a green card (i.e., become a lawful permanent resident), keep a green card, or become a U.S. citizen.  An application for LPR status will not be denied on public charge grounds based on the use of SNAP.  It is also important that those individuals know that a local SNAP office is not allowed to ask for immigration documents for people in the household that are not trying to get SNAP benefits.  FNS understands the concerns within the non-citizen community about public charge issues, and stands ready to work with States and our outreach partners to inform households affected by SNAP policies so that those who are eligible can participate.


To ensure States have working knowledge of SNAP policy on public charge, FNS issued an All Commissioners Letter on Public Charge on February 10, 2010 that FNS has long supported DHS's policy on public charge and encouraged States administering SNAP benefits to make the policy well known and understood so that eligible non-citizen individuals and families are not dissuaded from applying for or receiving SNAP.

## REFERENCES

DOJ, INS Notice, *Field Guidance on Deportability and Inadmissibility on Public Charge Grounds*, 64 FR 28689 (March 26, 1999).

FNS All Commissioners Letter, Public Charge, available at http://www.fns.usda.gov/snap/rules/Memo/2010/020110.pdf.

USCIS Fact Sheet, Public Charge (October 20, 2009), available at http://www.uscis.gov/USCIS/New%20Structure/Press%20Releases/2009%20Press%20Releases/Oct%202009/public_charge_fact_%20sheet_11_06_09.pdf.

USCIS Q&A, *Public Charge*, available at http://www.uscis.gov/portal/site/uscis/menuitem.eb1d4c2a3e5b9ac89243c6a7543f6d1a/?vgnextoid=829b0a5659083210VgnVCM100000082ca60aRCRD&vgnextchannel=829b0a5659083210VgnVCM100000082ca60aRCRD.

LADOJ-ASYLUM5392

| SECTION XI – MAJOR LEGISLATION AFFECTING NON-CITIZENS IN SNAP | |
|---|---|
| **Legislation** | **Effect on Non-Citizens** |
| PRWORA, P.L. 104-193 (August 22, 1996). | The Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA, also known as welfare reform) barred most lawfully present non-citizens from receiving SNAP.  Three groups were exempt: (1) lawful permanent residents who could be credited with 40 qualifying quarters of work and did not receive any Federal means-tested benefits during any of those quarters after December 31 1996; (2) veterans, immigrants on active duty in the Armed Forces, their spouses and unmarried dependent children; and (3) refugees, asylees, and those with their deportation withheld, for 5 years after entry in the United States. |
| AREERA, P.L. 105-185, (June 23, 1998). | The Agricultural Research, Extension, and Education Reform Act restored SNAP eligibility to:  (1) children under 18 years of age who were in the United States on August 22, 1996; (2) individuals in the United States on August 22, 1996 who were age 65 and over or disabled on that date or who became disabled after that date; (3) Hmong refugees who were tribal members at the time they assisted the United States military during Vietnam; (4) certain Native Americans; and (5) refugees and asylees had their eligibility period extended from 5 to 7 years. |
| FSRIA, P.L. 107-171 (May 13, 2002). | The Farm Security and Rural Investment Act of 2002 (commonly referred to as the 2002 Farm Bill), incrementally restored eligibility to qualified aliens who: (1) receive disability benefits regardless of date of entry (effective October 1, 2002); (2) are under 18 years of age regardless of date of entry (effective October 1, 2003).  In addition, children are no longer subject to sponsor deeming; or (3) have lived in the U.S. for 5 years as a qualified alien (effective April 1, 2003). |
| DoDAA of 2010, P.L. 111-118, §8120 (December 19, 2009). | The Department of Defense Appropriations Act of 2010  provided that Iraqi and Afghan Special Immigrants (SIVs) are eligible for federal public benefits to the same extent and for the same time period as refugees under Section 207 of the INA.  The legislation amended prior authority under the National Defense Authorization Act of 2008, P.L. 110-181, and the Afghan Allies Protection Act of 2009, P.L. 111-8, that provided SIV eligibility for benefits for a period of time not to exceed 8 months from the date the immigrant was granted SIV status. |

LADOJ-ASYLUM5393

This report was prepared by the Program Development Division of Food and Nutrition Service. Although many individuals made important contributions to this report, primary thanks goes to Ms. Connie Slough, the author of the original guidance on non-citizen eligibility.

Sincere thanks also goes to our interagency partners at the Department of Homeland Security's U.S. Citizenship and Immigration Services, the Department of Justice, and the Department of Health and Human Services' Office of Refugee Resettlement for contributing their expertise.

### ADDITIONAL INFORMATION - INQUIRIES

Information about SNAP can be found on the FNS website at:
http://www.fns.usda.gov/snap/Default.htm.

For additional inquiries, contact us at:

Food and Nutrition Service
3101 Park Center Drive, Suite 812
Alexandria, Virginia  22302
http://www.fns.usda.gov/snap/contact_info/default.htm

## USDA NON-DISCRIMINATION STATEMENT

The United States Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of a person's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.)

Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, DC 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD).

## USDA IS AN EQUAL OPPORTUNITY PROVIDER AND EMPLOYER.

LADOJ-ASYLUM5394