1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION


STATE OF ARIZONA, ET AL,     ) CIVIL ACTION NO. 6:22-cv-1130
                             ) AND RELATED CASE 6:23-cv-420
             Plaintiffs,     )
                             )
             vs.             ) JUDGE JOSEPH
                             )
MERRICK GARLAND IN HIS       )
OFFICIAL CAPACITY AS ACTING  )
DIRECTOR OF EXECUTIVE OFFICE )
FOR IMMIGRATION REVIEW, ET AL)
                             )
             Defendants.     ) MAGISTRATE JUDGE WHITEHURST


MOTIONS HEARING

            Transcript of Proceedings before The Honorable
      David C. Joseph, United States District Judge,
      Lafayette, Lafayette Parish, Louisiana, commencing
      on November 6, 2023.

                   Appearances of Counsel:

For the Plaintiffs:        JOSEPH SCOTT ST. JOHN
                           LA Department of Justice
                           909 Poydras St., Ste. 1850
                           New Orleans, LA 70112

For the Defendants:        ERIN RYAN
                           U. S. Department of Justice
                           P. O. Box 868 Ben Franklin Station
                           Washington, D.C. 20044-0868




              Cathleen E. Marquardt, RMR, CRR
              Federal Official Court Reporter
                 800 Lafayette Street
                Lafayette, Louisiana 70501
                Phone:  (337) 593-5223

1              (Lafayette, Lafayette Parish, Louisiana; November 6,

2       2023, in open court.)

3              THE CSO:  All rise.  United States District Court for

4       the Western District of Louisiana is now in session, the

5       Honorable Judge David Joseph presiding.  God save the United

6       States and this Honorable Court.

7              THE COURT:  Please be seated.  Good morning.

8              ATTORNEYS:  Good morning, Your Honor.

9              THE COURT:  How are y'all today?

10             MR. ST. JOHN:  Very well, thanks.

11             THE COURT:  We're on the record now in 22-cv-1130,

12      Arizona, et al. versus Garland, et al.  Counsel please make your

13      appearances.

14             MR. ST. JOHN:  Joseph Scott St. John, Deputy Solicitor

15      for the plaintiff states and State of Louisiana.

16             THE COURT:  Good morning, Mr. St. John.

17             MR. ST. JOHN:  Good morning, sir.

18             MS. RYAN:  Erin Ryan from the Department of Justice on

19      behalf of defendants.  Good morning, Your Honor.

20             THE COURT:  Good morning, Ms. Ryan.

21             So I set this status conference at your request,

22      Ms. Ryan, to discuss some impasse we have at the present time in

23      our completing discovery.  Just so I'm clear, the document

24      discovery has been resolved?

25             MS. RYAN:  Yes, Your Honor, as far as defendants are

1    concerned, and nothing else has been raised by plaintiffs

2    indicating that there's anything remaining document-wise.

3             MR. ST. JOHN:  Your Honor, there's still a motion to

4    compel open on the docket.

5             THE COURT:  Right, I was going to you address that too.

6    You told me at the time that was filed that was a prophylactic

7    motion in case the issues could not be resolved.

8             MR. ST. JOHN:  I think it was partially prophylactic,

9    partially affirmative.  Mr. Redman handled that argument, Your

10   Honor, and I distinctly remember that.

11            THE COURT:  I'm sorry?

12            MR. ST. JOHN:  It was partially prophylactic and

13   partially affirmative.  I can go back and look at it, Your Honor.

14            THE COURT:  I haven't looked at it because I thought

15   you had filed that -- I was going to ask if we still needed to

16   address that.  So what part of it do you think still needs to be

17   addressed?

18            MR. ST. JOHN:  Your Honor, I'll have to go back and

19   look at it.  I did not prepare on that one this morning.

20            THE COURT:  Okay.  Well, I haven't either, so that

21   makes two of us.  All right.  Well, we won't address that today

22   then.  I guess from your personal knowledge, though, without

23   looking at the motion, what documents of discovery do you think

24   is remaining?

