UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, *et al.*, | ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) ) | Civil Action No. 6:22-cv-01130 |
| MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*, | ) ) ) ) ) | |
| *Defendants.* | ) ) | |

**DEFENDANTS' OPPOSITION
TO PLAINTIFFS' RENEWED MOTION TO COMPEL**

**INTRODUCTION**

Plaintiffs have served more interrogatories than the federal rules permit, and the governing law makes clear that Defendants are not required to answer those beyond the 25-interrogatory limit. This is not news to Plaintiffs, who already tried to compel production, ECF No. 168, and who received Defendant's earlier objections and response, ECF No. 174. The Court struck their previous motion from the record. ECF No. 195.

Plaintiffs have now renewed the portion of their motion to compel addressing the interrogatories. ECF No. 203. Plaintiffs have cited to no legal developments or authority that could justify the relief they seek.

Perhaps sensing the weakness of their main argument, Plaintiffs' renewed motion offers a new twist. Now, they add the claim that even if this Court holds that Plaintiffs submitted too many interrogatories, this Court should still order extra "discovery tailored to DHS's as-filed Rule 12(b)(1) motion." ECF No. 203-1, at 7. *See generally* ECF No. 203-1, at 6-7.

But the law does not require, or justify, ordering extra discovery here. Plaintiffs cite to numerous cases in an attempt to justify supplemental discovery. Yet those cases back up the opposite conclusion: that there is no basis to order additional discovery from Defendants. Indeed, the goal at this point should be to wrap up discovery. The case is proceeding under the Administrative Procedure Act, which usually limits review of the merits to the administrative record. *Am. Biosience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Here, discovery is proceeding to establish whether Plaintiffs have standing at all. While Plaintiffs maintain in their renewed motion that they should get an extra round of discovery to investigate standing, the *current* round of discovery was intended to allow investigation into just that. That is, the still-pending round has given Plaintiffs an adequate opportunity to seek information concerning

standing. Instead, they made a strategic decision to use their interrogatories for different purposes. Federal litigation is governed by the federal rules, and the federal rules do not permit ignoring the existing limits on that basis.

Therefore, for the reasons set out in more detail below, the Court should deny Plaintiffs' renewed motion.

## ARGUMENT

**A.   Plaintiffs have served more than the maximum of 25 interrogatories without the required leave of Court to do so.**

As Defendants previously argued in response to Plaintiffs' earlier motion to try to compel answers to the extra interrogatories, Defendants are not required to respond to interrogatories beyond the rule limit. ECF No. 174, at 7-10. Plaintiffs served more than 25 interrogatories, including discrete subparts.

In response to Plaintiffs' interrogatories served on April 20, 2023,[1] Defendants objected that Plaintiffs had already exceeded the limit in Federal Rule of Civil Procedure 33(a)(1), which limits the parties to 25 written interrogatories, "including all discrete subparts." Fed. R. Civ. P. 33(a)(1); *see also* Local Rule 33.1. ECF No. 168-9, at 11. Counting discrete subparts, Plaintiffs served 30 interrogatories on Defendants in that first round. *See* Local Rule 33.1 ("Each sub-part of an interrogatory shall count as an additional interrogatory."). No party is permitted to "serve on any other party more than 25 interrogatories in the aggregate without leave of court." Local Rule 33.1.

In their renewed motion, Plaintiffs do not address the arguments or authority that Defendants discussed in their prior well-reasoned opposition, and instead continue to argue that they have not exceeded the 25-interrogatory limit. ECF No. 203-1, at 5. This dispute still turns on

---

[1]   *See* ECF No. 168-3.

2

whether the following interrogatory contains twenty discrete subparts, as Defendants maintain, or is one interrogatory, as Plaintiffs argue:

