```
 1                   UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF FLORIDA
 2                         PENSACOLA DIVISION

 3   STATE OF FLORIDA,                    )
                                          )
 4                   Plaintiff,           )
        vs.                               ) Case No: 3:21-CV-1066
 5                                        )
     UNITED STATES OF AMERICA; ALEJANDRO  ) Pensacola, Florida
 6   MAYORKAS, Secretary of the U.S.      )
     Department of Homeland Security, in  ) January 12, 2023
 7   his official capacity; U.S. DEPARTMENT ) 9:00 a.m.
     OF HOMELAND SECURITY; TROY MILLER,   )
 8   Acting Commissioner of U.S. Customs  )
     and Border Protection, in his official )
 9   capacity; U.S. CUSTOMS AND BORDER    )
     PROTECTION; TAE JOHNSON, Acting      )
10   Director of U.S. Immigration and     )
     Customs Enforcement, in his official )
11   capacity; U.S. IMMIGRATION AND CUSTOMS )
     ENFORCEMENT; UR M. JADDOU, Director of )
12   U.S. Citizenship and Immigration     )
     Services, in her official capacity;  )
13   U.S. CITIZENSHIP AND IMMIGRATION     )
     SERVICES,                            )
14                   Defendants.          )
     _____)
15
16             TRANSCRIPT OF BENCH TRIAL - DAY 4
            BEFORE THE HONORABLE T. KENT WETHERELL, II
17                 UNITED STATES DISTRICT JUDGE
                      (Pages 1 through 261)
18
     APPEARANCES:
19
     For State of Florida:    Office of the Attorney General
20                            by:  JOHN M. GUARD, JAMES H. PERCIVAL,
                                   ANITA J. PATEL, NATALIE CHRISTMAS
21                               and JOSEPH HART
                              The Capitol, Suite PL-01
22                            400 South Monroe Street
                              Tallahassee, Florida 32399
23                            (850) 414-3300
                              james.percival@myfloridalegal.com
24                            anita.patel@myfloridalegal.com
                              joseph.guard@myfloridalegal.com
25                            natalie.christmas@myfloridalegal.com
```

```
 1   APPEARANCES CONTINUED:

 2   For the United States:    Department of Justice
                               Office of Immigration Litigation
 3                             by:  ELISSA FUDIM, ERIN T. RYAN
                                    and JOSEPH A. DARROW
 4                             450 5th Street NW
                               Washington, D.C. 20001
 5                             (202) 532-5802
                               elissa.p.fudim@usdoj.gov
 6                             erin.t.ryan@usdoj.gov
                               joseph.a.darrow@usdoj.gov
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   leading guidance that Florida has provided to its employees?
2   A.   As it relates to parole or other mechanisms of entry, such
3   as being in removal proceedings or is an asylum applicant?
4   Because those two are addressed in the manual.
5   Q.   Okay.  I'm talking about just in terms of release, release
6   mechanism.
7   A.   Certainly, there -- I believe there's another category for
8   individuals who are -- there's several categories.  Cubans who
9   are given an indefinite -- I mean, we can go back to the
10  beginning, we can walk through it.  Go back to the table of
11  contents.  I can show you.
12  Q.   Yeah, you can go to the Table of Contents.
13  A.   Okay.  So if you can -- let's see.  Under deportation
14  withheld, Number 28 and 29, national of Cuba or Haiti with an
15  indefinite stay of deportation or deportation withheld.  There's
16  also --
17  Q.   Okay.  I think perhaps we were talking -- now that I see
18  what you're looking at, I think perhaps we were talking -- there
19  was a miscommunication between us.  I'm talking about release
20  mechanisms.  So I understand that there's individuals who may be
21  eligible -- Cuban and Haitian individuals that may be eligible
22  because deportation has been withheld, but that is not connected
23  to their original type of entry into the country or their
24  original type of release, correct?
25  A.   Can I suggest we go to page 32 and look at the

1   Cuban/Haitian entrant definition?
2   Q.   Sure.
3   A.   So there you'll see all of the different types of --
4   Cuban/Haitian entrant is not an immigration status, but it's
5   defined in the Refugee Education Assistance Act to be people who
6   are eligible for assistance.  And it includes not only
7   individuals who have been paroled but also those who are -- have
8   an asylum application pending or are in removal proceedings.
