# EXHIBIT 261

# USCIS Asylum Merits Interview Guidance

Contents

I.    BACKGROUND ..................................................................................................................... 3
    A.    Credible Fear Interview ........................................................................................................ 4
    B.    Family processing ................................................................................................................. 4
    C.    Credible Fear Security Checks .............................................................................................. 4
    D.    Determinations and Service .................................................................................................. 5
        1.    Positive determinations/service ........................................................................................ 5
    E.    Post- Service Processing ....................................................................................................... 6
        1.    Positive CF determination ................................................................................................ 6
        2.    Negative CF determination .............................................................................................. 6
        3.    Procedures for Post-IJ Vacate ........................................................................................... 6
II.   ASYLUM MERITS INTERVIEW CASE ENTRY IN GLOBAL ............................................. 7
III.  ASYLUM MERITS INTERVIEW BIOMETRICS CAPTURE ................................................ 7
    A.    Timing of the Capture ........................................................................................................... 7
IV.   BACKGROUND, IDENTITY AND SECURITY CHECKS ..................................................... 7
    A.  FBI NAME CHECK ............................................................................................................... 7
    B.  FBI FINGERPRINT CHECK ................................................................................................ 8
    C. DHS-IDENT .......................................................................................................................... 8
    D. Identity Verification .............................................................................................................. 8
    E. DOD-ABIS ............................................................................................................................. 8
    F.    EFR ........................................................................................................................................ 8
V.    ASYLUM MERITS INTERVIEW ........................................................................................... 8
    A.    The Asylum Application ....................................................................................................... 9
    B.    Supplemental Information .................................................................................................... 9
    C.    Asylum Merits interview Scheduling ................................................................................... 9
        1. Reschedule Requests ........................................................................................................... 9
    D.    Oath ..................................................................................................................................... 10
    E.    Conducting the Asylum Merits interview .......................................................................... 10
    F.    Asylum Merits Interview Space .......................................................................................... 10

# USCIS Asylum Merits Interview Guidance

|   |   |   |
|---|---|---|
| G. | Pre-Asylum Merits interview Preparation | 10 |
| H. | Immediate Family Members | 10 |
| I. | Interpreters | 11 |
| VI. | Asylum Merits Interview Recording | 12 |
| VII. | Background, Identity and Security Checks | 13 |
| VIII. | Asylum Officer is Unable to Conduct the Asylum Merits interview | 14 |
| IX. | Withdrawal of request for protection | 14 |
| X. | Failure to appear | 14 |
| **XI.** | **Decision** | 15 |
| J. | Asylum approval | 15 |
| K. | Asylum Referral | 15 |
| XII. | Supervisory Review | 15 |
| XIII. | Record of proceedings | 16 |
| XIV. | Service | 16 |
| L. | Asylum Granted | 16 |
| M. | Asylum Not Approved | 16 |
| XV. | EOIR filing | 17 |
| XVI. | APPENDICES | 19 |
| 1. | Expedited Removal Vacate/Cancellation Memorandum | 19 |
| 2. | M-444 Information About Credible Fear Interview (English/Translations) | 19 |
| 3. | I-870 Record of Determination/Credible Fear Worksheet | 19 |
| 4. | Information About Your Asylum Merits Interview | 19 |
| 5. | AMI Participation Checklist | 19 |
| 6. | Form G-56 Asylum Merits Interview Notice | 19 |
| 7. | In-Person Asylum Merits Interview Reschedule Request | 19 |
| 8. | Grant of Asylum Merits Interview Reschedule Request | 19 |
| 9. | Denial of Asylum Merits Interview Reschedule Request | 19 |
| 10. | Record of Applicant Oath – USCIS Interpreter Consent | 19 |
| 11. | Record of Applicant Oath – English | 19 |

USCIS Asylum Merits Interview Guidance

12. Waiver of Presence of Representative at AMI ............................................................................. 19
13. Request for Final Court Disposition(s) for AMI ........................................................................... 19
14. Retention of Original Documents for AMI ................................................................................... 19
15. Declaration of Intent to Withdraw Asylum Application (Asylum Merits Interview) ............... 19
16. Notice of Change in Decision Service from Pick Up to Mail Out (AMI) .................................. 19
17. Failure to Appear to Pick Up Your Asylum Decision (Asylum Merits Interview) ................... 19
18. Asylum Merits Interview Decision Notice (Ineligible for Asylum) ........................................... 19
19. Pick Up Notice for AMI .................................................................................................................. 19
20. Mail Out Notice for AMI ................................................................................................................ 19
21. Referral Notice for Failure to Appear for AMI ............................................................................ 19
22. Referral for Failure to Appear for AMI – Interpreter Refusal .................................................... 19
23. Cancellation of Asylum Merits Interview – USCIS Interpreter Unavailable ........................... 19
24. Rescheduling of Asylum Merits Interview – USCIS Interpreter Unavailable ......................... 19
25. AMI Transcript Certificate of Service ........................................................................................... 19

