# EXHIBIT 206



# Annual Report 2023

Citizenship and Immigration Services Ombudsman

June 30, 2023



# Annual Report 2023

Citizenship and Immigration Services Ombudsman

June 30, 2023





Office of the Citizenship and Immigration Services Ombudsman
**U.S. Department of Homeland Security**
Mail Stop 0180
Washington, DC 20528-0180

June 30, 2023

The Honorable Richard Durbin
Chairman
Committee on the Judiciary
United States Senate
Washington, DC 20510

The Honorable Jim Jordan
Chairman
Committee on the Judiciary
United States House of Representatives
Washington, DC 20515

The Honorable Lindsey Graham
Ranking Member
Committee on the Judiciary
United States Senate
Washington, DC 20510

The Honorable Jerrold Nadler
Ranking Member
Committee on the Judiciary
United States House of Representatives
Washington, DC 20515

Dear Chairmen and Ranking Members:

The Office of the Citizenship and Immigration Services Ombudsman is pleased to submit, pursuant to section 452(c) of the Homeland Security Act of 2002, its 2023 Annual Report.

I am available to provide additional information upon request.

Sincerely,

Nathan Stiefel
(Acting) Citizenship and Immigration Services Ombudsman

www.dhs.gov/cisombudsman

existing policies, for example issuing policy guidance to allow certain E and L spouses to use I-94 cards, rather than requiring them to obtain EADs, as evidence of employment authorization incident to their status.[27]

While these steps addressed necessary issues to give the agency workforce sufficient breathing space to take on its backlogs, the majority of these actions address only the symptoms and not the root causes of backlogs themselves. Prioritization steps are necessary, but the larger stumbling blocks of the underlying adjudications remain. The steps addressing some of the symptoms of backlogs, in fact, create "downstream impacts" or ripples of their own. Long-pending adjustments, applications to remove conditional status, and similar adjudications require applicants to maintain benefits such as employment authorization and advance parole. They also require increasing resources toward maintaining lines of communication for inquiries, emergencies, and work on those spiraling ancillary applications. The larger the pool of such applications and petitions (for which many of USCIS' customers have already paid) remains unadjudicated, the larger the pool of ancillary benefits that require maintenance—and for a longer period.

***Events Out of the Agency's Control.*** These challenges were exacerbated in 2022 by external events over which the agency had little or no control. First, the depletion of resources to the Southern border (primarily asylum officers to conduct credible fear interviews) continued to impact the affirmative asylum caseload and the agency's ability to chip away at it.[28]

DHS and the Department of Justice's (DOJ's) Executive Office for Immigration Review (EOIR) published the joint Credible Fear and Asylum Processing interim final rule, which allows for the transfer of jurisdiction over some applications for asylum for individuals subject to expedited removal from EOIR to USCIS. The rule placed not only credible fear determinations but also "asylum merits interviews" in the hands of asylum officers, moving the consideration of asylum applications of those who established a credible fear from DOJ's immigration courts to USCIS asylum officers.[29] The rule, promulgated in March 2022, became effective on May 31, 2022.[30] The agencies assured the public that it would implement the rule gradually in a "phased manner," placing only a few hundred applicants each month in this new process and building up capacity over time.[31] That has turned out to be very much the case; as of the end of February 2023, almost a year after implementation, only 4,760 individuals had been referred for processing under the new rule, with 1,850 establishing credible fear and 233 being granted asylum.[32] With implementation paused during the lifting of Title 42, the rule remains in limbo until resumption.[33] The same asylum officers, however, continue to be needed for credible fear interviews at the border, and so remain diverted from adjudicating affirmative asylum cases.[34]

Not only did this divert resources from existing asylum office workloads, but it also created new ones; by definition, the asylum merits process falls entirely to USCIS under this new process.[35] USCIS was given funding by Congress to hire new asylum officers for both the new processes and to assist in driving down the backlog.[36] This was especially welcome funding, as

---

[27] USCIS Policy Alert, PM-2022-11, "Documentation of Employment Authorization for Certain E and L Nonimmigrant Dependent Spouses" (Mar. 18, 2022); https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220318-EmploymentAuthorization.pdf (accessed May 20, 2023).

[28] Credible fear interviews for those subject to expedited removal who articulate a desire to apply for asylum, or a fear of returning to their country, are conducted by USCIS asylum officers. USCIS Web page, "Questions and Answers: Credible Fear Screening;" https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening (May 11, 2023) (accessed May 20, 2023). For a thorough discussion of the affirmative asylum backlog, please see CIS Ombudsman Annual Report 2022, pp. 42–53.

[29] USCIS Web page, "FACT SHEET: Implementation of the Credible Fear and Asylum Processing Interim Final Rule" (Dec. 12, 2022); https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/fact-sheet-implementation-of-the-credible-fear-and-asylum-processing-interim-final-rule (accessed May 21, 2023).

[30] "Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers," 87 Fed. Reg. 18078 (Mar. 29, 2022).

[31] USCIS Web page, "FACT SHEET: Implementation of the Credible Fear and Asylum Processing Interim Final Rule" (Dec. 12, 2022); https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/fact-sheet-implementation-of-the-credible-fear-and-asylum-processing-interim-final-rule (accessed May 21, 2023).

[32] Asylum Processing Rule Cohort Report, February 2023 (Apr. 20, 2023); https://www.dhs.gov/immigration-statistics/special-reports/asylum-processing-rule-report (accessed May 21, 2023).

[33] Hamed Aleaziz, "Signature Biden asylum reform policy is now on hold," Los Angeles Times (Apr. 12, 2023); https://www.latimes.com/politics/story/2023-04-12/biden-asylum-processing-rule-pause (accessed May 21, 2023).

[34] Nouran Salahieh and Rosa Flores, "'It will get worse.' Asylum officers, Secret Service agents and troops have surged toward border with Title 42's expiration," CNN (May 12, 2023); https://www.cnn.com/2023/05/11/us/title-42-expires-border-immigration-thursday/index.html (accessed May 21, 2023). Approximately "1,000 asylum officers were being sent to Border Patrol and immigration detention facilities to help screen asylum requests," according to DHS Secretary Mayorkas.

[35] "Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers," 87 Fed. Reg. 18078, 18081 (Mar. 29, 2022).

[36] Continuing Appropriations Act, 2022, § 132, Pub. L. 117-43.