# EXHIBIT 223

**Congressional Research Service**
*Informing the legislative debate since 1914*



August 25, 2021

# Noncitizen Eligibility for Medicaid and CHIP

Medicaid and the State Children's Health Insurance Program (CHIP) provide a health care safety net for low-income populations. The availability of these programs for noncitizens (i.e., *aliens* in immigration law) depends on the noncitizen's immigration status and certain other factors. The Migration Policy Institute estimates 2.4 million low-income noncitizens were enrolled in Medicaid, CHIP, or another public health insurance program in 2019. This In Focus provides an overview of Medicaid/CHIP eligibility rules for non-U.S. citizens.

## Medicaid and CHIP Background

Medicaid, authorized in Title XIX of the Social Security Act (SSA), is a joint federal-state program that finances the delivery of primary and acute medical services—as well as long-term services and supports—to a diverse, low-income population, including children, pregnant women, adults, individuals with disabilities, and people aged 65 and older. CHIP, authorized in SSA Title XXI, provides health insurance coverage to low-income, uninsured children in families with incomes above applicable Medicaid income standards, as well as to certain pregnant women. Participation in both programs is voluntary for states, though all states, the District of Columbia, and the U.S. territories (i.e., American Samoa, the Commonwealth of the Northern Mariana Islands [CNMI], Guam, Puerto Rico, and the U.S. Virgin Islands) choose to participate.

States must follow broad federal rules to receive federal matching funds, but they have flexibility to design their own versions of Medicaid and CHIP within the federal statute's basic framework. The U.S. territories operate their Medicaid and CHIP programs under rules that differ from those applicable to the 50 states and DC (e.g., capped Medicaid funding, eligibility flexibilities). Both programs include several statutory waiver and demonstration authorities that allow states to operate their programs outside of certain federal rules. This flexibility results in variability across state Medicaid and CHIP programs in factors such as eligibility and covered benefits.

## Medicaid and CHIP Eligibility

There are a number of eligibility pathways through which individuals may qualify for Medicaid. (An *eligibility pathway* is the specific federal statutory reference[s] that extends Medicaid coverage to certain groups of individuals.) Often an applicant's eligibility pathway dictates the Medicaid state plan services to which a given program enrollee is entitled. In general, individuals must meet both categorical (e.g., children, pregnant women) and financial (i.e., income and sometimes assets limits) criteria. Some eligibility pathways are mandatory, meaning that all states with a Medicaid program must cover them; others are optional. Subject to federal minimum standards, states have discretion in determining certain eligibility criteria for both mandatory and optional eligibility groups, which results in substantial variability across states. Under CHIP, states have broad discretion in setting their income eligibility standards, and eligibility varies by state.

Medicaid and CHIP applicants must also meet federal and state requirements regarding

- **State Residency:** SSA §§1902(a)(16), 1902(a), 1902(b)(2) and 2102(b)(1)(A) [42 U.S.C. §§1396a(a)(16), 1396a(a), 1396a(b)(2) and 1397bb(b)(1)(A)];

- **Documentation of U.S. Citizenship:** SSA §§1137(d)(2), 1902(a)(46), 1902(ee), 1903(x) and 2105(c)(9)(A) [42 U.S.C. §§1320b-7(d)(2), 1396a(a)(46), 1396a(ee), 1396b(x) and 1397ee(c)(9)(A)]; and

- **Immigration Status:** SSA §§1902(b)(3) and 2105(a)(3)(F) [42 U.S.C. §§1396a(b)(3) and 1397ee(a)(3)(F)]; and Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA; P.L. 104-193), as amended §§401, 402, 403, 421 and 431 [8 U.S.C. §§1611, 1612, 1613, 1631, 1641].

While most Medicaid and CHIP eligibility rules reside within SSA Titles XIX and XXI, noncitizen eligibility for these programs is largely governed by provisions within (1) SSA Title XI and (2) PRWORA, as amended. The intersection of these laws establish the rules for noncitizen eligibility under Medicaid and CHIP, as summarized below.

## Medicaid and CHIP Noncitizen Eligibility Rules

Noncitizens' eligibility for Medicaid and CHIP largely depends on (1) an applicant's immigration status; (2) whether they arrived in the United States (or were enrolled in Medicaid) before August 22, 1996 (the date PRWORA was enacted); and (3) how long they have lived and worked in the United States. In addition, alien applicants must meet the programs' other eligibility requirements (e.g., financial, categorical, state residency).

### Qualified and Nonqualified Aliens

With respect to an applicant's immigration status, generally, noncitizen eligibility for most federal public benefits—including Medicaid and CHIP—is governed by the term *qualified alien* (8 U.S.C. §1641), which was created in PRWORA, as amended. Qualified aliens include lawful permanent residents (LPRs), refugees, aliens paroled into the United States for at least one year, aliens granted asylum or related relief, certain abused spouses and children, and Cuban-Haitian entrants. (For more information on these statuses, see CRS Report R46697,

*Noncitizen Eligibility for Supplemental Security Income (SSI)*.) Citizens of the Freely Associated States (FAS) residing in the U.S. states and territories are qualified aliens but only with respect to Medicaid (see text box below). Certain victims of human trafficking and Iraqi and Afghan special immigrants are not qualified aliens but are treated like refugees for purposes of federal public benefits. Otherwise eligible qualified aliens must be covered by Medicaid and CHIP, with certain specified restrictions, discussed below (42 C.F.R. §435.406).