25            MR. ST. JOHN:  Your Honor, forgive me, it's been five

1   months, six months.  It's not on the top of my head.  There were

2   some issues, document issues, and I remember we looked at them,

3   wanted the documents, and then we've moved on.

4           THE COURT:  All right.  This is how we left it, and I

5   think we talked about it in the conference room after our last

6   hearing.  You said -- you told me that you had filed it out of an

7   abundance of caution as a prophylactic measure, but you are still

8   working with the government defendants to resolve the outstanding

9   discovery issues.  That's what you told me.

10          MR. ST. JOHN:  That was the prophylactic aspect.  I

11  remember that, that whatever you say for the state, the same is

12  true for the government.  I do recall that.

13          THE COURT:  Okay.  Let's do this, then.  I'm going to

14  strike that motion, and you are going to look at it, and the

15  parts of it that are still relevant, if any, you just file

16  another motion.

17          MR. ST. JOHN:  Understood, Your Honor.

18          THE COURT:  Does that work?

19          MR. ST. JOHN:  That does work, Your Honor.

20          THE COURT:  All right.  For the record that is

21  Doc. 168, Plaintiff States' Second Motion to Compel.

22          All right.  So -- But the reason we're here today is

23  because of the -- well, two things:  Number one, the 30(b)(6)

24  deposition that the defendants want to take of the State of

25  Louisiana.  And to be clear, the State of Florida is not an issue

1    today?

2            MS. RYAN:  That's correct, Your Honor.  We're working

3    with the State of Florida to bring in deposition transcripts we

4    took of their agencies last year into this case, to save the time

5    of the parties.

6            THE COURT:  Okay.

7            MS. RYAN:  And we're working on stipulating to other

8    open issues in this case so that we do not anticipate any

9    depositions of the State of Florida will be needed.

10           THE COURT:  And the second is the deposition experts,

11   depositions of the two experts designated by the plaintiff states

12   and the one expert designated by defendants.  So those are the

13   issues that I'm aware of from reading your joint submission which

14   I appreciate time and effort put into that.

15           So, Ms. Ryan, I guess let's hear from you.  This is

16   your request, and then I have -- frankly I think I know what

17   we're going to do going forward, but I'd like to hear from you

18   anyway.

19           MS. RYAN:  Yes, Your Honor.  We laid out our timeline

20   in our first request for this conference, as well as the joint

21   filing.  We served deposition notices in August.  We were told

22   that the state would get back to us with dates, and then we never

23   heard anything further.

24           Objections were then served on us saying they would not

25   be producing witnesses from the state agencies, and to the extent

1   any witnesses from the agencies did testify, it would only be on

2   behalf of the Attorney General's Office.

3          We went over this last time we were here, Your Honor,

4   about the relationship between Attorney General's office and

5   state agencies.  We do not think that this is proper.  We are

6   entitled to depose these state agencies about the document

7   discovery that we received and the harms that are being alleged.

8          And out position is that, until we know what that scope

9   is, as far as the witnesses, we can't have a meet and confer on

10  individual topics.  We remain open to do it, but we served

11  topics, assuming the witnesses would testify on behalf of the

12  agencies.  Louisiana objected on the basis that they would

13  testify on behalf of the Attorney General's Office.

14          So we're of two different minds --

15          THE COURT:  Right.

16          MS. RYAN:  -- as to the testimony.  So it's impossible

17  to go through the topics and determine relevancy if we're coming

18  at it from two different points of view.

19          THE COURT:  Right, and I think, you know, I read

20  Mr. St. John's view and I understand his as well.  Look, I think

21  the actual -- I think the truth is somewhere between.  Okay.  Let

22  me just kind of clarify some fundamental points I think that I

23  consider crucial to deciding what to do.