> **INTERROGATORY NO. 8**
> IDENTIFY monthly statistics (e.g., counts) for each fiscal year since 2005 about the following, both nationwide and for applicants in the State of Arizona:
> a. AFFIRMATIVE ASYLUM CLAIMS
> b. DEFENSIVE ASYLUM CLAIMS
> c. Positive CREDIBLE FEAR DETERMINATION by AOs
> d. Negative CREDIBLE FEAR DETERMINATION by AOs
> e. ASYLUM CLAIMS filed after a positive CREDIBLE FEAR DETERMINATION by AOs
> f. Positive CREDIBLE FEAR DETERMINATION by IJs
> g. Negative CREDIBLE FEAR DETERMINATION by IJs
> h. ASYLUM CLAIMS filed after a positive CREDIBLE FEAR DETERMINATION by IJs
> i. Grant of AFFIRMATIVE ASYLUM CLAIMS by IJs
> j. Denial of AFFIRMATIVE ASYLUM CLAIMS by IJs
> k. Grant of DEFENSIVE ASYLUM CLAIMS by IJs
> l. Denial of DEFENSIVE ASYLUM CLAIMS by IJs
> m. Grant of AFFIRMATIVE ASYLUM CLAIMS by AOs
> n. Denial of AFFIRMATIVE ASYLUM CLAIMS by AOs
> o. Grant of DEFENSIVE ASYLUM CLAIMS by AOs
> p. Denial of DEFENSIVE ASYLUM CLAIMS by AOs
> q. BIA appeals filed by aliens denied an ASYLUM CLAIM, where the initial CREDIBLE FEAR DETERMINATION was approved by an AO, and statistics about how the BIAs disposed of the appeals
> r. BIA appeals filed by aliens denied an ASYLUM CLAIM, where the initial CREDIBLE FEAR DETERMINATION was approved by an IJ, and statistics about how the BIAs disposed of the appeals
> s. Asylum claimants paroled while awaiting further consideration or proceedings
> t. Asylum claimants released on bond while awaiting further consideration or proceedings.

ECF No. 168-9, at 10.

Plaintiffs argue that these subparts are logically and factually subsumed within the primary question and should not be counted as separate interrogatories, citing two out-of-district cases. ECF No. 203-1 (citing *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 196

3

(E.D. Tex. 2016), and *Est. of Manship v. United States*, 232 F.R.D. 552, 555 (M.D. La. 2005)). These are the same two key cases that Plaintiffs cited in their previous filing. ECF No. 168-1.

As Defendants wrote in their previous opposition, and reiterate here, neither of these cases supports Plaintiffs' position. ECF No. 174-1. The district court in *Eli Lilly* explained, as many courts have similarly concluded, that "where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed" within it. 315 F.R.D. at 196 (quoting *FTC v. Think All Pub., L.L.C.*, No. 4:07-CV-011, 2008 WL 687455, at *1 (E.D. Tex. Mar. 11, 2008), and collecting similar cases).

That is precisely the situation here. For example, Plaintiffs asked in 8.a for the "monthly statistics (e.g., counts) for each fiscal year since 2005" for "affirmative asylum claims." The request seeks data about asylum claims filed only with USCIS. The affirmative asylum claim question can be answered separate from question in 8.b, which seeks data about defensive asylum claims, which are only filed in immigration courts. Question 8.b involves a separate agency and separate statistics. In short, Interrogatory 8.a is separate and independent of Interrogatory 8.b. The same can be said for the remaining questions under regarding: credible fear determinations by asylum officers; asylum claims filed after positive credible fear determinations; credible fear determinations by immigration judges; asylum claims filed after positive credible fear determinations by immigration judges; decisions on affirmative asylum claims by immigration judges; decisions on defensive asylum claims by immigration judges; decisions on affirmative asylum claims by asylum officers; decisions on defensive asylum claims by asylum officers; appeals to the Board of Immigration Appeals in various circumstances; statistics on parole; and, statistics on bonds. *See* Interrogatory No. 8.c-8.t. Each application is handled by USCIS or EOIR,

and involves different agencies and different statistical pulls. These twenty questions are not subparts of one umbrella question seeking details about informational or subcategories. Each subpart is an independent question under Rule 33.

Plaintiffs' reliance on *Estate of Manship*, the other case they cite, is similarly misplaced. That case also supports the conclusion that subparts, such as those in Interrogatory No. 8, that can and must be answered independently, count as discrete subparts and thus separate interrogatories. "In making this determination, the Court should decide whether the first question is primary and subsequent questions are secondary to the primary question; or whether the subsequent question could stand alone and is independent of the first question?" 232 F.R.D. at 554-55. The latter is the case here. Each subpart of Interrogatory No. 8 could stand alone as its own interrogatory, and as explained, must stand alone because each asks for different categories of information about different categories of individuals or actions, and separate statistics related to three separate entities or sub-entities: asylum officers under USCIS, the immigration courts, and the Board of Immigration Appeals.