9   And there's a bunch of different categories here.
10  Q.   Okay.  So I just want to make sure that it's clear for the
11  Court.  So any type of Cuban or Haitian -- and possibly the two
12  other nationalities you --
13  A.   The other one is a little more restrictive, too.
14  Q.   Those are more restrictive?
15       So if you're a Cuban or a Haitian and you've been
16  released and you have documentation to show that you've been
17  released with any of the documents listed under the word
18  "documentation" on page 32, you would then be eligible for these
19  benefits --
20  A.   Correct.
21  Q.   -- is that correct?
22  A.   Mm-hmm.
23  Q.   Okay.  And if it's a parole, in particular, you would have
24  to have the I-94 or a similar stamp in your passport?
25  A.   Some kind you have a stamp -- some kind of an indication

1    it's for families who don't have children; am I right?
2    A.   The Refugee Cash Assistance component of the refugee
3    program mirrors TANF, yes.
4    Q.   Okay.  For families without children?
5    A.   Correct.
6    Q.   Okay.  And this program is a 100 percent funded by the
7    federal government, right?
8    A.   Yes.
9    Q.   And that's true for Cubans and Haitians as well?
10   A.   Yes.
11   Q.   And, in fact, all the refugee programs in the State of
12   Florida are a 100 percent federally funded, right?
13   A.   Yes.
14   Q.   Now, I'm not sure if you mentioned this, so correct me if
15   I'm wrong, but there's also a substance abuse and mental health
16   program that's overseen by DCF?
17   A.   There is.
18   Q.   And that program provides both inpatient and outpatient
19   services, right?
20   A.   Yes.
21   Q.   Okay.  So focusing solely on outpatient services for one
22   moment, fair to say that you can't tell us how many of the
23   individuals receiving those services are applicants for
24   admission who crossed the southwest border and were paroled
25   since January of 2021?

1  Q.   So that would include food assistance?
2  A.   Yes.
3  Q.   And cash assistance?
4  A.   Yes.
5  Q.   Okay. And they're also eligible to receive those benefits
6  regardless of how long ago they were granted parole, correct?
7  A.   Yes.
8  Q.   Okay. So a Cuban or Haitian who entered the southwest
9  border and was released on parole, say two weeks ago, and made
10 their way to Florida, they would be eligible for SNAP benefits;
11 is that right?
12 A.   Yes.
13 Q.   They would also be eligible for TANF benefits?
14 A.   Yes.
15 Q.   And for Medicaid?
16 A.   Assuming they meet all the other qualifications, yes.
17 Q.   Okay. And that's the same for Medicaid?
18 A.   Yes.
19 Q.   Okay. And so Cubans and Haitians who entered and were
20 otherwise released pending their removal proceedings, they're
21 also eligible for those same benefits; is that accurate?
22 A.   Yes.
23 Q.   All right. And again, there's no time restriction as it
24 relates to their immigration status?
25 A.   Correct.

1  entry date because that is the -- there's a time frame of
2  eligibility for refugee services and benefits that starts with
3  their date of entry.  So we don't track it for the SNAP and TANF
4  and Medicaid programs, but we do track it for the refugee cash
5  and medical assistance and the refugee program.  So we do record
6  on a monthly and annual basis the date of entry.  So the
7  139,000, or whatever the number was that you gave us, was for
8  that period of October 1st through September 31st of 2022.
9              THE COURT:  But again, you don't know where they
10 entered, you just know they did enter?
11             THE WITNESS:  Correct.
12             THE COURT:  Gotcha.
13             And so your question was what, Ms. Patel?
14             MS. PATEL:  I was asking whether it's likely that some
15 of those Cubans and Haitians that entered, some of those
16 153,000, is it likely they're also receiving economic
17 self-sufficiency benefits such as SNAP?
18             MS. FUDIM:  And I object to that, Your Honor.
19             THE COURT:  I'll allow her to answer, and you can
20 explore the basis for that knowledge on redirect.
21             You can answer.
22             THE WITNESS: Okay.  Yes, it's likely.
23 BY MS. PATEL:
24 Q.   Okay.  And you were also asked about residential mental
25 health services that are provided to noncitizens.  Do you recall