I. BACKGROUND

On March 29, 2022 DHS and DOJ published an interim final rule (IFR) amending the regulations governing credible fear (CF) determinations so that individuals found to have a credible fear will have their claims for asylum initially adjudicated by a USCIS asylum officer. If found ineligible for asylum, the asylum officer will refer the noncitizen for streamlined section 240 removal proceedings with an eligibility assessment of statutory withholding of removal and, if applicable, protection under the Convention Against Torture (CAT). Any dependents will be referred to EOIR with an assessment as to whether they have demonstrated that there is a significant possibility they have experienced or fear harm that would be an independent basis for asylum, statutory withholding, or protection under CAT. This IFR took effect on May 31, 2022 and applies to certain noncitizens who arrive in, or enter, the United States and are placed into expedited removal after the effective date. The IFR is at 87 FR 18078.

Under the updated regulations, USCIS will continue to receive CF referrals for individuals who are subject to expedited removal and who express an intention to apply for asylum, a fear of persecution or torture, or a fear of return. After receipt of the CF referral, USCIS will generally conduct a CF screening. However, if circumstances so warrant, an asylum officer (with supervisory asylum officer review and

*For Official Use Only*

## USCIS Asylum Merits Interview Guidance

concurrence), may exercise USCIS's discretion to issue Notices to Appear to individuals without making a CF determination.  Additional guidance on who will receive a CF determination is below.  Individuals who are screened for CF will receive a positive or negative determination pursuant to established CF procedures.  Offices may continue to administratively close cases pursuant to existing CF procedures, including for dissolution, language access, and individuals who are unable to effectively communicate.  Individuals who receive a negative CF determination may request review of that negative determination using Form I-863, Notice of Referral to Immigration Judge. Individuals who receive a positive CF determination will go into the newly created asylum merits interview process conducted by asylum officers, unless USCIS, in its discretion, issues a Form I-862, Notice to Appear (NTA) to place them into original section 240 removal proceedings.

These procedures set forth guidance on how to proceed with CF screenings and asylum merits interviews pursuant to 8 CFR 208.2(a)(1)(ii) conducted by asylum officers.

### A. Credible Fear Interview

Offices must follow established procedures for conducting a CF screening interview, including identity verification of non-detained individuals, and reschedule requests, pursuant to the existing CF process.  Additionally, APSOs who conduct CF interviews at locations participating in the phased implementation of the IFR must inquire as to the noncitizen's intended destination address during the CF interview.

### B. Family processing

USCIS will follow the established CF family processing procedures for processing family members who arrived concurrently with the principal applicant.  The regulations at 8 CFR 208.30(c) have been revised to specify and codify long-standing USCIS practice that a spouse and/or unmarried child under 21 who arrived concurrently with the principal applicant (PA) must be included in the positive CF determination, unless the principal, spouse, or child declines such inclusion.  Individual may still choose to have their CF determination made separately if desired. USCIS may also include other accompanying family members who arrived concurrently with the principal in the positive credible fear determination to ensure family unity on a case-by-case basis.  Only family members who are processed together at the time of the issuance of the CF determination may be processed together at the Asylum Merits interview.  Guidance on family processing in the Asylum Merits Interview is located below in section V.H.

The AO must inform dependents that they may request their own credible fear interview.  This must be documented in the notes.  If a dependent states that they do not want to be processed with their family unit, they will be removed from the principal applicant's case and processed separately.

### C. Credible Fear Security Checks

Officers must follow established CF security check procedures.  As a reminder officers must complete CPMS IVT.  For applicants with an FBI Criminal Master File (CMF) in which the comments reference an enforcement encounter's EID in CPMS IVT, asylum staff must on the BISC in the CPMS IVT box write

## USCIS Asylum Merits Interview Guidance

"FBICMF" in the "Other" field for encounters found.  Applicants who do not have an FBICMF encounter that references an enforcement encounter's EID cannot participate in the AMI process.

### D. Determinations and Service

1. Positive determinations/service
    i. Noncitizens who receive a positive CF determination may be issued an NTA and placed in removal proceedings under INA section 240.  Alternatively, USCIS may retain the asylum application for further consideration by an asylum officer in an Asylum Merits Interview (AMI).  Positive credible fear determinations not retained for AMI processing will be processed according to existing procedures for placing the individual in section 240 proceedings.