Nonimmigrants, those with Temporary Protected Status (TPS), short-term (less than one year) parolees, asylum applicants, those granted Deferred Action for Childhood Arrivals (DACA), unauthorized immigrants, and various other classes of noncitizens granted temporary permission to remain in the United States are *nonqualified aliens*. These statuses and are generally barred from Medicaid and CHIP (8 U.S.C. §1611), with three exceptions (see "Medicaid and CHIP Exceptions for Nonqualified Aliens").

### Medicaid Eligibility for Citizens of the Freely Associated States (FAS)

In the 1980s and 1990s, the Republic of the Marshall Islands, the Federated States of Micronesia, and the Republic of Palau signed Compacts of Free Association (COFA) with the United States. FAS citizens are afforded certain immigration-related benefits that permit them to live, study, and work in the United States. Since the compacts went into effect, thousands of FAS migrants have established residence in U.S. states and territories. Prior to 1996, FAS citizens residing in the United States were eligible for federal public benefits. However, PRWORA (P.L. 104-193) barred FAS citizens, among others, from most federal public benefits, such as Medicaid, the Supplemental Nutrition Assistance Program, and Supplemental Security Income (SSI).

The Consolidated Appropriations Act, 2021 (P.L. 116-260) modifies PRWORA by adding FAS citizens who are lawfully residing in the United States under COFA to the list of qualified aliens, but only with respect to Medicaid. This law requires the 50 states and DC to add FAS citizens as a mandatory Medicaid eligibility pathway and permits the governors of the U.S. territories to elect to extend Medicaid eligibility to FAS citizens who are lawfully residing in their respective territories. In the territories that make this election, FAS citizens are considered a new Medicaid mandatory eligibility pathway. In addition, Medicaid services provided to program enrollees eligible through this pathway are not subject to the annual federal Medicaid capped funding that is otherwise applicable in each such territory. According to the Centers for Medicare & Medicaid Services (CMS), CNMI and Guam expanded eligibility to FAS citizens, as of August 23, 2021.

### Eligibility Restrictions for Qualified Aliens

There are additional Medicaid eligibility restrictions for qualified aliens. Many qualified aliens are prohibited from receiving Medicaid for the first five years after entry/grant of status (often referred to as the *five-year bar*), such as LPRs entering the United States after August 22, 1996 (8 U.S.C. §1613). However, other qualified aliens are exempt from the five-year bar, including LPRs with a substantial (i.e., 10-year) U.S. work history or a military connection (8 U.S.C. §1612). Similarly, the five-year bar does not apply to qualified aliens receiving Supplemental Security Income (SSI) on or after August 22, 1996 (8 U.S.C. §1612). States may choose to cover LPRs within the five-year bar period and other ineligible foreign nationals (i.e., nonqualified aliens) using state-only funds for individuals, services not otherwise covered under Medicaid or CHIP, or both.

Refugees and asylees are eligible for Medicaid for the first seven years after arrival (8 U.S.C. §1612). (Subsequently, they may be eligible for Medicaid at the state's option.)

### Medicaid and CHIP Exceptions for Nonqualified Aliens

Three exceptions allow nonqualified aliens to be eligible for Medicaid and CHIP:

- **Emergency Medicaid.** Under emergency Medicaid (§1903(v)(3) [42 U.S.C. §1396b(v)(3) and 8 U.S.C. §1611(b)(1)(A)], states are required to provide limited Medicaid services for the treatment of an emergency medical condition to otherwise eligible aliens, regardless of immigration status or lack of immigration status. For pregnant women, emergency Medicaid includes services covered under the state plan (e.g., routine prenatal care, labor and delivery, and routine postpartum care) (42 C.F.R. §440.255(b)(2)).

- **CHIP Unborn Child Option.** In 2002, the U.S. Department of Health and Human Services, promulgated regulations to revise the definition of *child* to include fetuses for the purposes of the CHIP program (42 C.F.R. §457.10). This change allows states to provide CHIP coverage to unborn children. Since fetuses do not have an immigration status, states use this option to provide prenatal care services to pregnant women, regardless of their age or immigration status. According to the Medicaid and CHIP Payment and Access Commission, 17 states provided CHIP coverage to unborn children, as of April 2020.

- **Medicaid and CHIP Coverage of Lawfully Residing Children & Pregnant Women.** The State Children's Health Insurance Program Reauthorization Act of 2009 (CHIPRA; P.L. 111-3) option allows states to provide Medicaid and CHIP coverage to certain "lawfully residing" children and/or pregnant women who would otherwise be eligible for coverage through these programs within the five-year bar when certain conditions are met. (CMS has broadly defined *lawfully residing* to include qualified aliens, aliens in valid nonimmigrant statuses, and many *quasi-legal* populations, such as TPS holders and DACA recipients.) According to CMS, as of December 11, 2019, 34 states, DC, and 3 U.S. territories extend Medicaid coverage to lawfully residing children, and 28 states cover such children under CHIP. Twenty-four states, DC, and three U.S. territories extend Medicaid coverage to lawfully residing pregnant women, and four states cover such individuals under CHIP.

**Evelyne P. Baumrucker**, Specialist in Health Care Financing

**Abigail F. Kolker**, Analyst in Immigration Policy

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.