24          First of all, discovery period that I've ordered is

25  limited to the states of Louisiana and Florida, and the discrete

1    programs within those states on which the plaintiffs are basing

2    their standing.  Okay.  And so I think some of that's been

3    resolved.  Your request, for example, of the Department of Public

4    Safety has been withdrawn.

5          But the states have the burden of establishing Article

6    III standing, and we have, you know, addressed this process of

7    engaging in this jurisdictional discovery.  It winnowed down the

8    bases on which the states intend to do that.  Okay.  Their

9    burden.  They have chosen which programs.  That's the confines of

10   discovery.  All right?

11         Second, I ordered at the last hearing that the

12   plaintiffs conduct party discovery with the defendants as to

13   these discrete programs within Louisiana and Florida.  Based on

14   the parties' briefing, it's my understanding -- and Mr. St. John,

15   I'd like you to confirm this -- that the AG's office has

16   contacted and is working with the relevant parts of the state to

17   follow that order, correct?

18         MR. ST. JOHN:  That is correct, Your Honor.

19         THE COURT:  All right.

20         MR. ST. JOHN:  I do have to -- I cannot say that I

21   represent those entities.

22         THE COURT:  No, no.  Look, you've contacted them,

23   you're working with them.  There's some transparency there,

24   correct?

25         MR. ST. JOHN:  Correct, Your Honor.

1        THE COURT:  All right.  I fully understand that your

2   office, as a matter of law, within the state of Louisiana -- it's

3   not a unitary executive -- does not have the authority to control

4   agencies that report to the governor.  Okay.  Doesn't matter who

5   the governor is, the AG's office does not control its agency.  So

6   it's a matter of control and direction.  It's not like the

7   president of the United States who every line goes to him

8   eventually in the federal system.  That's not how the state

9   operates, I get that.

10       But the reality is that the AG's office represents the

11   State of Louisiana in this lawsuit.  They must have the ability,

12   as a practical matter, as a practical matter, if not a legal

13   matter, a practical matter to conduct reciprocal discovery as to

14   your alleged bases of Article 3 standing.

15       So I think, you know, if you are working with them, if

16   you have a working relationship with them, and you are engaging

17   in party discovery with that, using those relationships to do

18   that, I think that's sufficient.  Is that what you're doing?

19       MR. ST. JOHN:  That is so far what we have been doing,

20   Your Honor.

21       THE COURT:  Okay.  I had hoped counsel would be able to

22   work more effectively together.  I think we're going to encourage

23   that process today.

24       First, let me go through the issue of the 30(b)(6)

25   deposition.  Okay.  I know, Ms. Ryan, you don't like the

1    disclaimer that the AG's office is only responding based on

2    information known to the AG's office.  Okay.  So, you know, the

3    way I view this is it's akin to any other organizational

4    defendant or plaintiff where, you know, a reasonable

5    investigation is conducted by an organization to answer questions

6    either in interrogatories or a 30(b)(6) deposition.

7            Same thing.  He's made inquiries to the relevant parts

8    of the State of Louisiana to conduct discovery.  Okay?  So I

9    think that meets the standard.  He's telling us on the record

10   that he's done so.

11           I do think, Ms. Ryan, that maybe there's a

12   misunderstanding on your part about the role of a 30(b)(6)

13   deposition in litigation.  While it appears that your efforts to

14   notice the agencies responsible for the information on which you

15   would like the information -- the topics on which you would like

16   to conduct the deposition, that's really not for you to decide as

17   the requesting party.

18           In a 30(b)(6) context, the deponent, here the State of

19   Louisiana, must make a conscientious good faith endeavor to

20   designate persons having knowledge of the matter sought by you,

21   by the defendants, and to prepare those persons in order that

22   they can fully, completely, unevasively answer the questions

23   posed as to the relevant subject matter.  That's from Fifth

24   Circuit case law.  Okay.

25           So you tell him, you tell the State of Louisiana what

1    topics you would like to depose somebody on.  He finds the person

2    to do it.  If nobody knows of those topics, then that person has

3    to educate themselves to speak for the organization here, the

4    State of Louisiana, as to these topics.

5            So your job is not to direct things to different

6    agencies.  The AG's office receives the 30(b)(6) notice,

7    designates a person to respond to each of those questions.  It

8    may be more than one person, but someone that has knowledge of

9    the topics on which you'd like to depose somebody, depose the

10   organizational defendant, the plaintiff in this case.