A "party cannot evade the 25 interrogatory limit through the use of 'subparts' that seek information about discrete separate subjects." *Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 19-11793, 2021 WL 4239080, at *3 (E.D. La. Mar. 16, 2021). When "a party has propounded excessive interrogatories," the responding party may respond to "the 'first' 25 Interrogatories which constitute discrete questions, and strike the rest." *Stephens v. Fla. Marine Transporters, Inc.*, No. CV 12-1873, 2013 WL 12120393, at *3 (E.D. La. Feb. 21, 2013) (collecting cases). That is what Defendants did here with respect to the additional round of interrogatories Plaintiffs served, all of which were beyond the 25-interrogatory limit Plaintiffs hit with the first round of interrogatories they served. Plaintiffs have not moved for leave

5

to seek more than 25 interrogatories in this case, and there would be no basis to do so here. *King v. Univ. Healthcare Sys., L.C.*, No. CV 08-1060, 2008 WL 11353694, at *2 (E.D. La. Oct. 31, 2008) (party seeking to serve more than 25 interrogatories must first seek leave and must show "particularized showing of need").

In their renewed filing, Plaintiffs do not address any new or different precedent or reasoning on this issue. ECF No. 203-1, at 5. Rather, Plaintiffs recycle case law from their earlier motion. This is surprising given that Defendants had already argued the ineffectiveness of Plaintiffs' choice of case law, and thus Plaintiffs should have anticipated that those same arguments could be used again. ECF No. 174-1. Given that Defendant's arguments remain unrebutted, Plaintiffs have not identified sufficient grounds to prevail on this issue.

**B.      There is no basis in this case to order the extra discovery that Plaintiffs seek.**

Plaintiffs next argue that Defendants should have to answer a new round of questions, for example, about standing, and about why they do not merit special solicitude. ECF 203-1, at 2-3. But the questions that Plaintiffs mention relate to interrogatories *already* served, and which fall beyond the 25-interrogatory limit. *See* ECF No. 168-3 (initial interrogatories); 168-6 (subsequent interrogatories). That is, Plaintiffs asked essentially the same questions about standing and special solicitude in their number-barred interrogatories that they now raise in their renewed motion. *See* ECF 168-6, at 7-8. Plaintiffs argue they should be able to obtain answers to these questions. But they already chose to ask – and get answers to – *different* questions in their first 25 interrogatories. While Plaintiffs now appear to regret that litigation strategy choice, their interest in having used those 25 interrogatories for different questions is not grounds to relief them of the 25 limit.

The two cases that Plaintiffs themselves cite on their claim to extra discovery actually buttress Defendants' position: *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981), *cert. denied sub. nom. Williamson v. Tucker*, 454 U.S. 897 (1981); and *McAllister v. F.D.I.C.*, 87 F.3d 762 (5th

6

Cir. 1996).

Plaintiffs repeat one line from *Williamson* throughout their renewed filing: "Insofar as the defendant's motion to dismiss raises factual issues, the plaintiff should have an opportunity to develop and argue the facts in a manner that is adequate in the context of the disputed issues and evidence." *Id.* at 414. Even on its face, this sentence does not help Plaintiffs in their quest for additional discovery. In this case, Louisiana and Defendants have already engaged in extensive discovery, over many months, involving reams of documents and spreadsheets, and multiple completed or upcoming depositions. And during that process, Defendants made no secret of their intention to file a motion to dismiss for lack of standing – Plaintiffs own renewed motion acknowledges that they are fully aware of Defendants' goal in this regard. ECF No. 203-1, at 6. Plaintiffs could have tried to allocate their discovery requests to seek out the information they want, but within the rules of federal procedure. Instead, Plaintiffs made the strategic choice to use their limited number of interrogatories to ask questions about other issues.

Given this background, the language from *Williamson* that Plaintiffs treat as a touchstone takes on a different light, one that supports Defendants. Again, that language only calls "for *opportunity* to develop and argue the facts in a manner that is *adequate in the context of the disputed issues and evidence*." *Williamson*, 645 F.2d at 414 (emphasis added). Here, as mentioned above, both parties have had a generous opportunity to complete discovery, during a months-long process. As part of that discovery, the federal rules gave Plaintiffs 25 interrogatories to ask what they wanted to about Defendants' standing arguments. But Plaintiffs decided that other questions ranked higher in its list of priorities. Despite Plaintiffs' strategic choice on how to allocate their interrogatories, they apparently regret their decision, and now ask this Court to bail them out from the consequences of their own choice. But even looking to the key language from *Williamson*, the

7

law offers no such escape hatch for Plaintiffs. Here, the discovery that is already taking place in this case has been very much an "opportunity" for discovery that has been more than "adequate in the context of the disputed issues and evidence." *Id.* at 414.