        APSOs must complete the AMI participation checklist for all positive determinations.[1]  In cases where they find the noncitizen is properly in the AMI process, the APSO prepares a memorandum documenting that the expedited removal order has been vacated (if the bottom portion of the "Form I-860, Notice and Order of Expedited Removal," has been completed) or canceled (if it is not filled out).  The APSO also annotates the Form I-860 to indicate it has been vacated or canceled.  The SAPSO reviews the AMI participation checklist.  If the SAPSO concurs with the positive CF determination and the recommendation to participate in the AMI process, the SAPSO informs scheduling staff that the case is available for AMI processing.  If the case is scheduled for an AMI, asylum office personnel prepare an "Information About Your Asylum Merits Interview" orientation document and a "G-56, Asylum Merits Interview Notice" for the positive credible fear determination packet.  If the case is not ultimately scheduled for AMI, the positive determination should be served with an NTA, and the ER vacate or cancellation memo should be shredded and/or deleted, not be included in the file or in the Global case management system, or provided to the noncitizen.

    ii. For detained cases retained for AMI processing, the asylum office will work with ICE to serve the positive credible fear determination.  If non-detained cases are retained for AMI processing, asylum offices must serve positive credible fear determinations in-person to ensure that the applicant(s) receive the required AMI documentation.  Positive service must include the Information About Asylum Merits Interview document, which must be signed by the principal and each accompanying family member.  The Form I-860, Notice and Order of Expedited Removal must also be vacated or canceled to place the applicant in the AMI

---

[1] During initial implementation, APSOs will only be required to complete this checklist if they are processing populations included in the implementation phase, based on relevant factors such as detention status, location, and an FBICMF encounter with classifiable prints.  The participation checklist will be updated as appropriate to account for which populations are considered for placement in the AMI process.

Page **5** of **19**

Rev. 05/24/23

USA012232

*For Official Use Only*

## USCIS Asylum Merits Interview Guidance

process.  To that end, an Expedited Removal vacate or cancellation memo must be included for each family member.

The positive CF determination service date will serve as the filing date for the asylum application.  For positive determinations, asylum offices must create the asylum merits interview case in Global prior to decision service by clicking the Asylum Merits case creation button on the credible fear service card.  In CPMS 2.0, asylum staff will re-use biometrics taken by ICE or CBP that are referenced in the FBICMF encounter's comments for the AMI adjudication.  Asylum staff will also monitor a dashboard to ensure that FBI fingerprint results are received up to 24 hours after the fingerprints are re-used.  If the dashboard indicates that FBI results are not received, the asylum staff will contact ICE to stop the service of AMI documents so the applicant may be served an NTA instead.  If the applicant was already served with the AMI processing information, asylum staff will call the applicant to provide an ASC biometrics appointment date and time.  See sections III. and IV. for additional guidance.

### E. Post- Service Processing

#### 1. Positive CF determination

The asylum office has discretion to retain the asylum application for an Asylum Merits Interview or to place the individual into removal proceedings by filing an NTA with the immigration court having jurisdiction over the individual's place of residence or detention.  In the phased implementation, asylum offices will retain asylum applications for a limited numbers of single adults in certain locations where EOIR has a streamlined docket.  When the asylum office retains the asylum application for an AMI, the asylum office must request the A-file from ICE.

#### 2. Negative CF determination

When the individual requests review of the negative CF determination, or refuses or fails to request or decline such review, the asylum office will file the standard documents with the Immigration Court.  See CFPM section III.K.2.  When the individual affirmatively declines review of the determination, the asylum office will refer the case to ERO.

#### 3. Procedures for Post-IJ Vacate

If the immigration judge vacates the asylum officer's negative CF determination, the asylum office will either retain the asylum application for an AMI pursuant to section V or will coordinate with ICE to place the individual into original section 240 removal proceedings by issuing an NTA.

When the asylum office retains the asylum application for an AMI, the asylum office must request the A-file from ICE.  The asylum office must receive all documents that the Immigration Judge used to make

*For Official Use Only*

## USCIS Asylum Merits Interview Guidance

the positive CF determination and review the information before conducting the AMI.  The asylum office sends a G-56 for the AMI along with the Information About Your Asylum Merits Interview document.

## II.   ASYLUM MERITS INTERVIEW CASE ENTRY IN GLOBAL

Family members should be linked only if they were included on the same positive CF determination or are also pending in the AMI process. Other family members should not be linked to the particular AMI case in Global, even if they arrived concurrently or have related claims. If, at the time of the AMI, the asylum officer determines that the familial relationship has not been established, or the relationship no longer exists (e.g., due to divorce, death, or a child getting married), the dependent must be afforded the opportunity to proceed as a principal applicant.

## III.   ASYLUM MERITS INTERVIEW BIOMETRICS CAPTURE

### A.  Timing of the Capture

Biometrics will be captured by ICE and/or CBP during initial processing.  The fingerprints from the ICE or CBP capture will be re-used by USCIS.  To run the biometrics security checks for AMI, asylum staff responsible for serving the decision will manually re-use the fingerprints from the ICE or CBP capture the EID of which is referenced in the FBICMF encounter's comments.  Applicants whose prints are re-used will receive a notice that their prints were reused.[2]

USCIS staff will conduct biometric verification at the time of the non-detained CF interview.  Individuals who are detained during the CF process will have their biometrics verified when they check in for the AMI.

## IV.   BACKGROUND, IDENTITY AND SECURITY CHECKS

Below is a list of the required checks that vary from the initiation process present in the affirmative asylum workflow, both in terms of process and timing.