11           The duty to present and prepare a 30(b)(6) designee

12   goes beyond matters personally known to the designee or to

13   matters on which that designee was personally involved.  Again,

14   it doesn't have to be from the agency.  It has to be someone that

15   has access to documents, has looked at documents, reviewed them

16   and knows enough to answer questions about the scope of the

17   topic.  Okay.

18           MS. RYAN:  Your Honor, if I could just speak up

19   briefly.

20           THE COURT:  Okay.

21           MS. RYAN:  That's fine.  We deposed the State of

22   Florida last year, and their agencies were unable to put forward

23   deponents unless the notice was directly addressed to those --

24           THE COURT:  Yeah, yeah.  I'm not saying you're doing

25   anything in bad faith.  You're actually probably the way you're

1   doing it is based on your experience and trying to be helpful to

2   who would know this stuff.

3               MS. RYAN:  Correct.

4               THE COURT:  As a matter of law, that's not how the

5   30(b)(6) notice works.  You give the topics.  Mr. St. John

6   figures out who can testify to those topics --

7               MS. RYAN:  Yes, Your Honor.

8               THE COURT:  -- and has knowledge.  And the organization

9   must prepare the designee to the extent those matters are

10  reasonably available from documents, past employees, or other

11  sources.

12              Okay.  So at bottom, the 30(b)(6) deponent is the agent

13  for the State of Louisiana and speaks for it as to the noticed

14  topics.  I am going to allow the defendants to take a deposition

15  of one or more persons designated by the State of Louisiana with

16  knowledge to testify about the documents produced by Louisiana

17  and the bases on which Louisiana seeks to establish Article III

18  standing.

19              Okay.  Rather than go through the topics, again, this

20  is the plaintiffs' burden.  Those topics on which -- Those

21  evidentiary bases on which the plaintiffs seek to establish

22  Article III standing, that is the scope of the noticed topics.

23  That's it, so --

24              MS. RYAN:  Yes, Your Honor, and we will go back --

25              THE COURT:  And so that requires conference.  30(b)(6)

1    requires, explicitly requires the parties confer in good faith

2    about the matters for examination.  So I have no doubt that y'all

3    can figure this out.  Louisiana knows what they have produced.

4    They know what their standing is going to be based on, and they

5    can prepare a deponent to answer questions on those topics,

6    right, Mr. St. John?

7              MR. ST. JOHN:  Yes, Your Honor.

8              THE COURT:  I mean, this isn't hard.

9              MR. ST. JOHN:  I agree, Your Honor.  94 topics is hard.

10             THE COURT:  No, no.  I know, but what I'm doing --

11   we're doing the topics -- you're going to talk, you're going to

12   talk and you're going to figure out which ones you are actually

13   going to base standing on, and those are the topics that are

14   going to be deposed on.

15             MR. ST. JOHN:  Your Honor, we would ask that the -- any

16   topics not be duplicative.  Let me give you an example.  Request

17   number -- Topic number one, the number of asylees in Louisiana.

18   Tentatively are under the federal government's control.  What can

19   Louisiana say?  We know there are thousands.  And so that's kind

20   of the disconnect.  I want to make sure it is targeted to what

21   Louisiana actually knows.  That's my concern.

22             THE COURT:  Yeah.  Your obligation does not go

23   beyond -- As in any 30(b)(6) deposition, your obligation is to

24   educate the deponent --

25             MR. ST. JOHN:  About what we know.

1              THE COURT:  About what is known, reasonably available

2    to the State of Louisiana.  That's from the knowledge and the

3    records of the State of Louisiana.  And we're narrowing that,

4    we're winnowing that down to these topics on which the State of

5    Louisiana seeks to establish Article III standing.

6              So I want you not to think about what the previous

7    30(b)(6) deposition notice was.  I want you to sit down and agree

8    to what the topics will be for the 30(b)(6) deposition, and then

9    pick a date to do that.  Okay?