This conclusion is not just the view of Defendants. It is also supported by the facts of *Williamson* itself. There, the Fifth Circuit pointed out that, prior to the district court's dismissal of the case, "extensive discovery" had already taken place. *Id.* at 409; *see also* 414 (referring to a record that was "long"). Notably, even though the Fifth Circuit reversed the district court's dismissal of the case, it did *not* then order additional discovery. *Id.* at 417, 429. Rather, the Fifth Circuit broadly remanded "for further proceedings consistent with this opinion." *Id.* at 429. That is, the Fifth Circuit left it to the district court to decide how to proceed with discovery. So, in *Williamson* itself, the Fifth Circuit never ordered any extra round of discovery. While Plaintiffs' renewed motion claims that *Williamson* requires the extra discovery that Plaintiffs seek, *Williamson* imposes no such requirement for that *surplus* discovery. Meaning, in this case, given the broad discovery that is already taking place, no additional discovery is required under *Williamson*. The current discovery is an "opportunity" that is more than "adequate." *Id.* at 404.

The other case that Plaintiffs cite to, *McAllister*, also helps Defendants, once the facts of that case become clear. There, the Fifth Circuit held that the district court had abused its discretion by denying a continuance to allow the defendant to conduct discovery. 87 F.3d at 766. But the facts there are quite different from those in this case, or those in *Williamson*. The Fifth Circuit in *McAllister* repeated that the defendant had received only ten days' notice to respond to the motion to dismiss. *Id.* at 766. Further, there is no indication in the Fifth Circuit's decision that *any* discovery had taken place before the defendants there filed their motion to dismiss.

By contrast, as is mentioned above, here broad discovery is currently taking place. In

8

*McAllister*, the Fifth Circuit decided that some discovery was necessary, and so ordered it. Here, by contrast, the existing round of discovery is adequate. And *McAllister* nowhere holds that a second round of discovery – what Plaintiffs here are seeking – is required. Indeed, a court in the Eastern District of Louisiana has held that, while *Williamson* applied, that case's rule was satisfied where already "Plaintiffs have had a significant amount of time to develop factual information." *NOLA Health Sols., LLC v. New Orleans Reg'l Physician Hosp. Org., Inc.*, No. CV 18-7007, 2019 WL 2410938, at *6 n.74 (E.D. La. June 7, 2019). That same reasoning applies here.

It is Plaintiffs' burden to show standing in this case, and Plaintiffs have long been aware that Defendants do not believe that Plaintiffs can provide any evidence of concrete harm from the rule they challenge in this case. Plaintiffs have already had an adequate opportunity to serve interrogatories, requests for production, and conduct depositions. Nothing more is required, or permitted, under the federal rules.

Finally, and more generally, Defendants have no freestanding obligation to preview in full our motion to dismiss. Notably, Plaintiffs have not cited to authority that would impose such a requirement. And doing so now would prejudice Defendants. In this country's long history of litigation, the normal practice is that Defendants file a motion to dismiss, and then Plaintiffs respond. Here, Defendants could have prioritized questions probing support for the contention that Plaintiffs have no standing. Instead, Plaintiffs made a strategic decision to prioritize other questions. Even so, Plaintiffs have no freestanding right to that information that justifies breaching the standard 25-interrogatory limit. Indeed, such a position would have perverse and dilatory consequences in every future case.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion.

Date: December 4, 2023        Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN WARD
*Senior Litigation Counsel*

ELISSA FUDIM
ERIN RYAN
EVAN P. SCHULTZ
*Trial Attorneys*

/s/ Evan P. Schultz

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 892-0873
Email: Evan.P.Schultz2@usdoj.gov

10

## CERTIFICATE OF SERVICE

I certify that on December 4, 2023, I filed this document using the CM/ECF system, which will automatically send electronic notice of filing to all counsel of record.

/s/ Evan P. Schultz

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 892-0873
Email: Evan.P.Schultz2@usdoj.gov