### A.  FBI NAME CHECK

The FBI name check result from CF may be used for the AMI FBI name check requirement for up to 15 months from the CF FBI name check result date.  Aliases harvested during CF will be transmitted from Global to FBI name check upon AMI case creation.  When names submitted via Global (either the primary name or alias) remain pending for more than 10 calendar days, asylum staff should submit a manual expedite name check request for the name(s) that are pending a result in Global and CPMS.  A

---

[2] To participate in an AMI during the initial implementation phase, the applicant must have an FBICMT encounter in IVT that references an immigration enforcement encounter EID in the comments.  If the applicant does not have an FBICMT encounter or the existing FBICMF encounter does not reference an immigration enforcement encounter EID in the comments, then the applicant may not participate in AMI processing.

Page **7** of **19**

Rev. 05/24/23

USA012234

## USCIS Asylum Merits Interview Guidance

manual expedite name check request may also be submitted for compelling (e.g. medical conditions), humanitarian (e.g. imminent and specific threats to life of beneficiary), and mandamus reasons.

### B. FBI FINGERPRINT CHECK

Applicants with unclassifiable prints should not be included in the AMI process.  In the rare instance of an applicant with unclassifiable prints is in the AMI process, contact the appropriate POC from the Operations Branch to address this issue before the interview.

### C. DHS-IDENT

Children that are under 12 years, 9 months of age will provide a press print, photograph, and signature.  This type of biometric capture would not retrieve results for DHS-IDENT.  DHS-IDENT results will not appear in Global; asylum staff will have to manually search and review DHS-IDENT results in CPMS IVT.

### D. Identity Verification

At the time of the AMI interview, the applicant's biometrics data will be compared against the biometrics from the CBP or ICE encounter, unlike for affirmative asylum where the applicant's biometrics data is compared against the biometrics captured from the ASC appointment associated with the I-589 encounter.

### E. DOD-ABIS

As with all applicants that have a DOD-ABIS match, as per DHS procedure, the DOD-ABIS match must be reviewed and vetted by CBP NTC-P and receive a determination of whether there is derogatory information or not.  A referral may go forward without waiting for the NTC-P determination, but a grant cannot go forward without an NTC-P determination.

### F. EFR

For applicants that require Enhanced FDNS Review (EFR), delays in completion are possible, as EFR is not initiated until the supervisory asylum officer concurs on the decision to grant.  In most instances, EFR will not be complete in time for a case to have decision service two weeks after interview.  Supervisory asylum officers must place AMI cases requiring EFR on Enhanced FDNS Review (EFR) hold, which will toll the adjudication clock and, if necessary, cancel the pick-up appointment for the case and change it to a mail-out.

If a case is determined to be a referral, then EFR is not required and the completion as a referral can move forward.  If EFR was initiated for a case that will be a referral it can be cancelled.  EFR must be completed before the decision of grant may be served.

## V.   ASYLUM MERITS INTERVIEW

*For Official Use Only*

# USCIS Asylum Merits Interview Guidance

### A. The Asylum Application

Applicants do not file asylum applications in the AMI process. Instead, the credible fear written record of determination created by USCIS during the CF screening and determination process (consisting of the I-870, interview notes, and CF determination checklist, and subsequently served on the applicant at the time of CF decision service) is treated as the "application for asylum." The CF decision service date is considered the date of filing and receipt of the asylum application. 8 CFR 208.3(a)(2). In addition to the CF record, the asylum officer and supervisory asylum officer must review the A file prior to issuing an asylum approval.

### B. Supplemental Information

Applicants may amend or correct the biographic or credible fear information in the Form I-870 or supplement the information collected during the CF process up until 7 calendar days (if submitting in person) or 10 calendar days (if submitting by mail) prior to the scheduled AMI before an asylum officer. See 8 CFR 208.4(b)(2). Applicants may supplement their asylum application for the AMI by providing additional documentation to the asylum office listed on the G-56, Asylum Merits interview Notice. Provided the applicant establishes good cause, the asylum officer may grant an extension to submit evidence prior to, or at the time of interview, as a matter of discretion, but the extension must not be so long as to delay the service of the AMI decision beyond 60 days following the positive CF.

### C. Asylum Merits interview Scheduling

When the applicant receives a positive CF determination, the asylum office may schedule an AMI with an asylum officer. Asylum offices should make every effort to provide the G-56, Asylum Merits Interview Notice to the applicant at the time of service of the positive CF determination. USCIS may need to confer with ICE/ERO or USCIS Field Office staff to ensure future interview space availability prior to issuance of the Form G-56, Asylum Merits Interview Notice, therefore necessitating that the Form G-56, Asylum Merits Interview Notice be mailed to the applicant at a later date. However, the Form G-56, Asylum Merits Interview Notice should be mailed no later than seven days after service of a positive CF determination. The interview date should be no sooner than 21 days from the date of service or the mailing of the Form G-56, Asylum Merits Interview Notice, whichever is later, unless the applicant requests in writing that an interview be scheduled sooner. The AMI must be completed no later than 45 days after service of the positive CF decision, absent exceptional circumstances. See 8 CFR 208.9(a)(1). Asylum office personnel should provide a copy of the Form G-56, Asylum Merits Interview Notice to the attorney or representative when a fully executed G-28 is on file.