10             MS. RYAN:  That's fine with defendants, Your Honor.

11   We'll go back.  We can send a tentative list of topics to

12   Mr. St. John and try to have a meeting of the minds on that.

13             But I just want to be clear that when Your Honor says,

14   information known to the state, that is not just information

15   known to the Attorney General's Office, but of the state, because

16   they think there is a little bit of --

17             THE COURT:  Yeah.  The Attorney General's Office has

18   been, through making inquiries, gathering information, yes,

19   that's right.  But I also understand the disclaimer that, you

20   know, there may be something out there that they don't know.

21   Okay.  So I understand why they may have that disclaimer, but

22   they are making efforts to gather the information to prepare a

23   deponent to answer questions in this 30(b)(6) deposition.  So

24   that's all that's required.

25             MS. RYAN:  Your Honor, if there is something that the

1    witness or the state does not know, that is a simple question on

2    the record that the witness can say, that's not information that

3    we track, or we're open to stipulating to some of that ahead of

4    time if that is something that Mr. St. John would be interested

5    in to save even more time at the deposition.

6                THE COURT:  Okay.  Yeah, I think that makes a lot of

7    sense.  To the extent, Ms. Ryan, you would want to depose

8    representatives of the state agencies, then third-party discovery

9    would be appropriate for that, and it's too late for that now.

10   We're past that point.

11               But if you wanted to talk to someone from the

12   Department of Health, then you could use third-party discovery to

13   do that, but that's not what a 30(b)(6) deposition does.  Okay.

14               Mr. St. John, anything else?

15               MR. ST. JOHN:  No, Your Honor.

16               THE COURT:  So we're going to do the 30(b)(6)

17   deposition in November, and I'm going to extend the deadline to

18   file a Rule 12 motion or answer the complaint to the

19   December 15th.

20               Again, failure of the defendants to file a Rule 12

21   motion challenging Article III standing, the plaintiffs will

22   constitute waiver of the defendants' right to later raise that

23   issue.  Therefore I'm granting motion for extension of time to

24   complete discovery, which is document 186, to the extent ordered

25   herein today.  The new deadlines will be reflected in the

1    minutes.

2           Also, the Court will allow the parties to conduct

3    depositions of the plaintiffs, two experts, and the defendants

4    one expert.  These depositions will also take place in November.

5    Okay.  Just sometime in the month of November, and it's going to

6    be over before we know it because we have Thanksgiving coming up,

7    so y'all really need to get cracking on this.

8           Mr. St. John is right, this has been going on for a

9    long time, and it's time to get past this phase.  Who is the

10   nonretained expert that you've designated, Mr. St. John?  Who is

11   that?

12          MR. ST. JOHN:  Former Border Patrol chief.  He was the

13   chief of the Border Patrol at the time the rule was being

14   considered, and I think he may have been out of office when it

15   went into effect.

16          THE COURT:  What's his name again?

17          MR. ST. JOHN:  Chief Rodney Scott.

18          THE COURT:  Chief Rodney Scott.  That's a nonretained

19   expert.  Who is the retained expert?

20          MR. ST. JOHN:  Former Immigration Judge Art Arthur.

21          THE COURT:  And Ms. Ryan, who is the doctor that you've

22   designated?

23          MS. RYAN:  Professor Michael Clemens, C-L-E-M-E-N-S.

24          THE COURT:  Who is he?

25          MS. RYAN:  He's a professor, and he looked at the

1    statistics.  I forget his exact title.  I apologize, Your Honor.