#### 1. Reschedule Requests

All requests to reschedule must be made by the applicant in writing to the asylum office by mail, email, or fax or by completing an In-Person Asylum Merits Interview Reschedule Request at the asylum office. However, reschedule requests should be granted only in exigent circumstances. See 8 CFR 208.9(a)(1). Exigent circumstances that merit rescheduling the interview include the unavailability of an asylum officer to conduct the interview, the inability of the applicant to attend the interview due to illness, the

## USCIS Asylum Merits Interview Guidance

inability to timely secure an appropriate interpreter, or the closure of the asylum office. One attorney reschedule may be approved, provided that the asylum office can complete the interview within 45 days of the filing date.  If the attorney reschedule would require that the interview take place after more than 45 days have elapsed, they are required to show exigent circumstances (for example, the illness of the attorney would constitute an exigent circumstance, whereas inconvenience would not).

### D. Oath

If proceeding in a language other than English, the asylum officer places the interpreter under oath at the beginning of the AMI.  The asylum officer selects either the Record of Applicant Oath, Mailing Address, Acknowledgement of Credible Fear Determination as Asylum Application, and USCIS Interpreter Consent, or, if not using an interpreter and proceeding in English, the Record of Applicant Oath, Mailing Address, and Acknowledgement of Credible Fear Determination as Asylum Application During an Asylum Merits Interview (Using English).  The asylum officer explains the form to the applicant, places the applicant under oath, and both the applicant and asylum officer sign it.

### E. Conducting the Asylum Merits interview

The purpose of the AMI is for the asylum officer to elicit information to assess the applicant's eligibility for asylum, statutory withholding of removal, and protection under CAT. See 8 CFR 208.9(b).  After placing the applicant under oath, the asylum officer confirms the applicant received and understood the Information About Your Asylum Merits Interview document.  If the applicant did not understand, the asylum officer reads the Information About Your Asylum Merits Interview document to the applicant.  Prior to interviewing on the claim, the asylum officer provides the applicant with an opportunity to correct or amend the credible fear record and confirms the information contained in Part II of the I-870.

### F. Asylum Merits Interview Space

The AMI must be conducted in a private location away from the general public.  See 8 CFR 208.9(b).  In most instances, asylum merits interviews will be conducted at an asylum office, but they may be conducted at a USCIS Field Office, ICE or CBP facility, or other location as appropriate.

### G. Pre-Asylum Merits interview Preparation

The asylum officer should review the A-file and the CF determination, including the asylum officer's notes, prior to conducting the asylum merits interview.  The asylum officer has a duty to elicit all relevant and useful information bearing on the applicant's eligibility for asylum, statutory withholding of removal, and protection under CAT during the non-adversarial asylum merits interview.

### H. Immediate Family Members

Immediate family members who were included in the positive CF determination will be processed together in the AMI process.  See 8 CFR 208.30(c).  The asylum office may not add family members who were not included in the positive CF determination, unless the family member is also currently in the AMI process.  The asylum application is the CF paperwork of the family member who received the positive CF determination.

*For Official Use Only*

## USCIS Asylum Merits Interview Guidance

Only spouses and unmarried children under age 21 may be dependents on an asylum application.

Cases where a child received a positive CF determination and other family members were included in the child's positive CF determination as a matter of discretion for purposes of family unity will not be retained for further consideration in the AMI process and will instead be placed in original section 240 removal proceedings at the time the CF positive determination is issued and served.

Accompanying immediate family members (spouse and unmarried children under 21) may be included as dependents on the asylum application.  When a principal applicant is warrants a grant of asylum, the asylum officer prepares the asylum eligibility determination for the principal applicant to document the decision.  If any dependent is ineligible for asylum (i.e., is barred), the asylum officer for statutory withholding of removal and protection under CAT and prepares a Denial of Derivative Asylum Status letter (AAPM Appendix 19) with an NTA to place the dependent in original section 240 removal proceedings.

If the principal applicant's asylum application is not approved, the asylum officer must complete an independent basis determination for every dependent on the case.  The independent basis determination documents whether there is a significant possibility the dependent has experienced or fears harm that would be an independent basis for asylum, statutory withholding of removal, or protection under CAT.  The outcome of the independent basis determination does not have any bearing on the outcome of the case – its purpose is solely to allow dependents to pursue their own claim in immigration court if the principal applicant is not granted asylum before EOIR.