2           THE COURT:  Immigration statistics?

3           MS. RYAN:  Yes.

4           THE COURT:  Where is he employed?

5           MS. RYAN:  Off the top of my head, I believe he's at

6    Georgetown, but I haven't looked through his resume in a little

7    bit.

8           THE COURT:  That's fine.  I was just wondering what

9    these people did.  Okay.  Anything else?  I really just want

10   y'all to sit down, get dates together.  I don't see that there's

11   any need for posturing.

12          This is, you know, at bottom plaintiffs' burden to show

13   standing, Article III standing on the topics, on certain topics,

14   discrete topics for these two states, and I just think it's not

15   impossible to do.  So I urge y'all to get together and do it.

16   Any problems doing it in November?

17          MR. ST. JOHN:  None for me, Your Honor.

18          MS. RYAN:  I don't believe so, Your Honor, but I know

19   some witnesses may have vacation plans around Thanksgiving, so I

20   think it will depend on who the specific deponents are to make

21   sure we can get them all on the calendar.

22          THE COURT:  Well, it's just four.  It's probably just

23   four unless Mr. St. John designates more than one person.

24          MS. RYAN:  Correct.  We're not sure how many will be

25   designated for the state.

1        THE COURT:  Can we do it -- can y'all do it by zoom or

2   something like that?

3        MS. RYAN:  That is our intention to do it all

4   virtually, but we also they should be sequenced.  Plaintiffs have

5   said that their experts will rely on the factual discovery.  So

6   the agency depositions need to happen before the expert

7   depositions can happen.

8        THE COURT:  Mr. St. John, have you figured out who is

9   going to testify for the state?

10        MR. ST. JOHN:  Yes, Your Honor.

11        THE COURT:  You have?  Who is that going to be?

12        MR. ST. JOHN:  Your Honor, I'd prefer not to reveal

13   that in open court.  Is Your Honor directing me to?

14        THE COURT:  Well, I don't understand the need for

15   secrecy.

16        MR. ST. JOHN:  I'm not obligated under the rules to

17   reveal the identity of my 30(b)(6) prior to the deposition.

18        THE COURT:  I gotcha.

19        MR. ST. JOHN:  And I say that because when people do it

20   to me, I just call up that person and figure out what they have

21   said in the past, and it radically changes the course of the

22   deposition.

23        THE COURT:  Okay.  I guess I haven't -- I guess I've

24   never seen that issue come up before.  I've always known who the

25   designee is going to be in a 30(b)(6) deposition.

1          MS. RYAN:  Your Honor, we've never encountered that

2    either.  We don't usually have an issue with just telling us who

3    the deponent will be.

4          THE COURT:  Are you worried -- I mean, you know, the

5    scope of the deposition is not going to be based on that person

6    individually.  That would be out of bounds if they were to try to

7    attack past statements of that person because they are not

8    testifying for the person, they are testifying for the

9    organization.

10          MR. ST. JOHN:  We're going to use Mr. Arthur in a dual

11    capacity, both as expert and as 30(b)(6), and I'll tell you the

12    reason for that is we have a immigration judge on staff.  The

13    Louisiana Department of Justice's knowledge of immigration issues

14    is actually somewhat substantial.  The former chief immigration

15    judge is General Landry's personal counsel.  So how do I

16    duplicate that?  I use another immigration judge.

17          MS. RYAN:  Your Honor, what I'm hearing is another

18    immigration judge, but not Judge Arthur.  If Judge Arthur doesn't

19    have a connection to the State of Louisiana and he's been

20    retained as an expert --

21          MR. ST. JOHN:  That's my choice, Your Honor.  I can

22    designate anyone I choose.

23          THE COURT:  Okay.  You better make sure he knows what

24    he's talking about, about all the stuff produced by Louisiana and

25    about the bases of Article III standing.