### I. Interpreters

The Asylum Office provides an interpreter for the AMI.  See 8 CFR 208.9(g)(2). Asylum officers should contact the interpreter service(s) in order of priority for their offices.  If at any point the applicant requests a male or female interpreter, this request should be honored, where possible.  The asylum officer must place the interpreter under oath at the beginning of the asylum merits interview using the following language:

> Do you affirm that you will truthfully, literally and fully interpret the questions asked by the asylum officer and the answers given by the applicant; that you will not add to, delete from, comment on, or otherwise change the matter to be interpreted; and that you will immediately notify the officer in this case if you become aware of your inability to interpret in a neutral manner on account of a bias against the applicant or the applicant's race, religion, nationality, membership in a particular social group, or political opinion?

If at any point the asylum officer believes the interpreter is incompetent or otherwise not fulfilling their obligations, or the applicant raises such concerns, the asylum officer should dismiss the interpreter and contact the interpreter service to obtain a different interpreter. Following the interview, the asylum officer must document the call(s) in the interpreter log.  If the interpreter was changed during the

## USCIS Asylum Merits Interview Guidance

interview, the asylum officer should document each call in the interpreter log.  The asylum officer should document any interpreter issues in their notes and in the interpreter log.

If an applicant is unable to complete the AMI in the English language, but refuses to consent to the use of a USCIS-provided interpreter, the asylum officer prepares a Referral Notice for Failure to Appear– Interpreter Refusal Notice and a NTA placing the noncitizen in original section 240 removal proceedings.

### a)    *Language Access*

When an applicant speaks a less common language or dialect, asylum office personnel should make every effort to schedule a contract interpreter in advance.  For all cases involving language access concerns, asylum offices must contact all interpreter services when attempting to secure/schedule an interpreter and document the attempts to schedule the interpreter in the interpreter log.  The purpose of the interpreter log is to track calls made by staff of the Asylum Division in order to reconcile invoices as well as to provide feedback to the contractors regarding interpreter/monitor performance.  This is a requirement even if the language is not listed as being available as language access can vary on daily basis.

### b)    *Language Serviced Under Contract but there are a Limited Number of Interpreters Available*

When the language the individual speaks is serviced under the contract but there are a limited number of interpreters available, the asylum office must contact all interpreter services to attempt to schedule an interpreter and document the calls on the interpreter log.  If an interpreter cannot be secured/scheduled in order to conduct the AMI with the noncitizen by day 45 after service of the positive CF determination, the asylum office must document the steps taken to attempt to secure/schedule an interpreter in a memorandum to file.  The asylum office may then issue an NTA, indicating that a credible fear was found and placing the applicant in original section 240 removal proceedings.

## VI.    Asylum Merits Interview Recording

The asylum officer makes a complete audio recording of the AMI, except for statements made off the record with the permission of the asylum officer.  8 CFR 208.9(f)(2).  The asylum officer uses the Global Interview Notetaking Application (GINA), or other software as directed, to record the AMI.  If the case is not granted, the recording will be transcribed and the transcription becomes part of the record of proceedings and constitutes the primary means of validating the asylum officer's notes during the EOIR review process.  The asylum officer must inform the applicant when the recording begins, after placing the interpreter oath.  The noncitizen must be placed under oath on the recording.  At the beginning of the interview, the asylum officer uses the following language:

> For the record, today's date is: _____.  The time is: ____.

# USCIS Asylum Merits Interview Guidance

The A number is _____. We are proceeding with an Asylum Merits Interview at the _____Asylum Office. I am officer _____.

Also present at this interview is the applicant, _____. [If applicable, identify the representative, dependents, and anyone else present in the interview room.] We are also joined by a contract interpreter on the phone, who has been placed under oath.

All statements you make constitute sworn testimony that will become part of your immigration file and may be used in future proceedings. This interview is being recorded. If your case is referred to the immigration court, we will generate a transcript of this recording to provide to the court.

[To PA] Do you understand everything I have said so far?

When beginning to interview a dependent, the asylum officer uses this language:

We are now completing the dependent portion of the interview with _____, who is [state relationship: the spouse/child of or a witness for] the principal applicant. The dependent's A number is _____.

All statements you make constitute sworn testimony that will become part of your immigration file and may be used in future proceedings. This interview is being recorded. If your [spouse's/parent's] case is referred to the immigration court, we will generate a transcript of this recording to provide to the court.

Do you understand everything I have said so far?

When concluding the interview, the asylum officer notes the time before ending the recording:

This concludes the interview today. The time is: _____.

Because the interview is being recorded, a sworn statement is not required when interviewing on mandatory bars.

## VII. Background, Identity and Security Checks

Asylum Office personnel complete identity verification when the applicant arrives for the asylum merits interview. The asylum officer completes the Asylum and NACARA 203 Background, Identity and Security Checklist for each applicant.

*For Official Use Only*

USCIS Asylum Merits Interview Guidance

# VIII.   Asylum Officer is Unable to Conduct the Asylum Merits interview

In rare instances, the asylum officer may be unable to conduct the AMI.  If the applicant appears to be unable to effectively communicate, the supervisory asylum officer should request HQ concurrence to place the applicant in original section 240 removal proceedings.  The request should include the CF determination, any additional notes taken, any available medical documentation, and a memorandum summarizing the reasons that the asylum officer believes the applicant is unable to effectively communicate.  For any other concern where the asylum officer is unable to conduct the AMI, the supervisory asylum officer should consult with the Operations Branch on next steps.  Asylum offices may exercise discretion to place individuals in original section 240 removal proceedings, if appropriate, after receiving HQ concurrence to do so.  The noncitizen must be informed that they must file an I-589 before EOIR in order to have their asylum claim considered, as their positive CF determination is no longer considered an asylum application, and of the one year filing deadline requirements.