 1            MR. ST. JOHN:  Yes, Your Honor.

 2            THE COURT:  But you --

 3            MR. ST. JOHN:  -- made a report on it, and we've had

 4    setup prep sessions for the agencies for him, and that goes to

 5    the question of --

 6            THE COURT:  Okay.  So you are preparing him -- the

 7    agencies at issue are preparing him to answer questions based on

 8    the knowledge of the state of Louisiana.

 9            MR. ST. JOHN:  To a reasonable degree, Your Honor.  Is

10    he going to know, like, who is the clerk, what is her process,

11    no, he's not.  Is he going to know these are our policies, this

12    is how we operate, this is a document reflecting that policy,

13    sure, that's the expectation.

14            MS. RYAN:  Your Honor, just to clarify.  We intend to

15    use documents that they have produced from these agencies and ask

16    detailed questions.  What does that mean?  What is this

17    abbreviation?  What is this showing?  How is this data collected?

18    We just want to make sure because Louisiana has offered some

19    witnesses only to authenticate documents.  We do not think that's

20    proper.  They should be able to speak to the contents, and so if

21    they are employing Mr. Arthur to do that, we want to make sure he

22    is well versed on all the productions which were very voluminous

23    in this case.

24            THE COURT:  That's the state's obligation.  So if

25    something comes up in the 30(b)(6) deposition and y'all need to

1    call me, you can do it.  But I have to take Mr. St. John at his

2    word that he's going to prepare this person to be able to answer

3    the questions.

4              MR. ST. JOHN:  Your Honor, this is why I was concerned

5    about revealing it.  We now have a --

6              THE COURT:  I'd rather have it now than have a big

7    surprise and then we're here again.

8              MR. ST. JOHN:  Well, no, cause what is going to happen

9    is the defendants are going to have a deposition, and they are

10   going to say, Oh, you didn't know on page 327 what this

11   abbreviation meant.  That's not what a 30(b)(6) is supposed to be

12   for.

13             I'm concerned about this whole process.  Here we are at

14   10 months of discovery, and it's, Oh, you know, I don't -- maybe.

15   Maybe they mean something, have a different standard for this

16   word.  That's not the purpose of this, Your Honor, and that's my

17   concern.  This has been a 10-month fishing expedition.  Here we

18   are at 30(b)(6).

19             THE COURT:  It's not a fishing expedition.  It's not a

20   fishing expedition.  It's -- the fact that we're having all these

21   problems tells me we are doing exactly what needs to be done to

22   make sure we have standing to proceed.

23             But Ms. Ryan, don't play games.  The scope of the

24   questioning is based on what they are using to establish Article

25   III standing, not on a bunch of nonsense.  Don't try to make

1    their deponent act like he doesn't know anything.  That's not

2    what we're doing here.  We're trying to get through this phase of

3    discovery, and then you are going to brief the issue, a 12(b)(1)

4    motion for a standing order to decide that.

5              MS. RYAN:  Your Honor, my team and I are not here to

6    waste our own time.  We don't want to ask more questions than is

7    necessary.  We just want to make sure we are getting a deponent

8    with sufficient knowledge of these injuries.

9              THE COURT:  Okay.  Well, I'll leave y'all to it.

10             I don't think -- I think it's better that we talked

11   about this now, Mr. St. John.  You can designate someone that has

12   knowledge, and you are choosing this person, and that's fine.

13   Just make sure that he knows what he's talking about.

14             MR. ST. JOHN:  Yes, Your Honor.

15             THE COURT:  All right.  Court's in recess.

16                   (Hearing concluded.)

17                    * * * * * *

18             C E R T I F I C A T E

19   I, Cathleen E. Marquardt, RMR, CRR, Federal Official Court

20   Reporter, do hereby certify this 13th day of November, 2023, that

21   the foregoing pages 1-21 constitute a true transcript of

22   proceedings had in the above-entitled matter.

23                        */s/ Cathleen E. Marquardt*
                         Federal Official Court Reporter

24

25