# IX.   Withdrawal of request for protection

Applicants who wish to withdraw from the process must complete an asylum merits interview withdrawal form and be advised that they will be placed in original section 240 removal proceedings. Asylum personnel should administratively close the case in Global, issue a NTA placing the applicant in non-streamlined removal proceedings, and promptly notify ICE-ERO of the applicant's decision to withdraw.  If the applicant is in detention at the time of the AMI, the AO must complete a brief withdrawal interview to establish that the decision to withdraw from the process was made voluntarily. The noncitizen must be informed that they must file an I-589 before EOIR in order to have their asylum claim considered, as their positive CF determination is no longer considered an asylum application, and of the one year filing deadline requirements.

# X.   Failure to appear

If an applicant fails to appear for an AMI, absent exceptional circumstances, the asylum officer prepares the Referral Notice for Failure to Appear and a NTA for original section 240 removal proceedings using the grounds of inadmissibility identified on the I-860.  See 8 CFR 208.10(a)(1) and 208.10(b)(1).  The applicant must provide evidence to establish the existence of exceptional circumstances within 15 calendar days of the missed interview.  "Exceptional circumstances" is defined in INA Section 240(e)(1) as "circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien."  Exceptional circumstances are not limited to the express examples provided at INA Section 240(e)(1).  Adjudicating individuals should examine the totality of the circumstances to determine if the applicant has demonstrated exceptional circumstances excusing the failure to appear. In certain cases, the ineffective assistance of counsel may constitute exceptional circumstances excusing the failure to appear. The Asylum Division's "One Year Filing Deadline" Lesson Plan, Section V.B.2.d describes how to assess the ineffective assistance of counsel.  If the applicant establishes the failure to appear was due to exceptional

*For Official Use Only*

## USCIS Asylum Merits Interview Guidance

circumstances, Asylum Office personnel contact the applicant or representative to arrange a new interview time as soon as is feasible.

## XI. Decision

### J. Asylum approval

The asylum officer prepares the asylum eligibility determination in lieu of the assessment to grant, and if applicable, orders a transcript immediately after entering a grant decision in Global where a mandatory bar is implicated. The asylum officer follows all other existing asylum approval procedures.  See AAPM II.N.

### K. Asylum Referral

In all cases, the asylum officer must elicit all relevant and useful information bearing on the principal applicant's eligibility for statutory withholding of removal and protection under CAT ).  If the principal applicant is not granted asylum, the asylum officer will include in the written assessment a determination as to whether, based on the evidence submitted to USCIS, the applicant established eligibility for statutory withholding of removal or= protection under CAT, documenting the determination on the withholding of removal and deferral of removal worksheet.  If the asylum officer finds that a principal applicant is eligible for statutory withholding of removal or protection under CAT , and the immigration judge (IJ) also does not grant the principal applicant asylum and issues a final removal order, the IJ will give effect to the AO's finding, with limited exceptions.  See 8 CFR 1240.17(i)(2).

If a principal applicant is being processed with a dependent spouse and/or unmarried children under age 21, the asylum officer must assess, for each dependent, whether there is a significant possibility that the spouse or child experienced or fears harm that would be an independent basis for asylum, statutory withholding of removal, or protection under CAT and documents this finding on the independent basis determination notice.  See 8 CFR 208.9(b).  The asylum officer must elicit testimony from each applicant, or if the applicant is unable to testify on his or her own behalf, from another family member.  The independent basis determination is served on the dependent.

The asylum officer prepares the asylum eligibility determination in lieu of the assessment to refer, orders a transcript immediately after entering a referral decision in Global, drafts the documents outlined in sections XIV. *Record of Proceedings* and XVI. *Asylum Not Approved*, and follows all other existing asylum referral procedures.  See AAPM II.N.

## XII. Supervisory Review

In all cases, the asylum officer's decision must undergo supervisory review for legal sufficiency prior to service.  See 8 CFR 208.14(b) and (c).  AMI cases should be reviewed by a GS-14 supervisory asylum officer (or other USCIS official supervising such a supervisory asylum officer) who has received specialized training on processing these cases.

Page **15** of **19**

Rev. 05/24/23

USA012242

*For Official Use Only*

## USCIS Asylum Merits Interview Guidance

When completing review, the supervisory asylum officer should review and confirm the following:

- I-870 corrections have been made accurately and clearly
- Asylum, Withholding/Deferral of Removal Determination and Independent Basis Determinations are clear, concise, complete and correct
- Interview was properly recorded, and notes are in GINA
- Decision letter is correctly addressed to the applicant and any representative of record, accurately reflects the status of the case, and lists all dependents
- Address on the documents matches the address in Global
- Information and dates are correct and consistent throughout all forms
- NTA allegations/charges and the location of the Immigration Court are correct
- Record of Oath is properly executed
- Asylum and NACARA § 203 Background Identity and Security Checklist is present and completed in accordance with the decision being issued
- Each A-file is in neat record order with no loose papers or unconsolidated folders
- Global is properly updated

## XIII. Record of proceedings

The record of proceedings is outlined in 8 CFR 208.9(f) and consists of:
- The asylum application (consisting of the I-870, CF checklist, and asylum officer's notes)
- All supporting information provided by the applicant;
- Any comments submitted by the Department of State or by DHS;
- Any other unclassified information specific to the applicant's case and considered by the asylum officer; and
- A complete verbatim transcript of the interview (if applicable).

## XIV. Service

### L. Asylum Granted

The asylum officer follows existing guidance for preparing service documents for an asylum approval. See AAPM II.N.1.b.  The asylum office also notifies ICE electronically of the decision.

### M. Asylum Not Approved

The asylum officer prepares the following documents for service for each principal applicant:

- Asylum eligibility determination;
- Statutory withholding of removal and, if applicable, protection under CAT determination;
- Asylum Merits Interview Decision Notice (Ineligible for Asylum);
- Transcript of AMI;
- Form I-862, Notice to Appear; and

*For Official Use Only*

## USCIS Asylum Merits Interview Guidance

- EOIR-33 and AR-11 change of address forms.

Additionally, any dependents will receive:
- Form I-862, Notice to Appear;
- Asylum Merits Interview Decision Notice (Ineligible for Asylum); and
- Independent basis determination.

Representatives are provided with a complete copy of the service packet, including the independent basis determination for dependents.

The asylum office may encounter situations where the principal applicant is granted asylum, but the dependent is ineligible, in these scenarios:

- The principal applicant is granted asylum, but a dependent is subject to a bar described in 8 C.F.R. 208.21(a).
- The principal applicant is granted asylum, but the dependent fails to follow requirements for identity and security checks, including biometrics collection, CPMS-IVT verification, and providing any required court records.

In those cases, the dependent who is ineligible will receive:

- Form I-862, Notice to Appear, if out of status;
- Independent basis determination;
- Notice of denial of derivative status; and
- CF positive service packet.

Representatives of record must also be served with copies of these documents.  Following service, asylum office personnel provide the A file, including the record of proceedings and NTA, to ICE ERO. Asylum office staff also flag noteworthy cases for OPLA at the time proceedings are commenced.

## XV.   EOIR filing

If the applicant is ineligible for asylum or not granted asylum as a matter of discretion, the following documents must be filed with EOIR:
- Form I-862, Notice to Appear;
- Form I-213;
- A copy of the record of proceedings before the asylum officer, as outlined above;
- The asylum officer's eligibility assessments for asylum, statutory withholding of removal, and if applicable, protection under CAT; and
- Transcript of the asylum merits interview with AMI transcript certificate of service (appendix 25).

Rev. 05/24/23

USA012244

*For Official Use Only*

## USCIS Asylum Merits Interview Guidance

In addition, EOIR filings for cases with dependents should also include for each family member:
- Form I-862, Notice to Appear;
- Form I-213; and
- Independent basis determination.

USCIS Asylum Merits Interview Guidance

## XVI. APPENDICES

1. Expedited Removal Vacate/Cancellation Memorandum
2. M-444 Information About Credible Fear Interview (English/Translations)
3. I-870 Record of Determination/Credible Fear Worksheet
4. Information About Your Asylum Merits Interview
5. AMI Participation Checklist
6. Form G-56 Asylum Merits Interview Notice
7. In-Person Asylum Merits Interview Reschedule Request
8. Grant of Asylum Merits Interview Reschedule Request
9. Denial of Asylum Merits Interview Reschedule Request
10. Record of Applicant Oath – USCIS Interpreter Consent
11. Record of Applicant Oath – English
12. Waiver of Presence of Representative at AMI
13. Request for Final Court Disposition(s) for AMI
14. Retention of Original Documents for AMI
15. Declaration of Intent to Withdraw Asylum Application (Asylum Merits Interview)
16. Notice of Change in Decision Service from Pick Up to Mail Out (AMI)
17. Failure to Appear to Pick Up Your Asylum Decision (Asylum Merits Interview)
18. Asylum Merits Interview Decision Notice (Ineligible for Asylum)
19. Pick Up Notice for AMI
20. Mail Out Notice for AMI
21. Referral Notice for Failure to Appear for AMI
22. Referral for Failure to Appear for AMI – Interpreter Refusal
23. Cancellation of Asylum Merits Interview – USCIS Interpreter Unavailable
24. Rescheduling of Asylum Merits Interview – USCIS Interpreter Unavailable
25. AMI Transcript Certificate of Service